The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P.,

Plaintiffs,

v.

STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, FOREST JACOBSON, ROCKY STEPHENSON, JANE WILSON, and BILLIE REED-LYYSKI,

Defendants.

NO. 14-05923RBL

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT TO STRIKE AFFIRMATIVE DEFENSES

## I. RELIEF REQUESTED

The Defendants State of Washington, Department of Social and Health Services and the individually named defendants (collectively, "DSHS" unless otherwise specified), request that this Court deny Plaintiffs' partial motion for summary judgment and that this Court grant the Defendants' motion for summary judgment and order that this matter be dismissed in its entirety.[1]

[1] DSHS will file a motion for summary judgment to dismiss this case in its entirety within a few days of filing this response.

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

## II. REPLY STATEMENT OF FACTS

While the magnitude of the tragedy underlying this lawsuit will never be understood or comprehended, the facts dispositive to this lawsuit are straightforward and undisputed. Below DSHS will discuss the statutes pertinent to the underlying dependency of C.J.P. and B.T.P., and then the undisputed facts necessary to resolve the motions before this Court.

### A. Washington Dependency Statutes Governed The Actions Of DSHS Social Workers And The Juvenile Court

In Washington, a child can be placed into protective custody of DSHS either by a social worker obtaining a "pick-up order" from the Court which gives the social worker the authority to take custody of a child, or when a member of law enforcement places a child into protective custody and then transfers custody to a DSHS social worker. *RCW 13.34.060(1); RCW 26.44.050; Dkt #7-4, p. 48 of 79, Decl. Helmberger, Ex. A, Dep. of Betsy Rodgers, (p. 47, l. 23 to p. 48, l. 6.)* In this case, it was the latter; the Pierce County Sheriff's Department placed the children into protective custody on September 22, 2011.

Once a child is taken into protective custody, DSHS has seventy-two hours to decide whether to file a dependency petition, and if so, a Shelter Care Hearing is required to be held within that same seventy-two hour time frame. Under Washington law, shelter care is ordered if the Court determines that there is "*reasonable cause to believe that the health, safety, or welfare of the child would be jeopardized . . . .*" *RCW 13.34.060(1)&(2).* The Juvenile Court then decides placement of the children per RCW 13.34.060(2). Under that statute, unless there is reasonable cause to believe that the health, safety or welfare of a child, or the potential for reunification with his or her parent is jeopardized, priority placement shall be as set forth in RCW 13.34.130(1)(b) (a relative first, a suitable person with a pre-existing familial relationship second, and foster care third.) Here, the court placed the boys with Charles and Judith Cox, maternal grandparents.[2]

---

[2] Contemporaneous to these events, the grandparents of C.J.P. and B.T.P., Charles and Judith Cox, were actively seeking custody of C.J.P. and B.T.P. on the premise that Josh Powell was responsible for the disappearance of his wife, their daughter, Susan Cox Powell. *See Dkt #7-5, p. 15 of 79, Decl. Helmberger, Ex. E, copy of Pierce County*

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

The next step in the process is to determine if a child is "dependent" under Washington law. A child is defined as "dependent" if the child has been abandoned, abused or neglected, or has no parent capable of adequately caring for the child. RCW 13.34.030(6)(a)-(c). Alternatively, a child may be found dependent on the agreement of the parent(s) and DSHS. RCW 13.34.110(3)(a). In this case, Powell requested that DSHS file a dependency petition and not place his sons with the maternal grandparents because they "were the most dangerous people on the planet to my sons." *Second Decl. of Helmberger, Ex. 4, Decl. Jacobson, Ex. 2, ISSP dated October 24, 2011, p. 3, ¶6, Bates stamped 01320796.*

Once a dependency is established, a dispositional order setting forth a service plan and visitation schedule, among other things, is required. RCW 13.34.141. Once the dispositional order is in place, it is the Department's role to, *inter alia*, coordinate service plans and activities to address the children's and families' multiple needs, develop treatment plans for individuals, and coordinate with other agencies to provide remedial services and provide funds for such services. RCW 13.34.025(1)-(2).

Plaintiffs premise liability on the decision of the Social Worker (SW) Forest Jacobson and the Guardian ad Litem (GAL), Julio Serrano, to hold visitations in Powell's residence. The order on disposition sets forth the visitation schedule. Visitations are governed by statute, RCW 13.34.136(2)(b)(ii):

> Visitation is the ***right of the family***, including the child and the parent, in cases in which visitation is in the best interest of the child. ***Early, consistent, and frequent visitation is crucial for maintaining parent-child relationships and making it possible for parents and children to safely reunify***. The supervising agency or department ***shall encourage the maximum parent and child and sibling contact as possible, when it is in the best interest of the child, including regular visitation and participation by the parents in the care of the child while the child is in placement***. Visitation ***shall not be limited as a sanction for a parent's failure to comply*** with court order or services where the health, safety, or welfare

---

*Superior Court Cause No. 11-3-03627-7, Nonparental Custody Petition; Dkt. No. 7-5, p. 21 of 79, Ex. F, Decl. of Charles Franklin Cox in Pierce County Superior Court Cause No. 11-3-03627-7, p. 5, ll. 21-23; and Dkt. No. 7-5, p. 32 of 79, Ex. G, Dep. of Charles Cox, p. 19, ll. 8-16, p. 22, ll. 21-22.*

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

of the child is not at risk as a result of the visitation. ***Visitation may be limited or denied only if the court determines that such limitation or denial is necessary to protect the child's health, safety or welfare.*** The court and the department or supervising agency should rely upon community resources, relative, foster parents, and other appropriate persons to provide transportation and supervision for visitation to the extent that such resources are available, and appropriate, and the child's safety would not be compromised.

