# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, FOREST JACOBSON, ROCKY STEPHENSON, JANE WILSON, and BILLIE REED-LYYSKI, <br><br> Defendants. | NO. 14-05923RBL <br><br> SECOND DECLARATION OF PETER J. HELMBERGER IN SUPPORT OF RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT TO STRIKE AFFIRMATIVE DEFENSES |

PETER J. HELMBERGER hereby declares under penalty of perjury under the laws of the state of Washington that the following is true and correct:

1.    I am over the age of 18, competent to testify as to the matters stated herein and make this declaration based on my personal knowledge.  I am one of the Assistant Attorneys General assigned to represent the State of Washington in this case.

SECOND DECLARATION OF PETER J. HELMBERGER IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT Case No. 14-05923 RBL

1

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

2.      Attached hereto as Exhibit 1 is a true and correct copy of excerpts from the deposition of Betsy Rodgers, taken March 10, 2014, page 43, line 14 to page 44, line 12.

3.      Attached hereto as Exhibit 2 is a true and correct copy of excerpts from the deposition of Detective Ellis Maxwell, taken December 2, 2013, page 78, lines 13-24; page 112, line 1 to page 113, line 9; page 161, lines 7 to 17.

4.      Attached hereto as Exhibit 3 is a true and correct copy of excerpts from the deposition of Gary L. Sanders, taken September 18, 2014, page 20, line 11 to page 21, line 16; page 22, line 6 to page 23, line 11.

5.      Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Forest Jacobson in Support of Motion for Summary Judgment, with attachments, dated June 26, 2014.

6.      Attached hereto as Exhibit 5 is a true and correct copy of the Declaration of Peter J. Helmberger in Support of Motion for Summary Judgment, with attachments, dated July 3, 2014.

7.      Attached hereto as Exhibit 6 is a true and correct copy of the transcript from the February 1, 2012 dependency hearing.

DATED this _27_ day of July, 2015 in Tacoma, Washington.


PETER HELMBERGER, WSBA No. 23041
Assistant Attorney General

SECOND DECLARATION OF PETER J.
HELMBERGER IN SUPPORT OF
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
Case No. 14-05923 RBL

2

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

# CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2015, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James S. Rogers
Elizabeth Donaldson
Cheryl Snow
Law Offices Of James S. Rogers
1500 Fourth Avenue, Suite 500
Seattle, WA 98101

jsr@jsrogerslaw.com
csnow@jsrogerslaw.com
liz@jsrogerslaw.com

Anne Bremner
Evan Bariault
1200 Fifth Avenue, Suite 1900
Seattle, WA 98101

abremner@freybuck.com
ebariault@freybuck.com

ROBERT W. FERGUSON
Attorney General

/s/Peter J. Helmberger
PETER J. HELMBERGER, WSBA No. 23041
Assistant Attorney General
1250 Pacific Avenue, Suite 105
Tacoma, WA 98401
Telephone: (253) 593-5243
FAX: (253) 593-2449
E-mail: PeterH@atg.wa.gov

/s/Joseph M. Diaz
JOSEPH M. DIAZ, WSBA No. 16170
Assistant Attorney General
7141 Cleanwater Ln SW
Tumwater, WA 98501
Telephone: (360) 586-6300
FAX: (360) 586-6655
E-mail: JosephD@atg.wa.gov
Attorneys for Defendants

SECOND DECLARATION OF PETER J.
HELMBERGER IN SUPPORT OF
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
Case No. 14-05923 RBL

3

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

# EXHIBIT 1

1       IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

2                       FOR PIERCE COUNTY

3    _____

4    JUDITH COX and CHARLES COX,          )
     individually and as Personal        )
5    Representatives of the Estates       )
     of C.J.P and B.T.P.,                 )
6                                         )
                 Plaintiffs,              )
7                                         )
        vs.                               )No. 12-2-11389-6
8                                         )
     STATE OF WASHINGTON, DEPARTMENT      )
9    OF SOCIAL AND HEALTH SERVICES,       )
                                          )
10               Defendant.               )
     _____

11

12            DEPOSITION UPON ORAL EXAMINATION OF

13

14                       BETSY RODGERS

15   _____

16

17                       9:15 a.m.

18                     MARCH 10, 2014

19            1250 PACIFIC AVENUE, SUITE 105

20                  TACOMA, WASHINGTON

21

22

23

24   REPORTED BY:  LORRIE R. CHINN, RPR, CCR 1902

25



**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
800.831.6973  206.622.6875
production@yomreporting.com
www.yomreporting.com

1                    A P P E A R A N C E S

2

3   FOR THE PLAINTIFFS:

4          ELIZABETH L. (LIZ) DONALDSON and
           CHERYL L. SNOW
5          The Law Offices of James S. Rogers
           1500 Fourth Avenue, Suite 500
6          Seattle, Washington 98101
           206.621.8525
7          liz@jsrogerslaw.com and csnow@jsrogerslaw.com

8

    FOR THE DEFENDANT:
9
           PETER J. HELMBERGER
10         Assistant Attorney General
           1250 Pacific Avenue, Suite 105
11         Tacoma, Washington 98401-2317
           253.593.5243
12         peterh@atg.wa.gov

13         JOSEPH M. DIAZ
           Assistant Attorney General
14         7141 Cleanwater Drive SW
           Olympia, Washington 98504-0126
15         360.586.6300
           josephd@atg.wa.gov

16

17   ALSO PRESENT:  NONE

18

19

20

21

22

23

24

25


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1       A.   Yeah, uh-huh.  They were, I believe, a family

2  that Mr. Powell had put forward requesting that they be

3  allowed to supervise visitation.

4       Q.   Right.  Did the Department provide any

5  training or education for the Atkins about the case?

6       A.   I'm unaware of that.

7       Q.   How were the visits in this case -- how was a

8  decision made to change the location of the visits to

9  Josh's home?

10       A.   What do you mean by how?

11       Q.   At some point there was a decision made to

12  allow visitation at Josh's home, correct?

13       A.   Yes.

14       Q.   What's the procedure for going about making

15  the decision of where the supervised visitations can

16  occur?

17       A.   Normally there's a progression to visitation.

18  In most cases visitation begins as supervised.  Then it

19  could go to monitored visitation.  Then it could go to

20  unsupervised visitation.  That's normally the

21  progression.  And then the frequency and location,

22  duration of visitation can be -- it's normally -- it's

23  normally increased as a parent perhaps may evolve in

24  their court-ordered services.

25       Q.   So in this case did Josh evolve in his


YAMAGUCHI OBIEN MANGIO
court reporting, video and videoconferencing
800.831.6973   206.622.6875
production@yomreporting.com
www.yomreporting.com

1    court-ordered services?

2        A.   No.   He was participating in court-ordered

3    services and had completed court-ordered services.

4        Q.   So as a result the case progressed in the

5    normal manner, and he was allowed to have visitation at

6    his home?

7        A.   Visitation is -- normally in most cases

8    visitation is normally trying to be least restrictive.

9    And so the primary least restrictive visitation

10   location in a case would be at a parent's home.  So it

11   would not be unusual for that to occur.  It's the most

12   least restrictive environment.

13       Q.   Would the parent have had to make progress in

14   order to get -- you were talking about in a court

15   order?

16       A.   Uh-huh.

17       Q.   What about in visitation?  Would they have had

18   to show some kind of progress on how the visitation was

19   going in order to get that reward of having visitation

20   in their own home?

21       A.   Normally, yes, they would have demonstrated

22   progress and compliance with court-ordered services and

23   with -- there would be some indication in the

24   visitation that there's positive interaction occurring

25   between a parent and a child and that -- via reports


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973   206.622.6875**
production@yomreporting.com
www.yomreporting.com

REPORTER'S CERTIFICATE

        I, LORRIE R. CHINN, the undersigned Certified Court
Reporter, pursuant to RCW 5.28.010 authorized to administer
oaths and affirmations in and for the State of Washington, do
hereby certify:

        That the sworn testimony and/or proceedings, a
transcript of which is attached, was given before me at the
time and place stated therein; that any and/or all witness(es)
were duly sworn to testify to the truth; that the sworn
testimony and/or proceedings were by me stenographically
recorded and transcribed under my supervision, to the best of
my ability; that the foregoing transcript contains a full,
true, and accurate record of all the sworn testimony and/or
proceedings given and occurring at the time and place stated
in the transcript; that I am in no way related to any party to
the matter, nor to any counsel, nor do I have any financial
interest in the event of the cause.

        WITNESS MY HAND AND DIGITAL SIGNATURE this 17th day
of March, 2014.



_____
LORRIE R. CHINN
Washington State Certified Court Reporter, #1902
lchinn@yomreporting.com

YAMAGUCHI OBIEN MANGIO
court reporting, video and videoconferencing
800.831.6973   206.622.6875
production@yomreporting.com
www.yomreporting.com

# EXHIBIT 2

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR PIERCE COUNTY


JUDITH COX and CHARLES COX
individually and as Personal
Representatives of the Estate
of C.J.P. and B.T.P.,

        Plaintiffs,

    vs.

STATE OF WASHINGTON, DEPARTMENT
OF SOCIAL AND HEALTH SERVICES,

        Defendant.



~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
 DEPOSITION OF RECORDS CUSTODIAN OF WEST VALLEY CITY
                POLICE DEPARTMENT
        DEPONENT:  DETECTIVE ELLIS MAXWELL
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

                **CONFIDENTIAL**




Taken at:          Dewsnup, King & Olsen
                   36 South State Street, Suite 2400
                   Salt Lake City, Utah   84111
Date:              Monday, December 2, 2013
Time:              10:01 a.m.

Reported by:       Teena Green, CSR, RPR, CRR, CBC



```
 1                      APPEARANCES
 2
      FOR THE PLAINTIFF:
 3
      CHERYL L. SNOW
 4    ATTORNEY AT LAW
      LAW OFFICES OF JAMES S. ROGERS
 5    1500 Fourth Avenue, Suite 500
      Seattle, Washington   98101
 6    csnow@jsrogerslaw.com
      (206) 621-8525
 7
 8
      FOR THE DEFENDANT VIA SPEAKERPHONE/TELEPHONICALLY:
 9
      PETER HELMBERGER
10    ATTORNEY AT LAW
      OFFICE OF THE ATTORNEY GENERAL
11    1250 Pacific Avenue, Suite 105
      Tacoma, Washington   98401
12    (253) 593-5243
13
14    FOR THE WITNESS:
15    MARTHA S. STONEBROOK
      PUBLIC SAFETY ATTORNEY
16    West Valley City
      Office of the City Attorney
17    3600 South Constitution Blvd.
      West Valley City, Utah   84119
18    martha.stonebrook@wvc-ut.gov
      (801)963-3273
19
20
      J. ERIC BUNDERSON
21    CITY ATTORNEY
      West Valley City
22    Office of the City Attorney
      3600 South Constitution Blvd.
23    West Valley City, Utah   84119
      eric.bunderson@wvc-ut.gov
24    (801)963-3271
25
```



1   BY MS. SNOW:

2        Q.    Do you recall, during any of your

3   communication with Washington's Children's Admin, if

4   they asked any questions of you regarding whether or

5   not you saw any evidence of domestic violence in the

6   relationship between Susan and Josh?

7        A.    I don't remember specifically a

8   conversation like that.

9        Q.    Where they asked you specifically if you

10  saw any signs of domestic violence in their

11  relationship?

12       A.    And they could have, I don't recall.

13       Q.    Okay, but you know that you did not

14  release any of the information about what could be

15  viewed as domestic violence to Children's Admin?

16       A.    Right.  I mean I didn't have any evidence

17  to support that there was physical abuse in the home,

18  so I did not release any of that to them.

19       Q.    What about the other type of abusive

20  behavior?

21       A.    I could have let them know that there was

22  maybe the controlling and verbal abuse, but I don't

23  recall like a specific conversation or a date or a

24  time or who I would have shared that with.

25       Q.    You may have related that?

THACKER+CO

1        Q.    Okay.  Do you recall if any steps were

2   taken at that time, in recognition of the risk the

3   children may be placed in by being seized and

4   interviewed about their dad possibly being involved in

5   a murder and then being released directly back home?

6   Were there any steps taken to address that possible

7   harm or safety risk?

8        A.    I do not know.  I do not recall.

9        Q.    Do you think there should have been?

10       A.    Well, I --

11             MS. STONEBROOK:  Objection, calls for

12   speculation.

13             THE WITNESS:  I don't know what the State

14   of Washington, what their procedures are, so...

15   BY MS. SNOW:

16       Q.    Well, you created the risk, right, your

17   agency, by requesting the warrant?

18       A.    Right.

19       Q.    By seizing the children?

20       A.    Right.

21       Q.    By interviewing them and by then releasing

22   them directly back home.  That was your decision to

23   do?

24       A.    Right.

25       Q.    And do you believe or recognize that that



1    could cause some kind of risk to the safety of a child

2    who's in that situation?

3                    MS. STONEBROOK:  Objection, asked and

4    answered.

5                    THE WITNESS:  Yeah, at no point in this

6    investigation did we fear the safety of those

7    children.  Even getting the search warrant and doing

8    the forensic interview in the state of Washington,

9    there was no fear that Josh would harm those children.

10   BY MS. SNOW:

11        Q.    Why didn't you have that concern?

12        A.    One, I didn't have any evidence to support

13   that he would harm them, and I guess just gut feeling,

14   there was nothing to support it.

15        Q.    You had a gut feeling that he wouldn't

16   harm his kids?

17        A.    And I didn't have anything to support that

18   he would harm them.

19        Q.    And you didn't recognize, in either

20   situation, the fact that you may be interviewing them

21   for evidence against their father, that that could

22   place the children at risk?

23                    MS. STONEBROOK:  Objection, this is asked

24   and answered and it's getting argumentative now.

25                    MR. HELMBERGER:  And I object to the



1        Q.     Okay.  I'm sorry, did you finish?

2        A.     Yeah.

3        Q.     Okay.  At any time, was part of the core

4    group or the group discussions were members from the

5    District Attorney's Office present?

6        A.     Yes.

7        Q.     Okay.  As part of the discussion that the

8    group had, was there ever any discussion into removing

9    the boys from Josh Powell's care prior to his

10   departure from Utah?

11       A.     I can't recall if there was any specific

12   questions regarding that, removing them from their

13   custody.  I vaguely remember discussing it, but I

14   don't think DCFS here would get involved or do

15   anything.  We didn't have any evidence to support the

16   removal of those children other than their mom

17   missing.

18       Q.     Do you recall if you had conversations

19   with any member of DCFS?

20       A.     No.

21       Q.     Okay.  Could you tell us -- I'm assuming

22   the process is, more or less, the same in Utah as it

23   is here, but could you tell us -- I take it, from time

24   to time over the course of your career, you had

25   occasion to contact DCFS?



```
 1                        CERTIFICATE

 2

 3        This is to certify that the witness in the

 4   foregoing deposition was duly sworn to testify to the

 5   truth, the whole truth, and nothing but the truth in

 6   the within-entitled cause;

 7        That said deposition was taken at the time and

 8   place herein named;

 9        That the testimony of said witness was reported

10   by me in stenotype and thereafter transcribed into

11   written form;

12        That review of this deposition was requested

13   and, therefore, pursuant to Rule 30(e) of the Utah

14   Rules of Civil Procedure the witness shall have 30

15   days in which to review and make changes to the

16   transcript.

17        I further certify that I am not of kin or

18   otherwise associated with any of the parties of said

19   cause of action and that I am not interested in the

20   event thereof.

21

22   _____

     Teena Green, RPR, CSR, CRR, CBC
23

24

25
```



EXHIBIT 3

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF PIERCE

| | |
|---|---|
| JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P., | ) ) ) ) ) |
| Plaintiffs, | ) NO. 12-2-11389-6 ) |
| vs. | ) ) |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) |
| Defendant. | ) ) |

_____

DEPOSITION UPON ORAL EXAMINATION OF
**Gary L. Sanders**
_____

TAKEN ON: Thursday, September 18, 2014

TAKEN AT: Pierce County Prosecuting Attorney's Office
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402

REPORTED BY: JULIE KIBLER, RPR-CCR

1        A P P E A R A N C E S   O F   C O U N S E L

2

3   FOR THE PLAINTIFFS:

4       Cheryl Snow, Esq.
        Law Offices of James S. Rogers
5       Attorneys at Law
        1500 Fourth Avenue, Suite 500
6       Seattle, Washington 98101

7

8   FOR THE DEFENDANT:

9       Peter J. Helmberger, AAG
        Office of the Attorney General
10      Attorneys at Law
        1250 Pacific Avenue, Suite 105
11      Tacoma, Washington 98401

12

    FOR THE WITNESS:
13
        Michael Sommerfeld, Esq.
14      Pierce County Prosecuting Attorney
        955 Tacoma Avenue S,  Suite 208
15      Tacoma, Washington 98402

16

17  ALSO PRESENT:  None

18

19

20

21

22

23

24

25

1      that we, you know, arrested Stephen.  Now Stephen was a

2      suspect.  And we placed the kids.  So it was something that

3      was -- kind of like the hot topic of what's going on.  I

4      mean, it was a big thing.  We got, you know, a huge amount

5      of, you know, media attention and stuff when we served the

6      warrant.  It was a continuous thing that was brought up in

7      the news, so it was just kind of one of those thing that

8      you talked about a lot, Hey, what's going on with this?

9      Oh, this is happening.

10           But was it spoken about every Wednesday?

11   Q  Do you recall conversations with John Long that there was a

12      concern there was not enough evidence to keep the

13      dependency going?

14   A  Yeah.  I can't say for sure if it was John Long.  It would

15      have been John Long, since he's the attorney.  You know,

16      and that's why it was such a push to go, you know, talk to

17      Dr. Manley.  And there was a push to find something.  There

18      was a push, to me, that I pushed the West Valley, going,

19      Hey, we need something.  You know, after our -- I think it

20      was the hearing in December.  It was like, you know,

21      there's not much more coming.  We need something.  And that

22      was expressed to me from the AG's office.  So, then, I went

23      to West Valley and said, Hey, you guys have got to give me

24      something.

25   Q  Did you feel you had anything that you could give the

1       Attorney General's Office that you didn't?

2    A  No.  I mean, we'd given them the voyeurism that showed --

3       you know, we had given them quite a bit.

4    Q  Sort of the same question, only this time with Rocky

5       Stephenson.  Did you have conversations with Rocky

6       Stephenson where he expressed that there's lack of evidence

7       to keep the dependency rolling?

8    A  I don't think specifically where he would have said, you

9       know, there's lack of evidence.  But we talked about,

10      probably, what John talked about with us, about how we

11      needed more.  I mean, we talked about it all the time; how

12      we were hoping West Valley would just arrest them.

13   Q  Okay.  So fair enough.  It's an ongoing conversation that

14      the boys were going to be returned home unless West Valley

15      came up with evidence to keep them out of the home?

16   A  Yeah.

17   Q  And the evidence turned out to be -- or it was -- were the

18      images on that -- that were pulled off of Joshua Powell's

19      computer?

20   A  Hard drive, yeah.

21   Q  Right.

22          And they were pulled off of his computer during a

23      search that the West Valley City Police Department did back

24      in -- it would have been --

25   A  August.  No, no, those were from the ones they did back at

1          their house in West Valley.  My apologies.

2     Q    In December of 2009?

3     A    Yeah, yeah.

4               I mean, they waited until the last absolute moment

5          to give us that.

6     Q    Well, did you feel, then, that you didn't have sufficient

7          evidence?  I mean, suppose the court were to say, Okay, the

8          boys were to return home.  Did you feel you didn't have

9          sufficient evidence to place them into protective custody,

10         just based on what you thought might happen?

11    A    At what point are you talking about?

12    Q    Well, it seems you were -- everybody was worried that the

13         boys were going to be returned home; fair?

14    A    Yes.

15    Q    And they were worried because there was a lack of evidence

16         to support the dependency; fair?

17    A    It was going that way, yes.

18    Q    But how come you couldn't place the kids in protective

19         custody, if they were returned home, based on your --

20    A    Because I needed evidence.  I mean, I placed them in

21         September, based upon the evidence that we got from the

22         warrant in August.

23    Q    Right.

24    A    But now the evidence that we received in August was going

25         towards Stephen.  So I was arresting Stephen; all the

1      sexual stuff.  All that stuff was pointing more towards

2      Stephen.  So I think the AG's office was concerned, now,

3      that, okay, Josh has the boys.  If he gets the boys back,

4      he can separate himself from the sexual deviancy, based

5      on -- that it was all Stephen's stuff.  So they needed more

6      for Joshua, to prove that Joshua specifically was a risk to

7      the boys.

8   Q  Right.

9   A  And us -- and me thinking that he killed Susan, and us all

10     thinking that he killed Susan, wasn't enough.  That's not

11     something to substantiate it.

12  Q  Why not?  Why isn't that enough?

13  A  Because it's not.  Thinking something.  I think things all

14     the time.

15  Q  Well, and the reality is Utah didn't place the boys into

16     protective custody; right?

17  A  No.  We did.

18  Q  And Utah, and Utah social services didn't place them in

19     protective custody?

20  A  No.  We did.

21  Q  Right.  It didn't happen until you did?

22  A  Yes.

23  Q  Right.

24         And, then, you didn't do it until you had evidence

25     that there was potentially child pornography going on in

**C E R T I F I C A T E**

STATE OF WASHINGTON)
                    ) ss.
COUNTY OF PIERCE    )

I, Julie M. Kibler, Washington State Certified Court
Reporter, pursuant to RCW 5.28.010, authorized to administer
oaths and affirmations in and for the State of Washington,
hereby certify I reported the foregoing proceedings; said
testimony being taken before me on the date herein set forth;
that the witness was first by me duly sworn; that said
testimony was taken by me in shorthand and thereafter under my
direction transcribed, and that same is a full, true and
correct record of the testimony, including all questions,
answers, objections, motions, stipulations, and exceptions, if
any, of counsel, to the best of my ability, prepared pursuant
to WAC 308-14-135.

I further certify that I am in no way related to any
party or counsel to this matter; nor am I financially
interested in the said action or outcome thereof.

Transcribed notes will be destroyed three years from
the affixed date unless requested by any party or counsel to
retain them.

IN WITNESS WHEREOF, I have hereunto set my hand this
_____ day of _____, 2014.

_____
Julie M. Kibler, CCR-RPR
CCR NO. 2720

EXHIBIT 4

## STATE OF WASHINGTON
## PIERCE COUNTY SUPERIOR COURT

| | |
|---|---|
| JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P., | NO. 12-2-11389-6 |
| | DECLARATION OF FOREST JACOBSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| Plaintiffs, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Defendant. | |

FOREST JACOBSON hereby declares under penalty of perjury under the laws of the state of Washington that the following is true and correct:

1. I am over the age of 18, competent to testify as to the matters stated herein and make this declaration based on my personal knowledge.

2. I am a currently a supervisor of a Child Protective Services (CPS) unit of the Department of Social and Health Services (DSHS), in Tacoma, WA. I have held this position for two months. Prior to this I have worked for DSHS in the following capacities: Supervisor of Family Voluntary Services/Child & Family Welfare Services/Court Specialist Unit, CPS investigative social worker, Court Specialist Worker, and Policy & Practice Trainer.

DECLARATION OF FOREST JACOBSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

3.      I was the social worker assigned to the family of Mr. Powell and his sons CJP and BTP. I was assigned as the court specialist social worker on September 22, 2011 after the children had been placed into police protective custody. As the court specialist, I drafted and filed the dependency petition requesting the court order the children into shelter care status.

4.      Both CJP and BTP were examined and an interview conducted on 9/26/11 to determine if the children were victims of abuse or neglect. The children did not disclose abuse or neglect and the medical examination result was normal (not indicating physical or sexual abuse or neglect had occurred).

5.      Mr. Powell entered into an agreed upon dependency for his sons CJP and BTP. The Order of Dependency as to Mr. Powell was entered on October 26, 2011.   The agreed order of dependency included a dispositional order which set forth the court ordered services which included an order that Mr. Powell undergo a psychological evaluation that included a parenting assessment to determine his fitness as a parent.  The Order also set visitations as follows: "The father shall be provided with a minimum of a 3 hour weekly visit on Sunday during the time the maternal grandparents attend church. The visits shall be supervised by a provider approved by the department social worker and GAL. The father agrees to have no discussion wit[h] the children of the pending dependency case or other litigation. There shall be no disparaging or derogatory comments in regards to the maternal grandparents or their family." The Order also provided the following, "Visitation between Mr. Powell and the child may be expanded upon agreement of the parties." Attached as Exhibit 1is a true and correct copy of the Order of Dependency as to Mr. Powell as kept in the DSHS dependency case file.

6.      The court appointed Guardian ad Litem for the dependency action was Julio Serrano.

7.      The psychological evaluation that included a parenting assessment was conducted by Dr. James Manley, PhD.  Dr. Manley reported to me, in short, that there was nothing to

suggest Mr. Powell does not have the intellect, skill, or practice to safely and adequately parent his two sons. As a part of his evaluation of Mr. Powell, Dr. Manley observed Mr. Powell interact with his sons during two supervised visits; at Foster Care Resource Network and then at Mr. Powell's residence.

8.    Following Dr. Manley's evaluation and based upon Dr. Manley's recommendation ("Mr. Powell should have ongoing and regular supervised contact with CJP and BTP [e.g. several hours each visit], two to three times a week"), the decision was made to expand visitations. This decision was made in consultation with the assigned GAL, Julio Serrano, per court order. Visitations were also moved from the Foster Care Resource Network facility to Josh Powell's home. This decision was made based on several factors as follows:

- the visitation facility housed several other families' visits during Mr. Powell's visitation. It was noted by the visit supervisor and observed first hand by myself that the notoriety of Mr. Powell and his children were disruptive to the Powell visit and to the other visitations co-occurring;

- the psychological evaluation did not diagnose Mr. Powell with any mental health condition that would indicate moving visits to Mr. Powell's home would be an issue on any level;

- the visit supervisor and the Cox family made several complaints regarding the visits running too long due to the extravagant activities and meals that Mr. Powell would bring to the visitation center. Having the visits at the home would alleviate the unpacking and packing of these materials absorbing visitation time;

- the Cox family also made complaints that the children would return from visits fixated on conversation around their father's new home and ask when they could see it. Moving visits to the home alleviated this concern in that the children were comforted by seeing

their new family home and the Cox family did not have to hear the constant chatter on this topic from their grandkids;

- the residence Mr. Powell obtained alleviated the only identified safety threats which were the grandfather and the environment in the Powell family home (Mr. Powell's brother with mental health concerns and eccentric 'artwork' throughout the home);

- Visitation policy indicates that having visitation occur in the home is the most desired setting when safe to accommodate. There was no reason to believe Mr. Powell's home was not a safe environment within visitation to occur. The home was first visited and inspected for appropriateness by myself, the assigned GAL, and Dr. Manley.

- All of the visitation reports from the visitation supervisor, Elizabeth Griffin-Hall, were positive. Ms. Griffin-Hall reported that Mr. Powell was appropriate with his children and that the children were bonded with their father. When Ms. Elizabeth Griffin-Hall was asked about her comfort level in moving visitation to Mr. Powell's residence, there was no stated concern regarding safety or any other issue.

9.     GAL Serrano was in agreement to shift visitations to Mr. Powell's new residence. Mr. Serrano visited Mr. Powell's residence and concurred that visitation at the residence would be beneficial for all of the above stated reasons. The option of moving visits to Mr. Powell's home was discussed at the October 26, 2011, Fact-Finding hearing.

10.     Over the course of the dependency I had numerous conversations with Charles Cox. At no point in time did Mr. Cox ever report to me that he believed Mr. Powell posed a physical threat to CJP or BTP. In fact, at my first meeting with Mr. Cox, his expressed concerns were how Mr. Powell might cause interference in his household and with regard to Mr. Powell not allowing the children to attend church with the Cox family. Throughout the duration of my assignment to this case, Mr. Cox's complaints around the visits consistently centered on comments Mr. Powell made in front of the children during their visitation. At no point in time did

DECLARATION OF FOREST
JACOBSON IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

4

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Elizabeth Griffin-Hall ever report that she believed Mr. Powell posed a threat to his children. Dr. Manley never reported that he believed Mr. Powell was a threat to his children, rather, he reported that Mr. Powell had historically provided his sons a safe and healthy environment. All three aforementioned parties only noted concern around visitation between Mr. Powell and his sons was the oft inappropriate commentary that Mr. Powell seemed not to be able to control at all times. For example, continued conversation about the conflict between himself and the Cox family and negative commentary around the Mormon religion.

11.     The Juvenile Court was aware that visitations had been moved to Josh Powell's new residence because this was referenced at minimum in GAL, Julio Serrano's report to the court. At no point did the Juvenile Court ever instruct that visitations at the home of Mr. Powell were not appropriate.

12.     Attached as Exhibit 2 are the Individual Service and Safety Plans (ISSP) filed for each child for the Fact-Finding hearing. Attached as Exhibit 3 is the ISSPs filed on January 19, 2012, for the February 1, 2012, Review Hearing, for each child. Attached as Exhibit 4 is the Review Hearing Order for each child filed on February 1, 2012.

DATED this 26th day of June, 2014 in Tacoma, Washington.

