1
2
3
4
5
6
7                                                   The Honorable Ronald B. Leighton

8                    **UNITED STATES DISTRICT COURT**
                  **WESTERN DISTRICT OF WASHINGTON**
9                              **AT TACOMA**

10   JUDITH COX and CHARLES COX              NO. 14-05923 RBL
     individually and as Personal
11   Representatives of the Estates of C.J.P.   DEFENDANTS' MOTION FOR
     and B.T.P.,                               SUMMARY JUDGMENT AND
12                                              QUALIFIED IMMUNITY

13                      Plaintiffs,             NOTE ON MOTION CALENDAR:
                                               AUGUST 21, 2015
14            v.

15   STATE OF WASHINGTON,                      WITHOUT ORAL ARGUMENT
     DEPARTMENT OF SOCIAL AND
16   HEALTH SERVICES, FOREST
     JACOBSON, ROCKY STEPHENSON,
17   JANE WILSON, and BILLIE REED-
     LYYSKI,
18
19                      Defendants.

20              **I.      RELIEF REQUESTED**

21        The   Defendants State of Washington, Department of Social and Health Services, and

22   Forest Jacobson, Rocky Stephenson, Jane Wilson, and Billie Reed-Lyyski, (collectively "DSHS"

23   unless otherwise noted), request this Court grant the defendants' motion for summary judgment

24   and order that this matter be dismissed in its entirety, and in the alternative that the individually

25   named Defendants, Jacobson, Stephenson, Wilson, and Reed-Lyyski be granted qualified

26   immunity.

## II.    STATEMENT OF THE CASE

This is the motion for summary judgment brought by DSHS and the individually named defendants, all of whom are DSHS employees and all of whom are social workers. Rocky Stephenson is a social worker in the Child Protective Services unit who was assigned to investigate allegations of "negligent treatment or maltreatment" made against Joshua Powell.[1] Billie Reed-Lyyski is his supervisor. Forest Jacobson is a social worker who was assigned to the dependency of C.J.P. and B.T.P. Jane Wilson was her supervisor. Each employee has a distinct role.

This case should be dismissed because there is no statute governing social worker decisions in administrating a dependency matter, let alone in making visitation decisions pursuant to court order, which creates an obligation enforceable in tort law. The statutes governing dependencies in general, and visitations in particular, provide guidelines to social workers and others in the juvenile dependency system to further the primary goal which is reunification of families. These statutes do not provide the DSHS social workers with the statutory authority or the obligation to prevent the tragedy which occurred in this case.

The plaintiffs raise both constitutional claims under 42 U.S.C. §1983 and Washington state-law negligence claims. Prior to amending their complaint to add the civil rights claim, which is what led to the case being removed to this Court, plaintiffs' complaint was solely based on negligence claims. And while a State Court Judge denied DSHS' motion for summary judgment, the plaintiffs have substantially re-tooled their complaint and have new factual and legal theories regarding their negligence claims. As such, pursuant to 28 U.S.C. § 1367 (a), this Court should decide both the civil rights claims and the state law negligence claims asserted in plaintiffs' re-tooled lawsuit.

---

[1] See DSHS Intake Referral ID: 2505483, Dkt. 22-1, pp 102-106.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

# III.    STATEMENT OF FACTS

The undisputed facts and the evidence relied upon necessary to grant DSHS' motion for summary judgment were set forth in DSHS' response to plaintiffs' motion for partial summary judgment.  Dkts.  21-23. Those facts are incorporated herein by reference.

# IV.    EVIDENCE RELIED UPON

**A.    Declaration of Peter J. Helmberger with attached Exhibit A.**

# V.    ISSUES PRESENTED

**A.    Whether there is a claim for civil rights violations under 42 U.S.C. § 1983 where there is no clearly established constitutional right at issue.**

**B.    Whether the tort of negligent investigation, which is limited to instances where a harmful placement decision occurs, extends to implementation of court-ordered services such as visitation as part of a dependency proceeding.**

**C.    Whether plaintiff can prove that DSHS was the proximate cause of Powell's decision to commit murder/suicide.**

# VI.    ARGUMENT REGARDING ALLEGED CIVIL RIGHTS VIOLATIONS

**A.    The Social Workers Are Entitled To Qualified Immunity**

The individually named defendants are entitled to qualified immunity from the plaintiffs' alleged civil rights violation.[2]  The plaintiffs paint with a broad brush in their Amended Complaint that the defendants, without identifying specifically how and what the individually named defendants did, violated the plaintiffs' alleged Fourteenth Amendment substantive due process rights.  *See Amended Complaint* ¶¶ 77-89, Dkt. 3, pp 19-20.  Instead, the plaintiffs' civil rights violations are based purely upon speculation, which in hindsight is made easier, but still the plaintiffs fail to articulate a constitution violation that the individual defendants violated which was clearly established at the time of their deaths.

---

[2] The usual standard on summary judgment applies.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present through admissible evidence "specific facts showing that there is a genuine issue for trial.")

