UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, FOREST JACOBSON, ROCKY STEPHENSON, JANE WILSON, and BILLIE REED-LYYSKI, <br><br> Defendants. | NO. 14-05923RBL <br><br> **PLAINTIFFS' REPLY ON MOTION FOR PARTIAL SUMMARY JUDGMENT TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES NOS. 1, 2, 3, 4, 10, 11 & 12.** <br><br> **NOTED FOR CONSIDERATION:** <br><br> **JULY 31, 2015** |

Defendants' contention that "the facts dispositive to this lawsuit are straightforward and undisputed" is belied by the twenty pages of facts set forth in plaintiffs' motion – facts defendants largely elected to ignore. The Court should grant plaintiffs' motion for the following reasons: ***First***, defendants have failed to respond to the majority of plaintiffs' facts and this failure permits the Court to deem plaintiffs' facts undisputed; ***Second***, plaintiffs have stated a constitutional claim and

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

defendants' unsupported facts and arguments[1] do not suggest otherwise; ***Third***, the social worker defendants are not entitled to quasi-judicial or prosecutorial immunity because plaintiffs' arguments are based on their discretionary decisions and, therefore, absolute immunity is inapplicable; ***Fourth***, the social worker defendants are not entitled to qualified immunity where defendants were deliberately indifferent to C.J.P. and B.T.P.'s right to personal safety.

**I.     ARGUMENT**

**1. Defendants fail to address numerous and significant facts contained in plaintiffs' motion for summary judgment.**

Because defendants failed to address facts set forth by plaintiffs, this court is permitted to "'consider [plaintiffs'] fact[s] undisputed for the purposes of the motion.'" *Heineman v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56(e)(2). Defendants failed to address the following facts:

1. On September 28, 2011, DSHS informed the dependency court that it believed Josh Powell caused his wife's disappearance and at the same hearing recognized the act as "probably the very worst type of abuse that you could perpetrate on children." Defendants Stephenson and Jacobson were present. *Dkt*. 19, 5:17-20.

2. The October 26, 2011, dependency order required defendant Jacobson to "immediately notify the court if…compliance is not satisfactory." *Id*., 6:13-15. Jacobson admitted at her deposition that Josh Powell was not in compliance, knew his behavior was detrimental to the children's well-being and contrary to specific order provisions, and further admitted that she voluntarily elected not to inform the court of non-compliance *Id*., 6:13-15, 18:11-13.

3. Jennifer Graves, Josh Powell's sister and the person that knew more about Josh Powell and his wife than any social worker or psychological evaluator, informed defendant Stephenson that Powell treated his children like possessions, had previously neglected his children, and was capable of harming his children. Stephenson ignored the warning. *Id*., 2:4-14, 8:2-10.

---

[1] Although Peter Helmberger's Declaration attaches over 300 pages of exhibits, defendants fail to provide any citation for numerous facts and arguments contained in defendants' response.

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

4. Detectives Berg and Sanders (trained in assessing criminal behavior) witnessed threatening behavior by Powell on numerous occasions and worried that he may harm his children. Each informed defendants that Powell may harm his children. Defendants ignored the warnings. *Id.*, 14:12-15:4.

5. Powell admitted to defendant Stephenson that he engaged in voyeurism and took pictures of women's legs. Cox also informed defendant Jacobson that C.J.P. and B.T.P. told him that they slept naked with their father. *Id.*, 9:22-10:3.

6. Defendants Stephenson and Reed-Lyyski openly spoke with Pierce County detectives about their belief that Josh Powell murdered his wife, C.J.P. and B.T.P.'s mother. *Dkt.* 20, Ex. 9, ¶ 17.

7. Defendant Jacobson testified that she believed Josh Powell was dishonest with Utah and Pierce County law enforcement surrounding his father's child porn investigation and his wife's disappearance. *Dkt.* 19, 15:2-4.

8. Jacobson expanded Powell's visitation time although irrefutable evidence establishes she knew it was "damaging" to the children and not in their best interest. *Id.*, 16:6-14.

9. Jacobson allowed the pastor at Powell's church to act as a visitation supervisor after the children's therapist informed her no one other than a DSHS representative should be supervising visitation. *Id.*, 16:13-22.

10. Defendant Jacobson coached Powell on how to present himself and his home prior to his supervised home visitation with Dr. Manley. *Id.*, 14:7-11.

11. Charles Cox informed defendant Jacobson on the Friday and Saturday before Powell killed his children that he was very concerned that Powell was going to hurt C.J.P. and B.T.P. Jacobson assured Cox the children would be safe. *Dkt.* 20, Ex. 28, ¶ 9.

Even if not specifically outlined herein, the Court should find that any fact present by plaintiffs that defendants failed to address is undisputed.