RCW 13.34.136(2)(b)(ii)(emphasis added).

Finally, to determine whether a parent is in compliance with court-ordered service requirements, the Court is required to hold regularly scheduled review hearings. The court is required to hold a review hearing every six months, although it is within the Juvenile Court's discretion to hold review hearings every three months as needed. *RCW 13.34.138*.

**B. Undisputed Facts Pertinent To The Dependencies Of Powell And C.H.P and B.T.P.**

On September 22, 2011, the Powell children were taken into protective custody by the Pierce County Sheriff's Department (PCSD) who then transferred custody to DSHS.[3] DSHS filed a dependency petition because they had been informed by the PCSD that (1) Josh Powell "could not be ruled out as a suspect" in possession of child pornography and voyeurism, and (2) that Josh Powell was close to being arrested by officials in Utah which posed a risk to the children of being removed twice in a short period of time. *Second Decl. Helmberger, Ex. 5 (Ex. B, Dep. of John Long, p. 15, l. 5 to p. 16, l. 6; Ex. C, Dep. of Rocky Stephenson, (p. 21, ll. 3-7; Ex. A, Dep. of Betsy Rogers, p. 31, l. 17 to p.44, l. 1;Ex. A, Dep. of Betsy Rodgers, p. 49, l. 17 to p. 50, l. 11.)* Accordingly, DSHS filed a dependency petition and a shelter care hearing was held on September 28, 2011. The Court ordered that the children remain in shelter care status, and placed the boys with Charles and Judith Cox, maternal grandparents.

---

[3] On August, 25, 2011, Pierce County Sheriff's Department executed a search warrant on the home of Steven Powell and Joshua Powell on behalf of the West Valley City, Utah, Police Department as part of an ongoing criminal investigation into the disappearance of Susan Powell, Joshua Powell's wife. That search recovered 15 computers and from those computers West Valley City Police recovered the images leading to Steven Powell's arrest by Pierce County deputies on September 22, 2011, on charges of possession of child pornography and voyeurism. Prior to the arrest, Pierce County Sheriff's Deputies had informed DSHS that an arrest was imminent, and they were going to place the children into protective custody.

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

During the same time period, Child Protective Services (CPS) continued to investigate the Intake Referral received on September 22, 2011. The CPS intake allegations were noted as "Negligent Treatment or Maltreatment." The Intake Referral did not indicate or allege any history of physical or sexual abuse or violence being perpetrated upon Powell's young sons. The CPS investigation was assigned to CPS Investigator Rocky Stephenson by his supervisor Billie Reed-Lyyski. *Second Decl. Helmberger, Ex. 5, (Ex. J, Dep. of Billie Reed-Lyyski, p. 21, l. 4 to p. 27, l. 2 and Ex. 2 thereto, September 22, 2011 Intake ID: 2505483/Case ID: 1513430.*) During the course of the CPS investigation Stephenson was aware that Powell was a suspect in the child porn case involving his father Steven Powell and a focus of the CPS investigation. *Second Decl. of Helmberger, Ex. 5 (Ex. C, Dep. of Rocky Stephenson, p. 31, l. 20 to p. 33, l. 9.)*

On September 23, 2011, social workers Rocky Stephenson and Jane Wilson met with and interviewed Joshua Powell. *Second Decl. Helmberger, Ex. 5 (Ex. C, Dep. of Rocky Stephenson , p. 36, l. 21 to p. 37, l. 6; Ex. D, Dep. of Jane Wilson, p. 38, ll. 12 to 25.)* Powell indicated that the media attention and the maternal grandparents initiating court proceedings made it difficult for him to parent his sons. *Second Decl. Helmberger, Ex. 5 (Ex. C, Dep. of Rocky Stephenson and Ex. 16 thereto, Stephenson Case Notes - Bates stamped 01012185-88.)* Powell also admitted that he took pictures of other people's legs in public, although he was only an amateur at it; that he would apparently only turn his father in if he found him with sexually explicit pictures if it were a "threat to children;" and that while he was the primary caretaker of his children, at times his father, Steven Powell, would be left alone with the children. *Second Decl. Helmberger, Ex. 5 (Ex. C, Dep. of Rocky Stephenson and Ex. 16 thereto, Stephenson Case Notes - Bates stamped 01012185-88.)*

On September 27, 2011, Judge Kathryn Nelson held a hearing on the Cox Nonparental Custody Petition and motion for temporary custody of C.J.P. and B.T.P. with their grandparents. During that hearing, the court became aware that C.J.P. and B.T.P. were placed

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT TO STRIKE AFFIRMATIVE DEFENSES
Case No. 14-05923 RBL

5

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

into police protective custody on September 22, 2011, when Pierce County Sheriff Deputies arrested Steven Powell on the aforementioned charges. At that point, the Judge sought out additional information from the court files regarding the Steven Powell criminal matter – which contained information obtained from the investigation into Joshua Powell in Utah - and inquired on the status of any dependency actions to be filed by the State on behalf of C.J.P. and B.T.P. Once the court learned that the State was moving forward with the filing of dependency actions, Judge Nelson exercised concurrent jurisdiction over the matters.

As mentioned above, Powell agreed to the dependency and an order establishing dependency was entered on October 26, 2011. As required by Washington law, the order set forth the dispositional plan, or service requirements. Pertinent to this case, the court set forth the visitation schedule: 3 hours per week, supervised, which may be expanded upon agreement of the social worker and Guardian ad Litem.[4] Weekly supervised visitations took place on Sunday morning, while the Coxes were at church.