FOREST JACOBSON

## PROOF OF SERVICE

I certify that I served a copy of this document on all parties or their counsel of record on the date below as follows:

| Party | Method of Service | |
|---|---|---|
| James S. Rogers<br>Dana A. Henderson<br>Elizabeth J. Donaldson<br>Law Offices of James S. Rogers<br>1500 Fourth Avenue, Suite 500<br>Seattle, WA 98101 | ♦ US Mail Postage Prepaid<br>o Certified Mail Postage Prepaid<br>o State Campus Mail<br>o ABC/Legal Messenger | o UPS Next Day Air<br>o By Fax<br>♦ By Email<br>o Hand delivered by: |
| Party | Method of Service | |
| Anne Bremner<br>Evan Bariault<br>1200 Fifth Avenue, Suite 1900<br>Seattle, WA 98101 | ♦ US Mail Postage Prepaid<br>o Certified Mail Postage Prepaid<br>o State Campus Mail<br>o ABC/Legal Messenger | o UPS Next Day Air<br>o By Fax<br>♦ By Email<br>o Hand delivered by: |

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this ____ day of July, 2014, at Tacoma, WA.

_____
NATASHA S.CEPEDA, Legal Assistant

DECLARATION OF FOREST
JACOBSON IN SUPPORT OF
DEFENDNANT'S MOTION FOR
SUMMARY JUDGMENT

6

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

# EXHIBIT 1

11-7-01803-6   37437776   OROD   11-04-11

FILED
DEPT. 13
IN OPEN COURT
OCT 2 6 2011
By _____
DEPUTY

**I.SUPERIOR COURT OF WASHINGTON**
**COUNTY OF PIERCE**
**JUVENILE COURT**

Dependency of:

C_____ P_____ 1/19/05
B_____ P_____ 1/2/07)

No:    11-7-01802-8
       11-7-01803-6

**Order of Dependency as to JOSHUA POWELL (OROD)**

[ X ] Agreed as to [ ] mother [ X ] father [ ] other
[ ] Contested as to [ ] mother [ ] father [ ] other
[ ] Default as to [ ] mother [ ] father [ ] other

[ X ] **Clerk's Action Required.**
Paragraphs 4.1, 4.3, 4.7, 4.12

The court will hear [ ] disposition [ ] interim review [ ] dependency review [ ] permanency planning [X] *FIRST DEPENDANCY REVIEW* hearing on [date] *Thursday Jan 19 2012* at *1 30* a.m. (p.m) at: Pierce County Juvenile Court, 5501 6ᵗʰ Avenue, Tacoma, WA 98406.

*930 Tacoma Ave South #315 - Judge Nelson, Dept 13 Tacoma, WA*

**I. Hearing**

1.1   **Petition:** A petition was filed by [ X ] DSHS [ ] Licensed Child Placement Agency _____
[ ] Other _____ alleging that the above-named child is dependent, and the court held a hearing on _____ [Date(s)].

1.2   **Appearance:** The following persons appeared at the hearing:
[ ]  Child C_____ P_____ &                    [ X ] Father's Lawyer **JEFFREY BASSETT**
      B_____ P_____                            [ X ] Agency's Lawyer **JOHN M. LONG**
[✓]  Father **JOSHUA POWELL**                   [ ] Current Caregiver
[ ]  Child's GAL/CASA **JULIO SERRANO JR.**      [ ] Other _____
[ X ] DSHS/Supervising Agency Worker **FOREST JACOBSON**

1.3   **Basis:** [ ] The court heard testimony   [ X ] The parties submitted an agreed order.

**Order of Dependency (OROD)**
**WPF JU 03.0400 (11/2009)**        Page 1 of 9

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
PO Box 2317
Tacoma, WA 98401
(253) 593-5243

Cox
01011805

## II. Findings

Except where otherwise indicated, the following facts have been established by a preponderance of evidence:

2.1 **Indian status:**

[ X ]   Based upon the following, there is no reason to know that the child is an Indian child as defined in 25 U.S.C. 1903(4), and the Indian Child Welfare Act does not apply to these proceedings: _____

[ ]   There is reason to know the child is an Indian child as defined in 25 U.S.C. 1903(4) and notice has been provided to the Tribe/BIA as required by the Indian Child Welfare Act. However, the court is not yet able to make a finding as to whether the child is an Indian child as defined in 25 U.S.C. 1903(4).

[ ]   The child is an Indian child as defined in 25 U.S.C. 1903(4), and the Indian Child Welfare Act does apply to these proceedings. All notice requirements under the ICWA and RCW 13.34.070(10)(a) have been satisfied as follows:

[ ]   The facts establish by clear, cogent and convincing evidence, including the testimony of a qualified expert witness, that continued custody of the child by the [ ] mother [ ] father [ ] Indian custodian is likely to result in serious physical or emotional harm to the child.

[ ]   DSHS/Supervising Agency made active efforts to provide remedial services and rehabilitative programs designed to prevent the break-up of the Indian family, but those efforts have been unsuccessful.

2.2 **Facts:**

[ ]   Facts establishing dependency have not been proved.

[ X ]   The following facts establishing dependency have been [ X ] agreed upon [ ] proven by a preponderance of the evidence:

The department has filed a petition that alleges parental deficiencies and home environment issues. The father denies any parental deficiencies but has agreed to do services to demonstrate parental fitness and to provide a safe home environment.

2.3 **Statutory Basis:** [ X ] The child is dependent according to RCW 13.34.030, in that the child:

[ ]   (a) has been abandoned, as defined in RCW 13.34.030;

[ ]   (b) is abused or neglected, as defined in Chapter 26.44 RCW, by a person legally responsible for the care of the child; and/or

[ X ]   (c) has no parent, guardian or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.

2.4 **Placement:**

Order of Dependency (OROD)
WPF JU 03.0400 (11/2009)

Page 2 of 9

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
PO Box 2317
Tacoma, WA 98401
(253) 593-5243

Cox
01011806

1      [ ]    If the court schedules a separate disposition hearing, the child should remain in the placement and care authority of DSHS/Supervising Agency pending further order of the

2            court.

     [ ]    The child should be placed or remain in the home of the [ ] mother   [ ] father   [ ] legal

3            custodian   [ ] guardian.

4      [ X ]   It is currently contrary to the child's welfare to return home. The child should be placed or remain in the custody, control and care of DSHS/Supervising Agency for the following

5            reasons:

        [ X ]   there is no parent or guardian available to care for the child; and/or

6         [ ]     the parent or guardian is unwilling to take custody of he child; and/or

7         [ ]     the court finds by clear, cogent and convincing evidence that a manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed

8               from the home, and an order under RCW 26.44.063 will not protect the child from danger.

9      [ X ]   The child should be placed or remain in:

        [ X ]   Relative placement, pending further court order.

10         [ ]     Placement with a suitable person and this placement is in the child's best interests.

11         [ ]     Licensed care:

           [ ]     pending completion of DSHS/Supervising Agency investigation of relative

12                 placement options.

           [ ]     because there is no relative or other suitable person who is willing,

13                 appropriate, and available to care for the child, with whom the child has a relationship and is comfortable.

14            [ ]     because there is reasonable cause to believe that relative placement would jeopardize the safety or welfare of the child; and/or hinder efforts to reunite

15                 the parent(s) and child.

16 2.5     **Reasonable Efforts:**

     [ X ]   DSHS/Supervising Agency made reasonable efforts to prevent or eliminate the need for

17            removal of the child from the child's home; but those efforts were unsuccessful because:

        [ X ]   The health, safety, and welfare of the child cannot be adequately protected in the

18               home.

19         [ X ]   Specific services have been offered or provided to the parent(s), guardian or legal custodian and have failed to prevent the need for out-of-home placement and make

20               it possible for the child to return home. The following services have been offered or provided to the child and the child's parent(s), guardian or legal custodian:

21         [ X ]   as listed in the social study (ISSP); and/or

        [ ]    _____

22                 _____

23         [ ]     housing assistance, if applicable.

24         [ ]    The whereabouts of the [ ] mother [ ] father [ ] alleged father [ ] guardian or [ ] legal custodian are unknown.

25      [ ]     Additional Reasonable Efforts Findings: _____

26             _____

**Order of Dependency (OROD)**        Page 3 of 9        OFFICE OF THE ATTORNEY GENERAL
**WPF JU 03.0400 (11/2009)**                               1250 Pacific Avenue, Suite 105
                                                   PO Box 2317
                                              Tacoma, WA 98401
                                              (253) 593-5243

Cox
01011807

1    [ ]    Reasonable efforts are not required at this time to attempt to reunify the child with his/her parent(s), guardian or legal custodian because:

2        [ ]    The child has been abandoned.

3        [ ]    Aggravated circumstances exist and reasonable efforts are not in the child's best interests, as determined by clear, cogent, and convincing evidence. In determining whether aggravated circumstances exist by clear, cogent, and convincing evidence, the court considered and found:

4

[ ]    that the following factor(s) listed in RCW 13.34.132, exist:

5

_____

6

_____

7

_____

[ ] other: _____

8    [ ]    The court ordered the child removed from the home pursuant to RCW 13.34.130(1)(b), and DSHS/Supervising Agency has recommended that a petition be filed seeking termination of the parent-child relationship between the child's [ ] mother [ ] father and the child. Because of [ ] abandonment of the child and/or [ ] the existence of aggravated circumstances as set forth above, filing of a termination petition is in the child's best interest and DSHS/Supervising Agency is not required to make reasonable efforts to reunify the family.

9

10

11

2.6    **Sibling contact**:

12

[ ]    If disposition is heard separately, reserved pending dispositional hearing.

13    [ ]    The court ordered the child removed from the home and it [ ] is [ ] is not in the child's best interest to be placed with or to have contact or visits with these siblings (which could include step-siblings if there is a pre-existing relationship and the child is comfortable with the step-siblings):

14

15

_____

16

_____

17    and, a) the court has jurisdiction over the child(ren) listed above or the parents of the child(ren) for whom there is no jurisdiction are willing to agree; and b) there is no reasonable cause to believe that the health, safety, or welfare of any child would be jeopardized or that efforts to reunite the parent and child would be hindered by placement, contact or visitation.

18

19

2.7    **Child's school**:

20

[ ]    If disposition is heard separately, reserved pending dispositional hearing,

21    [X ]    The court found that the child should be removed from the home pursuant to RCW 13.34.130(1)(b) and placed into out-of-home care. A placement that allows the child to remain in the same school he or she attended prior to the start of the dependency proceeding [ X ] is [ ] is not practical and [ X ] is [ ] is not in the child's best interests.

22

23

2.8    **Other**:

24

25

26

**III. Conclusions of Law**

3.1    **Jurisdiction**: The court has jurisdiction over:

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
PO Box 2317
Tacoma, WA 98401
(253) 593-5243

Cox
01011808

[ X ] the child

[ X ] the father

3.2 **Notice:** The following have received timely and proper notice of these proceedings:

[ ] mother [ X ] father [ ] guardian or legal custodian [ ] child if 12 or older.

[ ] The child is 12 or older and was notified that he/she may request an attorney.

3.3 **Default:** The following have failed to appear and a default order has been entered.

[ ] mother [ ] father [ ] guardian or legal custodian.

3.4 **Dependency:**

[ ] *The child is not dependent and the matter should be dismissed.*

[ X ] The child should be found dependent pursuant to RCW 13.34.030.

3.5 **Termination petition:** [ ] A termination petition should be filed pursuant to RCW 13.34.132.

3.6 **Other:**

## IV. Order

4.1 **Dependency:**

[ ] The child is not dependent and the matter is dismissed.

[ X ] The child is dependent pursuant to RCW 13.34.030 [ ] (a) [ ] (b) [ X] (c).

4.2 **Social study:**

[ X ] DSHS/Supervising Agency has conducted a social study, a report of which was filed and provided to the parties.

[ ] DSHS/Supervising Agency has not conducted a social study and shall return a report to the court and to the parties on a timely basis.

4.3 ***Disposition hearing:***

[ X ] A disposition hearing has been held.

[ ] A disposition hearing is set for the date and time on page one.

4.4 **Placement:**

[ ] If disposition is heard at a later date, the child shall remain in the placement and care authority of DSHS/Supervising Agency pending further order of the court.

[ ] The child shall be placed or remain in the home of the [ ] mother [ ] father [ ] legal custodian [ ] guardian.

Subject to the following conditions: _____

_____

[ X ] The child is placed in the custody, control and care of DSHS, which shall have the authority to place and maintain the child in:

[ X ] Relative placement with maternal grandparents, pending further court order.

---

**Order of Dependency (OROD)**
**WPF JU 03.0400 (11/2009)**

Page 5 of 9

Cox
01011809

1  [ ]  Placement with a suitable person: _____.

  [ ]  Licensed care:

2      [ ]  pending completion of DSHS/Supervising Agency investigation of relative placement options.

3      [ ]  because there is no relative or other suitable person with whom the child has a relationship and who is willing, appropriate and available to care for the child.

4

5      [ ]  because there is reasonable cause to believe that relative placement or placement with a proposed other suitable person would jeopardize the safety or welfare of the child and/or hinder efforts to reunite the parent(s) and child.

6  [ ]  DSHS/Supervising Agency is authorized to place the child with a relative who is willing, appropriate and available, with prior reasonable notice to the parties, subject to review by the court.

7

8  [X]  The ordered placement is subject to the following placement conditions: There will be no discussion of the pending dependency case or other litigation. There shall be no disparaging or derogatory comments in regards to the father or his family.

9

10  4.5  **Services:**

11  [ ]  If disposition is heard separately, reserved pending dispositional hearing

  [X]  Services for the parents/guardians/legal custodians entered pursuant to RCW 13.34.130 [any evaluation must comply with RCW 13.34.370]:

12      [ ]  see attached service plan.

13      [X]  as follows:

14  A.  The parent shall cooperate with reasonable requests by DSHS and provide the Department with income and asset information necessary to establish and maintain the child's eligibility for medical care, evaluations, counseling and other remedial services, foster care reimbursement, and other related services and benefits.

15

16  B.  The parent shall sign a release of information for all service providers to provide information to the social worker and guardian ad litem.

17

18  C.  The parent shall provide written documents to the social worker and GAL regarding attendance at, participation in, completion of, and progress in all court-ordered services.

19  D.  The parent shall keep the social worker and guardian ad litem informed of his/her current address and contact telephone number throughout the duration of the dependency.

20  E.  Mr. Powell will participate in a psychological evaluation to include a parenting assessment with Dr. Manley and follow all recommendations.

21  F.  The father will develop a safety plan to address concerns regarding relative contact.

22  [X]  DSHS/Supervising Agency shall provide and the child shall participate in the following examinations, evaluations, or services:

23  The child(ren)'s medical, psychological, educational, social, ethnic and cultural needs shall be met while in care.

24

25  [ ]  SAY evaluation, and the child was notified that he/she may request an attorney.

  [ ]  The child is 12 or older and [ ] agrees to the services [ ] was notified of the services [ ] was notified that he/she may request an attorney.

26

---

Order of Dependency (OROD)  WPF JU 03.0400 (11/2009)

Page 6 of 9

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
PO Box 2317
Tacoma, WA 98401
(253) 593-5243

Cox
01011810

4.6 **Visitation:**

    [ ]    If disposition is heard separately, reserved pending dispositional hearing.

    [ X ]    The specific visitation plan between the child(ren) and father shall be:

        [ ]    as set forth in the visitation attachment.

        [ X ]    as follows:

        The father shall be provided with a minimum of a 3 hour weekly visit on Sunday during the time the maternal grandparents attend church. The visits shall be supervised by a provider approved by the department social worker and GAL. The father agrees to have no discussion wit the children of the pending dependency case or other litigation. There shall be no disparaging or derogatory comments in regards to the maternal grandparents or their family.

    [ ✓ ]    Visitation between <u>JOSHUA POWELL</u> and the child may be expanded upon agreement of the parties.

    [ ]    The specific plan for visitation or contact between the child and child's siblings shall be:

        [ ]    as set forth in the visitation attachment.

        [ ]    as follows:

4.7 **Restraining Order:**

    [ ]    The court entered a separate restraining order pursuant to RCW 26.44.063.

4.8 **Parental Cooperation:**

    [ X ]    The parents shall cooperate with reasonable requests by DSHS/ Supervising Agency and provide DSHS/Supervising Agency with income and asset information necessary to establish and maintain the child's eligibility for medical care, evaluations, counseling and other remedial services, foster care reimbursement, and other related services and benefits.

4.9 **Health Care:**

    DSHS/Supervising Agency with custody of the child shall have full power to authorize and provide all necessary, routine and emergency medical, dental, or psychological care as recommended by the child's treating doctor or psychologist, subject to review by the court, as needed.

4.10 **Release of Information:**

    All court-ordered service providers shall make all records and all reports available to DSHS, attorney for DSHS, parent's attorney, the guardian ad litem and attorney for the child. Parents shall sign releases of information and allow all court-ordered service providers to make all records available to DSHS and the guardian ad litem or attorney for the child. Such information shall be provided immediately upon request. All information, reports, records, etc., relating to the provision of, participation in, or parties' interaction with services ordered by the court or offered by DSHS may be subject to disclosure in open court unless specifically prohibited by state or federal law or regulation.

4.11 **Reports:**

---

**Order of Dependency (OROD)**
**WPF JU 03.0400 (11/2009)**

Page 7 of 9

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
PO Box 2317
Tacoma, WA 98401
(253) 593-5243

Cox
01011811

1    DSHS/Supervising Agency shall submit a report for the next review hearing to the court and to the parties in a timely manner.

2    4.12    **Termination Petition:**

3    [ ] Due to [ ] abandonment of the child and/or [ ] existence of aggravated circumstances as found
by this court, filing of a termination petition is in the child's best interests and DSHS/Supervising
4    Agency is not required to make reasonable efforts to reunify the family. DSHS/ Supervising Agency
shall file within _____ days a petition to terminate the parent-child relationship between the
5    child's [ ] mother [ ] father and the child. A permanency planning review hearing shall be held within
thirty (30) days.

6    4.13    *All parties shall appear at the next scheduled hearing (see page one).*

7    4.14    [ X ]    **Other:**

8    A.    DSHS shall have access to all records pertaining to the above-named child, including but
not limited to educational records, and may authorize evaluations of the child's physical
9    or emotional condition.

B.    The court-ordered physical custodians shall cooperate with the agency case plan and
10    comply with court orders related to the care and supervision of the child.

C.    The social worker shall provide casework services, monitor/supervise the case plan and
11    assist the parents in securing and participating in the above-ordered services.

12    D.    The social worker shall immediately notify the court if availability for services, progress, or
compliance is not satisfactory.

13    E.    Any party, including the guardian ad litem, may request an early review pursuant to RCW
13.34.150 if determined necessary.

14  //

15

16

17  //

18

19

20

21  //

22

23

24

25  //

26

Order of Dependency (OROD)    Page 8 of 9
WPF JU 03.0400 (11/2009)

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
PO Box 2317
Tacoma, WA 98401
(253) 593-5243

Cox
01011812

F.    Any authorized representative of DSHS may give consent to minor surgery, medical, psychological, dental care, and necessary emergency care as deemed necessary and consent to travel for two weeks within the United States for the above-named minor child(ren).

Dated: ___10-26-11___

_Judge/Commissioner_
Kathryn J. Nelson

OCT 2 6 2011

Presented by:

**JOHN M. LONG, WSBA No. 17789**
Assistant Attorney General

**Notice:** A petition for permanent termination of the parent-child relationship may be filed if the child is placed out-of-home under an order of dependency. (RCW 13.34.180.)

Copy Received; Approved for Entry; Notice of Presentation Waived:

_Josh Powell_
Signature of **Father**
[ ] Pro Se, Advised of Right to Counsel

Signature of Father's Lawyer

Print Name               WSBA No.

Signature of Child's GAL

Signature of Lawyer for the Child's GAL

Print Name

Print Name               WSBA No.

Signature of **Agency Representative**

Signature of Agency Representative's Lawyer

_Forest Jacobson_
Print Name

Print Name               WSBA No.

---

**Order of Dependency (OROD)**
**WPF JU 03.0400 (11/2009)**

Page 9 of 9

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
PO Box 2317
Tacoma, WA 98401
(253) 593-5243

Cox
01011813

**EXHIBIT 2**



CHILDREN'S ADMINISTRATION

# Individual Service and Safety Plan (ISSP)

| TYPE OF HEARING/REVIEW | | | |
|---|---|---|---|
| **First Set Fact Finding** | | | |

| DATE OF HEARING/REVIEW | TIME OF HEARING/REVIEW | DATE OF REPORT | ISSP COVERS |
|---|---|---|---|
| **11/15/2011** | **9:00 AM** | **10/24/11** | **11/15/11 to 5/11/12** |

## I. IDENTIFYING INFORMATION

| CHILD'S NAME | LEGAL NUMBER |
|---|---|
| **B▮▮ P▮▮** | **11-7-01803-6** |

| DATE OF BIRTH | AGE | CASE NUMBER | RECEIVES SSI/SSA |
|---|---|---|---|
| 1/2/2007 | 4 years | 1513430 | ☐ Yes  ☒ No |

RACE (Check all that apply)
☐ Black or African American      ☐ American Indian or Alaska Native      ☒ White
☐ Asian      ☐ Native Hawaiian or Other Pacific Islander      ☐ Unable to Determine

☐ Yes. This child is American Indian or Alaska Native per attachment on initial ISSP report
         Date of report:
☒ No.  (If child is not American Indian or Alaska Native, subsequent reports can delete attachment).

| TYPE OF PLACEMENT | VOLUNTARY AGENCY NAME |
|---|---|
| **Relative care** | |

| DATE OF PETITION | DATE OF FINDING OF DEPENDENCY | | DATE OF DISPOSITION | |
|---|---|---|---|---|
| 9/27/11 | Mother: | Father: | Mother: | Father: |

CURRENT LEGAL STATUS: **Shelter care**

DATES OF PREVIOUS REVIEW HEARING: **N/A**

## PRINCIPALS INVOLVED ARE:

| MOTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Susan Powell address unknown** | **none** |
| MOTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| **none assigned** | |

| FATHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Joshua Powell 18615 94ᵗʰ Ave Ct E Puyallup WA 98375** | **253-226-0158** |
| FATHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| **Jeffrey Bassett 3313 Viewcrest Dr NE Bremerton, WA 98310-9741** | **(360) 204-8865** |

Cox
01320794

| GUARDIAN AD LITEM/CASA'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Julio Serrano, 5501 6th Ave., Tacoma, WA 98406** | 253-798-7928 |
| GUARDIAN AD LITEM/CASA'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |

| DSHS SOCIAL WORKER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Forest Jacobson, Court SW 1949 S. State St., Tacoma, WA 98405** | 253-983-6222 |
| DSHS SOCIAL WORKER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| **John Long AAG, P.O. Box 2317, Tacoma, WA 98401** | 253-597-4277 |

| CHILD'S NAME | TELEPHONE NUMBER |
|---|---|
| | |
| CHILD'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |

| OTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| | |
| OTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |

## II. CASE BACKGROUND

A. Within the last 19 months the child has been in out-of-home care for a total of **1.5** months.  (Include prior placement episodes that fall within the last 19 months.  Provide any relevant explanation).

B. Begin date of current placement episode:  **9/22/11 police protective custody**

C. Identify events and risk factors related to child safety and well being that caused child to be placed in out-of-home care:

1. On 9/22/11, C████ P████ (DOB 1/19/05) and B████ P████ (DOB 1/2/07) were placed into police protective custody by Law Enforcement (LE) after the arrest of their paternal grandfather for 14 counts of Voyeurism and 1 count of Possession of Depictions of Minor Engaged in Sexually Explicit Conduct 2nd Degree.  The paternal grandfather, Steven Powell (DOB ████████) resided in the same home as C████ and B████ along with their father, Joshua Powell (DOB ████████.

2. On 9/22/11, LE notified the Department that Joshua Powell is also a subject of their ongoing investigation related to the charges already filed against the grandfather.  LE indicated that Joshua Powell's career is with computers and that the pornography LE has analyzed is technologically "sophisticated".

3. On 9/22/11, LE reported to the Department that there were 15 computers in various areas of the home that were accessible to persons other than the grandfather.  LE also indicated they have not yet been able to analyze all of the pornographic evidence but at this time they had not seen that C████ or B████ were exposed to it.  Investigators estimated they have only accessed approximately only 5% of the computer data as of 9/22/11.

Cox
01320795

4. On 9/22/11, LE reported to the Department that there is an adult uncle to C███ and B███ also living in the home who LE indicated is Schizophrenic and who has greeted LE at the front door naked and runs around the home either naked or in diapers.
5. On 9/22/11, LE reported to the Department that other concerning items found in the home included a gallows and hangman's noose in addition to a poster depicting a female with a sword entering her vagina and exiting her stomach hanging on the wall.
6. On 9/23/11, Joshua Powell asked the Department to file a dependency action with regard to C███ and B███ because the maternal grandparents are "the most dangerous people on the planet to my sons". Joshua went on to state that the media defamation and court appearances initiated by the maternal grandparents are keeping him from financially being capable of meeting all the needs of his children to include medical coverage and access to mental health counseling.
7. On 9/23/11, Joshua Powell informed the CPS investigative social worker that he takes pictures of other peoples' legs in public places but is careful that they are not too close or show any faces. Mr. Powell talked about the laws surrounding such behavior and appeared to understand them. He stated that he is only an amateur but he likes to take pictures of legs when he sees something that is nice. He also stated it is less expensive than using stock photography.
8. On 9/23/11, when asked if he would turn in his father if he caught his father with sexually explicit pictures of 7-8 year old girls, Joshua Powell stated very slowly and after a lengthy pause, he would turn his father in "if it were a threat to children". This statement was made during Joshua's interview with the CPS investigative social worker.
9. On 9/23/11, when asked if his father, Steven Powell, watched C███ or B███ alone, Joshua Powell replied that he and his sister were the primary caretakers for his sons but that his father has watched the kids or taken them to the store on his own.
10. On 9/23/11, the CPS investigative social worker asked Joshua Powell if anything else would come to light that he (Joshua) was aware of once all the evidence was analyzed. Joshua Powell stated that he had copied one of his father's (Steven Powell's) thumb drives onto his own computer but stated he was not particularly worried about it as it was only information related to Susan's disappearance.
11. Joshua Powell is currently the only person of interest in the West Valley City, Utah Police Department homicide investigation into his wife's (Susan Powell, mother to C███ and B███ disappearance. Susan Powell (DOB 10/16/81) has been missing since 12/6/09.

D. Child/family needs were originally identified as (consider medical, educational, environmental, psychological, and cultural needs):

B███ needs a safe, stable living environment. The parents need mental health services and parenting services.

## III. PREPLACEMENT SERVICES

A. Identify services offered or provided to family to prevent child's placement. Indicate how services offered relate to safety threat(s) identified in II C.

No services offered prior to placement due to children placed in police protective custody.

Cox
01320796

B.  If no services were offered to prevent placement, explain why:

No services offered prior to placement due to children placed in police protective custody.

## IV.  SUMMARY OF PREVIOUS CASE PLAN AND COURT ORDER

☒  Does not apply.

A.  Legal:  Identify the Permanent Plan and Alternate Permanent Plan (during last report period).  Place a "P" next to the primary plan and an "A" next to the alternate permanency plan:

Permanent Legal Arrangements
☐    Return Home                ☐    Other Plan:  _____
☐    Adoption
☐    Guardianship
☐    Third Party Custody (with someone other than parent, RCW 26.10)

B.  Tentative completion date for previous permanent plan was:
Child is placed in:
1.  ☐ Family home with
2.  ☐ Relative placement with
3.  ☐ A non-relative, out of home placement.

C.  Previous Service Plan:  Review and Evaluation of Objectives and Tasks
    1.  Parent(s):



    2.  Child:



    3.  Caregiver:



    4.  DSHS/Voluntary Agency:



D.  Visit Plan

    1.  Frequency:



    2.  Quality:

Cox
01320797

3. How has the visit plan been helpful to achieve reunification of the family?

E. Court Orders
Discuss how current placement and services offered were responsive to court orders.

F. Permanency Plan (for other than return home).
   1. Discuss steps taken to finalize the current placement:

   2. Discuss barriers to finalizing the current placement:

## V. RECOMMENDED CASE PLAN FOR NEW REVIEW PERIOD (except as amended by court order)

A. Legal Recommendations:
   1. Identify the Permanent Plan and Alternate Permanent Plan (for upcoming report period). Place a "P" next to the primary plan and an "A" next to the alternate permanency plan (if applicable).

Permanent Legal Arrangements
   ☒ **P**  Return Home          ☐   Other Plan: _____
   ☒ **A**  Adoption
   ☐        Guardianship
   ☐        Third Party Custody (with someone other than parent, RCW 26.10)

   2. When "Other Plan" is selected as the primary plan, identify the compelling reason that this plan is in the child's best interest.

   3. Tentative completion date of the present permanent plan, depending on actions, progress and cooperation of those involved is:

   4. Recommended Legal Status of the Child:
      ☒ Dependent (check one of the following): ☐ In-home   ☒ Out-of-home care
      ☐ Dependency dismissed

   5. If one of the following circumstances exist, a petition to terminate parental rights must be filed unless compelling reasons exist to the contrary.  (check any box which applies):
      ☐ The child is currently in out-of-home care and has been in out-of-home care for 12 of the most recent 19 months.
      ☐ The parent has abandoned this child as defined in RCW 13-34.030 or 13.34.180(7) OR has been convicted of abandoning this child as defined in RCW 9A.42.060, 070, or 080.
      ☐ The parent has been convicted of one or more of the criminal activities listed in RCW 13.34.132(4).
      ☒ None of the above listed circumstances apply.