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

3

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer,* 536 U.S. 730, 731, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The question of qualified immunity is a question of law. In order to hurdle a defendant's claim of qualified immunity, a plaintiff must satisfy a two-part test. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

Thus, in analyzing a qualified immunity defense, the Court must determine: 1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and 2) whether the right was clearly established when viewed in the specific context of the case. *Saucier*, 533 U.S. at 200.[3]

Reinforcing its analysis in *Anderson*, the court in *Saucier* explained:

> Rather, we emphasized in Anderson "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. at 640, 107 S. Ct. 3034. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Saucier*, 533 U.S. at 199. In order to determine whether a right was clearly established, the court is to "survey the legal landscape" at the time of the alleged misconduct. *Trevino v. Gates*, 99 F.3d 911, 916 (9th Cir. 1996).

Because federal law controls the question of qualified immunity, reliance on state statutes or state policies, procedures, or manuals as a source for determining whether federal

---

[3] While the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as mandatory. "The judges of . . . .. the court of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

4

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

law is clearly established is flawed as a matter of law. *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L.Ed.2d 481 (1980); *Cunningham v. City of Wenatchee*, 214 F.Supp.2d 1103 (E.D. Wash. 2002); *see also, Elder v. Holloway*, 510 U.S. 510, 515, 114 S. Ct. 1019, 127 L.Ed.2d 344 (1994) (state agency regulations or policies are irrelevant to determining whether clearly established federal law exists to defeat qualified immunity). As stated by the court in *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1997):

> It is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim.

Therefore, the plaintiffs are required to provide case law demonstrating that the action taken by the individual defendant social workers violated the plaintiffs' clearly established constitutional right. Plaintiffs cannot provide such case law. The plaintiffs' case is based largely on the alleged failures to implement state policy or follow state law and as such plaintiffs' constitutional claims must be rejected.

In their amended complaint, plaintiffs allege a Fourteenth Amendment right claiming the defendants had a "special relationship" that required them to protect the plaintiffs from harm and that the defendants helped to create an environment for harm. *See Amended Complaint* ¶¶ 77-89, Dkt. 3, pp 19-20. However, the plaintiffs' alleged failure to protect their liberty interests from harm by their father in the realm of an on-going state court juvenile dependency action, and the exercise of a parent's court ordered supervised visitation rights are not clearly established as plaintiffs claim. There is no clearly established right at issue here. In prior briefing, plaintiffs' referenced the *DeShaney* and *Tamas* cases, but these cases simply do not put a social worker on notice that visitation decisions could possibly violate a child's constitutional rights under the Fourteenth Amendment where no known history of violence or a threat of violence directed toward a parent's own children existed.[4]

---

[4] As a general matter, a State's failure to protect an individual against private violence simply does not

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

*DeShaney* involved repeated allegations of physical abuse over a period of years made by medical professionals. *Id.* at 189. The gist of the Supreme Court's ruling is that the constitution is meant to protect against state action, not the action of private individuals. *Id.* Here, the social worker actions were to implement court-ordered visitations.

The rule announced in *DeShaney* "is modified by two exceptions," one of which is the "special relationship exception" and the other is the "danger creation exception." *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007). Neither apply to this case. This was extensively briefed in the defendants' response to plaintiffs' motion for partial summary judgment. *See* Dkt. 21 & 23. It will not be repeated here in great detail.

None of the "state created danger" cases such as *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1061 (9th Cir. 2006), would put a social worker on notice that court ordered supervised visitations with a parent in the parent's residence violates a child's liberty interests under the Fourteenth Amendment. Especially when there is no history of or past allegations regarding physical violence by the parent directed towards his children. The record in this case is clear that C.J.P. and B.T.P. were placed into police protective custody because of their paternal grandfather's arrest on September 22, 2011 for child pornography and voyeurism charges. The referral to DSHS/CPS was for alleged "negligent treatment or maltreatment" not for alleged "physical or sexual abuse."

The special relationship raised in this case is based on a substantive due process right that "protects a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent." *Tamas*, 630 F.3d 833, 842 (9th Cir. 2010); *Roska v. Peterson*, 304 F.3d 982, 994 (10th Cir. 2002) ("foster children have a right to be free from

---

constitute a violation of the Due Process Clause. *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 196-97, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). While the Fourteenth Amendment substantive due process clause has been found to protect a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent, the contours of this liberty interest do not apply in the instant circumstances of the present case. *See Tamas v. Department of Social & Health Services,* 630 F.3d 833, 842 (9th Cir. 2010).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

1    unreasonable risk of harm, including a risk flowing from the lack of basic services, and a right

2    to reasonable safety.")  There are two circumstances in which the right to "reasonable care and

3    safety" is invoked.  First, when the state actor "shows deliberate indifference to serious

4    medical needs" of a child in custody.  Second, when the state actor places "children in a foster

5    home or institution that they know or suspect to be dangerous to the children." *Roska*, 304

6    F.3d at 994.

7         Here, liability is not premised on social workers placing foster children into dangerous

8    foster homes, but rather implementing the court-ordered visitations which are a right of the

9    family to have under state law and a "fundamental" substantive due process liberty interest of a

10   parent.  RCW 13.34.136(2)(b)(ii); *see also Brittain v. Hansen,* 451 F.3d 982 (9th Cir. 2009).  In

11   fact, suggesting there is a special relationship in this context does not make any sense.  DSHS

12   decided to file a dependency petition because of concerns the boys were at risk of either

13   neglect or maltreatment and thereby actually deprived contact between the plaintiffs and their

14   father.  Then, the juvenile court, operating under the purview of the dependency statutes,

15   ordered visitation as is required by state law.  The social workers were obligated by court order

16   and governing statutes to facilitate visitations.