**2. Plaintiffs have stated a constitutional claim.**

Defendants' contention that the constitutional right available to foster children "does not apply to this case" is not only incorrect but further evidences of the State's continued and misguided belief that it owes no duty to children in its care. Citing to *Tamas v. Dep't of Soc. & Health Servs.*,

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

630 F.3d 833 (9th Cir. 2010), defendants suggest physical harm must occur before defendants can be put on notice and a duty of protection will arise. Unfortunately, as evidenced by defendant Jacobson's response – "Well, as ironic as it sounds, only if there's a fire"[2] – when asked if she would be concerned about a visit location not having smoke detectors, defendants apparently believe their duty to protect arises only after some injury or tragedy has struck.

Generally due process does not "confer any affirmative right to governmental aid" and "typically does not impose a duty on the state to protect individuals from third parties." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (citations and alterations omitted). Defendants disregard, however, two significant exceptions to this rule. First, there is the "special relationship" exception – when a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being. *Id.* at 971 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-202 (1989)). Second, the "state-created danger exception" – when "the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known and obvious danger[.]" *Id.* at 971-72. "If either exception applies, a state's omission or failure to protect may give rise to a § 1983 claim." *Id.* at 972.

**a. Special Relationship Exception.**

Defendants' claim that they had no special relationship with C.J.P. and B.T.P. flies in the face of binding authority. It is clearly established that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. When the State asserts this type of custody over a person "and at the same time fails to provide …

---

[2] *Dkt.* 19, 13:12-14.

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

reasonable safety – it transgresses the substantive limits on state action set by…the Due Process Clause." *Id.* at 200.

It is also clearly established that this special relationship doctrine applies to children in the custody and care of the state; the Ninth Circuit in *Tamas* noted that children in the state's custody and care have a federal constitutional right to state protection. *Tamas,* 630 F.3d at 846-47. Indeed, the Ninth Circuit recognized the State's duty to protect children in its care and custody as early as 1992: "[o]nce the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." *Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992). *Tamas* specifically held that this right encompasses "a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent." 630 F.3d at 842. C.J.P. and B.T.P. were within the care and custody of the state exactly as any foster child – the state's duty is clear. *Tamas* also clarified that the proper standard for determining whether a child's due process rights have been violated is "deliberate indifference," the same standard applied to substantive due process claims by prisoners. *Id*. at 844-45. This standard requires (1) "a showing of an objectively substantial risk of harm"; and (2) "a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed" and (a) "the official actually drew that inference" or (b) "that a reasonable official would have been compelled to draw that inference." *Id*. at 845. "[T]he subjective component may be inferred from the fact that the risk of harm is obvious." (internal quotation marks and citations omitted).

Here, the undisputed facts show defendants were aware of information from which an inference could and should have been drawn that a substantial risk of harm existed. Jacobson

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5
{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

acknowledged as much in her first discussion with the visitation supervisor, advising her that Powell may try to flee with the children. The risk was present and obvious and defendants simply ignored it.

### i. Defendants' contention that the visitation schedule and circumstances were required by statute is belied by undisputed facts.

Defendants claim that state law requires maximum visitation is wrong. They utterly ignore the legislative foundation of the statutes at issue:

> [T]he legislature declares that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized. When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail. In making reasonable efforts under this chapter, ***the child's health and safety shall be the paramount concern***.

RCW 13.34.020 (emphasis added). The evidence shows the defendants repeatedly ignored that paramount concern in favor of reunification at any cost, regardless of risks. The state statute mirrors the federal liberty interest in social worker supervision and protection from harm inflicted by third parties. *See Tamas*, *supra*. Indeed, contrary to their argument, defendants' own practice guide states "Safety is paramount in supervised visits." *Dkt*. 20, Ex. 15, p. 7. Ensuring safety does not require social workers to "walk a razor's edge," it simply requires them to do their job and follow the mandate that child safety comes first – not to mention following a court's order to report transgressions. Here, not only did defendants believe that Powell likely murdered his wife, they were warned of the possibility he may try and harm his kids on multiple occasions by multiple individuals and subjectively believed him a risk of flight, extinguishing any argument of unforeseeability.

### ii. Defendants' contention that they were simply following a court order completely disregards the language of the very orders at issue.