In addition, the court also ordered that Powell undergo a psychological evaluation with a parenting component. *Id.* at *Ex. H, p. 01010587*. After some discussion among the parties, Dr. Robert Manley, Ph.D. was selected for purposes of the psychological evaluation and parenting component examination. Beginning in October 2011, Dr. Manley began the evaluation process. *Second Decl. Helmberger, Ex. 5 (Ex. I, Dep. of James Manley, Ph.D., p. 36, ll. 10 to 19.)* Specifically, Dr. Manley administered a Shipley Institute of Living Scale-2 test, a Personality Assessment Inventory, Child Abuse Potential Inventory and a Parent Stress Inventory.

Dr. Manley also spent approximately 8 hours of direct observation during clinical interview/mental status evaluation of Powell, he spent additional time on two separate occasions observing Powell interacting with his sons during supervised visitations. One observation was at

[4] *Second Decl. Helmberger, Ex. 5(Ex. H, Shelter Care Hearing Order, Pierce County Superior Court Cause Nos. 11-7-01802-8 and 11-7-01803-6, Bates stamped 01010586-87 and 01010636-37.)*

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

the Foster Care Resource Network facility and the other observation occurred during a visit between Powell and his sons at Powell's rental house he obtained after the dependency process started. Dr. Manley also included in his final report that he had observed Powell's visit with his sons in his rental home.

Dr. Manley also reviewed Powell's history as an adolescent from dissolution materials involving Powell's parents' divorce in the 1990s, which were collected by Charles Cox and provided to DSHS Social Worker (SW) Forest Jacobson; he reviewed materials provided by Powell regarding his wife's disappearance; and also documents provided by DSHS for review.

During Dr. Manley's evaluation process, he maintained contact with SW Jacobson and reported, in short, that there was nothing to suggest that Powell could not parent his two sons. *See Second Decl. of Helmberger, Ex. 4, Decl. of Forest Jacobson in Support of Defendant's Motion for Summary Judgment,* ¶7.[5] Accordingly, on November 6, 2011, supervised visits on Sundays shifted to Powell's residence, which was a new residence he had recently rented. SW Jacobson and the court-appointed GAL Serrano agreed that visitation at the Powell residence was appropriate because, among other reasons, visits were chaotic at the Resource Network facility, it was the closest to a normal home environment for the boys available, the visitation reports from the visitation supervisor were positive, the visitations were appropriate and the children were bonded with their father, and belief that the boys would be returning home to their father's custody soon. *See Second Decl. of Helmberger, Ex. 4, Decl. of Forest Jacobson in Support of Defendant's Motion for Summary Judgment, ¶¶ 8–10, and Ex. 4 attached thereto*. Under DSHS policy, the number one preference for supervised visitation is the home of the parent(s). *Id.* ¶¶ *11–12, and Ex. 5–6 attached thereto.*

[5] Plaintiffs' assertion at p. 13, ll. 7-10 that Jacobson "knew absolutely nothing about Powell's mental state" when visits were transitioned to Powell's residence is completely false.

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Also, moving visits to the residence is the natural progression of visitations. Typically, as a parent complies with court-ordered service requirements and the case moves toward reunification, visits are transitioned to the home. *Second Del. of Helmberger, Ex. 1. Dep. of Betsy Rodgers, p. 43, l. 14 to p. 44, l. 12.* In addition, the children were excited about seeing the home and because Dr. Manley had observed a visit in Powell's home, and visitation in the home is the top priority for visits, it was decided to transition the visits to Powell's residence.

In late November 2011, CPS Investigator Rocky Stephenson had completed the CPS investigation into the September 22, 2011 case referral. The CPS findings were "unfounded" for the Negligent Treatment or Maltreatment allegations concerning C.J.P. and B.T.P.. The CPS findings were approved by Mr. Stephenson's supervisor, Ms. Reed-Lyyski. *Second Decl. Helmberger, Ex. 5 (Ex. J, Dep. of Billie Reed-Lyyski, p. 59, l. 22 to p. 62, l. 7 and Ex. 9 thereto, November 30, 2011 Investigative Assessment for Case ID: 1513430) Ex. C, Dep. of Rocky Stephenson, p. 73, l. 17 to p. 83, l. 8; p. 86, l. 19 to p. 87, l. 23.)*

Dr. Manley concluded in his December 9, 2011, Evaluation Report that although Josh Powell had narcissistic personality traits, "there is nothing to suggest Mr. Powell does not have the intellect, skill, or practice to safely and adequately parent his two sons." *Second Decl. Helmberger, Ex. 5 (Ex. I, Dep. of James Manley, PhD, Ex. 5 thereto, Psychological Evaluation, p. 18 of 22.)* There is no history of past abuse or neglect toward C.J.P. or B.T.P., and regular supervised family visits should continue until reunification may be warranted. *Id.* at *Ex. I at p. 18–22.*

### C. Undisputed Facts Pertinent To The February 1, 2012, Juvenile Court Review Hearing And Motion To Return The Children To Powell's Care

The first regularly held Review Hearing was scheduled for February 1, 2012.[6] Prior to this review hearing, the Juvenile Court reviewed various reports and a motion filed by Powell's

[6] Actually, the first review hearing was scheduled for January 19, 2012, but had to be rescheduled because of a snow storm.

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

attorney. By February 1, 2012, the Juvenile Court was well-aware that visits were occurring in the Powell residence.

On January 6, 2012, GAL Serrano submitted a GAL report to the Juvenile Court in which he reported, in discussing Powell's progress with court-ordered service requirements, that the visits were moved from Foster Care Resource Network to Powell's new residence in November 2011. GAL Serrano also indicated that the visits were going well and the children were bonded with their father.