Cox
01320798

6. When one of the circumstances in V.A.5. exists, and the case plan is not adoption, discuss compelling reasons for not filing a petition to terminate parental rights.

B. Placement Recommendations:
   1. Placement in:
      a) ☐ Family home with _____ because:

      b) ☒ Relative placement with **Charles & Judy Cox** because:

         The maternal grandparents are able to meet B███s needs while providing a stable living environment while parent(s) participate in service plan for children to return home.
      c) ☐ Any non-relative, out of home placement (foster care, residential treatment, etc.) because:

   2. If the recommendation is other than family home, discuss continued need for placement and continued safety threats to the child if returned to either or both parents.

      Father is currently in process of completing his psychological evaluation. Service recommendation from this evaluation will assist in determining how reunification can/will occur.
   3. If the recommendation is other than family home, discuss how this placement is the most appropriate and least restrictive setting, in close proximity to the family home, which can safely meet the best interests of the child.

      B███s needs are currently being met while his parent(s) address any parenting deficiencies so that he may safely return to their care. B███ is placed so that he can participate in visitation and other services that may help facilitate reunification.
   4. ☒ Child is not placed out of state    ☐ Child is placed out of state

      If placement is a substantial distance from a parent's home or is out of state, explain why this placement is in the best interest of the child.

      N/A.

Cox
01320799

5. Permanency planning efforts if continued out of home care is recommended:
   - ☐ Does not apply because return home is imminent (less than six months).
   - ☒ Return home is not imminent, (complete a and b below).

   a) In the event the child is unable to return home, discuss whether the current placement is expected to be the child's permanent placement.

   The current placement will be the child's permanent placement in the event the child is unable to return home.

   b) If the child is unable to return home and the current placement is not expected to be the child's permanent placement, discuss steps to be taken to identify, recruit, process, and approve a permanent placement.

   The Department, in conjunction with the parent(s), shall continue to seek suitable relative/fictive kin/suitable other placement for Braden.

C. Recommended Services and Responsibilities for the next six months:
   1. Parents/Family: Identify services/responsibilities to meet educational, medical, environmental, social psychological, and cultural needs.

   Family Level Objective:
   The family will ensure healthy development of B███ through positive interaction and will provide a stable home environment that will ensure that all basic needs are met including supervision, nutrition, hygiene, and medical/counseling appointments as described in the tasks.
   Tasks:
   Father will interact with his child during visitation and demonstrate proper child care, nutrition, hygiene, and meeting of needs. Father will not use this time to discuss private, legal, or other adult matters.

   Father will maintain adequate and safe housing:
   Father will obtain housing separate from any persons with criminal history or pending criminal charges.
   Father will support B███ in out of home care by:
   Father will attend all scheduled visitations.
   Father will sign all releases of information to assist in service and case planning.

   Individual Level Objective for Ms. Powell:
   Should Ms. Powell contact the Department, an appropriate service plan will be developed at that time.

Cox
01320800

Individual Level Objective for Mr. Powell:

☐ Mr. Powell will not associate with any people who are engaged in criminal or drug activity.

☐ Mr. Powell will have contact with the assigned social worker and guardian ad litem on a regular basis as described in the tasks.

☐ Mr. Powell will contact the social worker by phone every week (or email). Mr. Powell will meet with social worker a one on one visit to the Department on a monthly basis to discuss progress in his service plan.

☐ Mr. Powell will allow the social worker and guardian ad litem to have announced and unannounced visits to his home.

☐ Mr. Powell will participate in a Psychological Evaluation with a Parenting Component and follow all recommendations within two weeks of being referred for such. A Psychological Evaluation will provide the Department with a tool to use in order to provide Mr. Powell with the skills necessary to adequately and safely parent his children.

☐ Mr. Powell shall sign and continue updating all necessary releases of information for past and present records, evaluations, and information that may be pertinent to case planning.

2. Child: Identify service and responsibility to meet each identified need:

a) Educational Needs:

B█████s educational needs shall be met by his placement. This includes, but is not limited to, maintaining good communication to ensure the child's educational needs are being met, participating in any meetings related to B████s education and being an educational advocate for B█████

b) Medical Needs:

B█████s medical needs shall be met by the placement. This includes, but is not limited to, scheduling and attending regular well child checks and dental exams, dispensing medication as prescribed by the physician, following through with any physician recommendations and seeking emergent medical treatment when necessary. Typically, the Department allows the parents to be an active part of this process. However, in this case, due to the active restraining orders between the placement and Mr. Powell, this will not be allowed.

c) Social Needs:

B█████s social needs shall be met by the foster parent/relative caregiver in conjunction with visitation with his parent(s).

Cox
01320801

d) Psychological Needs:

B████'s psychological needs shall be met by the placement. This includes, but is not limited to scheduling and attending therapy appointments and participating in therapy appointments when requested to do so by either B████ or the provider. This also includes participating in family therapy and sibling therapy as determined necessary by the current counselor at GSMH.

e) Cultural Needs:

B████'s ethnic and cultural needs shall be met by the placement in conjunction with visitation with his parent(s).

3. Identify services and responsibilities to meet child and family needs:

a) Caregiver:

The placement shall meet all of B████'s educational, medical, social, psychological, ethnic, and cultural needs.

b) Voluntary Agency:
   N/A.

c) DSHS:

DCFS shall make all necessary referrals and continue with ongoing services for the parent(s).

DCFS will do monthly health and safety visits, provide case management, and support the placement.

4. Assessment of the Recommended Service Plan:

a) Discuss how the service plan will alleviate the current safety threats and help assure safe and proper care of the child if the child:
   (i) Is returned home:

The pysch. eval. will assist the Department in identifying any parental deficiencies that may exist for which Mr. Powell could use services to remedy to regain custody of his children.

   (ii) Remains in placement:

If the child remains in placement, he will receive all necessary and appropriate referrals for services while his parent(s) work on their parental deficiencies.

Cox
01320802

b) How will the service plan improve conditions in the parent's home?

The service plan addresses mental health and parenting issues which provide barriers to safe and effective parenting of B█████

c) How will the service plan help to achieve a permanent plan other than return home?

N/A. The current permanent plan at this point in time is to return home.

5. Visit Plan (Attach Famlink Visit Plan):

<u>Mother:</u> A visitation plan will be developed should Ms. Powell come forward and request visits.

<u>Father:</u> One visit each week, three hours each, supervised by DCFS or DCFS approved person. Visits may be expanded upon agreement of the GAL and social worker.

D. Independent Living Skills

If child is age 15 and older, what planning is being done in each of the following areas in anticipation of youth reaching age 18?

1. Career Planning and Education goals:

N/A. B████ is currently 4 years old.

2. Self Care:

N/A

3. Work and Study Life:

N/A

4. Housing and Money Management:

N/A

5. Daily Living Skills:

N/A

6. Social Relationships and Communication:

N/A

Cox
01320803

E. Current Status/Social Summary of Child:

<u>Update: Forest Jacobson, Court SW:</u>
<u>Health/Medical:</u>
B███ was seen at the Canyon Road Franciscan Care Clinic on 10/19/11. He weighed 42lbs and was 44 inches tall. B███ would not cooperate with his vitals being taken. He was noted as having a slight rash with a referral for a dermatologist to observe it. He is otherwise healthy and the only other follow up item was for a flu shot. The relative placement indicated B███ had a dental appointment just prior to being placed with them and is due for his six month check up in December. B███ is currently being screened for counseling at Good Sam Behavioral Health in Puyallup. He should be having weekly appointments by the time of the next court hearing (11/15/11).

<u>School/Development:</u> B███ has been enrolled to attend preschool daily for half day sessions. The relative placement and this worker agreed that B███ would benefit from having some time to just be a child and interact with children in his peer group. B███ can be aggressive with others regardless of what role they play in his life. His score on the ASQ-SE indicates he is in need of mental health services/screening. B███ can also be very age appropriate in his behaviors and attitude.

<u>Social Connections:</u>
B███ is bonded to his brother although it has been noted there is more than a standard sibling rivalry between the two of them with some aggressive behavior during disputes. B███ is enamored of the movie Cars and all characters/toys from that movie. B███ is obviously bonded to both his placement and his father as observed during home visits and visitation. B███ likes to compete with his brother for attention during this worker's visits.

Cox
01320804

F. Current Status/Social Summary of Parent:
This section will not be shared with the child's caregiver.
Confidential information related to parents' health issues, mental health treatment and substance abuse treatment should be discussed in this section.
(Recognize strengths as well as issues which interfere with parenting).

Update Forest Jacobson, Court SW:

Mr. Powell has been in consistent contact with the Department since the petition was filed. After he obtained legal counsel, a psychological evaluation provider was chosen and referral made. Mr. Powell, at the time of this report, has completed the testing measurements and is scheduled for interviews and child/parent observations. The provider expects to have a preliminary report to the Department some time mid November at the earliest. Mr. Powell has attended all scheduled visitation and sends his son's daily letters telling them he misses them, loves them, and is working on getting them home to him among other little items of interest to the boys (bugs, movies, etc).

Mr. Powell has informed his attorney and the GAL that he has obtained housing separate from his family members in the hopes that his boys can come home to him. The Department would like to see the results of the psychological evaluation before any move to return the boys to his custody are made.

Mr. Powell has made several requests of the current relative placement that have been somewhat difficult to accommodate but the placement is doing their best to abide by all restrictions to maintain stability for the boys. Mr. Powell is working on identifying a suitable other placement that he would prefer for his children.

Cox
01320805

## VI. ATTACHMENTS AND SIGNATURES:

Attachments: (Required)

☐ Assessment of Progress
☐ Service Plan
☐ Visit Plan
☐ Determination of American Indian Status
☐ Education Plan
☐ Transition Plan for Youth Existing Care (17.5 and older)
☐ CHET Screen (Initial ISP)
☐ IL Learning Plan and Progress Report (15 and older)

Attachments: (Optional)

☐ Safety Plan                          ☐ CHET Screen              ☐ Other:
☐ SDM Risk Assessment                  ☐ Famlink Health and       ☐ Other:
☐ Transition and Safety Plan               Education Report        ☐ Other:
☐ Caregiver Report to the Court        ☐ Fostering Well-Being Care
☐ Reunification Assessment                 Coordination Summary

Signatures: (Optional):

1. Signatures by parents, child or voluntary agency indicates receipt of the ISSP. Signatures do not necessarily indicate agreement with all parts of this plan

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |
| SIGNATURE | DATE |

2. Copies of this ISSP must be provided to parents. Social Worker certifies that copies of this ISSP were provided to parents on dates listed below:

| MOTHER'S NAME | DATE |
|---|---|
| **Susan Powell** | |
| FATHER'S NAME | DATE |
| **Joshua Powell** | |
| YOUTH TWELVE AND OLDER | DATE |
| | |

| Dates parents were notified of visitation changes | Dates parents were notified of placement changes |
|---|---|

| Submitted by: | DIVISION OF CHILDREN AND FAMILY SERVICES SOCIAL WORKER | DATE |
|---|---|---|
| | **Forest Jacobson, MSW** | |
| Approved by: | DIVISION OF CHILDREN AND FAMILY SERVICES SUPERVISOR | DATE |
| | **Jane Wilson, MSW** | |

| Approval for initial placement in Behavior Rehabilitation Services (BRS): | |
|---|---|
| DCFS ADMINISTRATOR OR DESIGNEE | DATE |
| | |

Original: Juvenile Court or Other Review Body
c:    Case File                          Social Worker Attorney
      Parents/Parent's Attorney          Guardian ad Litem/GAL Attorney
      Voluntary Agency                   Child's Caregiver

Cox
01320806

_____

Child (Over 12)/Child's Attorney

Cox
01320807

 **Washington State Department of Social & Health Services**
**CA** Children's Administration

# Determination of Native American Indian Status

| CHILD'S NAME |
|---|
| B████ P████ |

I. Child is (check all that apply):

    A. ☐ A federally recognized Indian child;
        ☐ Member or eligible for membership in a federally recognized tribe;
        ☐ Any person determined or eligible to be found to be Indian by the Secretary of the Interior Bureau of Indian Affairs (BIA).
        ☐ An Eskimo, Aleut, or other Alaskan Native.
        Name of tribe/Village(s):

    B. ☐ A Canadian First Nations child: A member or entitled to be a member of a Canadian treaty or band Metis community, or non-status Indian community from Canada.
        First Nation/Band Name:

    C. ☐ Another Indian child: A person considered to be an Indian by a federally or non-federally recognized tribe or Indian organization.

    D. ☐ The child may be an Indian. List tribes and Indian organizations to be contacted in order to seek verification.

    E. ☐ The following tribes have been contacted, and the child and his/her ancestors are not considered to be Indian.

    F. ☒ The child's parents and relatives have been interviewed (see ethnic identity form) and the child is not an Indian to our knowledge. (None of the above apply). Omit **II** and **III** below.

II. If the tribe is not available, or has requested staffing by LICWAC, has the child's case plan been reviewed by LICWAC?

    ☐ Yes      Date staffed or to be staffed:
    ☐ No       Reason: Discuss plan to obtain consultation from Native American Consultant or LICWAC:

Discuss plan to obtain consultation from Native American Consultant or LICWAC:

III. For children under the jurisdiction of the Indian Child Welfare Act, has the tribe or Bureau of Indian Affairs (BIA) been notified of custody proceedings in the state court?

    ☐ Yes    Date staffing:
    ☐ No     Reason:

Original: Juvenile Court or Other Review Body
c:   Case File
     Parents/Parent's Attorney        Social Worker Attorney
     Voluntary Agency            Guardian ad Litem/GAL Attorney
     Child (Over 12)/Child's Attorney    Child's Caregiver

Cox
01320808



**Confidentiality Notice**
**Individual Service and Safety Plan**

OPTIONAL
(Do not send to
Juvenile Court)

Child: B███ P████ _____

Caregiver For:  **Relative Care** _____

A copy of this child's Individual Service and Safety Plan (ISSP) has been provided to you as the caregiver for this child.  This information has been provided so that you can:

- Better understand the child;
- Provide appropriate care for the child; and
- Participate in planning for the child.

Much of the information contained in the ISSP is private or confidential.  State Law (RCW 74.13.280) requires that you treat information you receive about the child in a confidential manner.  You must not discuss information contained in the ISSP with others such as friends, relatives or neighbors.  You must store the ISSP in a manner that will keep the contents private.

Usually, you may only discuss information contained in the ISSP with:

- A representative of the Department, including staff from the Division of Children and Family Services (DCFS) and Division of Licensed Resources (DLR);
- A Child Pl acing Agency Social Worker if the child has one;
- The child's assigned Guardian ad Litem (GAL) or Court Appointed Special Advocate (CASA); or
- Others designated by either the DCFS Social Worker or the Child Placing Agency Social Worker (such as the child's teacher or doctor).

If you have any questions about what information can be discussed with the child's teacher, counselor, or doctor, check with the child's social worker.  In some cases a release of information may be required before information can be exchanged.

This child's Individual Service and Safety Plan was ☐ given  ☐ mailed to the child's caregiver on the date listed below.

_____          _____
SOCIAL WORKER                                                              DATE

Original:  Case File
      c:  Foster Parent/Relative/Prospective Adoptive Parent

Cox
01320809



CHILDREN'S ADMINISTRATION
# Individual Service and Safety Plan (ISSP)

| TYPE OF HEARING/REVIEW |
|---|
| **First Set Fact Finding** |

| DATE OF HEARING/REVIEW | TIME OF HEARING/REVIEW | DATE OF REPORT | ISSP COVERS |
|---|---|---|---|
| **11/15/2011** | **9:00 AM** | **10/24/11** | **11/15/11 to 5/11/12** |

## I. IDENTIFYING INFORMATION

| CHILD'S NAME | LEGAL NUMBER |
|---|---|
| C████ P████ | **11-7-01802-8** |

| DATE OF BIRTH | AGE | CASE NUMBER | RECEIVES SSI/SSA |
|---|---|---|---|
| 1/19/05 | **6 years** | 1513430 | ☐ Yes  ☒ No |

RACE (Check all that apply)
☐ Black or African American   ☐ American Indian or Alaska Native   ☒ White
☐ Asian   ☐ Native Hawaiian or Other Pacific Islander   ☐ Unable to Determine

☐ Yes.  This child is American Indian or Alaska Native per attachment on initial ISSP report
    Date of report:
☒ No.  (If child is not American Indian or Alaska Native, subsequent reports can delete attachment).

| TYPE OF PLACEMENT | VOLUNTARY AGENCY NAME |
|---|---|
| **Relative care** | |

| DATE OF PETITION | DATE OF FINDING OF DEPENDENCY | DATE OF DISPOSITION |
|---|---|---|
| **9/27/11** | Mother:      Father: | Mother:      Father: |

CURRENT LEGAL STATUS: **Shelter care**

DATES OF PREVIOUS REVIEW HEARING: **N/A**

## PRINCIPALS INVOLVED ARE:

| MOTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Susan Powell address unknown** | **none** |

| MOTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **none assigned** | |

| FATHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Joshua Powell 18615 94th Ave Ct E Puyallup WA 98375** | **253-226-0158** |

| FATHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Jeffrey Bassett 3313 Viewcrest Dr NE Bremerton, WA 98310-9741** | **(360) 204-8865** |

Cox
01320777

| GUARDIAN AD LITEM/CASA'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| Julio Serrano, 5501 6th Ave., Tacoma, WA 98406 | 253-798-7928 |
| GUARDIAN AD LITEM/CASA'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |

| DSHS SOCIAL WORKER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| Forest Jacobson, Court SW 1949 S. State St., Tacoma, WA 98405 | 253-983-6222 |
| DSHS SOCIAL WORKER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| John Long AAG, P.O. Box 2317, Tacoma, WA 98401 | 253-597-4277 |

| CHILD'S NAME | TELEPHONE NUMBER |
|---|---|
| | |
| CHILD'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |

| OTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| | |
| OTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |

## II. CASE BACKGROUND

A. Within the last 19 months the child has been in out-of-home care for a total of **1.5** months. (Include prior placement episodes that fall within the last 19 months. Provide any relevant explanation).

B. Begin date of current placement episode: **9/22/11 police protective custody**

C. Identify events and risk factors related to child safety and well being that caused child to be placed in out-of-home care:

1. On 9/22/11, C████ P████ (DOB 1/19/05) and B████ P████ (DOB 1/2/07) were placed into police protective custody by Law Enforcement (LE) after the arrest of their paternal grandfather for 14 counts of Voyeurism and 1 count of Possession of Depictions of Minor Engaged in Sexually Explicit Conduct 2nd Degree. The paternal grandfather, Steven Powell (DOB ██████████ ) resided in the same home as C████ and B████ along with their father, Joshua Powell (DOB 1/20/76).

2. On 9/22/11, LE notified the Department that Joshua Powell is also a subject of their ongoing investigation related to the charges already filed against the grandfather. LE indicated that Joshua Powell's career is with computers and that the pornography LE has analyzed is technologically "sophisticated".

3. On 9/22/11, LE reported to the Department that there were 15 computers in various areas of the home that were accessible to persons other than the grandfather. LE also indicated they have not yet been able to analyze all of the pornographic evidence but at this time they had not seen that C████ or B████ were exposed to it. Investigators estimated they have only accessed approximately only 5% of the computer data as of 9/22/11.

DSHS 15-209 (REV. 04/2011)                    2

Cox
01320778

4. On 9/22/11, LE reported to the Department that there is an adult uncle to C███ and B███ also living in the home who LE indicated is Schizophrenic and who has greeted LE at the front door naked and runs around the home either naked or in diapers.
5. On 9/22/11, LE reported to the Department that other concerning items found in the home included a gallows and hangman's noose in addition to a poster depicting a female with a sword entering her vagina and exiting her stomach hanging on the wall.
6. On 9/23/11, Joshua Powell asked the Department to file a dependency action with regard to C███ and B███ because the maternal grandparents are "the most dangerous people on the planet to my sons". Joshua went on to state that the media defamation and court appearances initiated by the maternal grandparents are keeping him from financially being capable of meeting all the needs of his children to include medical coverage and access to mental health counseling.
7. On 9/23/11, Joshua Powell informed the CPS investigative social worker that he takes pictures of other peoples' legs in public places but is careful that they are not too close or show any faces. Mr. Powell talked about the laws surrounding such behavior and appeared to understand them. He stated that he is only an amateur but he likes to take pictures of legs when he sees something that is nice. He also stated it is less expensive than using stock photography.
8. On 9/23/11, when asked if he would turn in his father if he caught his father with sexually explicit pictures of 7-8 year old girls, Joshua Powell stated very slowly and after a lengthy pause, he would turn his father in "if it were a threat to children". This statement was made during Joshua's interview with the CPS investigative social worker.
9. On 9/23/11, when asked if his father, Steven Powell, watched C███ or B███ alone, Joshua Powell replied that he and his sister were the primary caretakers for his sons but that his father has watched the kids or taken them to the store on his own.
10. On 9/23/11, the CPS investigative social worker asked Joshua Powell if anything else would come to light that he (Joshua) was aware of once all the evidence was analyzed. Joshua Powell stated that he had copied one of his father's (Steven Powell's) thumb drives onto his own computer but stated he was not particularly worried about it as it was only information related to Susan's disappearance.
11. Joshua Powell is currently the only person of interest in the West Valley City, Utah Police Department homicide investigation into his wife's (Susan Powell, mother to C███ and B███) disappearance. Susan Powell (DOB 10/16/81) has been missing since 12/6/09.

D. Child/family needs were originally identified as (consider medical, educational, environmental, psychological, and cultural needs):

Charles needs a safe, stable living environment. The parents need mental health services and parenting services.

### III. PREPLACEMENT SERVICES

A. Identify services offered or provided to family to prevent child's placement. Indicate how services offered relate to safety threat(s) identified in II C.

No services offered prior to placement due to children placed in police protective custody.

Cox
01320779

B.  If no services were offered to prevent placement, explain why:

No services offered prior to placement due to children placed in police protective custody.

## IV. SUMMARY OF PREVIOUS CASE PLAN AND COURT ORDER

☒ Does not apply.

A.  Legal:  Identify the Permanent Plan and Alternate Permanent Plan (during last report period).  Place a "P" next to the primary plan and an "A" next to the alternate permanency plan:

Permanent Legal Arrangements
- ☐      Return Home                    ☐      Other Plan: _____
- ☐      Adoption
- ☐      Guardianship
- ☐      Third Party Custody (with someone other than parent, RCW 26.10)

B.  Tentative completion date for previous permanent plan was:
Child is placed in:
1.  ☐ Family home with
2.  ☐ Relative placement with
3.  ☐ A non-relative, out of home placement.

C.  Previous Service Plan:  Review and Evaluation of Objectives and Tasks
1.  Parent(s):



2.  Child:



3.  Caregiver:



4.  DSHS/Voluntary Agency:



D.  Visit Plan

1.  Frequency:



2.  Quality:

Cox
01320780

3.  How has the visit plan been helpful to achieve reunification of the family?

E.  Court Orders
    Discuss how current placement and services offered were responsive to court orders.

F.  Permanency Plan (for other than return home).
    1.  Discuss steps taken to finalize the current placement:

    2.  Discuss barriers to finalizing the current placement:

## V.  RECOMMENDED CASE PLAN FOR NEW REVIEW PERIOD (except as amended by court order)

A.  Legal Recommendations:
    1.  Identify the Permanent Plan and Alternate Permanent Plan (for upcoming report period).  Place a
        "P" next to the primary plan and an "A" next to the alternate permanency plan (if applicable).

    Permanent Legal Arrangements
    ☒  **P**    Return Home              ☐      Other Plan: _____
    ☒  **A**    Adoption
    ☐          Guardianship
    ☐          Third Party Custody (with someone other than parent, RCW 26.10)

    2.  When "Other Plan" is selected as the primary plan, identify the compelling reason that this plan is
        in the child's best interest.

    3.  Tentative completion date of the present permanent plan, depending on actions, progress and
        cooperation of those involved is:

    4.  Recommended Legal Status of the Child:
        ☒  Dependent (check one of the following):  ☐ In-home    ☒ Out-of-home care
        ☐  Dependency dismissed

    5.  If one of the following circumstances exist, a petition to terminate parental rights must be filed
        unless compelling reasons exist to the contrary.  (check any box which applies):
        ☐  The child is currently in out-of-home care and has been in out-of-home care for 12 of the most
            recent 19 months.
        ☐  The parent has abandoned this child as defined in RCW 13-34.030 or 13.34.180(7) OR has
            been convicted of abandoning this child as defined in RCW 9A.42.060, 070, or 080.
        ☐  The parent has been convicted of one or more of the criminal activities listed in RCW
            13.34.132(4).
        ☒  None of the above listed circumstances apply.

Cox
01320781

6. When one of the circumstances in V.A.5. exists, and the case plan is not adoption, discuss compelling reasons for not filing a petition to terminate parental rights.

B. Placement Recommendations:
   1. Placement in:
      a) ☐ Family home with _____ because:

      b) ☒ Relative placement with **Charles & Judy Cox** because:

         The maternal grandparents are able to meet C████ needs while providing a stable living environment while parent(s) participate in service plan for children to return home.

      c) ☐ Any non-relative, out of home placement (foster care, residential treatment, etc.) because:

   2. If the recommendation is other than family home, discuss continued need for placement and continued safety threats to the child if returned to either or both parents.

      Father is currently in process of completing his psychological evaluation. Service recommendation from this evaluation will assist in determining how reunification can/will occur.

   3. If the recommendation is other than family home, discuss how this placement is the most appropriate and least restrictive setting, in close proximity to the family home, which can safely meet the best interests of the child.

      C████s needs are currently being met while his parent(s) address any parenting deficiencies so that he may safely return to their care. C████is placed so that he can participate in visitation and other services that may help facilitate reunification.

   4. ☒ Child is not placed out of state     ☐ Child is placed out of state

      If placement is a substantial distance from a parent's home or is out of state, explain why this placement is in the best interest of the child.

      N/A.

Cox
01320782

5. Permanency planning efforts if continued out of home care is recommended:
   ☐ Does not apply because return home is imminent (less than six months).
   ☒ Return home is not imminent, (complete a and b below).

   a) In the event the child is unable to return home, discuss whether the current placement is expected to be the child's permanent placement.

      The current placement will be the child's permanent placement in the event the child is unable to return home.

   b) If the child is unable to return home and the current placement is not expected to be the child's permanent placement, discuss steps to be taken to identify, recruit, process, and approve a permanent placement.

      The Department, in conjunction with the parent(s), shall continue to seek suitable relative/fictive kin/suitable other placement for C█████

C. Recommended Services and Responsibilities for the next six months:
   1. Parents/Family:  Identify services/responsibilities to meet educational, medical, environmental, social psychological, and cultural needs.

      Family Level Objective:
      The family will ensure healthy development of C█████through positive interaction and will provide a stable home environment that will ensure that all basic needs are met including supervision, nutrition, hygiene, and medical/counseling appointments as described in the tasks.
      Tasks:
      Father will interact with his child during visitation and demonstrate proper child care, nutrition, hygiene, and meeting of needs.  Father will not use this time to discuss private, legal, or other adult matters.

      Father will maintain adequate and safe housing:
      Father will obtain housing separate from any persons with criminal history or pending criminal charges.
      Father will support C█████ in out of home care by:
      Father will attend all scheduled visitations.
      Father will sign all releases of information to assist in service and case planning.

      Individual Level Objective for Ms. Powell:
      Should Ms. Powell contact the Department, an appropriate service plan will be developed at that time.

Cox
01320783

Individual Level Objective for Mr. Powell:

☐ Mr. Powell will not associate with any people who are engaged in criminal or drug activity.

☐ Mr. Powell will have contact with the assigned social worker and guardian ad litem on a regular basis as described in the tasks.

☐ Mr. Powell will contact the social worker by phone every week (or email). Mr. Powell will meet with social worker a one on one visit to the Department on a monthly basis to discuss progress in his service plan.

☐ Mr. Powell will allow the social worker and guardian ad litem to have announced and unannounced visits to his home.

☐ Mr. Powell will participate in a Psychological Evaluation with a Parenting Component and follow all recommendations within two weeks of being referred for such. A Psychological Evaluation will provide the Department with a tool to use in order to provide Mr. Powell with the skills necessary to adequately and safely parent his children.

☐ Mr. Powell shall sign and continue updating all necessary releases of information for past and present records, evaluations, and information that may be pertinent to case planning.

2. Child:  Identify service and responsibility to meet each identified need:

   a) Educational Needs:

   C████s educational needs shall be met by his placement. This includes, but is not limited to, maintaining good communication to ensure the child's educational needs are being met, participating in any meetings related to C████s education and being an educational advocate for C████

   b) Medical Needs:

   C████s medical needs shall be met by the placement. This includes, but is not limited to, scheduling and attending regular well child checks and dental exams, dispensing medication as prescribed by the physician, following through with any physician recommendations and seeking emergent medical treatment when necessary. Typically, the Department allows the parents to be an active part of this process. However, in this case, due to the active restraining orders between the placement and Mr. Powell, this will not be allowed.

   c) Social Needs:

   C████s social needs shall be met by the foster parent/relative caregiver in conjunction with visitation with his parent(s).