17        The plaintiffs have asserted that the decision to allow Powell to have the visits in a

18   house he had rented paved the way for him to commit his heinous acts and which therefore

19   resulted in the violation of plaintiffs' constitutional rights.  But under *DeShaney*, the special

20   relationship does not arise from the State's knowledge or the expressed intent to help, but

21   rather is based on the limitations it imposed.  Here, the "limitations" were court-ordered visits.

22        Again, the supervised visits were set by the Juvenile Court Judge who had full

23   knowledge of the circumstances, and in fact more knowledge than the social workers of the

24   allegations against Powell because of the judge's exercise of concurrent jurisdiction over both

25   the dependency action and also the maternal grandparents' nonparental child custody action.

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

7

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

The social workers did not place the children with Powell for the visits but rather were ordered to facilitate visits by the Court. The decision to have visits at Powell's residence was made in consultation with a psychological expert, Dr. Manley, Ph.D., who had been assigned to evaluate Joshua Powell and assess his interactions with his sons for purposes of the dependency action, and as part of the plan which, at the time, was to return the children home.

Boiled down, the plaintiffs' claim is that the decision to move the visits to Powell's home resulted in a violation of plaintiffs' constitutional rights, and that the failure to suspend or alter visits after the February 1, 2012 custody hearing further violated the plaintiffs' constitutional rights. Both of these theories are incorrect because there is no constitutional violation arising from the decision regarding the location of court-ordered visitations in a dependency matter. Even if there is a constitutional right at issue, the defendants were implementing court-ordered visitations and are therefore protected by absolute and statutory immunities.

**B.      The Social Worker Defendants Are Also Entitled To Absolute and Statutory Immunities For Filing The Dependency Petition And Implementing Court Orders**

Here, defendants rely on the briefing cited in the defendants' response to plaintiffs' motion for partial summary judgment. That argument will not be repeated here.

However, it bears repeating that the plaintiffs do not claim that the social workers violated civil rights based on filing of the dependency petition, nor on the mere implementation of the court-ordered visitations and for good reason; those actions are entitled to absolute immunity.

Rather, the basis for liability is the decision to have visits transitioned to Powell's residence made by social worker Jacobson and Guardian ad Litem (GAL) Serrano. On February 1, 2012, the Court ordered that supervised visitations continue and remain the same and did so having been fully advised that visitations were occurring at Powell's residence. *See Declaration of Peter J. Helmberger in Support of Defendants' Motion for Summary*, Ex. A

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

8

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

attached thereto, January 6, 2012 Guardian Ad Litem Report to the Court, pp 5-7.

Government officials such as social workers are entitled to absolute immunity when performing quasi-prosecutorial and quasi-judicial functions. *Tamas,* 630 F.3d 833; *Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991). Here, the social workers are entitled to absolute immunity for executing the court's order regarding visitations. *Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758 (9th Cir. 1987).[5]

## VII. LAW AND ARGUMENT REGARDING NEGLIGENCE CLAIMS

In regards to plaintiffs' state law claims, plaintiffs assert essentially two forms of negligence claims. The first form of negligence plaintiffs allege is that DSHS social workers had a "special protective relationship with C.J.P. and B.T.P." *See Amended Complaint*, ¶ 90, Dkt. 3. The second form is based on the assertion that DSHS had "a duty to protect and care for C.J.P. and B.T.P. by properly interviewing, screening, and thoroughly investigating Josh Powell before allowing him visitation with C.J.P. and B.T.P." *See Amended Complaint* ¶ 91, Dkt. 3.[6]

Initially, there is no common law claim at issue in this case. "State agencies are creatures of statute, and their legal duties are determined by the Legislature, not by state employees." *Murphy v. State,* 115 Wn. App. 297, 317, 62 P.3d 533, *review denied,* 149 Wn.2d 1035 (2003) (fact that certain members of the Pharmacy Board individually utilized provisions of the Health Care Information Act was insufficient to create a legal duty because those provisions had not been formally adopted by the State), *citing McGuire v. State*, 58 Wn. App. 195, 199, 791 P.2d 929 (1990) (state employees cannot create a duty by making ultra vires promises.)

---

[5] In addition, as discussed below, the social workers are entitled to immunity under RCW 4.24.595 for their actions taken in implementing Court orders regarding visitations.

[6] Plaintiffs also have a claim for "violations of applicable statutes, guidelines, and policies." However, there is no stand-alone cause of action for this and any of these alleged violations would be subsumed into existing causes of action.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Accordingly, to establish liability plaintiffs will have to cite to statutes that create tort duties. However, there are no statutes which create the duties alleged by plaintiffs.

**A.** **DSHS and its social workers are immune from liability for recommendations made to the Juvenile Court and for the actions it took to comply with Court orders.**

Initially, under Washington law, social workers are by statute immune for acts taken to comply with shelter care and dependency orders. The defendants are also immune from liability for the recommendations it made in the dependency action to the juvenile court.

RCW 4.24.595(2) provides:

> The department of social and health services and its employees shall comply with the orders of the court, including shelter care and other dependency orders, and *are not liable for acts performed to comply with such court orders*. In providing reports and recommendations to the court, *are entitled to the same witness immunity as would be provided to any other witness*.