The court made it very clear at the Shelter Care hearing on September 28, 2011, that it was extremely concerned about the effect of family conflict on the children; the Shelter Care Hearing

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1 Order and Dependency Order both held there would be no discussion about the dependency or any disparaging or derogatory comments regarding Charles or Judith Cox. *Dkt*. 19, 6:1-3, 10-13. The Dependency Order further held "[t]he social worker shall immediately notify the court if…compliance is not satisfactory." *Id*., 6:13-15. Powell went on a 45 minute tirade about the Coxes in front of the children during their first family therapy session; the GAL also informed Jacobsen that Powell continued ranting about the Coxes at visitations. *Id*., 9:7-15. Contrary to the order, Jacobson never informed the court of Powell's non-compliance. She testified her obligation was to "redirect" him, not to inform the court of Powell's non-compliance. *Dkt*. 20, Ex. 31 (14:14-20). Absent from the court order is language suggesting "redirection" could be substituted for the obligation to report non-compliance. That Jacobson admittedly redirected him is undisputed evidence of his non-compliance. Defendants acknowledge that the court was motivated in its order by reports that the visitations were going well, a false impression fostered by Jacobsen's willful failure to tell the court the truth about Powell's behavior. Defendants' contention that the court found Powell in compliance is wholly the result of their failure to follow the court's order to report transgressions. Jacobson and the defendants were deliberately indifferent to the court's concerns, the court order, physically safety concerns expressed by family and law enforcement, and emotional safety concerns expressed by the court and the children's counselor.

**b. State-Created Danger Exception.**

Defendants can also be held liable "where the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (quoting *DeShaney*, 489 U.S. at 197). A court is to consider: (1) whether any affirmative

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7
{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

actions of the official placed the individual in danger he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the officer acted with deliberate indifference to that danger. *Id*. at 1062-64.

The doctrine is an exception to the general rule that the State need not protect individuals from third parties. By its very nature, then, the doctrine only applies in situations where the plaintiff was directly harmed by a third party – a danger that "already existed" – e.g., a vengeful, unstable neighbor (see *Kennedy*, 439 F.3d 1055); a violent, predatory inmate (see *L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996)); or a rapist prowling a high-crime area late at night (see *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989)). The point of the state-created danger doctrine is that the affirmative actions of a state official "create[d] or expose[d] an individual to a danger which he or she would not have otherwise faced." *Kennedy*, 439 F.3d at 1061 (emphasis added).

It was clearly established at the time of plaintiffs' dependency that a social worker may be liable for creating a danger or increasing the plaintiffs' vulnerability to a danger by failing to investigate risks and a failing to report pertinent information to the court. *See Currier v. Doran*, 242 F.3d 905, 919 (defendant social worker created or increased danger to plaintiff by failing to investigate and report information to the court); *Ford v. Johnson*, 899 F. Supp. 227, 233 (E.D. Pa. 1995) (finding a constitutional claim against defendant social workers who failed to investigate and report information to juvenile court regarding circumstances surrounding risks to child in custody of his father prior to father beating the child to death).

Here, defendants failed to inform the court of well-founded concerns from law enforcement and Powell's family that Powell may harm the children, his repeated and flagrant violations of the court's order that prohibited him from discussing the dependency or disparaging the Coxes as it was

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8
{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

detrimental to the children, or even their own concerns that Powell might attempt to flee with the children. Worse than simply withholding information, the defendants actually provided inaccurate information – that Powell was complying with the court's order – despite their own admissions to the contrary. These failures and misinformation deprived the court of the information it needed to accurately assess the dependency and visitation status and led to the court's decision that he was in compliance.

Moreover, despite these warnings, Powell's transgressions, and their own subjective concerns, Jacobson, with the approval of her supervisor Wilson, affirmatively moved[3] supervised visitations from a facility with a sophisticated locking and alarm system specifically designed to enhance safety, to Powell's residence, a remote location in his complete control. They took no actions to ensure the safety of the children during visits. Jacobsen never visited the home unannounced to verify whether Powell actually resided there outside of visits, despite the GAL's warning that the home appeared staged. *Dkt*. 19, 14:5-7. She didn't even check to see if routine safety devices like smoke alarms were present. It is difficult to imagine how the defendants could have been less indifferent to the threats they admit they had notice of.

It was further established that defendants may face liability by aggravating the risk of danger by providing assurances of safety. *See Kennedy,* 439 F.3d at 1065 (officer assured victim of security that was never provided); *Grubbs*, 974 F.2d at 121 ("The Defendants also enhanced L.W.'s vulnerability to attack by misrepresenting to her the risks attending her work."). Here, although

---

3 There are significant disputed issues of fact as to why defendants moved visits to Powell's residence. However, the record suggests defendants let Powell dictate visitation and repeatedly acquiesced to his requests, even though they acknowledged it was "damaging" to the children. *See* Dkt. 20, Ex. 45 (Cox 01010267) (Jacobson increasing visitation although she acknowledged it was "damaging" to the children). The defendants put the plaintiffs' safety secondary to Powell's desires.