On January 9, 2012, Powell's attorney Jeffrey Bassett filed a motion for an In Home Dependency with expanded visitation and transition of the boys back to Powell's care. The gist of that motion was that because Powell had complied with all court-ordered requirements, had completed the psychological evaluation which found him a fit parent, and because visitations had all been going well, there were no grounds to support the children being placed out of Powell's care.[7] *Second Decl. of Helmberger, Ex. 6, Transcript of February 2, 2012, dependency review hearing, p. 16-23.*

At this point in time, there was a concern that there was insufficient evidence to support a dependency. *Second Decl. Helmberger, Ex. 5 (Ex. B, Dep. of John M. Long, p. 53, l. 22 – p. 55, l. 21.*) It was uniform that the circumstances surrounding the disappearance of Powell's wife were insufficient to warrant removal of his children from his care. Officials in West Valley, Utah, did not remove Powell's children because they had no evidence to support that there was physical abuse in the home. *Second Decl. of Helmberger, Ex. 2. Dep. of Maxwell, p. 161, ll. 7-17; p. 78, ll. 13-24.* In fact, Maxwell testified "that at no point in the investigation did we fear the safety of those children. Even getting the search warrant in the State of Washington, there was no fear that

---

[7] Beginning on October 26, 2011, the court was made aware of discussions and plans to move the visits to the Powell's home. Powell's counsel Bassett advised the Juvenile Court that Powell had taken steps to establish a separate household for himself and his sons away from his father, Stephen Powell. Bassett further advised that the children's court-appointed GAL, Serrano, had already been out to see Powell's new residence. Bassett further informed the court that Powell hoped his visits with the children could start at his new home.

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Josh would harm those children". *Id.* at p. 112, l. 1 – p.113, l. 9. In Washington, according to the assigned Assistant Attorney General (AAG) John Long, there was a "threat that the children could go home at any review hearing" unless there was additional evidence implicating Powell. *Second Decl. of Helmberger, Ex. 5 (Ex. B, Dep. of John Long at p. 53, l. 22- p. 54, l. 24).* PCSD deputies were also worried that there was a lack of evidence to support the dependency and that "us all thinking he killed Susan, wasn't enough" to warrant placing the children in protective custody. *Second Decl. of Helmberger, Ex. 3, Dep. of Sanders, p. 22, l. 6 to p. 23, l. 11.*

Accordingly, there had been an been on-going discussion between Pierce County Sheriff's Deputies, AAG John Long and DSHS social workers with officials in West Valley, Utah to obtain more incriminating evidence which might implicate Powell as a potential child abuser. *Second Decl. of Helmberger, Ex. 3, Dep. of Sanders, p. 20, l. 11 to p. 21, l. 16.* West Valley law enforcement indicated for several months that should it appear as though the boys might be transitioned back to their father's care, they would seek a court order to release certain images found on Josh Powell's computer which West Valley believed would influence any decision to return the boys home. *Second Decl. Helmberger, Ex. 5 (Ex. B, Dep. of John Long, p. 53, l. 22 to p. 54, l. 24.)*

Once the motion was filed, West Valley did in fact obtain such a court order in Utah that allowed for a limited release of the images. *Second Decl. of Helmberger, Ex. 6 at p. 24.* On January 30, 2012 the images were viewed by Detective Sanders of the Pierce County Sheriff's Office, AAG John Long, Attorney Jeffrey Bassett, Social Worker Rocky Stephenson and Dr. James Manley. After Dr. Manley's review of the images, he recommended a psychosexual evaluation and polygraph examination to determine if Josh Powell had pedophile tendencies. *Second Decl. Helmberger, Ex. 5 (Ex. B, Dep. of John Long, p. 46, l. 3-23; see also Ex. 4 thereto; Ex. I, Dep. of James Manley, PhD, p. 121, ll. 5-8, and see also Ex. 9 thereto, Psychological Evaluation Addendum dated January 1, 2012, p. 3 of 3.)*

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

At the February 1, 2012 review hearing, in addition to the previously discussed information, Powell's attorney Bassett made reference on several occasions to the appropriateness of Powell's home and that the visits were going well. *Second Decl. of Helmberger, Ex. 6, p. 15, l. 11-19; p. 17, l. 20 to p. 18, l. 15, p. 27, l. 20 to p. 28, l. 6.* The Juvenile Court also reviewed Dr. Manley's reports in which he discusses that the visits were going well and that he had observed a visit on November 2, 2011, at Powell's new residence.

The Court concluded the hearing by ruling that (1) Powell was in compliance with the court-ordered service plan, (2) that reunification remained the permanent goal, and, most importantly for this litigation, (3) that the visitation schedule would remain the same. In fact, the parties specifically addressed the visitation issue and the Juvenile Court specifically ruled that visitations would remain the same. *Second Decl. of Helmberger, Ex. 6, p. 32.*

On February 5, 2012, Josh Powell murdered his two sons and then committed suicide. At the outset of a regularly scheduled supervised visit, Powell locked the door keeping the visitation supervisor, Elizabeth Griffin-Hall, out of the home. Prior to the visit, Powell had soaked the interior of his home with gas and set aside gas cans. At the start of the visit, he bludgeoned his sons, laid them on a bed, lay down next to them, and ignited his house which in turn caused an explosion that killed both him and his sons.

## III. ISSUES PRESENTED

**A. Whether Plaintiffs failed to state a claim under 42 U.S.C. §1983.**

**B. Whether the individually named Defendant social workers are entitled to various forms of immunity.**

## IV. EVIDENCE RELIED UPON

Second Declaration of Peter J. Helmberger, with exhibits attached thereto; and the records and files herein.