Cox
01320784

d) Psychological Needs:

C█████s psychological needs shall be met by the placement. This includes, but is not limited to scheduling and attending therapy appointments and participating in therapy appointments when requested to do so by either C█████ or the provider. This also includes participating in family therapy and sibling therapy as determined necessary by the current counselor at GSMH.

e) Cultural Needs:

C█████s ethnic and cultural needs shall be met by the placement in conjunction with visitation with his parent(s).

3. Identify services and responsibilities to meet child and family needs:

a) Caregiver:

The placement shall meet all of C█████s educational, medical, social, psychological, ethnic, and cultural needs.

b) Voluntary Agency:

N/A.

c) DSHS:

DCFS shall make all necessary referrals and continue with ongoing services for the parent(s).

DCFS will do monthly health and safety visits, provide case management, and support the placement.

4. Assessment of the Recommended Service Plan:

a) Discuss how the service plan will alleviate the current safety threats and help assure safe and proper care of the child if the child:

(i) Is returned home:

The pysch. eval. will assist the Department in identifying any parental deficiencies that may exist for which Mr. Powell could use services to remedy to regain custody of his children.

(ii) Remains in placement:

If the child remains in placement, he will receive all necessary and appropriate referrals for services while his parent(s) work on their parental deficiencies.

Cox
01320785

b) How will the service plan improve conditions in the parent's home?

The service plan addresses mental health and parenting issues which provide barriers to safe and effective parenting of C█████

c) How will the service plan help to achieve a permanent plan other than return home?

N/A.  The current permanent plan at this point in time is to return home.

5.  Visit Plan (Attach Famlink Visit Plan):

Mother:  A visitation plan will be developed should Ms. Powell come forward and request visits.

Father:  One visit each week, three hours each, supervised by DCFS or DCFS approved person.  Visits may be expanded upon agreement of the GAL and social worker.

D.  Independent Living Skills

If child is age 15 and older, what planning is being done in each of the following areas in anticipation of youth reaching age 18?

1.  Career Planning and Education goals:

N/A.  C█████ is currently 6 years old.

2.  Self Care:

N/A

3.  Work and Study Life:

N/A

4.  Housing and Money Management:

N/A

5.  Daily Living Skills:

N/A

6.  Social Relationships and Communication:

N/A

Cox
01320786

E. Current Status/Social Summary of Child:

Update: Forest Jacobson, Court SW:
Health/Medical:
C████ was seen at the Canyon Road Franciscan Care Clinic on 10/19/11. He was found to be in the 40th percentile for weight and 50th percentile for height. He was found to otherwise be in good health with only a flu shot left for a follow up appointment. It was noted he has had dental work (crowns) on his two front teeth due to decay. The relative placement indicated C████ had a dental appointment just prior to being placed with them and is due for his six month check up in December. C████ is currently in counseling at Good Sam Behavioral Health in Puyallup. He is seen on a weekly basis.

School/Development: C████ attends school at Carson Elementary where he is in the 1st grade. C████ has stated he doesn't like school because people there don't like him. He is reported as a good student with minor behavioral issues in class, most of which are typical for boys his age. C████ is very articulate, using larger vocabulary words than his age would indicate he would know. It should be noted that although he knows how to say these words he doesn't necessarily know what they mean and often uses them out of context. C████ is described by his teacher (last year) as exceptionally curious and self motivated.

Social Connections:
C████ is bonded to his brother although it has been noted there is more than a standard sibling rivalry between the two of them with some aggressive behavior during disputes. C████ is very interested in bugs and animals and thinks he may want to work with animals when he gets older. C████ appears to be bonded to his grandparents during this worker's observations/home visits. C████ appears to be bonded to his father as noted during visitation periods. C████ eyes got teary when talking about his pet that was left behind at his father's home.

Cox
01320787

F.  Current Status/Social Summary of Parent:
    This section will not be shared with the child's caregiver.
    Confidential information related to parents' health issues, mental health treatment and
    substance abuse treatment should be discussed in this section.
    (Recognize strengths as well as issues which interfere with parenting).

    Update Forest Jacobson, Court SW:
    Mr. Powell has been in consistent contact with the Department since the petition was filed.
    After he obtained legal counsel, a psychological evaluation provider was chosen and referral
    made. Mr. Powell, at the time of this report, has completed the testing measurements and is
    scheduled for interviews and child/parent observations. The provider expects to have a
    preliminary report to the Department some time mid November at the earliest. Mr. Powell
    has attended all scheduled visitation and sends his son's daily letters telling them he misses
    them, loves them, and is working on getting them home to him among other little items of
    interest to the boys (bugs, movies, etc).
    Mr. Powell has informed his attorney and the GAL that he has obtained housing separate
    from his family members in the hopes that his boys can come home to him. The Department
    would like to see the results of the psychological evaluation before any move to return the
    boys to his custody are made.
    Mr. Powell has made several requests of the current relative placement that have been
    somewhat difficult to accommodate but the placement is doing their best to abide by all
    restrictions to maintain stability for the boys. Mr. Powell is working on identifying a suitable
    other placement that he would prefer for his children.

Cox
01320788

## VI. ATTACHMENTS AND SIGNATURES:

Attachments: (Required)

- [ ] Assessment of Progress
- [ ] Service Plan
- [ ] Visit Plan
- [ ] Determination of American Indian Status
- [ ] Education Plan
- [ ] Transition Plan for Youth Existing Care (17.5 and older)
- [ ] CHET Screen (Initial ISP)
- [ ] IL Learning Plan and Progress Report (15 and older)

Attachments: (Optional)

- [ ] Safety Plan
- [ ] SDM Risk Assessment
- [ ] Transition and Safety Plan
- [ ] Caregiver Report to the Court
- [ ] Reunification Assessment

- [ ] CHET Screen
- [ ] Famlink Health and Education Report
- [ ] Fostering Well-Being Care Coordination Summary

- [ ] Other:
- [ ] Other:
- [ ] Other:

Signatures: (Optional):

1. Signatures by parents, child or voluntary agency indicates receipt of the ISSP. Signatures do not necessarily indicate agreement with all parts of this plan

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |
| SIGNATURE | DATE |

2. Copies of this ISSP must be provided to parents. Social Worker certifies that copies of this ISSP were provided to parents on dates listed below:

| MOTHER'S NAME **Susan Powell** | DATE |
|---|---|
| FATHER'S NAME **Joshua Powell** | DATE |
| YOUTH TWELVE AND OLDER | DATE |

| Dates parents were notified of visitation changes | Dates parents were notified of placement changes |
|---|---|

| Submitted by: | DIVISION OF CHILDREN AND FAMILY SERVICES SOCIAL WORKER **Forest Jacobson, MSW** | DATE |
|---|---|---|
| Approved by: | DIVISION OF CHILDREN AND FAMILY SERVICES SUPERVISOR **Jane Wilson, MSW** | DATE |

Approval for initial placement in Behavior Rehabilitation Services (BRS):

| DCFS ADMINISTRATOR OR DESIGNEE | DATE |
|---|---|

Original: Juvenile Court or Other Review Body

c:   Case File                     Social Worker Attorney
     Parents/Parent's Attorney       Guardian ad Litem/GAL Attorney
     Voluntary Agency              Child's Caregiver

Cox
01320789

_____

Child (Over 12)/Child's Attorney

Cox
01320790

 *Washington State*
**Department of Social & Health Services**
**CA** Children's Administration

# Determination of Native American Indian Status

| CHILD'S NAME |
| --- |
| C████ P████ |

I.  Child is (check all that apply):

A.  ☐ A federally recognized Indian child;
   ☐ Member or eligible for membership in a federally recognized tribe;
   ☐ Any person determined or eligible to be found to be Indian by the Secretary of the Interior Bureau of Indian Affairs (BIA).
   ☐ An Eskimo, Aleut, or other Alaskan Native.
   Name of tribe/Village(s):

B.  ☐ A Canadian First Nations child:  A member or entitled to be a member of a Canadian treaty or band Metis community, or non-status Indian community from Canada.
   First Nation/Band Name:

C.  ☐ Another Indian child:  A person considered to be an Indian by a federally or non-federally recognized tribe or Indian organization.

D.  ☐ The child may be an Indian.  List tribes and Indian organizations to be contacted in order to seek verification.

E.  ☐ The following tribes have been contacted, and the child and his/her ancestors are not considered to be Indian.

F.  ☒ The child's parents and relatives have been interviewed (see ethnic identity form) and the child is not an Indian to our knowledge.  (None of the above apply).  Omit **II** and **III** below.

II.  If the tribe is not available, or has requested staffing by LICWAC, has the child's case plan been reviewed by LICWAC?

☐ Yes      Date staffed or to be staffed:
☐ No       Reason: Discuss plan to obtain consultation from Native American Consultant or LICWAC:

Discuss plan to obtain consultation from Native American Consultant or LICWAC:

III.  For children under the jurisdiction of the Indian Child Welfare Act, has the tribe or Bureau of Indian Affairs (BIA) been notified of custody proceedings in the state court?

☐ Yes      Date staffing:
☐ No       Reason:

Original:  Juvenile Court or Other Review Body
c:   Case File
     Parents/Parent's Attorney              Social Worker Attorney
     Voluntary Agency                        Guardian ad Litem/GAL Attorney
     Child (Over 12)/Child's Attorney        Child's Caregiver

Cox
01320791



**Washington State Department of Social & Health Services**
CA Children's Administration

**Confidentiality Notice**
**Individual Service and Safety Plan**

OPTIONAL
(Do not send to
Juvenile Court)

Child:  C██████  P██████

Caregiver For:  <u>**Relative Care**</u>

A copy of this child's Individual Service and Safety Plan (ISSP) has been provided to you as the caregiver
for this child.  This information has been provided so that you can:

- Better understand the child;
- Provide appropriate care for the child; and
- Participate in planning for the child.

Much of the information contained in the ISSP is private or confidential.  State Law (RCW 74.13.280)
requires that you treat information you receive about the child in a confidential manner.  You must not
discuss information contained in the ISSP with others such as friends, relatives or neighbors.  You must
store the ISSP in a manner that will keep the contents private.

Usually, you may only discuss information contained in the ISSP with:

- A representative of the Department, including staff from the Division of Children and Family
  Services (DCFS) and Division of Licensed Resources (DLR);
- A Child Pl acing Agency Social Worker if the child has one;
- The child's assigned Guardian ad Litem (GAL) or Court Appointed Special Advocate (CASA); or
- Others designated by either the DCFS Social Worker or the Child Placing Agency Social Worker
  (such as the child's teacher or doctor).

If you have any questions about what information can be discussed with the child's teacher, counselor, or
doctor, check with the child's social worker.  In some cases a release of information may be required
before information can be exchanged.

This child's Individual Service and Safety Plan was ☐ given  ☐ mailed to the child's caregiver on the
date listed below.

_____          _____
SOCIAL WORKER                                                                      DATE

Original:  Case File
     c:  Foster Parent/Relative/Prospective Adoptive Parent

Cox
01320792

# EXHIBIT 3



CHILDREN'S ADMINISTRATION

# Individual Service and Safety Plan (ISSP)

| TYPE OF HEARING/REVIEW | | | |
|---|---|---|---|
| **Dependency Review** | | | |

| DATE OF HEARING/REVIEW | TIME OF HEARING/REVIEW | DATE OF REPORT | ISSP COVERS |
|---|---|---|---|
| 1/19/12 | 1:30PM | 1/5/12 | 1/19/12 to 7/19/12 |

## I. IDENTIFYING INFORMATION

| CHILD'S NAME | LEGAL NUMBER |
|---|---|
| C⬛ P⬛ | 11-7-01802-8 |

| DATE OF BIRTH | AGE | CASE NUMBER | RECEIVES SSI/SSA |
|---|---|---|---|
| 1/19/05 | 7 years (on day of hrg) | 1513430 | ☐ Yes  ☒ No |

RACE (Check all that apply)

☐ Black or African American ☐ American Indian or Alaska Native ☒ White
☐ Asian ☐ Native Hawaiian or Other Pacific Islander ☐ Unable to Determine

☐ Yes. This child is American Indian or Alaska Native per attachment on initial ISSP report
  Date of report:
☒ No. (If child is not American Indian or Alaska Native, subsequent reports can delete attachment).

| TYPE OF PLACEMENT | VOLUNTARY AGENCY NAME |
|---|---|
| **Relative care** | |

| DATE OF PETITION | DATE OF FINDING OF DEPENDENCY | DATE OF DISPOSITION |
|---|---|---|
| 9/27/11 | Mother:        Father: | Mother:        Father: |

CURRENT LEGAL STATUS: **Dependent**

DATES OF PREVIOUS REVIEW HEARING:  **N/A**

## PRINCIPALS INVOLVED ARE:

| MOTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Susan Powell address unknown** | **none** |

| MOTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **none assigned** | |

| FATHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Joshua Powell confidential address** | **253-226-0158** |

| FATHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Jeffrey Bassett 3313 Viewcrest Dr NE Bremerton, WA  98310-9741** | **(360) 204-8865** |

Cox
01011814

| GUARDIAN AD LITEM/CASA'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Julio Serrano, 5501 6th Ave., Tacoma, WA 98406** | **253-798-7928** |
| GUARDIAN AD LITEM/CASA'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| DSHS SOCIAL WORKER'S NAME AND ADDRESS | TELEPHONE NUMBER |
| **Forest Jacobson 1949 S. State St., Tacoma, WA 98405** | **253-983-6222** |
| DSHS SOCIAL WORKER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| **John Long AAG, P.O. Box 2317, Tacoma, WA 98401** | **253-597-4277** |
| CHILD'S NAME | TELEPHONE NUMBER |
| | |
| CHILD'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |

## II. CASE BACKGROUND

A.  Within the last 19 months the child has been in out-of-home care for a total of 4 months.  (Include prior placement episodes that fall within the last 19 months.  Provide any relevant explanation).

B.  Begin date of current placement episode:  **9/22/11 police protective custody**

C.  Identify events and risk factors related to child safety and well being that caused child to be placed in out-of-home care:

1.  On 9/22/11, B████ P████ (DOB 1/19/05) and B█ P████ (DOB 1/2/07) were placed into police protective custody by law enforcement after the arrest of their paternal grandfather for 14 counts of Voyeurism and 1 count of Possession of Depictions of Minor Engaged in Sexually Explicit Conduct 2nd Degree. The paternal grandfather, Steven Powell (DOB ████████ resided in the same home as B████ and B████ along with their father, Joshua Powell (DOB 1/20/76).

2.  On 9/22/11, LE notified the Department that Joshua Powell is also a subject of their ongoing investigation related to the charges already filed against the grandfather. LE indicated that Joshua Powell's career is with computers and that the pornography LE has analyzed is technologically "sophisticated".

3.  On 9/22/11, LE reported to the Department that there were 15 computers in various areas of the home that were accessible to persons other than the grandfather. LE also indicated they have not yet been able to analyze all of the pornographic evidence but at this time they had not seen that B████ or B████ were exposed to it. Investigators estimated they have only accessed approximately only 5% of the computer data as of 9/22/11.

Cox
01011815

4. On 9/22/11, LE reported to the Department that there is an adult uncle to B███ and B███ also living in the home who LE indicated is Schizophrenic and who has greeted LE at the front door naked and runs around the home either naked or in diapers.

5. On 9/22/11, LE reported to the Department that other concerning items found in the home included a gallows and hangman's noose in addition to a poster depicting a female with a sword entering her vagina and exiting her stomach hanging on the wall.

6. On 9/23/11, Joshua Powell asked the Department to file a dependency action with regard to B███ and B███ because the maternal grandparents are "the most dangerous people on the planet to my sons". Joshua went on to state that the media defamation and court appearances initiated by the maternal grandparents are keeping him from financially being capable of meeting all the needs of his children to include medical coverage and access to mental health counseling.

7. On 9/23/11, Joshua Powell informed the CPS investigative social worker that he takes pictures of other peoples' legs in public places but is careful that they are not too close or show any faces. Mr. Powell talked about the laws surrounding such behavior and appeared to understand them. He stated that he is only an amateur but he likes to take pictures of legs when he sees something that is nice. He also stated it is less expensive than using stock photography.

8. On 9/23/11, when asked if he would turn in his father if he caught his father with sexually explicit pictures of 7-8 year old girls, Joshua Powell stated very slowly and after a lengthy pause, he would turn his father in "if it were a threat to children". This statement was made during Joshua's interview with the CPS investigative social worker.

9. On 9/23/11, when asked if his father, Steven Powell, watched B███ or B███ alone, Joshua Powell replied that he and his sister were the primary caretakers for his sons but that his father has watched the kids or taken them to the store on his own.

10. On 9/23/11, the CPS investigative social worker asked Joshua Powell if anything else would come to light that he (Joshua) was aware of once all the evidence was analyzed. Joshua Powell stated that he had copied one of his father's (Steven Powell's) thumb drives onto his own computer but stated he was not particularly worried about it as it was only information related to Susan's disappearance.

11. Joshua Powell is currently the only person of interest in the West Valley City, Utah Police Department homicide investigation into his wife's (Susan Powell, mother to B███ and B███ disappearance. Susan Powell (DOB 10/16/81) has been missing since 12/6/09.

D. Child/family needs were originally identified as (consider medical, educational, environmental, psychological, and cultural needs):

C███ needs a safe, stable living environment. The father needs mental health services.

## III. PREPLACEMENT SERVICES

A. Identify services offered or provided to family to prevent child's placement. Indicate how services offered relate to safety threat(s) identified in II C.

No services offered prior to placement due to children placed in police protective custody.

Cox
01011816

B. If no services were offered to prevent placement, explain why:

No services offered prior to placement due to children placed in police protective custody.

☐ Does not apply.

A. Legal: Identify the Permanent Plan and Alternate Permanent Plan (during last report period). Place a "P" next to the primary plan and an "A" next to the alternate permanency plan:

Permanent Legal Arrangements

☒ **P**  Return Home                    ☐    Other Plan: _____
☐      Adoption
☐      Guardianship
☒ **A**  Third Party Custody (with someone other than parent, RCW 26.10)

B. Tentative completion date for previous permanent plan was: **1/19/12**
Child is placed in:
1. ☐ Family home with
2. ☒ Relative placement with **maternal grandparents, Charles & Judy Cox**
3. ☐ A non-relative, out of home placement.

C. Previous Service Plan:  Review and Evaluation of Objectives and Tasks
   1. Parent(s):
      Joshua Powell, father
      1. Joshua Powell shall participate in a psychological evaluation to include a parenting assessment with Dr. Manley and follow all recommendations. COMPLETED 12/9/11
      2. Johsua Powell will develop a safety plan to address concerns regarding relative contact. IN PROGRESS, IN COMPLIANCE
      3. Joshua Powell shall sign a release of information for all service providers to provide information to the social worker and GAL.
      4. Joshua Powell shall provide written documents to the social worker and GAL regarding attendance at, participation in, completion of, and progress in all court ordered services.
      5. Joshua Powell shall keep the social worker and GAL informed of his current address and contact telephone number throughout the duration of the dependency.
      6. Joshua Powell shall cooperate with reasonable requests by DSHS and provide the Department with income and asset information necessary to establish and maintain the child's eligibility for medical care, evaluations, counseling, and other remedial services, foster care reimbursement and other related services and benefits.
      Mr. Powell has completed the psychological evaluation and is awaiting the Department to provide counseling at a PhD level. The Department has a lag in finding an appropriate provider that is contracted with the Department. Mr. Powell has submitted a draft safety plan that addresses concerns regarding relative contact. Mr. Powell is in compliance with all service requests at the time of this report.

Cox
01011817

Susan Powell, mother

No service plan has been developed at the time of this report due to the Department's inability to locate Ms. Powell to assess service needs.

2. **Child:**

C███ educational needs shall be met by his placement. C███ currently attends 1st grade at Carson Elementary School where he was enrolled at the time of his removal. C███ currently attends mental health therapy appointments weekly to meet his psychological needs. C███ placement takes part in these sessions when requested by the therapist. C███ father also took part in one session during this last review period. C███ is making emotional progress in therapy relating to his placement and his mother being gone although is less open in these sessions than his brother.

3. **Caregiver:**

The placement shall meet all of C███ educational, medical, social, psychological, ethnic, and cultural needs.

4. **DSHS/Voluntary Agency:**

DCFS shall make all necessary referrals and continue with ongoing services for the parent(s).

DCFS will do monthly health and safety visits, provide case management, and support the placement.

**D. Visit Plan**

1. **Frequency:**

Once weekly visits for 3 hour duration on Sundays for father, B███ and C███

2. **Quality:**

All visits have been attended by father. Father and children display affection toward one another. Father has activities planned out that engage the children a majority of the time. Father demonstrates adequate parenting skills during the visits.

3. **How has the visit plan been helpful to achieve reunification of the family?**

Father and children are able to remain in at least weekly contact and engage in similar activities that they did prior to removal from their home.

Cox
01011818

E. Court Orders
Discuss how current placement and services offered were responsive to court orders.

Placement has ensured that the children are attending much needed counseling and meeting the basic needs in a stable environment while Mr. Powell completed the psychological evaluation/parenting assessment. The placement will continue to do the same while Mr. Powell engages in counseling as recommended by his evaluation.

F. Permanency Plan (for other than return home).

   1. Discuss steps taken to finalize the current placement:

     N/A, return home to father is the primary plan at the time of this report.

   2. Discuss barriers to finalizing the current placement:

     There are no barriers to placement with the Cox family should the boys not return home to their father.

Cox
01011819

A.  Legal Recommendations:

    1.  Identify the Permanent Plan and Alternate Permanent Plan (for upcoming report period). Place a "P" next to the primary plan and an "A" next to the alternate permanency plan (if applicable).

Permanent Legal Arrangements

    ☒  **P**  Return Home      ☐    Other Plan: _____

    ☐    Adoption

    ☐    Guardianship

    ☒  **A**  Third Party Custody (with someone other than parent, RCW 26.10)

    2.  When "Other Plan" is selected as the primary plan, identify the compelling reason that this plan is in the child's best interest.

    3.  Tentative completion date of the present permanent plan, depending on actions, progress and cooperation of those involved is: **7/19/12**

    4.  Recommended Legal Status of the Child:

        ☒  Dependent (check one of the following): ☐ In-home    ☒ Out-of-home care

        ☐  Dependency dismissed

    5.  If one of the following circumstances exist, a petition to terminate parental rights must be filed unless compelling reasons exist to the contrary.  (check any box which applies):

        ☐  The child is currently in out-of-home care and has been in out-of-home care for 12 of the most recent 19 months.

        ☐  The parent has abandoned this child as defined in RCW 13-34.030 or 13.34.180(7) OR has been convicted of abandoning this child as defined in RCW 9A.42.060, 070, or 080.

        ☐  The parent has been convicted of one or more of the criminal activities listed in RCW 13.34.132(4).

        ☒  None of the above listed circumstances apply.

    6.  When one of the circumstances in V.A.5. exists, and the case plan is not adoption, discuss compelling reasons for not filing a petition to terminate parental rights.

B.  Placement Recommendations:

    1.  Placement in:

        a) ☐ Family home with _____ because:

        b) ☒ Relative placement with **Charles & Judy Cox** because:

            The maternal grandparents are able to meet C███ needs while providing a stable living environment while parent(s) participate in service plan for children to return home.

Cox
01011820

c) ☐ Any non-relative, out of home placement (foster care, residential treatment, etc.) because:

2. If the recommendation is other than family home, discuss continued need for placement and continued safety threats to the child if returned to either or both parents.

   Father has been recommended to undergo counseling and stabilize the living environment in his own home prior to the boys returning to him full time.

3. If the recommendation is other than family home, discuss how this placement is the most appropriate and least restrictive setting, in close proximity to the family home, which can safely meet the best interests of the child.

   C█████ needs are currently being met while his parent(s) address any parenting deficiencies so that he may safely return to their care. C█████ is placed so that he can participate in visitation and other services that may help facilitate reunification.

4. ☒ Child is not placed out of state    ☐ Child is placed out of state

   If placement is a substantial distance from a parent's home or is out of state, explain why this placement is in the best interest of the child.

   N/A.

5. Permanency planning efforts if continued out of home care is recommended:
   ☒ Does not apply because return home is imminent (less than six months).
   ☐ Return home is not imminent, (complete a and b below).

   a) In the event the child is unable to return home, discuss whether the current placement is expected to be the child's permanent placement.

   b) If the child is unable to return home and the current placement is not expected to be the child's permanent placement, discuss steps to be taken to identify, recruit, process, and approve a permanent placement.

Cox
01011821

C. Recommended Services and Responsibilities for the next six months:

1. Parents/Family: Identify services/responsibilities to meet educational, medical, environmental, social psychological, and cultural needs.

Family Level Objective:

The family will ensure healthy development of C█████ through positive interaction and will provide a stable home environment that will ensure that all basic needs are met including supervision, nutrition, hygiene, and medical/counseling appointments as described in the tasks.

Tasks:

Father will interact with his child during visitation and demonstrate proper child care, nutrition, hygiene, and meeting of needs. Father will not use this time to discuss private, legal, or other adult matters.

Father will maintain adequate and safe housing:

Father will obtain housing separate from any persons with criminal history or pending criminal charges.

Father will support C█████ in out of home care by:

Father will attend all scheduled visitations.

Father will sign all releases of information to assist in service and case planning.

Individual Level Objective for Ms. Powell:

Should Ms. Powell contact the Department, an appropriate service plan will be developed at that time.

Individual Level Objective for Mr. Powell:

☐ Mr. Powell will not associate with any people who are engaged in criminal activity.

☐ Mr. Powell will have contact with the assigned social worker and guardian ad litem on a regular basis, at a minimum of bi-weekly by phone or email to give progress updates on his service plan.

☐ Mr. Powell will allow the social worker and guardian ad litem to have announced and unannounced visits to his home.

☐ Mr. Powell will follow the safety plan developed by him in coordination with the Department regarding contact between his children and his relatives.

☐ Mr. Powell will participate mental health counseling with a PhD level mental health therapist within one week of being referred for such service.

☐ Mr. Powell shall sign and continue updating all necessary releases of information for past and present records, evaluations, and information that may be pertinent to case planning.

Cox
01011822

2. Child:  Identify service and responsibility to meet each identified need:

a)  Educational Needs:

C███ educational needs shall be met by his placement.  This includes, but is not limited to, maintaining good communication to ensure the child's educational needs are being met, participating in any meetings related to C███ education and being an educational advocate for C███

b)  Medical Needs:

C███ medical needs shall be met by the placement.  This includes, but is not limited to, scheduling and attending regular well child checks and dental exams, dispensing medication as prescribed by the physician, following through with any physician recommendations and seeking emergent medical treatment when necessary.  Typically, the Department allows the parents to be an active part of this process.  However, in this case, due to the active restraining orders between the placement and Mr. Powell, this will not be allowed.

c)  Social Needs:

C███ social needs shall be met by the foster parent/relative caregiver in conjunction with visitation with his parent(s).

d)  Psychological Needs:

C███ psychological needs shall be met by the placement.  This includes, but is not limited to scheduling and attending therapy appointments and participating in therapy appointments when requested to do so by either C███ or the provider.  This also includes participating in family therapy and sibling therapy as determined necessary by the current counselor at GSMH.  C███ has weekly therapy appointments at this time.

e)  Cultural Needs:

C███ ethnic and cultural needs shall be met by the placement in conjunction with visitation with his parent(s).

3.  Identify services and responsibilities to meet child and family needs:

a)  Caregiver:

The placement shall meet all of C███ educational, medical, social, psychological, ethnic, and cultural needs.

b)  Voluntary Agency:

N/A.

Cox
01011823

c) DSHS:

DCFS shall make all necessary referrals and continue with ongoing services for the parent(s) and children.

DCFS will do monthly health and safety visits, provide case management, and support the placement.

4. Assessment of the Recommended Service Plan:

a) Discuss how the service plan will alleviate the current safety threats and help assure safe and proper care of the child if the child:
   (i) Is returned home:

The psychological evaluation will assist the Department in identifying any parental deficiencies that may exist for which Mr. Powell could use services to remedy to regain custody of his children. The recommended counseling, per the psychological evaluator, will assist in stabilizing Mr. Powell and his home for the children.

   (ii) Remains in placement:

If the child remains in placement, he will receive all necessary and appropriate referrals for services while his parent(s) work on their parental deficiencies.

b) How will the service plan improve conditions in the parent's home?

The service plan addresses mental health and parenting issues which provide barriers to safe and effective parenting of C█████

c) How will the service plan help to achieve a permanent plan other than return home?

N/A. The current permanent plan at this point in time is to return home.

5. Visit Plan (Attach Famlink Visit Plan):

<u>Mother:</u> A visitation plan will be developed should Ms. Powell come forward and request visits.

<u>Father:</u> Two visits each week, three hours each minimum, supervised by DCFS or DCFS approved person. Visits may be expanded upon agreement of the GAL and social worker.

D. Independent Living Skills

If child is age 15 and older, what planning is being done in each of the following areas in anticipation of youth reaching age 18?

1. Career Planning and Education goals:

N/A. C█████ is 7 years old.

Cox
01011824

2.  Self Care:

    N/A

3.  Work and Study Life:

    N/A

4.  Housing and Money Management:

    N/A

5.  Daily Living Skills:

    N/A

6.  Social Relationships and Communication:

    N/A

Cox
01011825

E. Current Status/Social Summary of Child:

Update: Forest Jacobson, Court SW:

Health/Medical:
C▇▇▇ had his last well child check in October of 2011 at the Franciscan Canyon Road Clinic. C▇▇▇ went to the dentist (Lindquist) on 12/19/11 and had a good check up with no cavities. C▇▇▇ recently had a bout of stomach flu or other 24 hour bug but has recovered nicely.