(Emphasis added); *See also Bruce v. Byrne-Stevens & Assoc. Eng'rs, Inc.*, 113 Wn.2d 123, 125, 776 P.2d 666 (1989) (witnesses, including experts, are "absolutely immune from suit based on their testimony . . . . The scope of witness immunity is broad.")

Dependency actions are governed by the Juvenile Court Act Relating to Dependency of a Child and the Termination of a Parent and Child Relationship ("Juvenile Court Act.") RCW 13.34 *et seq*. The Juvenile Court Act sets forth when a child can be removed from a parent or guardian, and provides extensive due process protections which allow both the parents and child to address concerns about the child's placement, visitation, and the type of services needed to reunify the family. The clear, unambiguous language in RCW 4.24.595(2) protects DSHS and its employees from liability "for acts performed to comply" with "shelter care and dependency orders," regardless of when DSHS performed those acts.

In this case, DSHS filed a dependency petition on September 27, 2011. Once the dependency action was commenced the juvenile court took jurisdiction and control over the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

placement, visitation, and the type of services required to reunify the family. Social workers are required under RCW 13.34.025 to coordinate service plans, which include visitations.

The visitation on February 5, 2012 was held pursuant to the Court's order of February 1, 2012, by which time the Court had been well-informed that visits were occurring at Powell's residence. Accordingly, under RCW 4.24.595(2), statutory immunity applies to the social workers actions in this case.

**B.    There Is No Statutory Basis For A Negligence Claim Based On The Implementation Of A Court-Ordered Visitation Plan In A Dependency Action.**

**1.    There is no claim for negligent investigation based on the implementation of court-ordered services and visits.**

Plaintiffs assert DSHS had a duty to "fully investigate" Powell prior to "allowing visitations." This is incorrect. The tort of negligent investigation does not apply to this case.

"In general, a claim for negligent investigation does not exist under the common law of Washington. That rule recognizes the chilling effect such claims would have on investigations." *Pettis v. State,* 98 Wn. App. 553, 558, 990 P.2d 453 (1999).

The sole exception to the bar on claims for negligent investigation involves cases in which DSHS social workers or law enforcement officers investigate allegations of abuse and neglect pursuant to RCW 26.44.050. *Pettis v. State*, 98 Wn. App. at 559. However, "Because the cause of action of negligent investigation originates from the statute, it is necessarily limited to remedying the injuries the statute was meant to address." *M.W. v. DSHS*, 149 Wn.2d 589, 598, 70 P.3d 954 (2003). The purpose of RCW 26.44.010 and .050 encompasses two concerns: the integrity of the family and the safety of children within the family. *M.W.*, 149 Wn.2d at 597 *citing Tyner v. Dep't of Social & Health Servs.*, 141 Wn.2d 68, 80, 1 P.3d 1148 (2000).

Accordingly, the cause of action for negligent investigation is strictly limited to the narrow exception when, during a child abuse or neglect investigation conducted pursuant to RCW 26.44.050, "DSHS has gathered *incomplete* or *biased* information that *results in a*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

harmful placement decision such as removing a child from a non-abusive home, placing a child in an abusive home or letting a child remain in an abusive home." *M.W.*, 149 Wn.2d at 602. Absent a harmful placement decision resulting in abuse or neglect, or an unwarranted intrusion into the family, negligent investigation is not a valid claim. *M.W.*, 149 Wn. 2d at 601-02.

Washington Courts have consistently rejected claims for negligent investigation which do not implicate the two purposes of RCW 26.44.050 as articulated in *Tyner* and *M.W.*[7] Similarly, outside of the confines of RCW 26.44.050, Washington courts have uniformly refused to imply tort duties from other child welfare statutes.[8]

Here, plaintiffs' claim based on the alleged failure to "fully investigate" before "allowing visitation" on its face does not implicate the limited statutory purposes upon which the negligent investigation cause of action is based and confined. To allow plaintiffs' claim to go forward would increase the scope of the duty and conflict with the *M.W.* court's admonition that there is no general tort claim for negligent investigation outside the confines of RCW

---

[7] *See, e.g., M.W.,* 149 Wn.2d at 602 (rejecting argument that DSHS has a general duty of care to act reasonably when investigating child abuse, which includes following correct procedures in a claim brought by a minor child based on injuries alleged to have flowed from a visual examination of her vaginal area when she was 18 months old because the statute was not enacted to remedy all harm resulting from the investigation itself); *Ducote v. DSHS*, 167 Wn.2d 697, 222 P.3d 785 (2009) (stepparents are not within the class of persons protected by RCW 26.44.050 because they are not identified specifically in, and are therefore deemed excluded from, RCW 26.44.010); *Roberson v. Perez*, 156 Wn.2d 33, 46-48, 123 P.3d 844 (2005) (rejecting request to enlarge the negligent investigation cause of action to include harms caused by "constructive placement decisions"); *Blackwell, supra.* 131 Wn. App. at 378-79 (rejecting expansion of the class who can sue for negligent RCW 26.44.050 investigations to include foster parents).