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

Charles Cox repeatedly voiced concerns to defendants about Powell and the children's safety, defendants assured Cox supervision was sufficient and the children were safe. Indeed, Cox warned Jacobson in the two days just prior to the children's' deaths and was assured the boys would be fine. *Dkt*. 20, Ex. 28, ¶¶ 3-4, 9-11. Based on these assurances Cox took no action through the court or law enforcement – action that otherwise could have prevented this tragedy.

Defendants both created risk and aggravated existing risk by ignoring known risks, failing to inform the court of pertinent information and affirmatively moving visitation to Powell's home with no precaution. As a result, C.J.P. and B.T.P. were exposed to an environment where Powell was in control and murdered them. This is precisely the circumstance the state created danger rule was designed to address.

**3. Absolute immunity does not apply to the discretionary decisions that form the basis of Plaintiffs' 1983 claims.**

The scope of absolute immunity for social workers is "extremely narrow," and applies only to functions historically recognized as absolutely immune at common law. *See Miller v. Gammie*, 335 F.3d 889, 897-898 (9th Cir. 2003). While the role of a social worker does include some quasi-judicial or quasi-prosecutorial functions,

> [t]o the extent [] that social workers also make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions, only qualified, not absolute immunity, is available. Examples of such functions may include decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care.

*Id*. at 898. The official claiming absolute immunity for a particular function has the burden to show that the function has a common-law counterpart that is absolutely immune. *Id*. at 897.

Plaintiffs' Section 1983 claims are based on defendants' discretionary decisions – e.g., (1)

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10

{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

electing not to inform the court of Powell's non-compliance, (2) electing to move visitation from a safe/secure facility to Powell's residence without conducting any safety assessment, creating a safety plan, or initiating any action whatsoever that ensured the safety of the children during supervised visits, (3) electing not to follow the "Visiting Plan" drafted by Jacobson stating visits shall occur at a "dcfs location," (4) ignoring legitimate concerns from family members and law enforcement that Powell may harm the children, (5) failing to investigate obvious concerns regarding domestic violence (his wife's disappearance) or family members' warnings Powell mistreated his wife and children while living in Utah, etc. These actions are not the mandated, non-discretionary functions that afford absolute immunity.

**4. The individual defendants are not entitled to qualified immunity and the plaintiffs' claims must be addressed by a jury.**

Defendants significantly misrepresent the issues and facts in attempting to limit the qualified immunity question to Jacobson's decision regarding the supervised visit location. While the evidence shows Jacobsen was deliberately indifferent to C.J.P. and B.T.P.'s safety when she moved visitation to Powell's residence, plaintiffs' § 1983 claims are not limited to that singular act. Rather, numerous acts and failures to act led to the harm faced by Plaintiffs. The facts show material issues preclude a finding that defendants' conduct did not violate federal rights, and as a matter of law those rights were clearly established. Where disputed material facts exist, the matter is for the jury. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) ("If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial.").

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

## II. CONCLUSION

Defendants failed to address the majority of plaintiffs' facts, and even if those facts were not deemed admitted, there is no question the facts are highly disputed. Plaintiffs' claims are not subject to defendants' immunity defenses; they must be stricken or heard by a jury.

DATED this 31st day of July, 2015.

        FREY BUCK, P.S.

        /s/ Evan Bariault
         Anne Bremner, WSBA #13269
         Evan Bariault, WSBA #42867
        Attorneys for Plaintiffs

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

**Certificate of Service**

I certify that on the date noted below I electronically filed this document entitled with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

| | |
|---|---|
| Joseph M. Diaz, WSBA #16170 | James S. Rogers, WSBA #5335 |
| josephd@atg.wa.gov | jsr@jsrogerslaw.com |
| Peter Helmberger, WSBA #23041 | Cheryl L. Snow, WSBA #26757 |
| peterh@atg.wa.gov | csnow@jsrogerslaw.com |
| Jodie@atg.wa.gov | Elizabeth J. Donaldson, WSBA #45291 |
| Jennym@atg.wa.gov | liz@jsrogerslaw.com |
| TORTacEF@atg.wa.gov | Dawn@jsrogerslaw.com |
| Office of the Attorney General | Law Offices of James S. Rogers |
| 1250 Pacific Street, Suite 105 | 1500 Fourth Avenue, Suite 500 |
| Post Office Box 2317 | Seattle, WA 98101 |
| Tacoma, WA 98401 | (206) 621-8525 |
| (253) 593-5243 | FAX: (206) 223-8224 |
| *Attorneys for Defendant* | *Attorneys for Plaintiffs* |

DATED this 31st day of July, 2015, at Seattle, Washington.

/s/ Evan Bariault

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

{00149062;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660