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

## V. ARGUMENT

The Plaintiffs move to strike Defendants' affirmative defenses nos. 1-4 and 10-12 and dismiss them as a matter of law. Dkt. #19, p. 20. Under Fed. R. Civ. P. 12(f), "the court may strike from a pleading an insufficient defense." Motions to strike affirmative defenses are generally disfavored, but the court may strike defenses that fail to comply with the pleading requirements of Fed. R. Civ. P. 8(a) or are redundant of matters raised in the defendant's denial. *MacLay v. M/V Sahara*, 926 F.Supp.2d 1209, 1217 (W.D. Wash. 2013), citing *Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000). Furthermore, affirmative defenses must meet the standards of Fed. R. Civ. P. 12(b)(6). Thus, when viewed in the light most favorable to the pleader, if the affirmative defense fails to state a claim upon which relief can be granted, it shall be dismissed. *Id.*[8]

The Plaintiffs assert that the decision to move the visits to Powell's home violated their constitutional right to "protection from harm inflicted by a foster parent" and "reasonable safety and minimally adequate care…" which gives rise to a civil rights claim under 42 U.S.C. §1983. *See Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842-43 (9th Cir. 2010).

In order to state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) The defendant must be a person acting under color of state law; and (2) his conduct must have deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S. Ct. 662 (1986). Implicit in the second element is a third element of causation. *See Mt. Healthy City Sch. Dist. v. Doyle*,

---

[8] The Plaintiffs' broad-stroke motion to strike affirmative defenses does not specify which particular affirmative defense should be stricken and for what particular reason(s). As such, it is impossible to reply with specificity regarding each particular affirmative defense. In a nutshell, Plaintiffs' brief states that there is a constitutional right at issue and that the Defendants were deliberatively indifferent to that right. As such, the Defendants will respond accordingly, but point-by-point response to an attack on each specific affirmative defense is not possible.

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

429 U.S. 274, 286-87, 97 S. Ct. 568, 575-576 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980). When a plaintiff fails to allege facts that establish any one of the three elements, his complaint must be dismissed.

In order to state a claim under 42 U.S.C. §1983, a plaintiff must set forth specific factual bases upon which the defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official participation in a civil rights violation are not sufficient to support a claim under §1983. *Ivey v. Bd. of Regents*, 673 F.2d 266 (9th Cir. 1982).

Defendants in a §1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow v. Fitzgerald*, 457 U.S. at 815. The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id.* at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993). Qualified immunity is a privilege from suit, not merely liability. It is effectively lost if the case is erroneously permitted to go to trial. *Saucier v. Katz,* 533 U.S. 194, 200-01, 121 S. Ct. 2151, 2156 (2001).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier*, 533 U.S. at 200.

Plaintiffs' motion should be denied (and DSHS' subsequent motion granted.) First, there is no constitutional right at issue here because the harm did not arise from a foster parent known to pose a danger to foster children. Second, the Defendants were implementing court-ordered visitations and are therefore protected by absolute and statutory immunities. Third, the Defendants are entitled to qualified immunity because there simply is no decisional case law which would alert a social worker that the decision to move court-ordered visitation to a biological parent's home during a dependency action would violate a clearly established constitutional right and certainly no evidence that the social workers acted in reckless disregard or deliberate indifference of those alleged rights.

Accordingly, this case should be dismissed on DSHS' motion.

### A. The Named Defendants Did Not Violate The Plaintiffs' Constitutional Rights In Deciding the Location Of Court-Ordered Visitation

The Constitution protects a citizen's liberty interest in his own bodily security from state action without due process of law. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). However, a state actor's failure to protect an individual "against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Serv.,* 489 U.S. 189, 196-97, 109 S. Ct. 998 (1989); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002), *citing DeShaney*, 489 U.S. at 196-97 ("Generally, state actors may only be held liable under §1983 for their own acts, and not for the violent acts of third persons.")

In *DeShaney*, the mother of a child who had been severely beaten by his father, and the child himself, asserted a substantive due process claim against the social workers who failed to remove the child from his father's custody despite repeated and obvious warnings the father was abusive. *DeShaney*, 489 U.S. at 192-93. The defendant Winnebago County's

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

involvement with the DeShaney family had been extensive and stretched over years because of repeated allegations of physical abuse.

The Supreme Court ruled that the Due Process Clause of the Fourteenth Amendment did not create a right to protection from private violence:

> Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.
>
> . . . .
>
> As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*DeShaney*, 498 U.S. at 195-97.

The Plaintiffs argue that there is a constitutional right at issue here, also citing *DeShaney*. The Plaintiffs rely on *DeShaney* and assert that where "the State by its affirmative exercise of power restrains an individual's liberty" the individual has a constitutional right to "basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety . . . ." *DeShaney*, 489 U.S. at 199-200. This substantive due process right "protects a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent." *Tamas*, 630 F.3d 833, 842 (9th Cir. 2010); *Roska v. Peterson*, 304 F.3d 982, 994 (10th Cir. 2002) ("foster children have a right to be free from unreasonable risk of harm, including a risk flowing from the lack of basic services, and a right to reasonable safety.")

There are two circumstances in which the right to "reasonable care and safety" is invoked. First, when the state actor "shows deliberate indifference to serious medical needs" of a child in custody. Second, when the state actor places "children in a foster home or institution that they know or suspect to be dangerous to the children." *Roska*, 304 F.3d at 994.