School/Development: C▇▇▇ attends 1st grade at Carson Elementary School. He is reported to be at grade level in the core subjects. His teacher reported that C▇▇▇ is liked by the kids in his class but C▇▇▇ tends to hang back from social interaction. There has been an improvement in this area since C▇▇▇ began counseling and was placed with his grandparents. C▇▇▇ was recognized by his school for showing compassion for others recently.

Social Connections:
C▇▇▇ is bonded to his brother despite their noted sibling rivalry. C▇▇▇ and his brother often compete for attention of their father at visits and of this social worker during our interactions. C▇▇▇ has finally settled in and is comfortable with his grandparents and the stable routine they offer, per his mental health counselor. C▇▇▇ is also developing a trusting relationship with his counselor and is beginning to open up more about his mother. In a recent session C▇▇▇ discussed a wreath he made for his mother that he wanted to put her picture in the middle and write "I miss Susan". When asked why he would not write "I miss my mom", C▇▇▇ replied that other kids have missing moms and he wanted to say Susan so they would know it was his mother if they recognized the picture. C▇▇▇ obviously misses his mother as he has stated this in counseling and at his placement. He told his counselor that he didn't think his mommy would be home for Christmas this year.

Cox
01011826

F.  Current Status/Social Summary of Parent:
    This section will not be shared with the child's caregiver.
    Confidential information related to parents' health issues, mental health treatment and
    substance abuse treatment should be discussed in this section.
    (Recognize strengths as well as issues which interfere with parenting).

Update Forest Jacobson, Court SW:

Mr. Powell has been in consistent contact with the Department since the petition was filed.
After he obtained legal counsel, a psychological evaluation provider was chosen and referral
made. Mr. Powell, at the time of this report, has completed the testing measurements and is
scheduled for interviews and child/parent observations. The provider expects to have a
preliminary report to the Department some time mid November at the earliest. Mr. Powell
has attended all scheduled visitation and sends his sons daily letters telling them he misses
them, loves them, and is working on getting them home to him among other little items of
interest to the boys (bugs, movies, etc).

Mr. Powell has informed his attorney and the GAL that he has obtained housing separate
from his family members in the hopes that his boys can come home to him. The Department
would like to see the results of the psychological evaluation before any move to return the
boys to his custody is made.

Mr. Powell has made several requests of the current relative placement that have been
somewhat difficult to accommodate but the placement is doing their best to abide by all
restrictions to maintain stability for the boys. Mr. Powell is working on identifying a suitable
other placement that he would prefer for his children.


Update 1/4/12 by Forest Jacobson
As to father, Joshua Powell:

Mr. Powell has completed his psychological evaluation and submitted a safety plan to the
Department for approval regarding contact between his children and his relatives that resided
in the home from which the children were removed. The psychological evaluation indicates
(as does visitation notes) that Mr. Powell has a firm grasp on parenting skills with no safety
issues noted during the parenting assessment observation. Mr. Powell was diagnosed with
Adjustment Disorder with Anxiety along with Traits of Narcissistic Personality Disorder.
The evaluator noted that during the three separate interviews conducted for this evaluation,
"Mr. Powell appeared to be defensive and sometimes responded in an evasive manner. Often
times, this appeared to be a very subtle choice of words". The Child Abuse Potential
Inventory testing measure section indicates that there was some attempt by Mr. Powell to
present himself in a positive light (the Faking Good Index was invalid) and that the Parenting
Stress Inventory responses were also noted as defensive to the extent where Mr. Powell
appeared to be responding in an attempt to look good and deny any sources of stress. As this
case is not related to any allegations of actual physical abuse of C███ or B███ by Mr.
Powell, the Department is not overly concerned about these two testing measures.


Mr. Powell was also described as being tangential at times, where he would drift into
comments about the media, the Cox family, his sister Jennifer Graves, and elements of the
Mormon Church trying to destroy his family.

Cox
01011827

Mr. Powell is indicated to have demonstrated a strong level of suspicious preoccupation toward the Cox family, placing blame for his situation upon the Cox family but not considering the impact his actions may have had on others. This is significant as the children's therapist also had the same experience with Mr. Powell when he was invited to participate in a therapy session with C█████ and E█████

While the evaluation had identified strengths (competent parent, bonded to children, employed, established new residence) the evaluator did question how valid the results were given that the interactions between Mr. Powell and his sons sometimes seemed "staged or forced". Concerns noted by the evaluator and shared by the children's therapist, and this social worker indicate that Mr. Powell's behaviors, such as inability to rein in his opinions and commentary in front of the children, do not appear protective of his sons' psychological wellbeing.

The psychological evaluation indicates that Mr. Powell will benefit greatly from therapeutic intervention by a PhD level therapist who is also familiar with personality disorders and forensics. The Department concurs with the evaluator that this service will assist Mr. Powell in learning to curb his commentary in front of his children while also giving him a venue within which he can vent his frustrations/anger at his current circumstances. The Department is currently seeking such a provider that is contracted with the State or another way to manage payment for this service.

In conclusion, the Department is typically concerned with physical safety of children foremost. In this case, there is no evidence of issues in this area. However, this is not a typical case in many ways. The Department has two main concerns related to Mr. Powell's parenting of C█████ and B█████: 1) Mr. Powell has demonstrated over time in several situations his inability to consider the psychological effect of his comments on his children. 2) Mr. Powell's current legal situation with regard to Susan Powell's disappearance and the incestual computer generated child pornography found by Utah law enforcement on Josh's computer from their 2009 search of his home in Utah make his home unstable in that law enforcement is quite clear and public with their intention to arrest him in the near future. The Department's concern with this would be the boys returning home to Mr. Powell only to witness another police action against a member of their family and their only present parent. This worker cannot imagine there would be another scenario that would be as psychologically damaging as witnessing this at this point due to all the other adjustment issues with which they are currently dealing (their mother being gone with no valid explanation, moving residences at least twice in the last two years, ongoing family conflict, being without their father, missing their paternal relatives, being recognized in public to include people approaching them and staring, isolation from peers-particular to C█████ at school).

<u>As to mother, Susan Powell</u>
The Department is unable to locate Ms. Powell and cannot provide any other update at this time.

Cox
01011828

## VI. ATTACHMENTS AND SIGNATURES:

Attachments: (Required)

- ☐ Assessment of Progress
- ☐ Service Plan
- ☐ Visit Plan
- ☐ Determination of American Indian Status
- ☐ Education Plan
- ☐ Transition Plan for Youth Existing Care (17.5 and older)
- ☐ CHET Screen (Initial ISP)
- ☐ IL Learning Plan and Progress Report (15 and older)

Attachments: (Optional)

| | | |
|---|---|---|
| ☐ Safety Plan | ☐ CHET Screen | ☐ Other: |
| ☐ SDM Risk Assessment | ☐ Famlink Health and | ☐ Other: |
| ☐ Transition and Safety Plan | Education Report | ☐ Other: |
| ☐ Caregiver Report to the Court | ☐ Fostering Well-Being Care | |
| ☐ Reunification Assessment | Coordination Summary | |

Signatures: (Optional):

1. Signatures by parents, child or voluntary agency indicates receipt of the ISSP. Signatures do not necessarily indicate agreement with all parts of this plan

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |
| SIGNATURE | DATE |

2. Copies of this ISSP must be provided to parents. Social Worker certifies that copies of this ISSP were provided to parents on dates listed below:

| MOTHER'S NAME<br>**Susan Powell** | DATE |
|---|---|
| FATHER'S NAME<br>**Joshua Powell** | DATE |
| YOUTH TWELVE AND OLDER | DATE |

| Dates parents were notified of visitation changes | Dates parents were notified of placement changes |
|---|---|
| | |

| | | DATE |
|---|---|---|
| Submitted by: | DIVISION OF CHILDREN AND FAMILY SERVICES SOCIAL WORKER<br>**Forest Jacobson, MSW** | |
| Approved by: | DIVISION OF CHILDREN AND FAMILY SERVICES SUPERVISOR<br>**Jane Wilson, MSW** | DATE |

Approval for initial placement in Behavior Rehabilitation Services (BRS):

| DCFS ADMINISTRATOR OR DESIGNEE | DATE |
|---|---|

Original: Juvenile Court or Other Review Body

c:   Case File                        Social Worker Attorney
     Parents/Parent's Attorney        Guardian ad Litem/GAL Attorney
     Voluntary Agency              Child's Caregiver

Cox
01011829

_____

Child (Over 12)/Child's Attorney

Cox
01011830



**Determination of Native American Indian Status**

| CHILD'S NAME |
|---|
| C█████ P█████ |

I.  Child is (check all that apply):

    A.  ☐ A federally recognized Indian child;
          ☐ Member or eligible for membership in a federally recognized tribe;
          ☐ Any person determined or eligible to be found to be Indian by the Secretary of the Interior Bureau of Indian Affairs (BIA).
          ☐ An Eskimo, Aleut, or other Alaskan Native.
          Name of  tribe/Village(s):

    B.  ☐ A Canadian First Nations child:  A member or entitled to be a member of a Canadian treaty or band Metis community, or non-status Indian community from Canada.
          First Nation/Band Name:

    C.  ☐ Another Indian child:  A person considered to be an Indian by a federally or non-federally recognized tribe or Indian organization.

    D.  ☐ The child may be an Indian.  List tribes and Indian organizations to be contacted in order to seek verification.

    E.  ☐ The following tribes have been contacted, and the child and his/her ancestors are not considered to be Indian.

    F.  ☒ The child's parents and relatives have been interviewed (see ethnic identity form) and the child is not an Indian to our knowledge.  (None of the above apply).  Omit **II** and **III** below.

II.  If the tribe is not available, or has requested staffing by LICWAC, has the child's case plan been reviewed by LICWAC?

    ☐ Yes      Date staffed or to be staffed:
    ☐ No       Reason: Discuss plan to obtain consultation from Native American Consultant or LICWAC:

Discuss plan to obtain consultation from Native American Consultant or LICWAC:

III.  For children under the jurisdiction of the Indian Child Welfare Act, has the tribe or Bureau of Indian Affairs (BIA) been notified of custody proceedings in the state court?

    ☐ Yes      Date staffing:
    ☐ No       Reason:

Original:  Juvenile Court or Other Review Body
c:    Case File
    Parents/Parent's Attorney          Social Worker Attorney
    Voluntary Agency             Guardian ad Litem/GAL Attorney
    Child (Over 12)/Child's Attorney     Child's Caregiver

Cox
01011831

 **Washington State Department of Social & Health Services**

**CA Children's Administration**

**Confidentiality Notice**
**Individual Service and Safety Plan**

Child: C___ P___ _____

Caregiver For: **Relative Care** _____

A copy of this child's Individual Service and Safety Plan (ISSP) has been provided to you as the caregiver for this child. This information has been provided so that you can:

- Better understand the child;
- Provide appropriate care for the child; and
- Participate in planning for the child.

Much of the information contained in the ISSP is private or confidential. State Law (RCW 74.13.280) requires that you treat information you receive about the child in a confidential manner. You must not discuss information contained in the ISSP with others such as friends, relatives or neighbors. You must store the ISSP in a manner that will keep the contents private.

Usually, you may only discuss information contained in the ISSP with:

- A representative of the Department, including staff from the Division of Children and Family Services (DCFS) and Division of Licensed Resources (DLR);
- A Child Pl acing Agency Social Worker if the child has one;
- The child's assigned Guardian ad Litem (GAL) or Court Appointed Special Advocate (CASA); or
- Others designated by either the DCFS Social Worker or the Child Placing Agency Social Worker (such as the child's teacher or doctor).

If you have any questions about what information can be discussed with the child's teacher, counselor, or doctor, check with the child's social worker. In some cases a release of information may be required before information can be exchanged.

This child's Individual Service and Safety Plan was ☐ given ☐ mailed to the child's caregiver on the date listed below.

_____          _____
SOCIAL WORKER                                    DATE

Original: Case File
    c: Foster Parent/Relative/Prospective Adoptive Parent

Cox
01011832

dep ext.
as to mom on 2/1/12



**Washington State
Department of Social
& Health Services**
**CA** Children's Administration

# Individual Service and Safety Plan (ISSP)

| TYPE OF HEARING/REVIEW | | | |
|---|---|---|---|
| **First Dependency Review** | | | |

| DATE OF HEARING/REVIEW | TIME OF HEARING/REVIEW | DATE OF REPORT | ISSP COVERS |
|---|---|---|---|
| **1/19/12** | **1:30PM** | **1/5/12** | **1/19/12 to 7/19/12** |

## I. IDENTIFYING INFORMATION

| CHILD'S NAME | LEGAL NUMBER |
|---|---|
| B■■■ P■■■ | **11-7-01803-6** |

| DATE OF BIRTH | AGE | CASE NUMBER | RECEIVES SSI/SSA |
|---|---|---|---|
| **1/2/2007** | **5 years** | **1513430** | ☐ Yes ☒ No |

RACE (Check all that apply)

☐ Black or African American ☐ American Indian or Alaska Native ☒ White
☐ Asian ☐ Native Hawaiian or Other Pacific Islander ☐ Unable to Determine

☐ Yes. This child is American Indian or Alaska Native per attachment on initial ISSP report
 Date of report:
☒ No. (If child is not American Indian or Alaska Native, subsequent reports can delete attachment).

| TYPE OF PLACEMENT | VOLUNTARY AGENCY NAME |
|---|---|
| **Relative care** | |

| DATE OF PETITION | DATE OF FINDING OF DEPENDENCY | | DATE OF DISPOSITION | |
|---|---|---|---|---|
| **9/27/11** | Mother: | Father: | Mother: | Father: |

| CURRENT LEGAL STATUS: **Dependent** |
|---|

| DATES OF PREVIOUS REVIEW HEARING: **N/A** |
|---|

## PRINCIPALS INVOLVED ARE:

| MOTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Susan Powell address unknown** | **none** |

| MOTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **none assigned** | |

| FATHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Joshua Powell confidential address** | **253-226-0158** |

| FATHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| **Jeffrey Bassett 3313 Viewcrest Dr NE Bremerton, WA 98310-9741** | **(360) 204-8865** |

next review PP
July 26
@ 1:30 pm

DSHS 15-209 (REV. 04/2011)    1

Cox
01011843

| GUARDIAN AD LITEM/CASA'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| Julio Serrano, 5501 6th Ave., Tacoma, WA 98406 | 253-798-7928 |
| GUARDIAN AD LITEM/CASA'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| DSHS SOCIAL WORKER'S NAME AND ADDRESS | TELEPHONE NUMBER |
| Forest Jacobson 1949 S. State St., Tacoma, WA 98405 | 253-983-6222 |
| DSHS SOCIAL WORKER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| John Long AAG, P.O. Box 2317, Tacoma, WA 98401 | 253-597-4277 |
| CHILD'S NAME | TELEPHONE NUMBER |
| | |
| CHILD'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S NAME AND ADDRESS | TELEPHONE NUMBER |
| | |
| OTHER'S ATTORNEY NAME AND ADDRESS | TELEPHONE NUMBER |
| | |

## II. CASE BACKGROUND

A. Within the last 19 months the child has been in out-of-home care for a total of 4 months. (Include prior placement episodes that fall within the last 19 months. Provide any relevant explanation).

B. Begin date of current placement episode: **9/22/11 police protective custody**

C. Identify events and risk factors related to child safety and well being that caused child to be placed in out-of-home care:

1. On 9/22/11, B███ P███ (DOB 1/19/05) and B███ P███ (DOB 1/2/07) were placed into police protective custody by law enforcement after the arrest of their paternal grandfather for 14 counts of Voyeurism and 1 count of Possession of Depictions of Minor Engaged in Sexually Explicit Conduct 2nd Degree. The paternal grandfather, Steven Powell (DOB █████ resided in the same home as B███ and B███ along with their father, Joshua Powell (DOB 1/20/76).

2. On 9/22/11, LE notified the Department that Joshua Powell is also a subject of their ongoing investigation related to the charges already filed against the grandfather. LE indicated that Joshua Powell's career is with computers and that the pornography LE has analyzed is technologically "sophisticated".

3. On 9/22/11, LE reported to the Department that there were 15 computers in various areas of the home that were accessible to persons other than the grandfather. LE also indicated they have not yet been able to analyze all of the pornographic evidence but at this time they had not seen that B███ or B███ were exposed to it. Investigators estimated they have only accessed approximately only 5% of the computer data as of 9/22/11.

Cox
01011844

4.  On 9/22/11, LE reported to the Department that there is an adult uncle to B███ and B███ also living in the home who LE indicated is Schizophrenic and who has greeted LE at the front door naked and runs around the home either naked or in diapers.

5.  On 9/22/11, LE reported to the Department that other concerning items found in the home included a gallows and hangman's noose in addition to a poster depicting a female with a sword entering her vagina and exiting her stomach hanging on the wall.

6.  On 9/23/11, Joshua Powell asked the Department to file a dependency action with regard to B███ and B███ because the maternal grandparents are "the most dangerous people on the planet to my sons". Joshua went on to state that the media defamation and court appearances initiated by the maternal grandparents are keeping him from financially being capable of meeting all the needs of his children to include medical coverage and access to mental health counseling.

7.  On 9/23/11, Joshua Powell informed the CPS investigative social worker that he takes pictures of other peoples' legs in public places but is careful that they are not too close or show any faces. Mr. Powell talked about the laws surrounding such behavior and appeared to understand them. He stated that he is only an amateur but he likes to take pictures of legs when he sees something that is nice. He also stated it is less expensive than using stock photography.

8.  On 9/23/11, when asked if he would turn in his father if he caught his father with sexually explicit pictures of 7-8 year old girls, Joshua Powell stated very slowly and after a lengthy pause, he would turn his father in "if it were a threat to children". This statement was made during Joshua's interview with the CPS investigative social worker.

9.  On 9/23/11, when asked if his father, Steven Powell, watched B███ or B███ alone, Joshua Powell replied that he and his sister were the primary caretakers for his sons but that his father has watched the kids or taken them to the store on his own.

10. On 9/23/11, the CPS investigative social worker asked Joshua Powell if anything else would come to light that he (Joshua) was aware of once all the evidence was analyzed. Joshua Powell stated that he had copied one of his father's (Steven Powell's) thumb drives onto his own computer but stated he was not particularly worried about it as it was only information related to Susan's disappearance.

11. Joshua Powell is currently the only person of interest in the West Valley City, Utah Police Department homicide investigation into his wife's (Susan Powell, mother to B███ and B███ disappearance. Susan Powell (DOB 10/16/81) has been missing since 12/6/09.

D.  Child/family needs were originally identified as (consider medical, educational, environmental, psychological, and cultural needs):

Braden needs a safe, stable living environment. The father needs mental health services.

## III. PREPLACEMENT SERVICES

A.  Identify services offered or provided to family to prevent child's placement. Indicate how services offered relate to safety threat(s) identified in II C.

No services offered prior to placement due to children placed in police protective custody.

Cox
01011845

B. If no services were offered to prevent placement, explain why:

No services offered prior to placement due to children placed in police protective custody.

☐ Does not apply.

A. Legal: Identify the Permanent Plan and Alternate Permanent Plan (during last report period). Place a "P" next to the primary plan and an "A" next to the alternate permanency plan:

Permanent Legal Arrangements
☒ **P**   Return Home        ☐   Other Plan: _____
☐        Adoption
☐        Guardianship
☒ **A**   Third Party Custody (with someone other than parent, RCW 26.10)

B. Tentative completion date for previous permanent plan was: **1/19/12**
   Child is placed in:
   1. ☐ Family home with
   2. ☒ Relative placement with **maternal grandparents, Charles & Judy Cox**
   3. ☐ A non-relative, out of home placement.

C. Previous Service Plan: Review and Evaluation of Objectives and Tasks
   1. Parent(s):

   Joshua Powell, father
   1. Joshua Powell shall participate in a psychological evaluation to include a parenting assessment with Dr. Manley and follow all recommendations. COMPLETED 12/9/11
   2. Joshua Powell will develop a safety plan to address concerns regarding relative contact. IN PROGRESS, IN COMPLIANCE
   3. Joshua Powell shall sign a release of information for all service providers to provide information to the social worker and GAL.
   4. Joshua Powell shall provide written documents to the social worker and GAL regarding attendance at, participation in, completion of, and progress in all court ordered services.
   5. Joshua Powell shall keep the social worker and GAL informed of his current address and contact telephone number throughout the duration of the dependency.
   6. Joshua Powell shall cooperate with reasonable requests by DSHS and provide the Department with income and asset information necessary to establish and maintain the child's eligibility for medical care, evaluations, counseling, and other remedial services, foster care reimbursement and other related services and benefits.
   Mr. Powell has completed the psychological evaluation and is awaiting the Department to provide counseling at a PhD level. The Department has a lag in finding an appropriate provider that is contracted with the Department. Mr. Powell has submitted a draft safety plan that addresses concerns regarding relative contact. Mr. Powell is in compliance with all service requests at the time of this report.

Cox
01011846

Susan Powell, mother

No service plan has been developed at the time of this report due to the Department's inability to locate Ms. Powell to assess service needs.

2. Child:

B████s educational needs shall be met by his placement. B████currently attends a half day preschool program at a center where he previously attended to ease with adjustment issues. B████currently attends mental health therapy appointments weekly to meet his psychological needs. B████s placement takes part in these sessions when requested by the therapist. B████s father also took part in one session during this last review period. B████is making emotional progress in therapy relating to his placement and his mother being gone.

3. Caregiver:

The placement shall meet all of B████s educational, medical, social, psychological, ethnic, and cultural needs.

4. DSHS/Voluntary Agency:

DCFS shall make all necessary referrals and continue with ongoing services for the parent(s).

DCFS will do monthly health and safety visits, provide case management, and support the placement.

D. Visit Plan

1. Frequency:

Once weekly visits for 3 hour duration on Sundays for father, B████ and C████

2. Quality:

All visits have been attended by father. Father and children display affection toward one another. Father has activities planned out that engage the children a majority of the time. Father demonstrates adequate parenting skills during the visits.

3. How has the visit plan been helpful to achieve reunification of the family?

Father and children are able to remain in at least weekly contact and engage in similar activities that they did prior to removal from their home.

Cox
01011847

E.  Court Orders
Discuss how current placement and services offered were responsive to court orders.

Placement has ensured that the children are attending much needed counseling and meeting the basic needs in a stable environment while Mr. Powell completed the psychological evaluation/parenting assessment.  The placement will continue to do the same while Mr. Powell engages in counseling as recommended by his evaluation.

F.  Permanency Plan (for other than return home).

1.  Discuss steps taken to finalize the current placement:

N/A, return home to father is the primary plan at the time of this report.

2.  Discuss barriers to finalizing the current placement:

There are no barriers to placement with the Cox family should the boys not return home to their father.

Cox
01011848

A.  Legal Recommendations:

1.  Identify the Permanent Plan and Alternate Permanent Plan (for upcoming report period). Place a "P" next to the primary plan and an "A" next to the alternate permanency plan (if applicable).

Permanent Legal Arrangements

☒ **P**   Return Home          ☐      Other Plan: _____
☐         Adoption
☐         Guardianship
☒ **A**   Third Party Custody (with someone other than parent, RCW 26.10)

2.  When "Other Plan" is selected as the primary plan, identify the compelling reason that this plan is in the child's best interest.

3.  Tentative completion date of the present permanent plan, depending on actions, progress and cooperation of those involved is: 7/19/12

4.  Recommended Legal Status of the Child:
    ☒ Dependent (check one of the following): ☐ In-home   ☒ Out-of-home care
    ☐ Dependency dismissed

5.  If one of the following circumstances exist, a petition to terminate parental rights must be filed unless compelling reasons exist to the contrary.  (check any box which applies):
    ☐ The child is currently in out-of-home care and has been in out-of-home care for 12 of the most recent 19 months.
    ☐ The parent has abandoned this child as defined in RCW 13-34.030 or 13.34.180(7) OR has been convicted of abandoning this child as defined in RCW 9A.42.060, 070, or 080.
    ☐ The parent has been convicted of one or more of the criminal activities listed in RCW 13.34.132(4).
    ☒ None of the above listed circumstances apply.

6.  When one of the circumstances in V.A.5. exists, and the case plan is not adoption, discuss compelling reasons for not filing a petition to terminate parental rights.

B.  Placement Recommendations:

1.  Placement in:
    a)  ☐ Family home with _____ because:

    b)  ☒ Relative placement with **Charles & Judy Cox** because:

        The maternal grandparents are able to meet B████s needs while providing a stable living environment while parent(s) participate in service plan for children to return home.

Cox
01011849

c) ☐ Any non-relative, out of home placement (foster care, residential treatment, etc.) because:

2. If the recommendation is other than family home, discuss continued need for placement and continued safety threats to the child if returned to either or both parents.

   Father has been recommended to undergo counseling and stabilize the living environment in his own home prior to the boys returning to him full time.

3. If the recommendation is other than family home, discuss how this placement is the most appropriate and least restrictive setting, in close proximity to the family home, which can safely meet the best interests of the child.

   B████'s needs are currently being met while his parent(s) address any parenting deficiencies so that he may safely return to their care. B████ is placed so that he can participate in visitation and other services that may help facilitate reunification.

4. ☒ Child is not placed out of state     ☐ Child is placed out of state

   If placement is a substantial distance from a parent's home or is out of state, explain why this placement is in the best interest of the child.

   N/A.

5. Permanency planning efforts if continued out of home care is recommended:
   ☒ Does not apply because return home is imminent (less than six months).
   ☐ Return home is not imminent, (complete a and b below).

   a) In the event the child is unable to return home, discuss whether the current placement is expected to be the child's permanent placement.

   b) If the child is unable to return home and the current placement is not expected to be the child's permanent placement, discuss steps to be taken to identify, recruit, process, and approve a permanent placement.

Cox
01011850

C. Recommended Services and Responsibilities for the next six months:

1. Parents/Family: Identify services/responsibilities to meet educational, medical, environmental, social psychological, and cultural needs.

Family Level Objective:

The family will ensure healthy development of B██████ through positive interaction and will provide a stable home environment that will ensure that all basic needs are met including supervision, nutrition, hygiene, and medical/counseling appointments as described in the tasks.

Tasks:

Father will interact with his child during visitation and demonstrate proper child care, nutrition, hygiene, and meeting of needs. Father will not use this time to discuss private, legal, or other adult matters.

Father will maintain adequate and safe housing:

Father will obtain housing separate from any persons with criminal history or pending criminal charges.

Father will support B█████ in out of home care by:

Father will attend all scheduled visitations.

Father will sign all releases of information to assist in service and case planning.

Individual Level Objective for Ms. Powell:

Should Ms. Powell contact the Department, an appropriate service plan will be developed at that time.

Individual Level Objective for Mr. Powell:

- ☐ Mr. Powell will not associate with any people who are engaged in criminal activity.
- ☐ Mr. Powell will have contact with the assigned social worker and guardian ad litem on a regular basis, at a minimum of bi-weekly by phone or email to give progress updates on his service plan.
- ☐ Mr. Powell will allow the social worker and guardian ad litem to have announced and unannounced visits to his home.
- ☐ Mr. Powell will follow the safety plan developed by him in coordination with the Department regarding contact between his children and his relatives.
- ☐ Mr. Powell will participate mental health counseling with a PhD level mental health therapist within one week of being referred for such service.
- ☐ Mr. Powell shall sign and continue updating all necessary releases of information for past and present records, evaluations, and information that may be pertinent to case planning.

Cox
01011851

2.  Child:  Identify service and responsibility to meet each identified need:

    a)  Educational Needs:

        B████s educational needs shall be met by his placement.  This includes, but is not limited to, maintaining good communication to ensure the child's educational needs are being met, participating in any meetings related to B████s education and being an educational advocate for B████

    b)  Medical Needs:

        B████s medical needs shall be met by the placement.  This includes, but is not limited to, scheduling and attending regular well child checks and dental exams, dispensing medication as prescribed by the physician, following through with any physician recommendations and seeking emergent medical treatment when necessary. Typically, the Department allows the parents to be an active part of this process. However, in this case, due to the active restraining orders between the placement and Mr. Powell, this will not be allowed.

    c)  Social Needs:

        B████s social needs shall be met by the foster parent/relative caregiver in conjunction with visitation with his parent(s).

    d)  Psychological Needs:

        B████s psychological needs shall be met by the placement.  This includes, but is not limited to scheduling and attending therapy appointments and participating in therapy appointments when requested to do so by either B████ or the provider. This also includes participating in family therapy and sibling therapy as determined necessary by the current counselor at GSMH. B████has weekly therapy appointments at this time.

    e)  Cultural Needs:

        B████s ethnic and cultural needs shall be met by the placement in conjunction with visitation with his parent(s).

3.  Identify services and responsibilities to meet child and family needs:

    a)  Caregiver:

        The placement shall meet all of B████s educational, medical, social, psychological, ethnic, and cultural needs.

    b)  Voluntary Agency:

Cox
01011852

N/A.

c) DSHS:

DCFS shall make all necessary referrals and continue with ongoing services for the parent(s).

DCFS will do monthly health and safety visits, provide case management, and support the placement.