[8] *E.g., Braam,* 150 Wn.2d 689, 711-12, (no private cause of action can be implied from RCW 74.14A.050, RCW 74.13.250, or RCW 74.13.280, because there is "no evidence of legislative intent to create a private cause of action, and that implying one is inconsistent with the broad power vested in DSHS to administer these statutes."). *See also, Aba Sheikh v. Choe*, 156 Wn.2d 441, 457-58, n. 5, 128 P.3d 574 (2006) (no private cause of action can be implied from three WAC regulations pertaining to dependent children citing *Braam*); *Linville*, 137 Wn. App. 201, 211-13, 151 P.3d 1037 (2007) (no implied legislative intent in daycare insurance statutes to create a remedy against the State for child sexual abuse victims who allegedly were abused in licensed daycare facilities); *Terrell C. v. DSHS*, 120 Wn. App. 20, 26, 28, 84 P.3d 899 (2004) (statutes governing social workers do not give rise to an obligation to protect the general public from harm inflicted by client-children of DSHS social workers); *Pettis, supra.* 98 Wn. App. at 558 ("a claim for negligent investigation does not exist under the common law of Washington" and the exception for child abuse investigations does not apply in the day care licensing setting.)

DEFENDANTS'MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

12

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

26.44.050. *M.W.,* 149 Wn.2d at 601 (negligent investigation cause of action is a narrow exception and limited to the statutory duty and concern.)

Furthermore, the central flaw in asserting a duty to "fully investigate" before "allowing visitations" is that it is not rooted in, and in fact is contrary to, the statutory framework governing dependencies in Washington pursuant to RCW 13.34, *et seq.* Once a dependency is established, it is the social worker's role to direct and coordinate service plans, which are ordered by the juvenile court. RCW 13.34.025(1)-(2). "The statutory scheme does not contemplate that social workers will supervise the general day-to-day activities of a child. Rather, the social worker's role is to coordinate and integrate services in accord with the child's best interests." *Terrell C. v. DSHS*, 120 Wn. App. 20, 28, 84 P.3d 899 (2004).

The statute governing visitations does not impose an obligation, or provide the authority, to "fully investigate" prior to "allowing visitations." Recall the various mandates of RCW 13.34.136(2)(b)(ii):

- Visitation is the right of the family, and

- Early, consistent, and frequent visitation is crucial for maintaining parent-child relationships and making it possible for parents and children to safely reunify, and DSHS

- Shall encourage the maximum parent and child and sibling contact as possible, when it is in the best interest of the child, including regular visitation and participation by the parents in the care of the child while the child is in placement, and

- Visitation shall not be limited as a sanction for a parent's failure to comply with court order or services where the health, safety, or welfare of the child is not at risk as a result of the visitation, and

- ***Visitation may be limited or denied only if the court determines that such limitation or denial is necessary to protect the child's health, safety or welfare.***

Emphasis added.

This statute does not support any aspect of the plaintiffs' claims. First, visitation is not "allowed" by social workers, but rather the "right of the family." Visits are ordered by the court

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

and implemented by social workers and the only entity that can limit or deny visitation is the court, and only when the court determines pursuant to RCW 13.34.136(2)(b)(ii) that it "is necessary to protect the child's health, safety or welfare."

Second, rather than requiring a duty to "thoroughly investigate" a parent prior to the court ordering a visitation schedule, the statute directs that visitation be "early, consistent and frequent." Furthermore, DSHS is mandated to encourage maximum contact between parent and child which includes participation by the parent in the care of the child. Nothing about having supervised visits "early" in a dependency proceeding requires DSHS to "thoroughly" investigate a biological parent.

In fact, the exact opposite is true. It is no secret that the families that fall under the auspices of RCW 13.34 come from very difficult situations in which physical and/or sexual abuse and neglect, mental health issues, drug and alcohol addiction, intra-family violence and the like are the norm. The Legislature is aware of this and yet requires visitation to be early and often and with parents whose history is obviously filled with indicators of abuse and violence, and before "thorough investigation" into parenting can occur, and to do so because reunification is the goal.

In this case, talk of visits occurring in Powell's home began on October 26, 2011 at the dependency hearing, and by February 1, 2012, the Court was fully informed that supervised visits had been going well in the Powell home since November 2011. Furthermore, visits were not transitioned to Powell's home until such time as Dr. Manley had formed his impressions of Powell's ability to adequately and safely parent his sons. Adopting a tort duty in this case would impose conflicting duties upon social workers implementing court-ordered service plans

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

such as having to "thoroughly investigate" a parent before "allowing visits" which are to be early and frequent maximum parent-child contact.[9]

Adopting a duty in the context of this case is essentially like allowing a claim for failing to second-guess or overrule the court, treatment providers, evaluators, implementing service plans, etc., and for virtually every decision made, and to ignore the very statutory scheme under which the court, parents, social workers and others operate. The duty the plaintiffs seek to impose here is unworkable given the competing interests of the underlying statutes. The cause of action for negligent investigation does not extend to this case. This claim should be dismissed.

### 2. There Is No Special Relationship Which Is Applicable To Implementing Court-Ordered Services.

The other form of negligence plaintiffs assert is based on an alleged "special protective relationship" that DSHS social workers had with the children that gave them a right to protection. This too is incorrect.