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

The cases addressing this right are essentially uniform in premising liability on the fact that social workers had knowledge of a dangerous situation either in the form of an abusive foster parent or the denial of basic medical, nurturing, or safety needs and the failure to take action to stop the harm. For example, in the *Tamas* case, DSHS social workers violated plaintiffs' constitutional rights by failing to take steps to protect the plaintiffs from their foster parent even though they were aware of facts that demonstrated he posed a risk to the children, such as a lengthy criminal record and reports of abuse. *Tamas*, 630 F.3d 833; *Roska*, 304 F.3d at 994 (liability based on deliberate indifference in failing to provide medical needs to a child in foster care where the state actor was aware the foster parent could not care for the child and the state actor was aware the child was suffering.)[9]

This constitutional right available to certain foster children does not apply to this case. This is obviously not a case in which there was harm caused by a foster parent nor is this a case where social workers had knowledge that basic needs were not being provided and failed to act. The decision to transition visitations to Powell's home was based on a mixture of governing law, which requires visitations to be frequent and in a setting conducive to providing care for his children; Dr. Manley's recommendation that visitations occur pending reunification and his knowledge that visits were occurring in the home; the Court's order that reunification was the permanent plan and the common practice to transition visits to the home once reunification is on the horizon; and the reports that the visits were going well.

[9] *See also Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 507 (D.N.J. 2000) (recognizing right to reasonable protection from physical and sexual abuse while placed in foster care); *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 646 (E.D. Pa. 1999) (collecting cases recognizing a substantive due process right and denying defendants 12(b)(6) motion holding that plaintiffs maintained a claim where state actors ignored warning signs and reports of abuse prior to and during placements which failed to adhere to "professional judgment"); *Kara B. v. Dane County*, 205 Wis. 2d 140, 152, 555 N.W.2d 630 (1996) (state actors violated substantive due process rights by placing plaintiffs in home where known sexual abusers resided); *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990) (state actors not entitled to qualified immunity where child was placed in foster home of known or suspected child abuser). *But cf. Mark G. v. Sabol*, 93 N.Y.2d 710, 726, 717 N.E.2d 1067 (1999) (no substantive due process rights to a wide array of family social services during placement in foster care).

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

The special relationship giving rise to a constitutional right stems from knowledge of the risk of harm and failure to exercise professional judgment. Imposing a constitutional obligation on the part of social workers to ensure court-ordered visitations are free from harm would require social workers to walk a razor's edge balancing the rights for visitation with the newly imposed obligation to essentially guarantee safety from even unforeseeable harm. There is no special relationship at issue in this case, and no constitutional right given the lack of evidence Powell was abusive toward his children. DSHS social workers are not liable under 42 U.S.C. § 1983 for Powell's private violence. The Plaintiffs have failed to state a claim.

**B. Social Workers Are Entitled To Absolute Immunity For Filing The Dependency Petition And Implementing Court Orders**

Even if there is a constitutional right at issue, the social workers are entitled to absolute immunity from suit. Government officials such as social workers are entitled to absolute immunity when performing quality-prosecutorial and quasi-judicial functions. *Tamas,* 630 F. 2d at 833; *Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991). Here, the social workers are entitled to absolute quasi-judicial immunity for executing the court's order regarding visitations. *Coverdell v. Dep't of Soc. & Health Servs*., 834 F.2d 758 (9th Cir. 1987).

In *Coverdell*, the Ninth Circuit held that social workers were absolutely immune for carrying out a court's order to take the plaintiff's newborn child into protective custody. The rationale behind this immunity afforded to officials who are an integral part of the judicial process is that "The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." *Coverdell*, 834 F.2d at 765.

Accordingly, the mere facilitation of the visits themselves is not a basis for liability and the Plaintiffs are not asserting such. Rather, they are asserting that the decision to move the visits to Powell's residence triggered the constitutional violation.

There is no doubt that on February 1, 2012, four days prior to Joshua Powell murdering

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

his sons, the dependency court judge had been fully advised that the supervised visitations on Sunday had been occurring in Powell's rental home since November 2011: Powell's attorney Bassett advised the court on October 26, 2011, that Powell had rented a new residence separate from his father; GAL Serrano submitted a report on January 6, 2012, which stated that visits were in the Powell home; Dr. Manley's report of December 9, 2011, referenced him observing on November 2, 2001, a visit between C.J.P. and B.T.P. and their father at the new residence. At the hearing on February 1, 2012, Powell's home was repeatedly referenced both in terms of it being safe and that the visits there were going well.

Judge Nelson, on February 1, 2012, ordered that the supervised visitations were to remain the same. In facilitating the visit on February 5, 2012, DSHS social workers were implementing the court-ordered visitation at Powell's residence. As such, social workers are entitled to absolute immunity from the tragedy that followed.

### C. The Defendants Are Entitled To Absolute And/Or Qualified Immunity For Their Actions And Decisions Regarding The Location Of Visitations

Even if this Court were to conclude that there is a constitutional right at issue and even if this Court were to conclude the social workers were not absolutely immune from suit, there is no question the social workers are entitled to qualified immunity because there is no clearly established constitutional right implicated by a social worker's decision regarding location of visitations held pursuant to court-order in a dependency matter, and the social workers did not act deliberately indifferent. *Tamas,* 630 F.3d at 844 (To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions "shock the conscience.")[10]

---

[10]Plaintiffs moved to strike affirmative defense number 10, but provided no analysis. Affirmative defense number 10 is the Defendants' claim that they are immune from liability in tort for compliance with juvenile court orders pursuant to RCW 4.24.595.