4. Assessment of the Recommended Service Plan:

a) Discuss how the service plan will alleviate the current safety threats and help assure safe and proper care of the child if the child:
   (i) Is returned home:

   The psychological evaluation will assist the Department in identifying any parental deficiencies that may exist for which Mr. Powell could use services to remedy to regain custody of his children. The recommended counseling, per the psychological evaluator, will assist in stabilizing Mr. Powell and his home for the children.

   (ii) Remains in placement:

   If the child remains in placement, he will receive all necessary and appropriate referrals for services while his parent(s) work on their parental deficiencies.

b) How will the service plan improve conditions in the parent's home?

   The service plan addresses mental health and parenting issues which provide barriers to safe and effective parenting of B██████

c) How will the service plan help to achieve a permanent plan other than return home?

   N/A. The current permanent plan at this point in time is to return home.

5. Visit Plan (Attach Famlink Visit Plan):

   Mother: A visitation plan will be developed should Ms. Powell come forward and request visits.

   Father: Two visits each week, three hours each minimum, supervised by DCFS or DCFS approved person. Visits may be expanded upon agreement of the GAL and social worker.

D. Independent Living Skills
   If child is age 15 and older, what planning is being done in each of the following areas in anticipation of youth reaching age 18?

   1. Career Planning and Education goals:

Cox
01011853

N/A.  B███████ is currently 5 years old.

2.  Self Care:

    N/A

3.  Work and Study Life:

    N/A

4.  Housing and Money Management:

    N/A

5.  Daily Living Skills:

    N/A

6.  Social Relationships and Communication:

    N/A

Cox
01011854

E. Current Status/Social Summary of Child:

Update: Forest Jacobson, Court SW:

Health/Medical:

B█████ had his last well child check in October of 2011. He has been seen by a medical provider for a rash for which medication was prescribed but caused more irritation. An alternative medication seems to be getting the rash under control more. B█████ went to the dentist (Lindquist) on 12/19/11 and had a good check up with no cavities. Overall, B█████ is healthy little boy.

School/Development: B█████ has been enrolled to attend preschool daily for half day sessions. The relative placement and this worker agreed that B█████ would benefit from having some time to just be a child and interact with children in his peer group. The placement had requested full day sessions but Department policy is full day daycare is paid only for working placements. B█████ can be aggressive with others regardless of what role they play in his life but this seems to be subsiding as time passes. His score on the ASQ-SE indicated he was in need of mental health services. B█████ s now in weekly therapy sessions at Good Sam in Puyallup; there were a couple of missed weeks over the holidays due to therapist scheduling issues. His therapist indicates he is making progress in therapy in many ways. B█████ can also be very age appropriate in his behaviors and attitude.

Social Connections:

B█████ is bonded to his brother although it has been noted there is more than a standard sibling rivalry between the two of them with some aggressive behavior during disputes. B█████ is enamored of the movie Cars and all characters/toys from that movie. B█████ is obviously bonded to both his placement and his father as observed during home visits and visitation. B█████ has adjusted well into his grandparents' home. The FPS worker in the placement's home indicates that B█████ easily seeks and gives affection to his grandparents. B█████ has a much more easy-going personality than does his brother and father although when he is corrected (by this social worker asking him to keep his shoes off the car seat, for example) he can be quite temperamental.

Cox
01011855

F. **Current Status/Social Summary of Parent:**
   This section will not be shared with the child's caregiver.
   Confidential information related to parents' health issues, mental health treatment and
   substance abuse treatment should be discussed in this section.
   (Recognize strengths as well as issues which interfere with parenting).

Update Forest Jacobson, Court SW:
Mr. Powell has been in consistent contact with the Department since the petition was filed.
After he obtained legal counsel, a psychological evaluation provider was chosen and referral
made. Mr. Powell, at the time of this report, has completed the testing measurements and is
scheduled for interviews and child/parent observations. The provider expects to have a
preliminary report to the Department some time mid November at the earliest. Mr. Powell
has attended all scheduled visitation and sends his sons daily letters telling them he misses
them, loves them, and is working on getting them home to him among other little items of
interest to the boys (bugs, movies, etc).

Mr. Powell has informed his attorney and the GAL that he has obtained housing separate
from his family members in the hopes that his boys can come home to him. The Department
would like to see the results of the psychological evaluation before any move to return the
boys to his custody are made.

Mr. Powell has made several requests of the current relative placement that have been
somewhat difficult to accommodate but the placement is doing their best to abide by all
restrictions to maintain stability for the boys. Mr. Powell is working on identifying a suitable
other placement that he would prefer for his children.

<u>Update 1/4/12 by Forest Jacobson</u>
<u>As to father, Joshua Powell:</u>
Mr. Powell has completed his psychological evaluation and submitted a safety plan to the
Department for approval regarding contact between his children and his relatives that resided
in the home from which the children were removed. The psychological evaluation indicates
(as does visitation notes) that Mr. Powell has a firm grasp on parenting skills with no safety
issues noted during the parenting assessment observation. Mr. Powell was diagnosed with
Adjustment Disorder with Anxiety along with Traits of Narcissistic Personality Disorder.
The evaluator noted that during the three separate interviews conducted for this evaluation,
"Mr. Powell appeared to be defensive and sometimes responded in an evasive manner. Often
times, this appeared to be a very subtle choice of words". The Child Abuse Potential
Inventory testing measure section indicates that there was some attempt by Mr. Powell to
present himself in a positive light (the Faking Good Index was invalid) and that the Parenting
Stress Inventory responses were also noted as defensive to the extent where Mr. Powell
appeared to be responding in an attempt to look good and deny any sources of stress. As this
case is not related to any allegations of actual physical abuse of C███ or B███ by Mr.

Cox
01011856

Powell, the Department is not overly concerned about these two testing measures.

Mr. Powell was also described as being tangential at times, where he would drift into comments about the media, the Cox family, his sister Jennifer Graves, and elements of the Mormon Church trying to destroy his family.

Mr. Powell is indicated to have demonstrated a strong level of suspicious preoccupation toward the Cox family, placing blame for his situation upon the Cox family but not considering the impact his actions may have had on others. This is significant as the children's therapist also had the same experience with Mr. Powell when he was invited to participate in a therapy session with C███ and B███

While the evaluation had identified strengths (competent parent, bonded to children, employed, established new residence) the evaluator did question how valid the results were given that the interactions between Mr. Powell and his sons sometimes seemed "staged or forced". Concerns noted by the evaluator and shared by the children's therapist, and this social worker indicate that Mr. Powell's behaviors, such as inability to rein in his opinions and commentary in front of the children, do not appear protective of his sons' psychological wellbeing.

The psychological evaluation indicates that Mr. Powell will benefit greatly from therapeutic intervention by a PhD level therapist who is also familiar with personality disorders and forensics. The Department concurs with the evaluator that this service will assist Mr. Powell in learning to curb his commentary in front of his children while also giving him a venue within which he can vent his frustrations/anger at his current circumstances. The Department is currently seeking such a provider that is contracted with the State or another way to manage payment for this service.

In conclusion, the Department is typically concerned with physical safety of children foremost. In this case, there is no evidence of issues in this area. However, this is not a typical case in many ways. The Department has two main concerns related to Mr. Powell's parenting of C███ and B███ 1) Mr. Powell has demonstrated over time in several situations his inability to consider the psychological effect of his comments on his children. 2) Mr. Powell's current legal situation with regard to Susan Powell's disappearance and the incestual computer generated child pornography found by Utah law enforcement on Josh's computer from their 2009 search of his home in Utah make his home unstable in that law enforcement is quite clear and public with their intention to arrest him in the near future. The Department's concern with this would be the boys returning home to Mr. Powell only to witness another police action against a member of their family and their only present parent. This worker cannot imagine there would be another scenario that would be as psychologically damaging as witnessing this at this point due to all the other adjustment issues with which they are currently dealing (their mother being gone with no valid explanation, moving residences at least twice in the last two years, ongoing family conflict, being without their father, missing their paternal relatives, being recognized in public to include people approaching them and staring, isolation from peers-particular to C███ at school).

As to mother, Susan Powell
The Department is unable to locate Ms. Powell and cannot provide any other update at this

time.

Attachments: (Required)

- [ ] Assessment of Progress
- [ ] Service Plan
- [ ] Visit Plan
- [ ] Determination of American Indian Status
- [ ] Education Plan
- [ ] Transition Plan for Youth Existing Care (17.5 and older)
- [ ] CHET Screen (Initial ISP)
- [ ] IL Learning Plan and Progress Report (15 and older)

Attachments: (Optional)

- [ ] Safety Plan
- [ ] SDM Risk Assessment
- [ ] Transition and Safety Plan
- [ ] Caregiver Report to the Court
- [ ] Reunification Assessment

- [ ] CHET Screen
- [ ] Famlink Health and Education Report
- [ ] Fostering Well-Being Care Coordination Summary

- [ ] Other:
- [ ] Other:
- [ ] Other:

Signatures: (Optional):

1. Signatures by parents, child or voluntary agency indicates receipt of the ISSP. Signatures do not necessarily indicate agreement with all parts of this plan

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |
| SIGNATURE | DATE |

2. Copies of this ISSP must be provided to parents. Social Worker certifies that copies of this ISSP were provided to parents on dates listed below:

| MOTHER'S NAME<br>Susan Powell | DATE |
|---|---|
| FATHER'S NAME<br>Joshua Powell | DATE |
| YOUTH TWELVE AND OLDER | DATE |

| Dates parents were notified of visitation changes | Dates parents were notified of placement changes |
|---|---|
| | |

| Submitted by: | DIVISION OF CHILDREN AND FAMILY SERVICES SOCIAL WORKER<br>Forest Jacobson, MSW | DATE |
|---|---|---|
| Approved by: | DIVISION OF CHILDREN AND FAMILY SERVICES SUPERVISOR<br>Jane Wilson, MSW | DATE |

Cox
01011858

| Approval for initial placement in Behavior Rehabilitation Services (BRS): | |
|---|---|
| DCFS ADMINISTRATOR OR DESIGNEE | DATE |

Original: Juvenile Court or Other Review Body
c:    Case File                          Social Worker Attorney
     Parents/Parent's Attorney          Guardian ad Litem/GAL Attorney
     Voluntary Agency              Child's Caregiver
     Child (Over 12)/Child's Attorney

Cox
01011859

 **Washington State Department of Social & Health Services** — CA Children's Administration

# Determination of Native American Indian Status

| CHILD'S NAME |
|---|
| B███  P███ |

I.  Child is (check all that apply):

A.  ☐ A federally recognized Indian child;
    ☐ Member or eligible for membership in a federally recognized tribe;
    ☐ Any person determined or eligible to be found to be Indian by the Secretary of the Interior Bureau of Indian Affairs (BIA).
    ☐ An Eskimo, Aleut, or other Alaskan Native.
    Name of tribe/Village(s):

B.  ☐ A Canadian First Nations child:  A member or entitled to be a member of a Canadian treaty or band Metis community, or non-status Indian community from Canada.
    First Nation/Band Name:

C.  ☐ Another Indian child:  A person considered to be an Indian by a federally or non-federally recognized tribe or Indian organization.

D.  ☐ The child may be an Indian.  List tribes and Indian organizations to be contacted in order to seek verification.

E.  ☐ The following tribes have been contacted, and the child and his/her ancestors are not considered to be Indian.

F.  ☒ The child's parents and relatives have been interviewed (see ethnic identity form) and the child is not an Indian to our knowledge.  (None of the above apply).  Omit II and III below.

II.  If the tribe is not available, or has requested staffing by LICWAC, has the child's case plan been reviewed by LICWAC?

☐ Yes     Date staffed or to be staffed:
☐ No      Reason: Discuss plan to obtain consultation from Native American Consultant or LICWAC:

Discuss plan to obtain consultation from Native American Consultant or LICWAC:

III.  For children under the jurisdiction of the Indian Child Welfare Act, has the tribe or Bureau of Indian Affairs (BIA) been notified of custody proceedings in the state court?

☐ Yes     Date staffing:
☐ No      Reason:

Original: Juvenile Court or Other Review Body
c:    Case File
      Parents/Parent's Attorney                    Social Worker Attorney
      Voluntary Agency                             Guardian ad Litem/GAL Attorney
      Child (Over 12)/Child's Attorney             Child's Caregiver

Cox
01011860



**Confidentiality Notice**
**Individual Service and Safety Plan**

Child:  B████ P████

Caregiver For:  <u>**Relative Care**</u>

A copy of this child's Individual Service and Safety Plan (ISSP) has been provided to you as the caregiver for this child.  This information has been provided so that you can:

- Better understand the child;
- Provide appropriate care for the child; and
- Participate in planning for the child.

Much of the information contained in the ISSP is private or confidential.  State Law (RCW 74.13.280) requires that you treat information you receive about the child in a confidential manner.  You must not discuss information contained in the ISSP with others such as friends, relatives or neighbors.  You must store the ISSP in a manner that will keep the contents private.

Usually, you may only discuss information contained in the ISSP with:

- A representative of the Department, including staff from the Division of Children and Family Services (DCFS) and Division of Licensed Resources (DLR);
- A Child Placing Agency Social Worker if the child has one;
- The child's assigned Guardian ad Litem (GAL) or Court Appointed Special Advocate (CASA); or
- Others designated by either the DCFS Social Worker or the Child Placing Agency Social Worker (such as the child's teacher or doctor).

If you have any questions about what information can be discussed with the child's teacher, counselor, or doctor, check with the child's social worker.  In some cases a release of information may be required before information can be exchanged.

This child's Individual Service and Safety Plan was ☐ given   ☐ mailed to the child's caregiver on the date listed below.

_____     _____
SOCIAL WORKER                                                                          DATE

Original:  Case File
    c:  Foster Parent/Relative/Prospective Adoptive Parent

Cox
01011861

# EXHIBIT 4



11-7-01802-8    37939019    FDPRHO    02-03-12



FILED
DEPT. 13
IN OPEN COURT

FEB 01 2012

By
DEPUTY

**Superior Court of Washington**
**County of Pierce**
**Juvenile Court**

Dependency of:

C█████ P█████

D.O.B.: 01/19/05

No: 11-7-01802-8
☒ **First Dependency Review Hearing Order (FDPRHO)**
☐ **Dependency Review Hearing Order (DPRHO)**
☐ **Permanency Planning Hearing Order (ORPP)**
☐ Clerk's Action Required. Paragraphs 2.7, 3.4 (
☐ CPR ☐ NSP ☐ CRD ☐ GCF)

---

The court will hear ☐ interim review ☐ dependency review ☒ permanency planning
☐ _____ on July 26, 2012 (date) at 1:30 a.m./p.m
at: _____ Court, Room/Department: _____, located
at: _____

## I. HEARING

1.1    The court held a hearing on 01/19/12 @ 1:30 PM    [Date].

1.2    The following persons appeared at the hearing:

| | | | |
|---|---|---|---|
| ☐ | Child _____ | ☐ | Child's Lawyer_____ |
| ☐ | Mother_____ | ☐ | Mother's Lawyer_____ |
| ☒ | Father_____ | ☒ | Father's Lawyer  J. Bissett |
| ☐ | Guardian or Legal Custodian | ☐ | Guardian's or Legal Custodian's Lawyer |
| ☒ | Child's GAL  J. Serano | ☐ | GAL's Lawyer_____ |
| ☒ | DSHS/Supervising Agency Worker  F. Jacobson | ☒ | Agency's Lawyer  J. Lucy |
| ☐ | Tribal Representative | ☐ | Current Caregiver_____ |
| ☐ | Interpreter | ☐ | Other _____ |

1.3    The order is ☐ agreed ☐ contested.

☐    The court heard testimony from: _____

*Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 1 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02020001

## II. FINDINGS

***The Court Finds:***

### GENERAL

2.1      Indian status:

         ☐    The child is an Indian child as defined in 25 U.S.C. 1903(4), and the Indian Child Welfare Act does apply to these proceedings. All notice requirements and evidentiary requirements under the Indian Child Welfare Act have been satisfied.

         ☒    The child is not an Indian child as defined in 25 U.S.C. 1903(4), and the Indian Child Welfare Act does not apply to these proceedings.

         ☐    It has not been determined whether the child is an Indian child as defined in 25 U.S.C. 1903(4).

2.2      The child's current caregiver was informed of this proceeding and his or her right to be heard by the court as required by Chapter 13.34 RCW.

2.3      ☒    Pursuant to RCW 13.34.030, the child was found to be dependent as to the ☒ mother ☒ father ☐ guardian/legal custodian and a disposition order was entered.

2.4      In the previous review period, the permanency plan in effect for the child has been:

| Primary: | Alternative: | |
|---|---|---|
| ☒ | ☐ | Return of the child to the home of the ☐ mother ☒ father ☐ guardian or ☐ legal custodian; |
| ☐ | ☐ | Adoption; |
| ☐ | ☐ | Permanent legal custody pursuant to Chapter 26.10 RCW or the equivalent laws of another state or a federally recognized Indian tribe; |
| ☐ | ☐ | Guardianship ☐ Dependency Guardianship ☐ Chapter 11.88 RCW; |
| ☐ | ☐ | Long term ☐relative or ☐ foster care with a written agreement; |

2.5      The court determines that the placement and permanent plan:

         ☒ are still necessary and appropriate.

         ☐ are not still necessary and appropriate and the permanent plan shall be modified as stated in Paragraph 3.17.

2.6      DSHS/Supervising Agency ☒ has    ☐ has not made reasonable efforts to implement and finalize the permanent plan for the child.

2.7      ☐    The child has been in out-of-home care for 15 of the last 22 months since the date the dependency petition was filed and:

         ☐    DSHS/Supervising Agency should file a termination petition pursuant to RCW 13.34.136(3).

         ☐    A termination petition should be filed pursuant to RCW 13.34.138(2)(d).

         ☐    Good cause not to require the filing of a termination petition exists because of the following:

     (CPR)   ☐    The child has been placed in the care of a relative.

     (NSP)   ☐    DSHS/Supervising Agency has not provided the child's family with the services that are necessary for the child's safe return home.

Cox
02020002

DSHS/Supervising Agency has documented in the ISSP a compelling reason as the basis for its determination that filing a termination petition would not be in the best interests of the child.

(GCF) ☐    Other: _____

## REPORTS

2.8    The ISSP/DSHS/Supervising Agency report ☒ was ☐ was not timely submitted.

2.9    The child's ☒ guardian ad litem    ☐ attorney    ☒ has ☐ has not made a report to the court.

## PLACEMENT

2.10    Placement of the child shall be as follows:

A.    **Return Home**

☐    The child has been residing in foster care. A reason for removal of the child as set forth in RCW 13.34.130(2) no longer exists and the child should be placed in the home of the ☐ mother ☐ father under the supervision of DSHS/Supervising Agency and the continuing jurisdiction of the court.

☐    DSHS/Supervising Agency ☐ has ☐ has not identified all adults known to be residing in the home and ☐ has ☐ has not conducted background checks on those persons.

☐    The ☐ mother ☐ father has identified the following persons as potential caregivers for the child:

B.    **In Home**

☐    Court supervision should remain in effect. The placement of the child with the ☐ mother ☐ father should remain in effect under the supervision of DSHS/Supervising Agency subject to further review by the court.

☐    The dependency should be dismissed. The permanency plan of return to the ☐ mother ☐ father has been achieved and court supervision is not needed.

☐    The child has been placed in the home of the ☐ mother ☐ father for a period of six months.

C.    **Remain Out of Home**

☒    There is a continuing need for out-of-home placement for the child and it would be contrary to the child's welfare to return home. The child should remain in the care and custody of DSHS/Supervising Agency for continued:
☐ Foster care.
☒ Relative care with maternal grandparents, Charles and Judy Cox.
☐ Placement with a suitable person _____ [Name].
☐ Other: _____

☒    The child ☒ is ☐ is not in an appropriate placement that adequately meets all his or her physical, emotional, cultural, and educational needs.

☒    DSHS/Supervising Agency ☐ has ☒ has not considered out-of-state placements for the child.

Cox
02020003

☐     There are no appropriate out-of-state placements at this time.
☐     Other:

## COMPLIANCE AND PROGRESS WITH COURT ORDER

2.11    DSHS/Supervising Agency ☒ has ☐ has not made reasonable efforts to provide services to the family and eliminate the need for out-of-home placement of the child.

**A. Compliance with Court Order**

Agency _____ ☒ yes ☐ no ☐ partial: _____

Mother _____ ☐ yes ☐ no ☐ partial: _____

Father _____ ☒ yes ☐ no ☐ partial: _____

Father _____ ☐ yes ☐ no ☐ partial: _____
Father _____ ☐ yes ☐ no ☐ partial: _____
Child _____ ☐ yes ☐ no N/A: _____ ☐ partial: _____
Other (guardian or intervener) _____ ☐ yes ☐ no ☐ partial: _____

**B. Progress toward correcting the problems that necessitated the child's placement in out-of-home care:**

Mother _____ ☐ yes ☐ no ☐ _____
Father _____ ☒ yes ☐ no ☐ _____
Father _____ ☐ yes ☐ no ☐ _____
Father _____ ☐ yes ☐ no ☐ _____
Child _____ ☐ yes ☐ no ☐ _____
Other (guardian or intervenor) _____ ☐ yes ☐ no ☐ _____

## VISITATION

2.12   ☒   The mother ☐ has ☒ has not visited the child on a regular basis.

       ☒   Reasons why visits have not occurred or have been infrequent:

           Mother has been missing since December of 2009.

2.13   ☒   The father ☒ has ☐ has not visited the child on a regular basis.

       ☐   Reasons why visits have not occurred or have been infrequent:

          _____

2.14   ☒   The child is placed out of the home and the court has considered the child's placement, contact and visits with the child's siblings in accordance with RCW 13.34.130(3). Placement, contact or visits between siblings:

          ☒ has occurred.
          ☐ has not occurred because:
              ☐ there is reasonable cause to believe that the best interests of the child or siblings would be jeopardized
              ☐ the court does not have jurisdiction over the siblings in question and the parents are not willing to agree to a plan, or

Cox
02020004

☐ efforts to reunify the parent with the child would be hindered by such placement, contact or visitation.

## PERMANENCY PLANNING

2.15　☐　PERMANENCY PLANNING HEARING FINDINGS – **SEE PERMANENCY PLANNING HEARING ATTACHMENT** (per RCW 13.34.145(1)(a) required in all cases where the child has remained in out-of-home care for at least 9 months and an adoption decree, guardianship order, or permanent custody order has not been entered).

## III. ORDER

*The court orders:*

## PLACEMENT

3.1　☒　The child remains a dependent child pursuant to RCW 13.34.130. Court supervision shall continue and the child shall remain in the care and custody of ☒ DSHS ☐ other supervising agency: _____.

3.2　☒　DSHS/Supervising Agency shall continue the placement of the child in:
　　☐ Foster care.
　　☒ Relative placement with maternal grandparents, Charles and Judy Cox.
　　☐ The home of a suitable person _____[Name].
　　☐ An in-home dependency with ☐ mother ☐ father ☐ guardian or legal custodian.

3.3　☐　DSHS/Supervising Agency shall place the child in the home of the ☐ mother ☐ father for a trial return home under the continued supervision of the court.

　　☐　Placement of the child in the ☐ mother's ☐ father's home is contingent upon the parent's compliance with court orders related to the care and supervision of the child, including compliance with DSHS/Supervising Agency case plan, and the ☐ mother's ☐ father's continued participation in ☐ substance abuse ☐ mental health treatment ☐ other services:

　　**The child may be removed from the home by DSHS/Supervising Agency, subject to review by the court, if the parent fails to comply with the DSHS/Supervising Agency plan or court order; is unable, unwilling, or fails to participate in available services or treatment for themselves or the child; or fails to successfully and substantially complete available services or treatment for themselves or the child.**

　　☐　Placement of the child in the ☐ mother's ☐ father's home is contingent upon _____ [Name of caregiver] engaging in and completing additional services as listed in section 3.20 to ensure the safety of the child ☐ prior to　　☐ during the trial placement of the child in the home:

　　**If your child is placed in your care, you have an ongoing duty to notify DSHS/Supervising Agency of all persons who reside in the home or who may act as a caregiver for the child as long as the court retains jurisdiction of this matter or DSHS/Supervising Agency is providing or monitoring services to you or any caregiver of the child.**

## GENERAL

*Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 5 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02020005

3.4 ☐ The dependency is dismissed because: (ORDSM)

    ☐ *The child has turned 18.*
    ☐ *A permanency plan for the child has been achieved and court supervision is no longer needed.*
    ☐ *Other: _____*

3.5 DSHS/Supervising Agency having custody of the child shall have full power to authorize and provide all necessary, routine, and emergency medical, dental, or psychological care as recommended by the child's treating doctor or psychologist, subject to review by the court, as needed and consent to travel for two weeks within the United States.

3.6 All service providers shall make all records and all reports available to DSHS and the guardian *ad litem* or attorney for the child. Parents shall sign releases of information and allow all service providers to make all records available to DSHS and the guardian *ad litem or attorney for the child. Such information shall be provided immediately upon request. All information, reports, records, etc., relating to the provision of, participation in, or parties' interaction with services ordered by the court or offered by DSHS shall be subject to disclosure in open court unless specifically prohibited by state or federal law or regulation.*

3.7 The report of DSHS/Supervising Agency for the next review hearing shall be submitted to the court and to the parties at least ten (10) days prior to the hearing.

3.8 ☐ A petition seeking termination of the parent-child relationship between the child's ☐ mother ☐ father and the child shall be filed by DSHS/Supervising Agency not later than _____ [Date].

## SERVICES

3.9 ☐ Services for the mother are:
    ☐ *as set forth in the attached service plan.*

    ☐ as follows: _____

3.10 ☒ Services for the father(s) are:
    ☒ *as set forth in the attached service plan.*

    ☒ as follows: _____
- Mr. Powell will not associate with any people who are engaged in criminal activity.
- Mr. Powell will have contact with the assigned social worker and guardian ad litem on a regular basis, at a minimum of bi-weekly by phone or email to give progress updates on his service plan.
- Mr. Powell will allow the social worker and guardian ad litem to have announced and unannounced visits to his home.
  Mr. Powell will follow the safety plan developed by him in coordination with the Department regarding contact between his children and his relatives.
- Mr. Powell will participate in mental health counseling with a PhD level mental health therapist within one week of being referred for such service.
- Mr. Powell shall sign and continue updating all necessary releases of information for past and present records, evaluations, and information that may be pertinent to case planning.

3.11 ☒ Additional services for the ~~mother~~ father shall be initiated or completed are:
    ☐ *as set forth in the attached service plan.*

    ☒ as follows: *Father will complete a psychosexual evaluation and follow all recommendations with an evaluator to be agreed on and referral completed by 2-10-12.*

3.12 ☐ Services for the child(ren) are:

Cox
02020006

☐ as set forth in the attached service plan.

☒ as follows: <u>mental health counseling</u>

## VISITATION

3.13 ☒ The specific visitation plan between the child(ren) and mother shall be:
☐ as set forth in the attached visitation plan.

☒ as follows: <u>A visitation plan will be developed should Ms. Powell come forward and request visits.</u>

3.14 ☒ The specific visitation plan between the child(ren) and father shall be:
☐ as set forth in the attached visitation plan.

☒ as follows: <u>Two visits each week, three hours each minimum, supervised by DCFS or DCFS approved person. Visits may be expanded upon agreement of the GAL and social worker.</u>

3.15 ☐ The specific visitation plan between the child and child's siblings shall be:
☐ as set forth in the attached visitation plan.

☐ as follows: _____

## OTHER

3.16 Other: _____

FILED
DEPT. 13
IN OPEN COURT

FEB 01 2012

By _____
DEPUTY

## PERMANENCY PLANNING

3.17 ☐ PERMANENCY PLANNING HEARING ORDER – <u>**SEE PERMANENCY PLANNING HEARING ATTACHMENT**</u> (per RCW 13.34.145(1)(a) required in all cases where the child has remained in out-of-home care for at least 9 months and an adoption decree, guardianship order, or permanent custody order has not been entered).

Dated: _____ 2-1-12 _____

_____
JUDGE/COMMISSIONER  Kathryn J. Nelson

Presented by:

_____  17789
Signature

_____
Print Name/Title          WSBA No.

*Dep Review Hrg Ord (DPRHO, PDPRHO, ORPP) - Page 7 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02020007

**Notice:** **A Petition for Permanent Termination of the Parent-Child Relationship may be Filed if the Child is Placed Out-Of-Home Under An Order of Dependency. (RCW 13.34.180.)**

Copy Received; Approved for Entry; Notice of Presentation Waived:

_____
Signature of Child

_____
Signature of Child's Lawyer

_____          _____
Print Name                                   WSBA No.

_____
Signature of Mother
☐ Pro Se, Advised of Right to Counsel

_____
Signature of Mother's Lawyer

_____          _____
Print Name                                   WSBA No.

_____
Signature of Father
☐ Pro Se, Advised of Right to Counsel

_____
Signature of Father's Lawyer

_____          _____
Print Name                                   WSBA No.

_____
Signature of Guardian or Legal Custodian
☐ Pro Se, Advised of Right to Counsel

_____
Signature of Guardian or Legal Custodian's Lawyer

_____          _____
Print Name                                   WSBA No.

_____
Signature of Child's GAL

_____
Signature of Lawyer for the Child's GAL

_____
Print Name

_____          _____
Print Name                                   WSBA No.

_____
Signature of Agency Representative

_____
Signature of Agency Representative's Lawyer

_____
Print Name

_____          _____
Print Name                                   WSBA No.

_____
Signature of Tribal Representative

_____
Signature

_____
Print Name

_____          _____
Print Name                                   WSBA No.
Lawyer for _____

[If the mother, father, guardian, or other person signs without legal representation, the certification below shall also be signed.]