Generally speaking, in Washington, there is no duty owed to protect a third party from harm by another. An exception to that rule exists if there is a "special relationship" between the plaintiff and defendant, or the defendant and a third-person. While there are two types of special relationships, the type of special relationship giving rise to a right to protection derives from subsection (b) the *Restatement (Second) of Torts* § 315 (1965):

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless: (a) a special relation exists between the actor and the third person which imposes a *duty upon the actor to*

---

[9] The Supreme Court in Washington already rejected the invitation to impose a duty on DSHS where such duty would directly conflict with separate DSHS statutory mandates in the case of *Aba Sheikh*, 156 Wn.2d at 453-54 (The Court rejected imposing a duty upon DSHS social workers in part because it would have imposed conflicting obligations regarding placement because "On the one hand, DSHS is required to ensure that foster care placements are in the least restrictive, most family-like setting available" but "On the other hand, DSHS would be subject to liability, or at least potential for liability, if it did not take significant steps to restrict the freedom of dependent children, the vast majority of whom have suffered severe abuse or neglect" which DSHS would have to do without the authority to place a child in lockdown).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

15

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

*control the third person's conduct*, or (b) a special relation exists between the actor and the other which gives to the other a *right to protection.*

*Donohoe v. State*, 135 Wn. App. 824, 836-37, 142 P.3d 654 (2006)(emphasis theirs).

Thus, a special relationship may exist "between the defendant and either the third party or the foreseeable victim of the third party's conduct." *Caulfield v. Kitsap County*, 108 Wn. App. 242, 253, 29 P.3d 738 (2001).  Washington courts have recognized this type of special relationship between individuals and schools, hospitals, hotels, common carriers, taverns, and custodial institutions, among others. *See Donohoe*, 135 Wn. App. at 837.

But this type of special relationship does not apply in this case.  DSHS social workers are not responsible for the day-to-day supervision of children in dependency status.[10]  In Washington, the dependency "statutory scheme does not contemplate that social workers will supervise the general day-to-day activities of a child. Rather the social worker's role is to coordinate and integrate services in accord with the child's best interests and the need of the family." *Terrell C.,* 120 Wn. App. at 26-29.  Nor does DSHS or their social worker stand in loco parentis with foster children. *Aba Sheikh*, 156 Wn.2d at 454-55 (expressly holding that DSHS has no special relationship duty to control dependent children to prevent them from harming others); *Terrell C.*, 120 Wn. App. at 26-29 (same).

In *Aba Sheikh* and *Terrell C.*, the courts refused to extend the duty under §315 that community correction officers have to protect the community from offenders into the realm of DSHS social workers and dependent children.  In reaching their conclusion, the Courts contrasted the relationship between the social worker and dependent children, which is to protect them from harm inflicted by someone else, namely a parent, with the relationship with a community corrections officer has in supervising an offender in community supervision

---

[10] For example, RCW 74.13.330 provides that "Foster parents are responsible for the protection, care, supervision, and nurturing of the child in placement." *See also* WAC 388-73-014(5) (foster parents are responsible for the "direct care and supervision of children placed in their care); WAC 388-73-312 (same).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

status, which is to protect the community from the harm inflicted by that person. *See Terrell C.*, 120 Wn. App. at 26-29.

In doing so, the Court ruled as follows:

> The statutory scheme does not contemplate that social workers will supervise the general day-to-day activities of a child. Rather the social worker's role is to coordinate and integrate services in accord with the child's best interest and the needs of the family. Any "ongoing" relationship between the social worker and the child is to prevent further harm to that child, not to protect members of the community.

*Aba Sheikh*, 156 Wn.2d at 450 *quoting Terrell C.*, 120 Wn. App. at 28.

The Courts did not rule that the relationship between social workers was a "special relationship." In fact, the Courts artfully used the word "Any" to describe the "ongoing" relationship and put the word "ongoing" in quotes. The Court purposefully did *not* use the words "special" to describe the relationship because it is not a special relationship.

In fact, application of a special relationship in a dependency case does not make any sense. DSHS files the dependency petitions to protect children from an abusive environment. Then, the Juvenile Court takes charge and orders DSHS social workers to implement visitations with the very person/people that created the abusive environment in the first place.

Here, it is undisputed that DSHS filed the dependency petition in part because they were told an arrest of Powell was imminent and did not want to traumatize the boys with multiple moves and being witness to that. It is also undisputed law enforcement officials, social workers, and Assistant Attorney General John Long alike were in agreement that the disappearance of Susan Powell alone was insufficient to warrant placing the boys into protective custody or maintaining the dependency absent additional evidence that Powell posed a risk to his children. Plaintiffs' complaint is loaded with assertions that social workers did not properly assess the risk Powell posed to his children, but these assertions are all beside the point because everybody in this process recognized the grounds to keep the children away from

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Powell in the first place were shaky at best. Plaintiffs' lawsuit is essentially based on the premise that everybody was wrong.

It is also undisputed that the Court ordered visitations and the social workers implemented that order. And, as mentioned, it is undisputed that on February 1, 2012, the Court was aware that visitations were occurring at Powell's residence and ordered the visitations remain the same.

There is no special relationship on these facts. This claim should be rejected.

### 3. The Court Order setting visitations severs liability.

Even if this Court were to conclude that statutory immunity does not apply, and that there is a duty owed either based on statutes or a special relationship, the Juvenile Court's order on visitation severs any liability. Allegations that an investigation was negligent are not enough to state a cause of action without evidence that the negligence impacted the outcome of the dependency process by depriving the court of a material fact. *Tyner*, 141 Wn.2d at 88. As stated by the court:

> We hold that a judge's no-contact order will act as superseding intervening cause, precluding liability of the State for negligent investigation, only if all material information has been presented to the court and reasonable minds could not differ as to this question.