RCW 4.24.595(2) provides:

> The department of social and health services and its employees shall comply with the orders of the court, including shelter care and other dependency orders, and *are not liable for acts performed to*

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

### 1. There Is No Clearly Established Constitutional Right In This Case

Once the defense of qualified immunity is raised, plaintiff bears the burden, at all times, of proving that the particular federal right alleged to have been violated was so clearly established at the time of the official's action that the official should have known that they were violating a constitutional right. *Kennedy*, 439 F.3d at 1065. The court in *Saucier* explained:

> Rather, we emphasized in Anderson "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. at 640, 107 S. Ct. 3034. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Saucier*, 121 S. Ct. 2156; *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034 (1987).

Where the plaintiff is unable to demonstrate that the constitutional law was clearly established in the specific context at issue, then the defendant is entitled to qualified immunity. *Saucier*, 121 S. Ct. 2151. The question of qualified immunity is a question of law. In order to determine whether a right was clearly established, the court is to "survey the legal landscape" at the time of the alleged misconduct. *Trevino v. Gates*, 99 F.3d 911, 916 (9th Cir. 1996).

Federal law controls the question of qualified immunity where plaintiff claims a violation of constitutional rights under 42 U.S.C. § 1983. *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553 (1980); *Cunningham v. City of Wenatchee*, 214 F. Supp. 2d 1103 (E.D. Wash. 2002). Reliance on state statutes or state policies, procedures, or manuals as a source for determining whether federal law is clearly established is flawed as a matter of law. *See*,

---

> *comply with such court orders*. In providing reports and recommendations to the court, *are entitled to the same witness immunity as would be provided to any other witness*.

(Emphasis added).

The clear, unambiguous language in RCW 4.24.595(2) protects DSHS and its employees from liability "for acts performed to comply" with "shelter care and dependency orders," regardless of when DSHS performed those acts. In facilitating visits, including the visit on February 5, 2012, RCW 4.24.595(2) statutory immunity applies to this case.

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

*e.g., Elder v. Holloway*, 510 U.S. 510, 515, 114 S. Ct. 1019, 1023 (1994) (state agency regulations or policies are irrelevant to determining whether clearly established federal law exists to defeat qualified immunity.) As stated by the court in *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995):

> It is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim.

Here, Plaintiffs completely fail in their burden to demonstrate that the contours of a constitutional right were sufficiently clear that a reasonable social worker would understand that transitioning court-ordered visitations to Powell's residence in November of 2011, and then following the court's order of February 1, 2012 to continue the visitations as previously ordered, would violate that right. In fact, the Plaintiffs completely dodge their burden and instead attempt to mislead this Court by arguing that the burden is on the Defendants to prove that their conduct did not violate a clearly established right and that this is an arduous standard for government officials to meet. *See, Plaintiffs' Motion for Partial Summary Judgment at p. 23 (Dkt. 19).* This could not be more incorrect.

The Plaintiffs generically rely on *DeShaney* and *Tamas* and assert the right to reasonable protection was clearly established. But neither one of these are remotely analogous to this case. As shown above, qualified immunity was denied and liability was premised on social workers essentially ignoring warning signs of abuse by a foster parent or that a child's basic needs were not being met. However, neither of these cases provide any analysis to demonstrate that a decision regarding the location of court-ordered visitations would violate a constitutional right.

Here, the visits were set by the juvenile court judge who had full knowledge of the circumstances - in fact more knowledge than the social workers - of the allegations against Powell made in Utah. The social workers were ordered to facilitate visits by the Court. The

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

decision by the social worker *and* GAL to have visits at Powell's residence, made after consultation with the psychological expert, Dr. Manley, is typical where the court-ordered permanent plan is for reunification to transition visits to the parent's residence. Furthermore, the governing statutes require social workers to provide early and frequent visitations, maximize parent-child contact, and provide visitations in a manner which allows the parent to participate in the child care. And, in fact, visitations may only be limited or denied by the court upon finding that such limitation is necessary to protect the child's health, safety or welfare.

No case cited by the Plaintiffs sets forth facts and law such that the contours of the right to protect foster children is sufficiently clear that a social worker in this case would know they were violating a clearly established constitutional right. The Plaintiffs have failed in their burden to demonstrate the individually named Defendants violated clearly established constitutional rights.

**2. The Defendants Were Not Deliberately Indifferent To An Obvious And Known Danger Of Their Creation**

The second element a plaintiff must show is that that danger to which the state official affirmatively exposed the plaintiff was known and obvious, and in doing so acted with deliberate indifference to that harm. *See Kennedy*, 439 F.3d at 1064. *Tamas,* 630 F.3d 844 (To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions "shock the conscience."). Here, the Plaintiffs fall completely short.

The Plaintiffs spend a lot of time and space – some 22 pages of their 24 page brief – asserting a variety of alleged DSHS social worker short-comings which they assert show deliberate indifference to the Plaintiffs. But all of the Plaintiffs' attacks are non-starters and easily refuted based on a few simple and undisputed facts. Essentially all of the Plaintiffs' alleged social worker short-comings are based on expert opinion testimony. However, there is no factual basis for those opinions, or those opinions simply ignore the straightforward

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

undisputed evidence. Argumentative assertions based on remote facts do not make a genuine issue of material fact. *Pierce v. Yakima County*, 161 Wash. App. 791, 801 (2011).

For example, Plaintiffs suggest that the social workers did not pay close enough attention to Dr. Manley's report and thereby did not appreciate the risk Powell posed based on the information contained in that report. This assertion completely ignores the undisputed evidence that Dr. Manly found, after completing a full parenting assessment, that there was nothing to suggest Powell was not a fit parent. Although Dr. Manley did not recommend returning the children to Powell at that time, he did convey his findings to SW Jacobson verbally and included it in his report to the parties and to the court. In essence, Plaintiffs are suggesting a constitutional right was triggered by failing to second-guess the psychologist retained to evaluate Powell's ability to parent.