*Certification*

*Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 8 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02020008

I certify under penalty of perjury under the laws of the state of Washington that I have read or been told the contents of the Dependency Review Hearing Order/Permanency Planning Hearing and I agree that the order is accurate and should be signed by the court.

| | |
|---|---|
| _____ | _____ |
| Mother | Date and Place of Signature |
| _____ | _____ |
| Father | Date and Place of Signature |
| _____ | _____ |
| Child's Guardian or Legal Custodian | Date and Place of Signature |
| _____ | _____ |
| Other | Date and Place of Signature |

Cox
02020009

**PERMANENCY PLANNING REVIEW HEARING ATTACHMENT**
(to be used as specified in RCW 13.34.145)

**The Court finds:**

4.1     The permanent plan for the child ☐ has    ☐ has not been achieved.

4.2     Service providers ☐ have    ☐ have not   been involved in planning to meet the special needs of the child and the child's parent.

4.3     _____ is the projected date for:
☐ return of the child to his or her home
☐ placement for adoption
☐ establishment of a guardianship
☐ implementation of the following alternate plan of care: _____

4.4     ☐     The permanency plan identifies independent living as a goal and services should be provided to assist the child in making a transition from foster care to independent living and allow the child to manage his or her financial, personal, social, educational, and non-financial affairs.

        DSHS/Supervising agency ☐ has   ☐ has not identified specific services to be provided to assist the child in making a transition from foster care to independent living.

4.5     ☐     The child has been placed in the home of the ☐ mother ☐ father for a period of at least six months.

        ☐     The permanent plan of return to the ☐ mother ☐ father has been achieved and court supervision is not needed.

        ☐     Court supervision should remain in effect.  The placement of the child with the ☐ mother ☐ father is continued under the supervision of the court until the next review hearing.

        ☐     The following conditions apply to the continued placement of the child with the ☐ mother ☐ father:

**The Court Orders:**

5.1     The permanency plan for the child is:

| Primary: | Alternative: | |
|---|---|---|
| ☐ | ☐ | Return of the child to the home of the ☐ mother ☐ father ☐ guardian or ☐ legal custodian; |
| ☐ | ☐ | Adoption; |
| ☐ | ☐ | Permanent legal custody pursuant to Chapter 26.10 RCW or the equivalent laws of another state or a federally recognized Indian tribe; |
| ☐ | ☐ | Guardianship ☐ Dependency Guardianship ☐ Chapter 11.88 RCW; |
| ☐ | ☐ | Long term ☐ relative or ☐ foster care with a written agreement; |
| ☐ | ☐ | Responsible living skills program; and/or |
| ☐ | ☐ | Independent living. |

5.2     The following actions shall be taken to move the case toward permanency: _____
_____
_____

*Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 10 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02020010



11-7-01803-6   37938751   FDPRHO   02-03-12

FILED
DEPT. 13
IN OPEN COURT

FEB 0 1 2012

BY_____ DEPUTY

**Superior Court of Washington**
**County of Pierce**
**Juvenile Court**

Dependency of:

B████ F████

D.O.B.: 01/02/07

No: <u>11-7-01803-6</u>
☒ **First Dependency Review Hearing**
   **Order (FDPRHO)**
☐ **Dependency Review Hearing Order**
   **(DPRHO)**
☐ **Permanency Planning Hearing Order**
   **(ORPP)**
☐ Clerk's Action Required. Paragraphs 2.7, 3.4 (
   ☐ CPR ☐ NSP ☐ CRD ☐ GCF)

The court will hear ☐ interim review ☐ dependency review ☒ permanency planning
☐ _____ on <u>July 26, 2012</u> (date) at <u>1:30</u> _____ a.m./p.m
at: _____ Court, Room/Department: _____, located
at: _____

## I. HEARING

1.1     The court held a hearing on <u>01/19/12 @ 1:30 PM</u> _____ [Date].

1.2     The following persons appeared at the hearing:
| | | | |
|---|---|---|---|
| ☐ | Child _____ | ☐ | Child's Lawyer _____ |
| ☐ | Mother _____ | ☐ | Mother's Lawyer _____ |
| ☒ | Father _____ | ☒ | Father's Lawyer <u>J. Bassett</u> |
| ☐ | Guardian or Legal Custodian | ☐ | Guardian's or Legal Custodian's Lawyer |
| ☐ | Child's GAL <u>J. Serano</u> | ☐ | GAL's Lawyer _____ |
| ☒ | DSHS/Supervising Agency Worker <u>F. Jacobsen</u> | ☒ | Agency's Lawyer <u>J. Lay</u> |
| ☐ | Tribal Representative | ☐ | Current Caregiver _____ |
| ☐ | Interpreter | ☐ | Other _____ |

1.3     The order is ☐ agreed ☐ contested.
        ☐     The court heard testimony from: _____

*Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 1 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02010001

## II. FINDINGS

*The Court Finds:*

## GENERAL

2.1     Indian status:

☐     The child is an Indian child as defined in 25 U.S.C. 1903(4), and the Indian Child Welfare Act does apply to these proceedings. All notice requirements and evidentiary requirements under the Indian Child Welfare Act have been satisfied.

☒     The child is not an Indian child as defined in 25 U.S.C. 1903(4), and the Indian Child Welfare Act does not apply to these proceedings.

☐     It has not been determined whether the child is an Indian child as defined in 25 U.S.C. 1903(4).

2.2     The child's current caregiver was informed of this proceeding and his or her right to be heard by the court as required by Chapter 13.34 RCW.

2.3     ☒     Pursuant to RCW 13.34.030, the child was found to be dependent as to the ☒ mother ☒ father ☐ guardian/legal custodian and a disposition order was entered.

2.4     In the previous review period, the permanency plan in effect for the child has been:

| Primary: | Alternative: | |
|---|---|---|
| ☒ | ☐ | Return of the child to the home of the ☐ mother ☒ father ☐ guardian or ☐ legal custodian; |
| ☐ | ☐ | Adoption; |
| ☐ | ☐ | Permanent legal custody pursuant to Chapter 26.10 RCW or the equivalent laws of another state or a federally recognized Indian tribe; |
| ☐ | ☐ | Guardianship ☐ Dependency Guardianship ☐ Chapter 11.88 RCW; |
| ☐ | ☐ | Long term ☐relative or ☐ foster care with a written agreement; |

2.5     The court determines that the placement and permanent plan:

☒     are still necessary and appropriate.

☐     are not still necessary and appropriate and the permanent plan shall be modified as stated in Paragraph 3.17.

2.6     DSHS/Supervising Agency ☒ has     ☐ has not made reasonable efforts to implement and finalize the permanent plan for the child.

2.7     ☐     The child has been in out-of-home care for 15 of the last 22 months since the date the dependency petition was filed and:

☐     DSHS/Supervising Agency should file a termination petition pursuant to RCW 13.34.136(3).

☐     A termination petition should be filed pursuant to RCW 13.34.138(2)(d).

☐     Good cause not to require the filing of a termination petition exists because of the following:

(CPR) ☐     The child has been placed in the care of a relative.

(NSP) ☐     DSHS/Supervising Agency has not provided the child's family with the services that are necessary for the child's safe return home.

*Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 2 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02010002

(CRD) ☐    DSHS/Supervising Agency has documented in the ISSP a compelling reason as the basis for its determination that filing a termination petition would not be in the best interests of the child.

(GCF) ☐    Other: _____

## REPORTS

2.8    The ISSP/DSHS/Supervising Agency report ☒ was ☐ was not timely submitted.

2.9    The child's ☒ guardian ad litem    ☐ attorney    ☒ has ☐ has not made a report to the court.

## PLACEMENT

2.10    Placement of the child shall be as follows:

**A.    Return Home**

☐    The child has been residing in foster care. A reason for removal of the child as set forth in RCW 13.34.130(2) no longer exists and the child should be placed in the home of the ☐ mother ☐ father under the supervision of DSHS/Supervising Agency and the continuing jurisdiction of the court.

☐    DSHS/Supervising Agency ☐ has ☐ has not identified all adults known to be residing in the home and ☐ has ☐ has not conducted background checks on those persons.

☐    The ☐ mother ☐ father has identified the following persons as potential caregivers for the child:

**B.    In Home**

☐    Court supervision should remain in effect. The placement of the child with the ☐ mother ☐ father should remain in effect under the supervision of DSHS/Supervising Agency subject to further review by the court.

☐    The dependency should be dismissed. The permanency plan of return to the ☐ mother ☐ father has been achieved and court supervision is not needed.

☐    The child has been placed in the home of the ☐ mother ☐ father for a period of six months.

**C.    Remain Out of Home**

☒    There is a continuing need for out-of-home placement for the child and it would be contrary to the child's welfare to return home. The child should remain in the care and custody of DSHS/Supervising Agency for continued:
☐ Foster care.
☒ Relative care with maternal grandparents, Charles and Judy Cox.
☐ Placement with a suitable person _____ [Name].
☐ Other: _____

☒    The child ☒ is ☐ is not in an appropriate placement that adequately meets all his or her physical, emotional, cultural, and educational needs.

☒    DSHS/Supervising Agency ☐ has ☒ has not considered out-of-state placements for the child.

Cox
02010003

☐      *There are no appropriate out-of-state placements at this time.*
☐      *Other:*

## COMPLIANCE AND PROGRESS WITH COURT ORDER

2.11    DSHS/Supervising Agency ☒ has  ☐ has not made reasonable efforts to provide services to the family and eliminate the need for out-of-home placement of the child.

**A. Compliance with Court Order**

Agency _____  ☒ yes ☐ no ☐ partial: _____

Mother _____  ☐ yes ☐ no ☐ partial: _____

Father _____  ☒ yes ☐ no ☐ partial: _____

Father _____  ☐ yes ☐ no ☐ partial: _____
Father _____  ☐ yes ☐ no ☐ partial: _____
Child _____  ☐ yes ☐ no N/A: _____ ☐ partial: _____
Other (guardian or intervener) _____  ☐ yes ☐ no ☐ partial: _____

**B. Progress toward correcting the problems that necessitated the child's placement in out-of-home care:**

Mother _____  ☐ yes ☐ no ☐ _____
Father _____  ☒ yes ☐ no ☐ _____
Father _____  ☐ yes ☐ no ☐ _____
Father _____  ☐ yes ☐ no ☐ _____
Child _____  ☐ yes ☐ no ☐ _____
Other (guardian or intervenor) _____  ☐ yes ☐ no ☐ _____

## VISITATION

2.12  ☒    The mother ☐ has  ☒ has not visited the child on a regular basis.

      ☒    Reasons why visits have not occurred or have been infrequent:

          Mother has been missing since December of 2009.

2.13  ☒    The father ☒ has  ☐ has not visited the child on a regular basis.

      ☐    Reasons why visits have not occurred or have been infrequent:

          _____

2.14  ☒    The child is placed out of the home and the court has considered the child's placement, contact and visits with the child's siblings in accordance with RCW 13.34.130(3). Placement, contact or visits between siblings:

          ☒ has occurred.
          ☐ has not occurred because:
             ☐ there is reasonable cause to believe that the best interests of the child or siblings would be jeopardized
             ☐ the court does not have jurisdiction over the siblings in question and the parents are not willing to agree to a plan, or

Cox
02010004

☐ efforts to reunify the parent with the child would be hindered by such placement, contact or visitation.

## PERMANENCY PLANNING

2.15 ☐ PERMANENCY PLANNING HEARING FINDINGS – <u>SEE PERMANENCY PLANNING HEARING ATTACHMENT</u> (per RCW 13.34.145(1)(a) required in all cases where the child has remained in out-of-home care for at least 9 months and an adoption decree, guardianship order, or permanent custody order has not been entered).

## III. ORDER

*The court orders:*

## PLACEMENT

3.1 ☒ The child remains a dependent child pursuant to RCW 13.34.130. Court supervision shall continue and the child shall remain in the care and custody of ☒ DSHS ☐ other supervising agency: _____.

3.2 ☐ *DSHS/Supervising Agency shall continue the placement of the child in:*
    ☐ Foster care.
    ☒ Relative placement with <u>maternal grandparents, Charles and Judy Cox.</u>
    ☐ The home of a suitable person _____ [Name].
    ☐ An in-home dependency with ☐ mother ☐ father ☐ guardian or legal custodian.

3.3 ☐ DSHS/Supervising Agency shall place the child in the home of the ☐ mother ☐ father for a trial return home under the continued supervision of the court.

    ☐ Placement of the child in the ☐ mother's ☐ father's home is contingent upon the parent's compliance with court orders related to the care and supervision of the child, including compliance with DSHS/Supervising Agency case plan, and the ☐ mother's ☐ father's continued participation in ☐ substance abuse ☐ mental health treatment ☐ other services:

    **The child may be removed from the home by DSHS/Supervising Agency, subject to review by the court, if the parent fails to comply with the DSHS/Supervising Agency plan or court order; is unable, unwilling, or fails to participate in available services or treatment for themselves or the child; or fails to successfully and substantially complete available services or treatment for themselves or the child.**

    ☐ Placement of the child in the ☐ mother's ☐ father's home is contingent upon _____ [Name of caregiver] engaging in and completing additional services as listed in section 3.20 to ensure the safety of the child ☐ prior to ☐ during the trial placement of the child in the home:

    **If your child is placed in your care, you have an ongoing duty to notify DSHS/Supervising Agency of all persons who reside in the home or who may act as a caregiver for the child as long as the court retains jurisdiction of this matter or DSHS/Supervising Agency is providing or monitoring services to you or any caregiver of the child.**

## GENERAL

*Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 5 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02010005

3.4 ☐   The dependency is dismissed because: (ORDSM)

  ☐   The child has turned 18.
  ☐   A permanency plan for the child has been achieved and court supervision is no longer needed.
  ☐   Other: _____

3.5   DSHS/Supervising Agency having custody of the child shall have full power to authorize and provide all necessary, routine, and emergency medical, dental, or psychological care as recommended by the child's treating doctor or psychologist, subject to review by the court, as needed and consent to travel for two weeks within the United States.

3.6   All service providers shall make all records and all reports available to DSHS and the guardian *ad litem* or attorney for the child. Parents shall sign releases of information and allow all service providers to make all records available to DSHS and the guardian *ad litem* or attorney for the child. Such information shall be provided immediately upon request. All information, reports, records, etc., relating to the provision of, participation in, or parties' interaction with services ordered by the court or offered by DSHS shall be subject to disclosure in open court unless specifically prohibited by state or federal law or regulation.

3.7   *The report of DSHS/Supervising Agency for the next review hearing shall be submitted to the court and to the parties at least ten (10) days prior to the hearing.*

3.8 ☐   *A petition seeking termination of the parent-child relationship between the child's ☐ mother ☐ father and the child shall be filed by DSHS/Supervising Agency not later than _____ [Date].*

## SERVICES

3.9 ☐   Services for the mother are:
  ☐ as set forth in the attached service plan.

  ☐ as follows: _____

3.10 ☒   Services for the father(s) are:
  ☒ as set forth in the attached service plan.

  ☒ as follows: _____
  • Mr. Powell will not associate with any people who are engaged in criminal activity.
  • Mr. Powell will have contact with the assigned social worker and guardian ad litem on a regular basis, at a minimum of bi-weekly by phone or email to give progress updates on his service plan.
  • Mr. Powell will allow the social worker and guardian ad litem to have announced and unannounced visits to his home.
    Mr. Powell will follow the safety plan developed by him in coordination with the Department regarding contact between his children and his relatives.
  • Mr. Powell will participate in mental health counseling with a PhD level mental health therapist within one week of being referred for such service.
  • Mr. Powell shall sign and continue updating all necessary releases of information for *past and present records, evaluations, and information that may be pertinent to case planning.*

3.11 ☒   Additional services for the ~~mother~~ father shall be initiated or completed are:
  ☐ as set forth in the attached service plan.

  ☒ as follows: _____ *Father will complete a psycho sexual evaluation and follow all recommendations with an evaluator to be agreed on and referral completed by 2-10-12.*

3.12 ☐   Services for the child(ren) are:

Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 6 of 10
WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145

Cox
02010006

☐ as set forth in the attached service plan.

☒ as follows: <u>mental health counseling</u>

## VISITATION

3.13 ☒ The specific visitation plan between the child(ren) and mother shall be:
☐ as set forth in the attached visitation plan.

☒ as follows: <u>A visitation plan will be developed should Ms. Powell come forward and</u>
<u>request visits.</u>

3.14 ☒ The specific visitation plan between the child(ren) and father shall be:
☐ as set forth in the attached visitation plan.

☒ as follows: <u>Two visits each week, three hours each minimum, supervised by DCFS or</u>
<u>DCFS approved person. Visits may be expanded upon agreement of the GAL and social</u>
<u>worker.</u>

3.15 ☐ The specific visitation plan between the child and child's siblings shall be:
☐ as set forth in the attached visitation plan.

☐ as follows: _____

## OTHER

3.16 Other: _____

**FILED**
DEPT. 13
IN OPEN COURT

FEB 01 2012

By_____ DEPUTY

## PERMANENCY PLANNING

3.17 ☐ PERMANENCY PLANNING HEARING ORDER – <u>SEE PERMANENCY PLANNING</u>
<u>HEARING ATTACHMENT</u> (per RCW 13.34.145(1)(a) required in all cases where the child
has remained in out-of-home care for at least 9 months and an adoption decree,
guardianship order, or permanent custody order has not been entered).

Dated: _____ Z~1~12 _____

_____
JUDGE/COMMISSIONER

Kathryn J. Nelson

Presented by: _____

Signature _____ 17769 _____

Print Name/Title _____ WSBA No.

*Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 7 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02010007

**Notice**: A Petition for Permanent Termination of the Parent-Child Relationship may be Filed if the Child is Placed Out-Of-Home Under An Order of Dependency. (RCW 13.34.180.)

Copy Received; Approved for Entry; Notice of Presentation Waived:

_____          _____
Signature of Child                 Signature of Child's Lawyer

                                   _____
                                   Print Name              WSBA No.

_____          _____
Signature of Mother                Signature of Mother's Lawyer
☐ Pro Se, Advised of Right to Counsel

                                   _____
                                   Print Name              WSBA No.

_____          _____
Signature of Father                Signature of Father's Lawyer
☐ Pro Se, Advised of Right to Counsel

                                   _____
                                   Print Name              WSBA No.

_____          _____
Signature of Guardian or Legal Custodian    Signature of Guardian or Legal Custodian's Lawyer
☐ Pro Se, Advised of Right to Counsel

                                   _____
                                   Print Name              WSBA No.

_____          _____
Signature of Child's GAL           Signature of Lawyer for the Child's GAL

_____          _____
Print Name                         Print Name              WSBA No.

_____          _____
Signature of Agency Representative Signature of Agency Representative's Lawyer

_____          _____
Print Name                         Print Name              WSBA No.

_____          _____
Signature of Tribal Representative Signature

_____          _____
Print Name                         Print Name              WSBA No.
                                   Lawyer for _____

[If the mother, father, guardian, or other person signs without legal representation, the certification below shall also be signed.]

*Certification*

Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 8 of 10
WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145

Cox
02010008

I certify under penalty of perjury under the laws of the state of Washington that I have read or been told the contents of the Dependency Review Hearing Order/Permanency Planning Hearing and I agree that the order is accurate and should be signed by the court.

_____          _____
Mother                                     Date and Place of Signature

_____          _____
Father                                     Date and Place of Signature

_____          _____
Child's Guardian or Legal Custodian        Date and Place of Signature

_____          _____
Other                                      Date and Place of Signature

Cox
02010009

**PERMANENCY PLANNING REVIEW HEARING ATTACHMENT**
(to be used as specified in RCW 13.34.145)

*The Court finds:*

4.1   The permanent plan for the child □ has   □ has not been achieved.

4.2   Service providers □ have   □have not  been involved in planning to meet the special needs of the child and the child's parent.

4.3   _____ is the projected date for:
□ return of the child to his or her home
□ placement for adoption
□ establishment of a guardianship
□ implementation of the following alternate plan of care: _____

4.4   □   *The permanency plan identifies independent living as a goal and services should be provided to assist the child in making a transition from foster care to independent living and allow the child to manage his or her financial, personal, social, educational, and non-financial affairs.*

DSHS/Supervising agency □ has   □ has not identified specific services to be provided to assist the child in making a transition from foster care to independent living.

4.5   □   The child has been placed in the home of the □ mother □ father for a period of at least six months.

□   The permanent plan of return to the □ mother □ father has been achieved and court supervision is not needed.

□   Court supervision should remain in effect.  The placement of the child with the □ mother □ father is continued under the supervision of the court until the next review hearing.

□   The following conditions apply to the continued placement of the child with the □ mother □ father:

*The Court Orders:*

5.1   The permanency plan for the child is:

| Primary: | Alternative: | |
|---|---|---|
| □ | □ | Return of the child to the home of the □ mother □ father □ guardian or □ legal custodian; |
| □ | □ | Adoption; |
| □ | □ | Permanent legal custody pursuant to Chapter 26.10 RCW or the equivalent laws of another state or a federally recognized Indian tribe; |
| □ | □ | Guardianship □ Dependency Guardianship □ Chapter 11.88 RCW; |
| □ | □ | Long term □relative or □ foster care with a written agreement; |
| □ | □ | Responsible living skills program; and/or |
| □ | □ | Independent living. |

5.2   The following actions shall be taken to move the case toward permanency: _____
_____
_____

*Dep Review Hrg Ord (DPRHO, FDPRHO, ORPP) - Page 10 of 10*
*WPF JU 03.0500 (6/2008) - JuCR 3.9; RCW 13.34.130, .136, .138, .145*

Cox
02010010

# EXHIBIT 5

1
2
3
4
5
6
7                                           The Honorable Jerry Costello

8                        **STATE OF WASHINGTON**
                  **PIERCE COUNTY SUPERIOR COURT**
9
JUDITH COX and CHARLES COX                  NO. 12-2-11389-6
10  individually and as Personal
Representatives of the Estates of C.J.P.    DECLARATION OF PETER J.
11  and B.T.P.,                             HELMBERGER IN SUPPORT OF
                                            DEFENDANT'S MOTION FOR
12                                          SUMMARY JUDGMENT
                          Plaintiffs,
13
                    v.
14
STATE OF WASHINGTON,
15  DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,
16
17                        Defendant.

18
         PETER J. HELMBERGER hereby declares under penalty of perjury under the laws of the
19
state of Washington that the following is true and correct:
20
         1.      I am over the age of 18, competent to testify as to the matters stated herein and
21
make this declaration based on my personal knowledge.  I am one of the Assistant Attorneys
22
General assigned to represent the State of Washington in this case.
23
         2.      Attached hereto as Exhibit A are true and correct copies of excerpts from the
24
Deposition of Betsy Rodgers taken on March 10, 2014. (p. 47, line 23 to page 48, line 6; p. 31,
25
line 17 to p. 44, line 1; p. 49, line 17 to p. 50, line 11.)
26

3.    Attached hereto as Exhibit B are true and correct copies of excerpts from the Deposition of John Long taken on March 26, 2014. (p. 15, line 5 to p. 16, line 6; p. 53, line 22 to p. 54, line 24; p. 46, line 3-23; also Ex. 4 thereto.)

4.    Attached hereto as Exhibit C are true and correct copies of excerpts from the Deposition of Rocky Stephenson taken on March 24, 2014. (p. 21, line 3-7; p. 36, line 21 to p. 37, line 6; also Exhibit 16 thereto - Stephenson Case Notes - Bates stamped 01012185-2188.)

5.    Attached hereto as Exhibit D are true and correct copies of excerpts from the Deposition of Jane Wilson taken on March 10, 2014. (p. 38, line 12 to 25.)

6.    Attached hereto as Exhibit E is a true and correct copy of Pierce County Superior Court Cause No. 11-7-01802-8, Nonparental Custody Petition;

7.    Attached hereto as Exhibit F is a true and correct copy of the Decl. of Charles Franklin Cox in Pierce County Superior Court Cause No. 11-7-01802-8, p. 5, line 21-23.

8.    Attached hereto as Exhibit G is a true and correct copy of excerpts from the Deposition of Charles Cox, taken in United States District Court Cause No. C12-5184RBL on January 24, 2013. (p. 19, line 8-16, p. 22, lines 21-22.)

9.    Attached hereto as Exhibit H is a true and correct copy of the Shelter Care Hearing Order, Pierce County Superior Court Cause Nos. 11-7-01802-8 and 11-7-01803-6, Bates stamped 01010586-87 and 01010636-37.

10.    Attached hereto as Exhibit I are true and correct copies of excerpts from the Deposition of James Manley, Ph.D. taken on June 9, 2014. (p. 36, line 10 to 19; also Exhibit 5 thereto - Psychological Evaluation, p. 18 of 22; p. 121, line 5-8, and also exhibit 9 thereto - Psychological Evaluation Addendum dated January 1, 2012, p. 3 of 3.)

///

///

///

DECLARATION OF PETER J.
HELMBERGER IN SUPPORT OF
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

2

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

1        11.    Attached hereto as Exhibit J are true and correct copies of excerpts from the

Deposition of Billie Reed-Lyyski taken on March 24, 2014 (p. 21, line 4 to p. 27, line 2; and

Exhibit 2 thereto – September 22, 2011 Intake ID: 2505483/Case ID: 1513430.)

DATED this _____ 3 _____ day of July, 2014 in Tacoma, Washington.

PETER HELMBERGER, WSBA No. 23041
Assistant Attorney General

DECLARATION OF PETER J.
HELMBERGER IN SUPPORT OF
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

3

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

**PROOF OF SERVICE**

I certify that I served a copy of this document on all parties or their counsel of record on the date below as follows:

| Party | Method of Service | |
|-------|-------------------|---|
| James S. Rogers<br>Dana A. Henderson<br>Elizabeth J. Donaldson<br>Law Offices of James S. Rogers<br>1500 Fourth Avenue, Suite 500<br>Seattle, WA 98101 | ♦ US Mail Postage Prepaid<br>o Certified Mail Postage Prepaid<br>o State Campus Mail<br>o ABC/Legal Messenger | o UPS Next Day Air<br>o By Fax<br>♦ By Email<br>o Hand delivered by: |

| Party | Method of Service | |
|-------|-------------------|---|
| Anne Bremner<br>Evan Bariault<br>1200 Fifth Avenue, Suite 1900<br>Seattle, WA 98101 | ♦ US Mail Postage Prepaid<br>o Certified Mail Postage Prepaid<br>o State Campus Mail<br>o ABC/Legal Messenger | o UPS Next Day Air<br>o By Fax<br>♦ By Email<br>o Hand delivered by: |

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 3rd day of July, 2014, at Tacoma, WA.

_____
NATASHA S. CEPEDA, Legal Assistant

DECLARATION OF PETER J. HELMBERGER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

4

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

EXHIBIT A

1          IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

2                        FOR PIERCE COUNTY

3    _____

4    JUDITH COX and CHARLES COX,          )
     individually and as Personal         )
5    Representatives of the Estates       )
     of C.J.P and B.T.P.,                 )
6                                         )
                    Plaintiffs,           )
7                                         )
        vs.                               )No. 12-2-11389-6
8                                         )
     STATE OF WASHINGTON, DEPARTMENT      )
9    OF SOCIAL AND HEALTH SERVICES,       )
                                          )
10                  Defendant.            )
11   _____

12            DEPOSITION UPON ORAL EXAMINATION OF

13

14                       BETSY RODGERS

15   _____

16

17                        9:15 a.m.

18                     MARCH 10, 2014

19             1250 PACIFIC AVENUE, SUITE 105

20                   TACOMA, WASHINGTON

21

22

23

24   REPORTED BY:  LORRIE R. CHINN, RPR, CCR 1902

25



**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
800.831.6973  206.622.6875
production@yomreporting.com
www.yomreporting.com

1      A.   I do not.

2      Q.   Do you know who corrected Dr. Manley's errors?

3      A.   No.

4           MR. HELMBERGER:   Object to the form of

5   that last question.

6      Q.   BY MS. DONALDSON:   Do you know what was

7   changed?

8      A.   I do not.

9      Q.   Had you ever been before this case on a case

10  where the psychologist recommended a psychosexual

11  evaluation on a parent?

12     A.   Yes.

13     Q.   How many times?

14     A.   That I'm aware that a recommendation was made?

15     Q.   Yes.

16     A.   Many times.

17     Q.   I'm going to switch gears again.  What kind of

18  investigation goes into each case?

19          MR. HELMBERGER:   Object to the form of

20  the question.  Go ahead and answer if you can.

21          THE WITNESS:   I'm not real clear on what

22  you're asking.

23     Q.   BY MS. DONALDSON:   So I'm going back, I think,

24  to this category.  What kind of investigation is

25  required of CPS?

YAMAGUCHI OBIEN MANGIO
court reporting, video and videoconferencing
800.831.6973  206.622.6875
production@yomreporting.com
www.yomreporting.com

1      A.   It depends on the nature of the intake.

2      Q.   And by nature what do you mean?

3      A.   So what -- you know, what the allegations are

4  in the intake, whether it's, you know, physical abuse,

5  sexual abuse, whether it's neglect.