*Id.*

In *Petcu v. State,* 121 Wn. App. 36, 86 P.3d 1234 (2004), the court rejected plaintiff's claim of negligent investigation because the dependency court was provided all information and plaintiffs could cite to no material facts or information which had been withheld. *Petcu*, 121 Wn. App. at 59-61. The plaintiff in *Petcu* argued that the court should only consider the information put forth by DSHS when deciding whether the court had all of the material information. The *Petcu* Court rejected that because to do otherwise would create a much broader cause of action than recognized by Washington courts. *Id.*, at 58-59 ("Thus, it would be improper for us to

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

18

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

solely consider whether the information produced by DSHS's investigation was biased or incomplete in determining whether Petcu has alleged sufficient facts to support an actionable breach of duty.")

Here, the question is whether the Court was provided with all the "material" information" to make an informed decision regarding visitations and the answer to that is unquestionably "yes." Recall that per RCW 13.34.136(b)(ii), only the Court can deny or limit visitations and will only do so upon a showing that such limitation/denial "is necessary to protect the child's health, safety or welfare." So to prevail on this point, the "material" information the plaintiffs have to show will have to be of such nature that the that the Court would deemed denying visits "necessary to protect" the "health, safety or welfare." There was no such information and certainly "bad-mouthing" the in-laws or their religion is not material.

On February 1, 2012, four days prior to Joshua Powell murdering his sons, the dependency court judge had been fully advised that the supervised visitations on Sundays had been occurring in Powell's new rental residence since November of 2011. Powell's attorney advised the court on October 26, 2011 that Powell had rented a new residence separate from his father, Steven Powell, that GAL Serrano had already been to the new residence to inspect it, and that the hope was to shift the supervised visits to the new residence shortly thereafter. Then, Dr. Manley's report of December 9, 2011 referenced him observing a November 2, 2011, visit between C. J. P. and B.T.P. and their father at the new residence. GAL Serrano's report to the court, filed on January 6, 2012, advised the court that weekly visits were moved from the Foster Care Resource Network to Powell's residence in November of 2011. On January 9, 2012, Powell's attorney Jeffrey Bassett filed a motion for an in-home dependency.

That motion prompted officials in West Valley, Utah to obtain a court order in Utah that allowed for a limited release of images found in 2009 on a computer that might provide additional information to warrant keeping Powell from being reunited with his sons. After Dr. Manley's

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

review of the images, he recommended a psychosexual evaluation and polygraph examination to determine if Josh Powell had pedophile tendencies.

At the February 1, 2012 review hearing, in addition to the previously discussed information, Powell's attorney Bassett made reference on several occasions to the appropriateness of Powell's home and that the visits were going well. The Juvenile Court also reviewed Dr. Manley's reports in which he discusses that the visits were going well and that he had observed a visit on November 2, 2011 at Powell's new residence. *See* Dkt. 22-1, p. 122, ln 19 – p. 124, ln 20.

The Court concluded the hearing by ruling that 1) Powell was in compliance with the Court-ordered service plan, 2) that reunification remained the permanent goal, and most importantly for this litigation, 3) that the visitation schedule would remain the same. In fact, the parties specifically addressed the visitation issue and the Juvenile Court specifically ruled that visitations would remain the same.

There are no facts the plaintiffs can point to which demonstrate that had the court been advised, there would have been a denial of visitations.

**C.     Plaintiffs Cannot Prove The State's Alleged Negligence Was A Proximate Cause Of Damages Inflicted By A Third Person**

It is axiomatic that cause in fact "does not exist if the connection between an act and the later injury is indirect and speculative." *Estate of Bordon v. Department of Corrections*, 122 Wn. App. 227, 240, 95 P.3d 764 (2004), *review denied*, 154 Wn.2d 1003 (2005). It is reversible error to deny summary judgment when speculation is required to find factual causation. *Id.*; *Rasmussen v. Bendotti,* 107 Wn. App. 947, 959, 29 P.3d 56 (2001). It is equally axiomatic that to withstand summary judgment, it is not enough to simply say that some event or series of events <u>might</u> have or <u>could</u> have occurred that <u>might</u> have prevented an injury. *Estate of Borden,* 122 Wn. App. at 240; *Miller v. Likins,* 109 Wn. App. 140, 146-47, 34 P.3d 835 (2001); *Ma'ele v. Arrington,* 111 Wn. App. 557, 564, 45 P.3d 557 (2002). Reversible error would occur if a jury were asked to join plaintiffs in speculating about the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

outcome of these "what if" hypotheses. *See, e.g., Estate of Bordon,* 122 Wn. App. at 240-42 (reversing jury verdict for plaintiff in a parole supervision case because jury had to speculate about when a parole officer would have filed a violation report had he done his job properly and whether the parolee would have still been in jail on the day he injured the plaintiff but for the parole officer's negligence.)

In *Bordon*, a parolee under DOC community supervision killed the plaintiff's decedent in a car accident. *Id.* at 231. By court order, DOC was charged with monitoring the parolee's driving while his license was suspended and to report any violation to the court. *Id.* at 239. However, the court held the issue of causation was too speculative to submit to the jury absent evidence about when a violation report would have been filed, when it would have been heard, whether a violation would have been proven, whether the sentence would have included jail time, or whether the jail time would have extended to the date of the accident. *Id.* at 241.