Similarly, the Plaintiffs repeatedly attack the social workers for the alleged failure to follow DSHS policy and conduct a domestic violence assessment of Powell. Initially, as mentioned above, the Plaintiffs' reliance on policy manuals and the like is of no use because policy manuals do not establish a constitutional right. *See Martinez*, 100 S. Ct. 553 (1980); *Cunningham*, 214 F. Supp. 2d 1103 (E.D. Wash. 2002). In any event, Dr. Manley was aware of Powell's history and the allegations, he was aware of all of the information conveyed to social workers by Powell's sister, and by the Coxes themselves. After reviewing all of this information, Dr. Manley came to his conclusion that Powell was a fit parent and it is certainly not the social worker's job to second-guess that. There simply is no evidence of deliberate indifference that "shocks the conscience." *Tamas,* 630 F.3d at 844.

Plaintiffs also focus on Powell's bad-mouthing of his in-laws and the Mormon church and suggest that because of this Powell was out of compliance with court orders and visits should not have been expanded. This allegation should be viewed essentially as a tacit admission that they do not have sufficient evidence to demonstrate that the social workers

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

knew or should have known that Powell posed a risk. A parent bad-mouthing the in-laws – in a dependency proceeding or otherwise – is not a predictor of the sort of tragedy that occurred in this case. In addition, under RCW 13.34.136(2)(b)(ii), visitation may be limited or denied only by the court and only if such limitation is necessary to protect the child's health, safety or welfare. Bad-mouthing relatives is not the sort of action which would trigger a limitation of visitation to protect a child's safety or welfare.

Finally, Plaintiffs engage in a lengthy attack on the social workers for failing to appreciate the risks Powell posed based on the obvious link to the disappearance of his wife. However, this is also irrelevant for several reasons.

In fact, the following three undisputed facts are dispositive to this lawsuit: First, the court reviewed multiple court files involving Joshua Powell, Steven Powell, Charles Cox, and Judith Cox – more information than the social workers had – and the Court ordered reunification as the permanent plan, the visitation schedule mentioned above, and on February, 1, 2012, aware that the visits were at Powell's home, that the visits be continued.

Second, it is undisputed and dispositive that the disappearance of Susan Powell alone, no matter how suspicious, was insufficient to warrant placing the children into protective custody and maintaining a dependency. The police and social workers in West Valley, UT, did not file to remove the children from Powell's custody. Pierce County Sheriff's deputies did not believe the facts surrounding the disappearance of Susan Powell alone was sufficient evidence to place the children into protective custody, nor did they believe there was sufficient evidence to maintain a dependency.

Third, it is undisputed that, given Dr. Manley's report, absent additional facts to support a dependency, Powell's children could be returned to him and the dependency dismissed at any review hearing or upon Powell's motion. DSHS and the AAG sought out-of-home placement and pursued the dependency if for no other reason than to prevent the children

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

from being removed from their father a second time upon Powell's arrest and the social workers and AAG alike were led to believe, in no uncertain terms, that an arrest was imminent. That is why social workers and the AAG were in contact with law enforcement looking for evidence to keep the dependency going, and that is why law enforcement in Utah sought to have a Utah court release images to select members of the Pierce County Sheriff's Department, DSHS social workers and Dr. Manley; to try to find evidence to keep the boys from being returned to Powell.

The question is not whether social workers failed to appreciate the risk Powell played but rather what evidence existed to keep the dependency going in the first place. Trying to walk the tightrope of maintaining a dependency absent facts to support that dependency is not remotely close to deliberate indifference to a constitutional right, even if one were to exist.

## VI. CONCLUSION

Based on the foregoing reasons, the Plaintiffs' motion for partial summary judgment should be denied. Additionally, the State and State Defendants are entitled to summary judgment dismissing Plaintiffs' lawsuit with prejudice, which will be a separate motion filed shortly more or less contemporaneously with this reply. Plaintiffs are unable to prove the State owed them individually a tort duty.

DATED this 27th day of July, 2015.

ROBERT W. FERGUSON
Attorney General

/s/Peter J. Helmberger
PETER HELMBERGER, WSBA No. 23041
JOSEPH M. DIAZ, WSBA No. 16170
Assistant Attorneys General
Attorneys for Defendants

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of July, 2015, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James S. Rogers
Elizabeth Donaldson
Cheryl Snow
Law Offices Of James S. Rogers
1500 Fourth Avenue, Suite 500
Seattle, WA 98101

jsr@jsrogerslaw.com
csnow@jsrogerslaw.com
liz@jsrogerslaw.com

Anne Bremner
Evan Bariault
1200 Fifth Avenue, Suite 1900
Seattle, WA 98101

abremner@freybuck.com
ebariault@freybuck.com

ROBERT W. FERGUSON
Attorney General

/s/Peter J. Helmberger
PETER J. HELMBERGER, WSBA No. 23041
Assistant Attorney General
1250 Pacific Avenue, Suite 105
Tacoma, WA 98401
Telephone: (253) 593-5243
FAX: (253) 593-2449
E-mail: PeterH@atg.wa.gov

/s/Joseph M. Diaz
JOSEPH M. DIAZ, WSBA No. 16170
Assistant Attorney General
7141 Cleanwater Ln SW
Tumwater, WA 98501
Telephone: (360) 586-6300
FAX: (360) 586-6655
E-mail: JosephD@atg.wa.gov
Attorneys for Defendants