6      Q.   So in this case what was it?

7      A.   I'm not -- I don't have a copy of the intake

8  that came into -- I would need to look at the nature of

9  the intake that came in, what the specific allegations

10  were.

11      Q.   Okay.   We can do that.

12           (Deposition Exhibit 6 was marked for

13  identification.)

14      Q.   BY MS. DONALDSON:   Exhibit 6.

15      A.   Okay.

16      Q.   Just let me know when you're done.

17      A.   All right.   (Pause - referring).   I'm sorry.

18  The font is a little small, but I'll try.   (Pause -

19  referring.)   All right.   So this is the intake that

20  came in on September 22nd, 2011, to our intake

21  regarding allegations in the home where the Powell

22  children were living with their father and grandfather.

23  And it lays out some of the allegations here that are

24  in the intake related to child pornography.

25      Q.   So what would be the nature of this case then?



**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
800.831.6973   206.622.6875
production@yomreporting.com
www.yomreporting.com

1   You were saying the investigation depends on the nature

2   of the case?

3       A.   Right.   So the allegations in this particular

4   intake involve child porn --

5       Q.   So that would be --

6       A.   -- in the home where the children were

7   residing.

8       Q.   So would that be sexual abuse, neglect?

9       A.   Sexual abuse, yeah.

10      Q.   So if this is in the sexual abuse category,

11  what kind of investigation would be required?

12      A.   It would be an investigation that that worker

13  would be looking into the nature of the allegations

14  that were set forth in here related to child

15  pornography.

16      Q.   So what would they be investigating?   Would

17  they be going to the home to see if those allegations

18  were true?

19      A.   They would be talking to -- they would be

20  doing individual interviews with the children.   They

21  would be interviewing any collaterals that they needed

22  to interview as part of the investigation.   It could be

23  various different collaterals that they would

24  interview, so the children, any other folks that they

25  felt necessary to interview, and then information


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
800.831.6973   206.622.6875
production@yomreporting.com
www.yomreporting.com

1    gathering.

2         Q.   And I have another question.  At the end the

3    referrer is Billie Reed-Lyyski.  Is that normal for a

4    DSHS worker to be the referrer?

5         A.   It wouldn't be unusual for -- workers and

6    supervisors are all mandated reporters.  So if we

7    become aware of something that would need to be

8    reported, it's our duty to do that.

9         Q.   So how would Billie have become aware of this

10   information?

11        A.   I'm not sure.  Let me see if it says

12   something.  (Pause - referring).  Yeah, she would

13   have -- something would have had to have been reported

14   to her in order for her to make an intake?

15        Q.   Would there normally be case notes about that

16   report to her?

17        A.   Sometimes; sometimes not.

18        Q.   It's not important?

19        A.   This usually is a standalone document in terms

20   of the intake.

21        Q.   Okay.

22        A.   So the intake worker would be putting most of

23   the information they received in this report.

24        Q.   So it wouldn't be documented how Billie

25   obtained this information?

**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
800.831.6973  206.622.6875
production@yomreporting.com
www.yomreporting.com

1      A.   Normally it would be in the intake itself,

2   yeah.

3      Q.   Okay.  Do you supervise -- at some point in

4   this investigation it's decided that you're going to

5   close out the investigation, right?  That happens in

6   every case?

7      A.   The investigator is on a time frame, so they

8   either -- yeah, they do do their piece of the work, and

9   then they close out their investigation either as

10  founded or unfounded.

11     Q.   Are you involved in that decision?

12     A.  No.   The supervisor -- the CPS supervisor

13  would review the work of that investigator prior to --

14  as the case is closing.

15     Q.   Are you sometimes brought in to staff the

16  decision of whether it's unfounded or --

17     A.   Normally not.  Normally it's the supervisor's

18  decision.

19     Q.   Okay.  What's the Child Protection Team?

20     A.   CPT, as we refer to it, or Child Protective

21  Team, is an advisory group to the Department.  And so

22  it's made up of volunteers.  Could be from various

23  disciplines, could be education, medical, law

24  enforcement.  And they act as an advisory to the

25  Department around cases where we're looking at


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1  returning children home.

2       Q.  Okay.  So does DSHS call the CPT and ask them

3  to advise DSHS on a case?

4       A.  Yeah.  There's different CPT teams.  So

5  there's not just one team.  So an office may have, you

6  know, three or four different CPT teams made up of

7  various volunteers from the different domains.  And

8  they regularly meet at a certain prescribed time, and

9  workers would schedule a case in front of a team.

10      Q.  And what's the purpose of doing that, of

11 bringing CPT -- bringing a team in to look at the case?

12      A.  Shared decision-making.

13      Q.  Okay.  And what is decided in those meetings?

14      A.  There could be decisions made about placement,

15 about return home, not return home, about services, so

16 what types of -- if children were to return home, what

17 types of services would need to be in place.  So

18 recommendations around all of those kinds of things.

19      Q.  So are they called in on multiple times on one

20 case, CPT?

21      A.  Could be.

22      Q.  Not usual?

23      A.  It just depends on the dynamics of the case.

24 Usually it's around return home most normally.

25      Q.  What about if a child is under six?  Is that



**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1    normally when there's a CPT meeting?

2        A.   Yes.

3        Q.   Is that --

4        A.   Uh-huh.

5        Q.   Was there a CPT -- am I saying this right?

6    Was there a CPT meeting in this case?

7        A.   I believe so.

8        Q.   Do you know when that was?

9        A.   I don't.   I don't know the date of that.

10       Q.   Do you have an estimate?   If you don't, that's

11   okay.

12       A.   I don't.   Yeah.   I don't.

13       Q.   Okay.   I'm going to switch over to visitation

14   now.

15       A.   Uh-huh.

16       Q.   What is the point of supervising visitation?

17       A.   To observe.   So there's various reasons why

18   you would have a supervisor, to observe the interaction

19   between parents and children and to ensure child

20   safety.

21       Q.   How do you choose a visitation supervisor?

22       A.   Depends on the level of supervision in a case.

23       Q.   And who makes the decision?

24       A.   That's usually a shared decision-making.

25       Q.   Would you be involved in the shared


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1    decision-making?

2        A.   I could be, yes.   I could be.

3        Q.   Do you know about this case, who decided on

4    who the visitation supervisors would be in this case?

5        A.   I believe in this case there was a contracted

6    visitation supervisor.   So sometimes the Department

7    contracts with agencies -- in this particular case

8    Foster Care Resource Network -- to supervise the

9    visitation.

10       Q.   And why did you choose or why was the shared

11   decision to be to contract with Foster Care Resource

12   Network?

13       A.   That was our provider.   That is the provider

14   in this county largely for contracted visitation.

15       Q.   Why choose to contract the case at all?

16       A.   Normally depends on the worker and whether or

17   not they're able to, you know, do the amount of

18   supervision that could be ordered in a particular case.

19   So if there was, you know, large amounts of visitation

20   per week, a worker would not necessarily have the

21   capacity to supervise a visit, so we would go with a

22   contracted provider.

23       Q.   Is that the reason that you contracted in this

24   case?

25       A.   I don't believe so.   I don't believe that that


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
800.831.6973  206.622.6875
production@yomreporting.com
www.yomreporting.com

1   was -- the visitation in this case from the get-go was

2   supervised, so...

3        Q.   So why in this case did you choose to contract

4   it out?

5        A.   Because Foster Care Resource Network is one

6   that does supervised visits for us, so they would have

7   been appropriate to supervise.

8        Q.   Why didn't you do the supervision then if -- I

9   think you just said that it wasn't because Forest

10  wasn't available to do the supervised visits?

11             MR. HELMBERGER:   Object to the form of

12  the question.   Go ahead.

13       Q.   BY MS. DONALDSON:   I'm not doing a very good

14  job asking this, but --

15       A.   Yeah.   It's not that she wasn't available.

16  She may not have been available for the amount of

17  visitation that would have occurred in this case as she

18  would have had other cases as well to be responsible

19  for.

20       Q.   How many visits were scheduled at the

21  beginning of the case?   Was it once per week, twice per

22  week?

23       A.   I would have to look at the court order to see

24  what was in the court order when the children were

25  placed in out-of-home care.


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1      Q.   So I think in the beginning of this case it

2   was once a week.   So let's say hypothetically it was

3   once a week.   Why then would it have been contracted

4   out?

5      A.   Once a week for how long?

6      Q.   Two or three hours.

7      A.   Uh-huh.   That wouldn't be unusual for any of

8   our cases.

9      Q.   What about if an AIRS had been sent out and it

10   was a high media case?

11      A.   High media has nothing to do with it.   It's a

12   standard we would use in any case in terms of

13   visitation.   At the beginning it's usually two hours or

14   so a week.

15      Q.   What type of training and experience do you

16   require of these supervisors, visitation supervisors?

17      A.   Well, when we're contracting the visit out to

18   a contracted provider, it's that contracted provider's

19   responsibility to assume the training for that -- their

20   particular employee, so we're just contracting through

21   that provider.

22      Q.   So you don't check what type of training they

23   have?

24      A.   Not necessarily.   We trust that the provider

25   who is -- that we're contracted with, that they have

 **YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1    trained those folks that are providing that service to

2    us.

3        Q.    What type of training would you expect them to

4    have?

5        A.    Perhaps some training around child

6    development, around child safety, around observations

7    of visits between -- interactions between parents and

8    children.

9        Q.    Are there any cases where you decide that the

10   supervision needs to be done by an employee of DSHS

11   instead of contracting it out?

12       A.    Perhaps.

13       Q.    Can you give me an example?

14       A.    Perhaps there's a particular reason why it may

15   need to be in a different location, perhaps at the DSHS

16   office rather than another location.

17       Q.    Can you give me an example of why?

18       A.    Probably safety primarily that it needs to be

19   in our office.

20       Q.    And can you just try to give me an example of

21   what safety concerns there are?

22       A.    Perhaps there's a concern about a parent

23   absconding with the child or there's other dynamics

24   present in the case which we would want to have it

25   observed in our office.



**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1       Q.   Can you give me an example?

2       A.   Perhaps a sexual abuse case, serious physical

3   abuse case.

4       Q.   But that wasn't present in this case?

5       A.   No.

6       Q.   So sometimes not only do you contract out

7   visitation, but you would let a neighbor or a friend

8   supervise visits?

9       A.   There can be other visit supervisors approved

10  by the Department, yes.

11      Q.   And how do you approve them?  What's the

12  process?

13      A.   Once we get their name, we do a background

14  check on that individual and we also do a check in our

15  own system to make sure there is no history of child

16  abuse or neglect.

17      Q.   Are they trained in any manner?

18      A.   Depends on who that might be.  It could be a

19  family member that's approved to provide visitation.

20  It could be a neighbor, someone who the family may put

21  forward.

22      Q.   So, for instance, the Atkins, do you remember

23  the Atkins?

24      A.   Vaguely.

25      Q.   Vaguely?

YAMAGUCHI OBIEN MANGIO
court reporting, video and videoconferencing
800.831.6973   206.622.6875
production@yomreporting.com
www.yomreporting.com

1        A.   Yeah, uh-huh.   They were, I believe, a family

2   that Mr. Powell had put forward requesting that they be

3   allowed to supervise visitation.

4        Q.   Right.   Did the Department provide any

5   training or education for the Atkins about the case?

6        A.   I'm unaware of that.

7        Q.   How were the visits in this case -- how was a

8   decision made to change the location of the visits to

9   Josh's home?

10        A.   What do you mean by how?

11        Q.   At some point there was a decision made to

12   allow visitation at Josh's home, correct?

13        A.   Yes.

14        Q.   What's the procedure for going about making

15   the decision of where the supervised visitations can

16   occur?

17        A.   Normally there's a progression to visitation.

18   In most cases visitation begins as supervised.   Then it

19   could go to monitored visitation.   Then it could go to

20   unsupervised visitation.   That's normally the

21   progression.   And then the frequency and location,

22   duration of visitation can be -- it's normally -- it's

23   normally increased as a parent perhaps may evolve in

24   their court-ordered services.

25        Q.   So in this case did Josh evolve in his


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1  court-ordered services?

2      A.  No.  He was participating in court-ordered

3  services and had completed court-ordered services.

4      Q.  So as a result the case progressed in the

5  normal manner, and he was allowed to have visitation at

6  his home?

7      A.  Visitation is -- normally in most cases

8  visitation is normally trying to be least restrictive.

9  And so the primary least restrictive visitation

10 location in a case would be at a parent's home.  So it

11 would not be unusual for that to occur.  It's the most

12 least restrictive environment.

13     Q.  Would the parent have had to make progress in

14 order to get -- you were talking about in a court

15 order?

16     A.  Uh-huh.

17     Q.  What about in visitation?  Would they have had

18 to show some kind of progress on how the visitation was

19 going in order to get that reward of having visitation

20 in their own home?

21     A.  Normally, yes, they would have demonstrated

22 progress and compliance with court-ordered services and

23 with -- there would be some indication in the

24 visitation that there's positive interaction occurring

25 between a parent and a child and that -- via reports


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973   206.622.6875**
production@yomreporting.com
www.yomreporting.com

1   short break, if we can.

2                   (A recess ensued from 10:17 until 10:26 a.m.)

3                   MS. DONALDSON:  We're done.  Thank you

4   for your time.

5                   MR. HELMBERGER:  I've got a couple of

6   follow-up questions.

7                   THE WITNESS:  All right.

8

9                   EXAMINATION

10  BY MR. HELMBERGER:

11      Q.  Let's go back over a couple of topics.  First,

12  could you just tell us briefly what your day-to-day job

13  responsibilities are?  Or for the eight years you've

14  been the area administrator for Pierce East, what are

15  your day-to-day responsibilities just briefly?

16      A.  You know, managing the working of the office,

17  making sure that time frames are met related to

18  investigations, so kind of quality assurance control,

19  as well as making sure the policy and procedures are

20  being followed.  So day to day it could be involved in

21  meetings, could be involved in a variety of different

22  types of activities in a day.

23      Q.  Let's go back and look at the second page of

24  Exhibit 2.  And, generally speaking, what are the two

25  ways that children will come to be in protective


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1    custody with the Department of Social and Health

2    Services?

3         A.   So either through a worker obtaining a court

4    order that allows a removal or law enforcement puts a

5    child in protective custody, and then we pick up the

6    child.

7         Q.   So for the former, when a worker will go off

8    to court and give the Court some documentation and the

9    Court will then sign an order --

10        A.   Request a pickup order.

11        Q.   Request a pickup order.  And then the Court

12   will sign that order, and then a social worker has the

13   authority to go to school or wherever and take custody

14   of the child?

15        A.   Uh-huh.

16        Q.   Is that yes?

17        A.   Yes.

18        Q.   And then the other way, law enforcement will

19   call up and say, "We're going to put a child in

20   protective custody"?

21        A.   Yes.

22        Q.   And is that what happened in this case?

23        A.   Yes.

24        Q.   When law enforcement places a child in

25   protective custody, does the responsibility of DSHS in



**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973   206.622.6875**
production@yomreporting.com
www.yomreporting.com

1  terms of what happens next, if you will, change at all?

2  Does that make sense?

3       A.  I'm not sure what you're --

4       Q.  Well, when a child comes into protective

5  custody, is DSHS under a time limit in terms of what

6  happens next in terms of where the kids are placed and

7  how long they can remain out of the home?

8       A.  Right.  So we're on a 72-hour time frame.

9  Within 72 hours a shelter care hearing needs to happen,

10  so either the child returns home within 72 hours or a

11  dependency petition is filed.

12       Q.  Okay.  And does that change if the child comes

13  to DSHS through a protective order -- or, sorry, a

14  pickup order or through law enforcement?  Does that

15  change?

16       A.  No, it doesn't.

17       Q.  So in this case once law enforcement placed

18  the children in protective custody, DSHS had 72 hours

19  to make a decision?

20       A.  As to -- yes.

21       Q.  Either to return the children to Mr. Powell or

22  place them in foster care or other alternative --

23       A.  Out-of-home care, yes.

24       Q.  So what was the decision that DSHS came to in

25  this case in the 72 hours?


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973   206.622.6875**
production@yomreporting.com
www.yomreporting.com

1      A.  Right, that the children would remain in

2  out-of-home care and that we would proceed forward with

3  filing a dependency petition.

4      Q.  Do you recall why that decision was made?

5      A.  Because law enforcement had concerns about

6  activity going on in the home where the children were

7  residing, and there was a law enforcement investigation

8  happening --

9      Q.  Okay.

10     A.  -- related to the child pornography found in

11 the home.

12     Q.  All right.  Let's talk a little bit about -- I

13 think you touched on this -- about the progression of

14 visitation.

15     A.  Uh-huh.

16     Q.  Could you describe for us a little bit about

17 how that progression goes and why?

18     A.  So visitation normally begins -- normally

19 visitation is supervised from the beginning.  It

20 sometimes can not be supervised from the beginning, but

21 most normally the course of visitation starts with

22 supervised visits.  And then it can progress.  It can

23 expand, and the visit location may change depending on

24 agreements between social workers, guardians ad litem.

25          But the decision most normally to expand


YAMAGUCHI OBIEN MANGIO
court reporting, video and videoconferencing
800.831.6973  206.622.6875
production@yomreporting.com
www.yomreporting.com

1                      REPORTER'S CERTIFICATE

2

3        I, LORRIE R. CHINN, the undersigned Certified Court

4   Reporter, pursuant to RCW 5.28.010 authorized to administer

5   oaths and affirmations in and for the State of Washington, do

6   hereby certify:

7        That the sworn testimony and/or proceedings, a

8   transcript of which is attached, was given before me at the

9   time and place stated therein; that any and/or all witness(es)

10  were duly sworn to testify to the truth; that the sworn

11  testimony and/or proceedings were by me stenographically

12  recorded and transcribed under my supervision, to the best of

13  my ability; that the foregoing transcript contains a full,

14  true, and accurate record of all the sworn testimony and/or

15  proceedings given and occurring at the time and place stated

16  in the transcript; that I am in no way related to any party to

17  the matter, nor to any counsel, nor do I have any financial

18  interest in the event of the cause.

19       WITNESS MY HAND AND DIGITAL SIGNATURE this 17th day

20  of March, 2014.

21  

22

23  _____

24  LORRIE R. CHINN
    Washington State Certified Court Reporter, #1902
    lchinn@yomreporting.com

25

**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973   206.622.6875**
production@yomreporting.com
www.yomreporting.com

# EXHIBIT B

1        IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

2                      FOR PIERCE COUNTY

3      _____

4      JUDITH COX and CHARLES COX,          )
       individually and as Personal         )
5      Representatives of the Estates        )
       of C.J.P and B.T.P.,                  )
6                                            )
                Plaintiffs,                  )
7                                            )
          vs.                                )No. 12-2-11389-6
8                                            )
       STATE OF WASHINGTON, DEPARTMENT       )
9      OF SOCIAL AND HEALTH SERVICES,        )
                                             )
10              Defendant.                   )
       _____

11

12            DEPOSITION UPON ORAL EXAMINATION OF

13

14                      JOHN LONG

15     _____

16

17                      10:06 a.m.

18                   MARCH 26, 2014

19            1250 PACIFIC AVENUE, SUITE 105

20                 TACOMA, WASHINGTON

21

22

23

24     REPORTED BY:  LORRIE R. CHINN, RPR, CCR 1902

25



**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1  that the condition of the home as well as some of the

2  other issues were sufficient to proceed to dependency,

3  if that was what became necessary, if there wasn't any

4  other action that would supercede that?

5      Q.  As you sit here today, do you remember which

6  facts it was that led to your decision that there was

7  sufficient basis?

8      A.  Yeah.  I mean, it's basically everything that

9  we -- I reviewed the dependency petition before it was

10 filed.  I haven't reviewed that in years, so I'm not

11 sure everything that was in there.  There was the

12 condition of the home, which was laid out in the

13 dependency petition; the fact that there was child

14 pornography or voyeurism arrests at that point.  There

15 were multiple computers and -- that were -- had yet to

16 be analyzed.

17      Law enforcement indicated that everyone in the

18 home was a suspect in that child pornography

19 investigation.  Then we, of course, knew of the history

20 that there was the disappearance of Susan Powell

21 several years -- I think almost two years earlier that

22 had been unresolved that Josh Powell was a person of

23 interest in that.

24      And, you know, frankly the detectives

25 indicated that, you know, that investigation was coming


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1    to a close, that they felt that it wasn't going to be

2    long before he was arrested.  And that's the indication

3    I got from the detectives.  They wouldn't disclose any

4    information about, you know, the facts surrounding

5    that.  They weren't at liberty to discuss that, but we

6    knew that was out there.

7         Q.  Did that come from the Pierce County

8    detectives, Sanders and Berg, or do you recall if that

9    came from any of the West Valley directives?

10        A.  You know, I don't recall.  I did talk to -- I

11   think it was over that weekend I got a call or two from

12   West Valley detectives, but they didn't -- they

13   indicated to me that, you know, Josh Powell was -- I

14   think everybody, the Pierce County detectives and the

15   detectives down in West Valley, indicated that Josh

16   Powell was the one that, you know, was the person of

17   interest, the only person of interest in that

18   disappearance case.

19            And I'm not sure if West Valley indicated that

20   arrest was imminent or not, but they certainly didn't

21   indicate the opposite, so...

22        Q.  And do you recall, did they ever share any

23   facts with you?  Were you allowed to view any of the

24   search warrants or returns on warrants or any concrete

25   information, meaning documents?

 **YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1      Q.  BY MS. SNOW:  And is that No. 4?

2      A.  Yes.

3      Q.  And that's the order that you see before you

4   in 4, order from the District Court, Salt Lake

5   Department, in and for Salt Lake County, State of Utah.

6   And it granted limited access to images retrieved from

7   desktop computer for ongoing child welfare

8   investigation involving Josh Powell.  Is that how the

9   order reads?

10     A.  I'm not sure -- yes, it is.

11     Q.  And then there were only a number of people

12  listed on the order.  There were eight individuals

13  listed as those persons authorized to view the images

14  through the assistance of Detective Gary Sanders.  You

15  were listed as person No. 3?

16     A.  Correct.

17     Q.  And, Mr. Long, after this order was issued,

18  did you, in fact, have the opportunity to view those

19  images?

20     A.  I did.

21     Q.  Where did the viewing take place?

22     A.  At the sheriff's office in the county-city

23  building.

24     Q.  It's my understanding that Detective Sanders

25  kept control of the images and that when you wanted to


**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973   206.622.6875**
production@yomreporting.com
www.yomreporting.com

```
 1        A.   You know, I don't know the dates.  I can't
 2   help you with the dates.
 3        Q.   Then I'll go ahead and have Exhibit 6 marked.
 4             (Deposition Exhibit 6 was marked for
 5   identification.)
 6                  MS. SNOW:  We'll need to take a break to
 7   make a copy of that.
 8                  (A recess ensued from 11:19 until 11:30 a.m.)
 9        Q.   BY MS. SNOW:  We now have before you
10   Exhibit 6.  Is this the order from the final hearing?
11   If you need to page through and read it --
12        A.   Yeah.  I believe that's from the -- I think
13   there was a motion to return home set for the same
14   time, as I recall.
15        Q.   My understanding is there were three different
16   matters:  First was a matter relating to a dependency
17   order against Susan Powell being entered.  Do you
18   recall that?
19        A.   Right.  I think I had a do a default order
20   against Susan Powell, which I kind of did on the sly
21   not to upset anybody.
22        Q.   And then Josh Powell and his attorney brought
23   a motion for return of the boys, and the Court denied
24   that motion?
25        A.   Right.  That's the motion that precipitated us
```



**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

1    being able to get those photos because Utah had

2    indicated to me that they weren't going to provide us

3    anything in regards to those unless there was a threat

4    that the kids were going home.  And I indicated to the

5    detectives here and the detectives down there that

6    based on, you know, what Steven Powell -- what Josh

7    Powell did in establishing his own residence or at

8    least a home where he planned on living with the kids

9    and following through with the psychological

10   evaluation, that was somewhat positive for him that

11   it's possible that the Court would order the children

12   home at that time.

13        Q.  So West Valley PD had put out there the fact

14   that until there was a motion for the kids to be

15   returned home, they were not willing to go to their

16   court to obtain the order releasing evidence?

17        A.  Right.  And what I told them was every --

18   there's a threat that the children could go home at any

19   review hearing, but they required something more

20   concrete than that.  And I believe I sent them

21   Mr. Bassett's motion to return home, and that's what

22   precipitated them being able to give us the images,

23   which came right just days before the hearing, I

24   believe.

25        Q.  And at the hearing itself, Mr. Bassett made



**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing

**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com

FILED DISTRICT COURT
Third Judicial District

JAN 1 2 2012

By_____  SALT LAKE COUNTY

Deputy Clerk

SIM GILL, District Attorney for Salt Lake County (#6389)
SANDI JOHNSON, Deputy District Attorney (#9548)
YELENA AYRAPETOVA, Deputy District Attorney (#11097)
Attorneys for the Third District Court, Salt Lake County, State of Utah
111 East Broadway, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 363-7900

## IN THE DISTRICT COURT, SALT LAKE DEPARTMENT

## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| THE STATE OF UTAH,<br><br>IN THE MATTER OF A CRIMINAL INVESTIGATION RE:<br><br>SUSAN POWELL | ORDER GRANTING MOTION TO ALLOW LIMITED ACCESS TO IMAGES RETRIEVED FROM DESKTOP COMPUTER FOR ONGOING CHILD WELFARE INVESTIGATION INVOLVING JOSH POWELL<br><br>Case No. 09-213<br><br>Judge Judith S. Atherton |

EXHIBIT: 4
J. Long
DATE: 3-26-14
Lorrie Chinn, RPR, CCR

Based upon the Motion to Place Children in In-Home Dependency or, in the alternative, to

Modify Placement, filed by Jeffery Bassett, attorney for Josh Powell, and the scheduled First

Dependency Review hearing to occur on January 19, 2012, in the Juvenile Court of the Superior

Court of Washington, County of Pierce, and upon the motion of the Salt Lake County District

Attorney's office and West Valley City, it is HEREBY ORDERED that:

1. The West Valley City Police Department through Detective Gregory Sanders of the

   Pierce County Sheriff's Department, shall provide access to view images derived from

   the hard drive of Josh Powell's desktop computer, catalogued under WVCPD Property

   Evidence number 11-00322 and IWRCFL number 09405-10, pursuant to search

   warrant number 288, to the following designated individuals directly related to an

   ongoing child welfare investigation involving Josh Powell in the state of Washington:

Cox
01011902

Detective Gary Sanders of the Pierce County Sheriff's Department, (2) Katherine Nelson, Pierce County Superior Court Judge, (3) John Long, Washington State Attorney General, (4) Julio Serrano, Guardian Ad Litem, (5) Steven Downing, Attorney for Cox family, (6) Jeffrey P. Basset, Attorney for Josh Powell, (7) Rocky Stephenson, Pierce County Child Protective Services and (8) James Manley, Ph.D.

2. To access and view the images, the designated individuals must contact Detective Gary Sanders (253) 798-2334 of the Pierce County Sheriff's Department to facilitate an appropriate place and time when the images can be viewed.

3. Detective Sanders shall keep a copy of this Order with the images and shall keep a written log of all individuals accessing the images.

4. Any computer into which the forensic images will be inserted for access and disclosure shall not be connected to a network while the forensic images are inserted into any computer. In no event shall any image be copied, disseminated, duplicated or replicated, in whole or in part, including duplication onto any external media.

5. The designated individuals are prohibited from disclosing or discussing the contents or nature of the images to persons other than those designated in this Order. Discussion of the images may be allowed during the juvenile proceedings related to the ongoing child welfare investigation involving Josh Powell, upon order of Judge Katherine Nelson.

DATED this _12_ day of January, 2012.

BY THE COURT

I CERTIFY THAT THIS IS A TRUE COPY
OF AN ORIGINAL DOCUMENT ON FILE
IN THE THIRD DISTRICT COURT, SALT
LAKE COUNTY, STATE OF UTAH.
DATE: _Jan 12 2012_
_Cindy Beverley_
DEPUTY COURT CLERK

Joseph S. Atherton
Third District Court Judge

Cox
01011903

1                    REPORTER'S CERTIFICATE

2

3        I, LORRIE R. CHINN, the undersigned Certified Court

4   Reporter, pursuant to RCW 5.28.010 authorized to administer

5   oaths and affirmations in and for the State of Washington, do

6   hereby certify:

7        That the sworn testimony and/or proceedings, a

8   transcript of which is attached, was given before me at the

9   time and place stated therein; that any and/or all witness(es)

10  were duly sworn to testify to the truth; that the sworn

11  testimony and/or proceedings were by me stenographically

12  recorded and transcribed under my supervision, to the best of

13  my ability; that the foregoing transcript contains a full,

14  true, and accurate record of all the sworn testimony and/or

15  proceedings given and occurring at the time and place stated

16  in the transcript; that I am in no way related to any party to

17  the matter, nor to any counsel, nor do I have any financial

18  interest in the event of the cause.

19       WITNESS MY HAND AND DIGITAL SIGNATURE this 5th day of

20  April, 2014.

21

22  

23  _____
    LORRIE R. CHINN
24  Washington State Certified Court Reporter, #1902
    lchinn@yomreporting.com

25

**YAMAGUCHI OBIEN MANGIO**
court reporting, video and videoconferencing
**800.831.6973  206.622.6875**
production@yomreporting.com
www.yomreporting.com