> This lack of evidence requires a jury to guess not only [1] whether and when the violation would have been pursued but also [2] whether a judge would have done something differently if he or she had known about the violation and [3] what the different result would have been.

*Id.* at 241-42. *See also, Hungerford v. Dep't of Corr.*, 135 Wn. App. 240 (2006) (plaintiff's claim that had DOC done a better job of supervising and reported the offender's violations at a particular hearing the offender would not have been able to kill the plaintiff 314 days later, rejected because "the trial court's action broke the causal chain" and because it was inadmissible speculation running that gamut from what a judge would have done at the hearing itself to whether the offender would have been released for time served or good time credit); *Walters v. Hampton*, 14 Wn. App. 548 (1975) (court rejected the claim that police officers failed to prevent injuries to the plaintiff because it would require a high degree of speculation for the jury or the court to conclude that some sort of prosecutorial action would have been taken and would have been successful.)

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Here, plaintiffs cannot prove factual causation without resorting to speculation and that speculation runs the gamut. First, plaintiffs cannot point to any material fact which they can say, without resorting to speculation, would have changed the original visitation order of the court. As mentioned above, the governing statute provides that visitation is a "right" and should occur early and frequently. It is impossible to suggest without speculating that had something else been provided to the juvenile court there would have been a different visitation schedule. Second, after the visits were set in Powell's home, it is impossible based on admissible, non-speculative evidence, to assert that a court would have precluded in-home visits had the court been made aware of certain allegations, whatever they may be. The juvenile court was aware of the allegations made about Powell and aware that visits were occurring in the home. Accordingly, there is no admissible evidence to suggest that a court would have reversed any order on visitation.

Simply put, nobody knows why Powell committed this terrible act. Nobody can say, without resorting to speculation, that once Powell determined to take this action that he *only* decided to take this action because visits were at his house. Only through speculation could one conclude that once Powell decided to murder his children, that such decision is dependent upon location, or dependent upon having the privacy of their own home to do so. It is complete speculation that had visitation occurred in a different setting, like the Foster Care Resource Network's facility, that Powell would not have committed the murder/suicide.

Even if factual causation could be proved without improper reliance on speculation, legal cause is lacking. Logic, common sense, policy and precedent all militate against finding DSHS social workers were a legal cause of the damages flowing from Powell's crimes against his sons.

In accord with these common sense, policy-based principles, Washington law holds that the State does not become the insurer, or legal cause of sexual assaults occurring in a

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

licensed foster home merely because the State licensed the home or placed children in it. *Beltran v. DSHS*, 98 Wn. App. 245, 255, 989 P.2d 604 (1999) ("the mere presence of the children in the home… is insufficient to establish legal causation, regardless of the propriety or impropriety of the licensing or placement decision.")  Instead, there has to be proof the State had prior notice of an abuser's dangerous proclivities, and that the foster parent failed to adequately supervise that person, resulting in harm to the plaintiff. *Id.*

There is no evidence here that DSHS had prior notice of Powell presenting a danger to himself or his children.   As was similarly held in *Beltran*, this failure of proof is fatal to plaintiffs' ability to prove legal causation.  *Id.* at 254-55.  This inability to prove legal causation independently warrants summary judgment as a matter of law even if duty, breach and factual causation could be proved.

## VIII.   CONCLUSION

Based on the foregoing reasons, the individual defendants are entitled to qualified immunity and all of the defendants are entitled to summary judgment dismissing plaintiffs' lawsuit with prejudice.

DATED this 30th day of July, 2015.

ROBERT W. FERGUSON
Attorney General


*/s/Peter J. Helmberger*
PETER HELMBERGER, WSBA No. 23041
JOSEPH M. DIAZ, WSBA No. 16170
Assistant Attorneys General
Attorneys for Defendants

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

23

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July, 2015, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James S. Rogers
Elizabeth Donaldson
Cheryl Snow
Law Offices Of James S. Rogers
1500 Fourth Avenue, Suite 500
Seattle, WA 98101
(206) 621-8525

jsr@jsrogerslaw.com
csnow@jsrogerslaw.com
liz@jsrogerslaw.com

Anne Bremner
Evan Bariault
1200 Fifth Avenue, Suite 1900
Seattle, WA 98101
(206) 486-8000

abremner@freybuck.com
ebariault@freybuck.com

ROBERT W. FERGUSON
Attorney General

*/s/Peter J. Helmberger*
PETER J. HELMBERGER, WSBA No. 23041
Assistant Attorney General
1250 Pacific Avenue, Suite 105
Tacoma, WA 98401
Telephone: (253) 593-5243
FAX: (253) 593-2449
E-mail: PeterH@atg.wa.gov

*/s/Joseph M. Diaz*
JOSEPH M. DIAZ, WSBA No. 16170
Assistant Attorney General
7141 Cleanwater Ln SW
Tumwater, WA 98501
Telephone: (360) 586-6300
FAX: (360) 586-6655
E-mail: JosephD@atg.wa.gov
Attorneys for Defendants

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
QUALIFIED IMMUNITY
CASE NO. 14-05923 RBL

24

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243