UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P.,

        Plaintiffs,

    v.

STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, FOREST JACOBSON, ROCKY STEPHENSON, JANE WILSON, and BILLIE REED-LYYSKI,

        Defendants.

NO. 14-05923RBL

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**NOTED FOR CONSIDERATION:**

**AUGUST 21, 2015**

**ORAL ARGUMENT REQUESTED**

Defendants have paid extraordinary amounts of money over the past eight years for failing to protect scores of children in their control and custody, yet still contend they owe no duty to such children.[1] Their denial is belied by DSHS' own policies and state statutes finding "the child's health

---

[1] *Declaration of Evan Bariault* ("*Bariault Decl.*"), ¶ 2, Ex. 1 – Drabold, Will, *DSHS Employees Rarely Pay a Price for Failing to Protect Foster Children*, The Seattle Times, Aug. 17, 2015, at pp. 2-3.

and safety shall be the paramount concern." *See* RCW 13.34.020. It is further belied by well established constitutional protections and concomitant duties upon defendants. Defendants' motion should be denied for the following reasons:

*First*, the Court should deny defendants' request for absolute immunity because defendants' violations of plaintiffs' civil rights were based on discretionary decisions.

*Second*, the Court should deny defendants' request that they are entitled to qualified immunity. Plaintiffs' had a clearly established constitutional right to safety while in the custody and care of the State. Defendants disregarded plaintiffs' safety and took affirmative actions that placed C.J.P. and B.T.P. in danger. Moreover, defendants are not entitled to qualified immunity on summary judgment because numerous disputed issues of fact exist.

*Last*, the Court should strike DSHS' request to dismiss plaintiff's state law claims or, in the alternative, deny them. A state court judge already denied DSHS' request to dismiss plaintiffs' state law claims. The issue has been adjudicated and is the law of the case.

## I.     FACTUAL STATEMENT

Contrary to defendants' assertion, the facts of this case are highly disputed as evidenced by plaintiffs' summary judgment motion (*Dkt*. 19), defendants' response (*Dkt*. 21) and plaintiffs' reply (*Dkt*. 26). Plaintiffs' facts set forth in *Dkts*. 19 and 26 are incorporated herein by reference. However, the Court should find the following facts undisputed:

1.   On September 28, 2011, DSHS informed the dependency court that it believed Josh Powell caused his wife's disappearance and at the same hearing recognized the act as "probably the very worst type of abuse that you could perpetrate on children." Defendants Stephenson and Jacobson were present. *Dkt*. 19, 5:17-20.

2.   The October 26, 2011, dependency order required defendant Jacobson to "immediately notify

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

the court if…compliance is not satisfactory." *Id*., 6:13-15. Jacobson admitted at her deposition that Josh Powell was not in compliance, knew his behavior was detrimental to the children's well-being and contrary to specific order provisions, and further admitted that she voluntarily elected not to inform the court of non-compliance *Id*., 6:13-15, 18:11-13.

3. Jennifer Graves, Josh Powell's sister who knew more about Josh Powell and his wife than any social worker or psychological evaluator, informed defendant Stephenson that Powell treated his children like possessions, had previously neglected his children, and was capable of harming his children. Stephenson ignored the warning. *Id*., 2:4-14, 8:2-10.

4. Detectives Berg and Sanders (trained in assessing criminal behavior) witnessed threatening behavior by Powell on numerous occasions and worried that he may harm his children. Each informed defendants that Powell may harm his children. Defendants ignored the warnings. Id., 14:12-15:4.

5. Powell admitted to defendant Stephenson that he engaged in voyeurism and took pictures of women's legs. Cox also informed defendant Jacobson that C.J.P. and B.T.P. told him that they slept naked with their father. *Id*., 9:22-10:3.

6. Defendants Stephenson and Reed-Lyyski openly spoke with Pierce County detectives about their belief that Josh Powell murdered his wife, C.J.P. and B.T.P.'s mother. *Dkt*. 20, Ex. 9, ¶ 17.

7. Defendant Jacobson testified that she believed Josh Powell was dishonest with Utah and Pierce County law enforcement surrounding his father's child porn investigation and his wife's disappearance. *Dkt*. 19, 15:2-4.

8. Jacobson expanded Powell's visitation time although irrefutable evidence establishes she knew it was "damaging" to the children and not in their best interest. *Id*., 16:6-14.

9. Jacobson allowed the pastor at Powell's church to act as a visitation supervisor after the children's therapist informed her no one other than a DSHS representative should be supervising visitation. *Id*., 16:13-22.

10. Defendant Jacobson coached Powell on how to present himself and his home prior to his supervised home visitation with Dr. Manley. *Id*., 14:7-11.

11. Charles Cox informed defendant Jacobson on the Friday and Saturday before Powell killed his children that he was very concerned that Powell was going to hurt C.J.P. and B.T.P. Jacobson assured Cox the children would be safe. *Dkt*. 20, Ex. 28, ¶ 9.

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

## II.    PROCEDURAL STATEMENT

On July 3, 2014, prior to removal to this Court, DSHS filed a motion for summary judgment to dismiss plaintiffs' state law claims on precisely the same grounds as the current motion. *Bariault Decl.*, ¶ 2, Ex. 2.   Oral argument was held on August 15, 2014, after each side submitted briefing and exhibits that totaled over 950 pages of materials. *Id.*, ¶ 3, Exs. 3-4. The state court denied DSHS' summary judgment motion. *Id.*, Ex. 5.  On September 17, 2014, plaintiffs' moved to amend their complaint to allege federal civil rights violations against individual social workers. *Id.*, ¶ 4.  The state court granted plaintiffs' motion and the case was later removed to this Court on November 19, 2014. *Id.*

## III.    ARGUMENT & MOTION TO STRIKE

### A.  The Court should deny defendants' requests for absolute immunity.

Defendants claim they are entitled to quasi-judicial or prosecutorial immunity because they were carrying out a court order in the dependency action.  However, to the extent that social workers make discretionary decisions and recommendations, such as the "decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care," these actions "are not functionally similar to prosecutorial or judicial decisions," and therefore do not enjoy absolute immunity. *Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003).  Defendants' reliance on *Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991) and *Coverdell v. Dept. of Social and Health Services*, 834 F.2d 758 (9th Cir. 1987) does not support a different result.

Here, defendants are not liable for following the non-discretionary edict of a court, they are liable for civil rights violations based on their discretionary decisions that include, but are not limited

1  to, (1) failing to inform the dependency court of Powell's non-compliance though mandated by court

2  order, (2) electing to move visitation from a secure facility to Powell's home without conducting any

3  safety assessment or creating a safety plan, (3) ignoring concerns from law enforcement and family

4  that Powell may harm his children and failing to share this information with the dependency court,

5  and (4) failing to investigate obvious concerns regarding domestic violence (Susan Powell's

6  disappearance) or family member warnings that Powell mistreated his wife and children. These are

7  not the quasi-prosecutorial or quasi-judicial functions discussed in *Caldwell* or *Coverdell* that afford

8  absolute immunity. *Coverdell* holds that social workers who pursue dependency petitions in cases of

9  suspected child abuse or neglect are entitled to quasi-prosecutorial immunity, and social workers

10  who remove a child from her parent pursuant to a court order are entitled to quasi-judicial immunity.

11  834 F.2d at 762-65. *Caldwell* holds that the actions taken by social workers do not enjoy quasi-

12  prosecutorial nor quasi-judicial immunity unless they are taken in aid or presentation of a case to

13  juvenile court. 928 F.2d at 333. Neither decision addresses the numerous discretionary decisions

14  described above.

15  **B. Plaintiffs have established a constitutional violation and defendants have not established their entitlement to qualified immunity.**

16

17  The Fourteenth Amendment's Due Process Clause "typically does not impose a duty on the

18  state to protect individuals from third parties." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir.

19  2011) (citations and alterations omitted). However, there are two well-established exceptions to this

20  rule: (1) the "special relationship" exception and (2) the "state-created danger" exception.

21  A "special relationship" exists when the state has a custodial relationship with the plaintiff

22  and assumes some responsibility for the plaintiff's safety and well being. *Id.* (citing *DeShaney v.*

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

*Winnebago Cnty. Dep't of Soc. Servs*., 489 U.S. 189, 198-202 (1989)).  The "state-created danger" exception applies when "the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known and obvious danger[.]'" *Id*. at 971-92 (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).

> **1.**     **The duties associated with a special relationship were clearly established.**

It has long been clearly established that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200.  When the State asserts this type of custody over a person "and at the same time fails to provide for …reasonable safety – it transgresses the substantive limits on state action set by…the Due Process Clause." *Id.* at 200.

The special relationship doctrine applies to plaintiffs in the care and custody of the State. The Ninth Circuit has made it clear that children in the state's custody and care in particular have a federal constitutional right to state protection.  *Tamas v. Dep't of Soc. & Health Servs*., 630 F.3d 833, 846-47 (9th Cir. 2010).  *Tamas* specifically held that this right encompasses "a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent." *Id.* 630 F.3d at 842.  The proper standard for determining whether a child's due process rights have been violated is "deliberate indifference," the same standard applied to substantive due process claims by prisoners. *Id*. at 844-45. This standard requires (1) "a showing of an objectively substantial risk of harm"; and (2) "a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed" and (a) "the official actually drew that

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

inference" or (b) "that a reasonable official would have been compelled to draw that inference." *Id.* at 845. "[T]he subjective component may be inferred from the fact that the risk of harm is obvious." (internal quotation marks and citations omitted).

Defendants ignore the numerous undisputed facts that demonstrate the individual social worker's deliberate indifference to plaintiffs' rights and instead argue their obligation to plaintiffs' safety was obviated by court order and that they had no special relationship[2] with plaintiffs. Social workers' obligation to facilitate visitations, however, does not extinguish plaintiffs' constitutional right to reasonable safety while in the custody and care of the State. Indeed, under defendants' reasoning they could have authorized visitation in the middle of a freeway and escaped liability because they were simply "facilitating" visitation. *See Miller*, 335 F.3d at 898 (discretionary decisions include "decisions and recommendations as to the particular home where a child is to go[.]")

Moreover, while defendants contend plaintiffs cannot rely on state law to determine whether plaintiffs' constitutional rights were clearly established, they invoke state law themselves to argue that their duty to facilitate visitation eviscerates any obligation to protect the plaintiffs. In doing so, however, they fail to admit that the statutory regimen on which they rely specifically recognizes that child safety far outweighs visitation rights: "When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parent are in conflict, ***the rights and safety of the child should prevail***."). RCW 13.34.020 (emphasis added).

---

2 Defendants' contention that they had no "special relationship" with plaintiffs also flies in the face of the State's dependency petition that was filed because plaintiffs were "in circumstances which constituted a danger of substantial damage to the child's psychological or physical development." *Bariault Decl.*, Ex. 6, p. 2 § 1.4

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7

{00150912;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

A reasonable official standing in the shoes of the individual defendants would have understood that (1) failing to inform the court about family member and law enforcement concerns surrounding potential harm to plaintiffs at the hands of their father; (2) failing to inform the court that Powell was repeatedly and extravagantly non-compliant with court order provisions intended to protect the physical and mental health of plaintiffs; and (3) failing to conduct any safety assessment or create any type of safety plan after moving visitation to Powell's residence violated plaintiffs' rights.  The defendants, along with everyone else at DSHS, not to mention most of the general public and law enforcement, believed Powell murdered his wife, the mother of the very children they were tasked with protecting.  A reasonable official would have understood that moving supervised visitation from a secure facility to the home of a suspected murderer without taking any precautions whatsoever  and in the face of numerous warnings of risk amounted to deliberate indifference to plaintiffs' safety.  A reasonable official would seek to prevent potential harm, not wait until it's too late (e.g., "Well, as ironic as it sounds, only if there's a fire."). *See* Dkt. 20, Ex. 31 (108:19-22).

The court's order established requirements to safeguard not just the plaintiffs' physical safety, but also their emotional safety. It set parameters for Powell's conduct specifically to prevent emotional harm.  It is not disputed that Powell repeatedly, flagrantly violated those provisions.  It is not disputed that the defendants failed to inform the court of Powell's violations.  It is not disputed that the defendants acceded to Powell's request to move visitation to his house, which defendants were warned appeared to have been staged.  Defendants seem to argue that they had no duty to protect until Powell actually physically harmed the boys. WAC 388-15-009 defines "negligent treatment or maltreatment," however, much more broadly:

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8

{00150912;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

[A]n act or failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, on the part of a child's parent, legal custodian, guardian or caregiver that shows a serious disregard of the consequences to the child of such magnitude that it creates a clear and present danger to the child's health, welfare, or safety. A child does not have to suffer actual damage or physical or emotional harm to be in circumstances which create a clear and present danger to the child's health, welfare or safety. Negligent treatment or maltreatment includes, but is not limited to:

…

(b) Actions, failures to act, or omissions that result in injury to or which create a substantial risk of injury to the physical, emotional, and/or cognitive development of a child; or

(c) The cumulative effects of a pattern of conduct, behavior or inaction by a parent or guardian in providing for the physical, emotional and developmental needs of a child's, or the effects of chronic failure on the part of a parent or guardian to perform basic parental functions, obligations, and duties, when the result is to cause injury or create a substantial risk of injury to the physical, emotional, and/or cognitive development of a child.

(emphasis added). All of the defendants acknowledged Powell's controlling behavior and the undisputed facts clearly establish that he repeatedly discussed the dependency and went on rants about the plaintiffs' grandparents contrary to the court's order. Visitation notes and comments from the individual social workers also establish Powell often disregarded his children because he was unable to focus on anything other than himself. *See Dkt*. 20, Ex. 36. On multiple occasions defendant Jacobson acknowledged Powell's behavior was damaging to the children. *Dkt*. 19 (16:6-14), *Dkt*. 20, Ex. 45. Indeed, Dr. Manley's report is rife with similar acknowledgements:

- It is concerning as Mr. Powell cannot or will not stay focused on his children's emotional/psychological needs during a time-limited, structured therapy session designed for them. The fact that he was unable to be redirected during the therapy session is troubling. This suggests Mr. Powell cannot or will not stay focused on his children's needs enough to leave his apparent suspicions, vigilance, and perceived threats out of his communication. *Dkt*. 20, Ex. 39, p. 18.

- At times his interaction style seems forced or staged. *Id*.

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

- His recent behavioral demonstration in his son's therapy session does not appear protective of his son's psychological wellbeing. *Id.*, p. 19.

- It is strongly recommended Mr. Powell contain his emotional and verbal reactions to external situations and people when interacting with his sons. *Id.*, p. 20.

- It seems reasonable, if Mr. Powell will engage in treatment, he can modify the parenting concerns discussed in the evaluation. It will require him to see Charlie and Braden as individuals, and to place their immediate needs ahead of his. *Id.*

- He must consistently place his children's need for an emotionally safe and stable environment ahead of his own. *Id.*, p. 22.

- It is important Mr. Powell become more aware of his intensity and his overbearing manner toward his sons. *Id.*

In Dr. Manley's addendum to his original report, prepared after hundreds of incestuous images were found on Josh Powell's computer, he stated:

- Given the gaps of information about Mr. Powell there seems reasons to conclude he may not presently be a stable and appropriate resource for his children. Until he can overcome his defensiveness and openly discuss himself in all areas of life including sexuality, family, and healthy boundaries, any additional or change of visit structure is not recommended. *Dkt*. 20, Ex. 48, p. 3.

- [T]here appears to be a pattern of poor sexual boundaries between family members. This area, in addition to his self-focus, over-control of the children, and his difficult adjusting to his present situation are topics for therapeutic inquiry. *Id.*

- Until more is known about Mr. Powell it is difficult to conclude he could provide a stable, safe, and consistent nurturing environment for his sons. *Id.*, p. 4.

Defendants rely heavily on Dr. Manley to justify their discretionary decisions that led to the plaintiffs' deaths, yet ask the Court to ignore Manley's numerous admonitions surrounding the significant safety concerns posed by Powell's behavior, admonitions they clearly ignored. Similarly, when Family Preservation Services described C.J.P. as "brainwashed"[3] and Jacobson herself

---

3 *See Dkt*. 20, Ex. 27.

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

acknowledged Powell's behavior was damaging to the children, she still took no action to protect them, ensure their safety, or even advise the court of Powell's repeated transgressions.

Indeed, at no opportunity did defendants show anything but indifference to the boys' safety, instead opting to convenience Powell or themselves. For example, the children's therapist told defendant Jacobson that no one other than a department representative should conduct supervised visitation because she was concerned Powell's behavior was harmful to the children and needed to be professionally monitored. *See Dkt*. 19 (16:13-20). Jacobson disregarded that warning – and the boys' safety – and instead employed Powell's pastor in the supervisor role. The pastor, a layman, himself recognized his lack of ability to manage the role and withdrew from the position he should never have had. *Dkt*. 20, Ex. 46. Defendants' indifference was only exacerbated by defendants' failure to inform the court of Powell's non-compliance with court orders intended to protect the boys' emotional and physical safety.

Similarly, defendant Stephenson and his supervisor[4], defendant Reed-Lyyski, received numerous reports from family members, law enforcement and others about Powell's behavior prior to and during the dependency. Yet neither followed up on reports, neither undertook any investigation into Powell's life in Utah (e.g., contacting prior daycare providers or friends of the family), neither investigated the home Powell was residing in with his father. Their determination that the allegation of maltreatment was unfounded stemmed from their failure to undertake any meaningful investigation of the allegation, apparently because they simply did not want to inquire.

---

4 In § 1983 claims, "supervisors can be held liable for: (1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the complained-of constitutional deprivation; and (3) conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

The law demonstrates plaintiffs had a clearly established right and the facts make clear that defendants are not entitled to qualified immunity.

## 2. State-Created Danger Exception

Defendants can also be held liable under the Due Process Clause for failing to protect an individual from harm by a third party "where the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (quoting *DeShaney*, 489 U.S. at 197). The danger-creation exception has been "clearly established" law in this circuit since at least 1989. *See Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989).

In *Wood*, a police officer ejected a female passenger from a vehicle in a high crime area in Tacoma where she was subsequently raped. *Wood*, 879 F.2d at 586. The Ninth Circuit denied the officer's request for qualified immunity finding:

> [a] reasonable police officer who acted as Wood alleges Ostrander acted should have understood that what he was doing violated Wood's constitutional right to be free from unjustified intrusion into her personal security in violation of her liberty interest under the Fourteenth Amendment.

*Wood*, 879 F.2d at 596. The Ninth Circuit has repeatedly recognized that liability can be imposed when a state actor exposes an individual to third-party danger or acts to render the individual more vulnerable to such a danger. *See L. W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) (state actors liable for assigning plaintiff to work alone in medical clinic with a known sex offender); *Penilla by & Through Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (police officer faced § 1983 liability for dragging injured person into an empty home, cancelling 911 call and locking injured person

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

inside); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082 (9th Cir. 2000) (police officers faced liability for the hypothermia death of a visibly drunk patron after ejecting him from a bar on a bitterly cold night); *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) (officer faced liability for failing to protect plaintiff after he assured her that he would notify her prior to contacting the neighbor's family about her allegations of sexual abuse).

It was also clearly established at the time of plaintiffs' deaths that a social worker may be liable for creating a danger or increasing the plaintiffs' vulnerability to a danger by failing to investigate risks, failing to report pertinent information to the court, or presenting false information to the court (e.g., informing the court that Powell is in compliance when the statement is knowingly false). *See Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1115 (9th Cir. 2009) (holding that "going forward, reasonable government officials are on notice that deliberately falsifying evidence in a child abuse investigation and including false evidentiary statements in a supporting declaration violates constitutional rights where it results in the deprivation of liberty or property interests, be it in a criminal or civil proceeding"); *Currier v. Doran*, 242 F.3d 905, 919 (10th Cir. 2001) (social worker created or increased danger to plaintiff by failing to investigate and report information to the court); *Ford v. Johnson*, 899 F. Supp. 227, 233 (E.D. Pa. 1995) (finding a constitutional claim against social workers who failed to investigate and report information to juvenile court regarding circumstances surrounding risks to child in custody of his father prior to father beating the child to death).

To determine whether an official affirmatively placed an individual in danger, a court is to consider the following: (1) whether any affirmative actions of the official placed the individual in

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

danger he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the officer acted with deliberate indifference to that danger. *Kennedy*, 439 F.3d at 1062-64. Here, viewing the evidence in the light most favorable to plaintiffs, defendants affirmatively exposed plaintiffs to third-party danger and/or rendered them more vulnerable to a known or obvious risk of danger and were deliberately indifferent to that danger.

Specifically, defendants deliberately transferred visitation from a secure DSHS facility to Powell's residence at Powell's request enhancing Powell's control over visitations and placing the children in a position of dramatically increased danger. Defendant Jacobson even acknowledged that Powell might flee with his children at visitation, yet still undertook no safety assessment of Powell's house or safety plan to protect them from harm from a suspected murderer. They did not even assure the visitation supervisor tasked with overseeing the Powell residence visits had experience in such visits in a parent's residence.[5] In affirmatively placing the boys in the position that allowed their father to murder them, the defendants disregarded all of the information and admonitions earlier referenced. There is no legitimate dispute that the "revised"[6] visitation plan created a greater risk for the boys or that the boys' safety was the defendants' responsibility.

Moreover, defendants quelled Charles Cox's concerns about the risk Powell posed, assuring him that the boys would be safe, a violation of a clearly established right. *See Kennedy*, 439 F.3d at 1065 (officer assured victim of security that was never provided); *Grubbs*, 974 F.2d at 121 ("The

---

5 Defendant Wilson testified they did nothing to train the visitation supervisor, Elizabeth Griffin-Hall and the 60-year old supervisor testified she had never conducted a visitation in a parent's residence prior to Josh Powell's case. *See Dkts*. 19 (10:16-18), *Dkt*. 20, Ex. 30 (29:13-19).

6 All of the "Visiting Plans" drafted by defendant Jacobson state that visitation will occur at a dcfs office or location. *Dkt*. 19 (13:16-19). Nonetheless, Jacobson disregarded the plan and the children's' safety for the benefit of Powell.

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - 14

{00150912;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1  Defendants also enhanced L.W.'s vulnerability to attack by misrepresenting to her the risks attending

2  her work.").

3        Defendants' contention that the court dictated visitation and the court had more knowledge

4  than the social workers is demonstrably false. This argument fails at the outset because the court

5  order only addressed the number and duration of visitations. Further, the court was patently ill-

6  informed regarding Powell's compliance and safety concerns surrounding the children, the direct

7  result of the defendants' failure to provide that crucial information. This information was material to

8  the court's understanding of the situation and its rulings on visitation. Indeed, the dependency court

9  made its concerns very clear at the first hearing, but the defendants disregarded the court's concern.

10  Nothing in the court orders reduced or abolished defendants' duty to assure the safety of plaintiffs.

11  Moreover, defendants never affirmatively sought the court's approval prior to moving visitation to

12  Powell's residence and never informed the court that they were taking no measures to ensure the

13  children's safety at Powell's residence. They acted affirmatively and within their own discretion in

14  placing the boys in that position of danger. Here, Powell's residence is no different than the high-

15  crime area in *Wood*, the bitterly cold environment in *Munger* or the unsupervised medical clinic in

16  *Grubbs*.

17        Moreover, defendants' contention that the decision to move visitation to Powell's residence

18  was made in consultation with Dr. Manley is false. Dr. Manley testified that he didn't have any say

19  in the decision to move visitation from the Foster Care Resource Network facility to Powell's

20  residence:

21       Q. Did you - - and then eventually when they were moved from the Foster Care Resource
     Network to Josh Powell's home, did you have any input or say regarding venue or location of

22

23

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

24

the visits?

A.  It wasn't up to me to decide that matter.

*Bariault Decl.*, Ex. 7 (50: 14-18).  Also, the children were not in the care and custody of Dr. Manley.

Plaintiffs' constitutional right to safety while in the care and custody of defendants is not waived by a

psychological evaluation, especially one that evidences serious concerns surrounding Powell's

parenting along with evasive and staged behavior.  As the Ninth Circuit has noted:

> **If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an inactive tortfeasor as if it had thrown him into a snake pit.**

*Kennedy*, 439 F.3d at 1061.  Here defendants affirmatively exposed plaintiffs to third-party danger

and/or rendered them more vulnerable to the risk of danger and were deliberately indifferent to

plaintiffs' rights.  They are not entitled to qualified immunity.

**3.  Disputed issues of material fact prevent a finding of qualified immunity on summary judgment.**

Here the issue of qualified immunity depends on genuine disputed issues of material fact and

the court must submit the fact-related issues to the jury.  *See Torres v. City of Los Angeles*, 548 F.3d

1197, 1210-11 (9th Cir. 2008); *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997); *Act

Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).  Here the defendants ask the Court to

accept their version of hotly disputed facts, an unacceptable basis for a qualified immunity claim.

These issues must go to a jury.

**C.  Motion to Strike: The Court should strike DSHS' request to dismiss plaintiffs' state law claims.**

This Court should strike DSHS' motion to dismiss plaintiffs' state law claims or,

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1   alternatively, deny it.  DSHS's motion was previously addressed and denied by a state court.  DSHS

2   provides no support for a rehearing on its previous defeat, no new evidence, no new argument – its

3   renewed motion is baseless.  While DSHS is correct that 28 U.S.C. § 1367(a) gives this Court

4   jurisdiction over the state law claims, it does not turn this Court into an appellate court for issues

5   already ruled upon by the state court in the same action.

6       "As most commonly defined, the doctrine of the law of the case posits that when a court

7   decides upon a rule of law, that decision should continue to govern the same issues in subsequent

8   stages in the same case." *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 816 (1988)

9   (alteration omitted) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  "The doctrine applies

10  as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Id*.

11  Indeed, the basic premise behind the law of the case doctrine is that courts should generally "refuse

12  to reopen what has been decided." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912).  While the law

13  of the case doctrine is not an "inexorable command," a court should only depart from the law of the

14  case when: 1) the first decision was clearly erroneous and would result in manifest injustice; 2) an

15  intervening change in the law has occurred; or 3) the evidence on remand was substantially different.

16  *Milgard Tempering, Inc. v. Selas Corp. of Am*., 902 F.2d 703, 715 (9th Cir. 1990).  "[I]f there is no

17  new evidence," however, or if "the evidence does not undermine the previous ruling on sufficiency,

18  then that previous ruling must stand." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).

19      DSHS does not acknowledge the law of the case doctrine in its summary judgment motion or

20  suggest one of the exceptions applies.  While DSHS contends plaintiffs "have new factual and legal

21  theories regarding their negligence claims," they do not even attempt to argue why this "new"

22

23  PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
    SUMMARY JUDGMENT - 17

    {00150912;2}

24

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

evidence – all of which only amplifies defendants' malfeasance – requires a different outcome. If anything, plaintiffs' additional evidence strengthens the state court's decision. This Court should strike defendants' renewed motion to dismiss the state tort claims. Even if the Court were to consider DSHS' substantive arguments, its contentions still fail.[7]

### 1. DSHS is not immune from liability under RCW 4.24.595(2).

DSHS asserts RCW 4.24.595(1) as a basis for immunity under state law. However, the statute did not exist at the time the events applicable to this case occurred.[8] Statutes will be construed prospectively unless a contrary intent is apparent. *Marine Property Co. v. Port Comm'Rs of Seattle*, 97 Wn.2d 307, 314, 644 P.2d 1181 (1982). There is nothing in the statute that demonstrates the legislature's intent to apply it retroactively. Accordingly, it is irrelevant.

Even if the statute could be applied retroactively, DSHS is not entitled to immunity because the statute states DSHS and its social workers "are not liable for acts performed to comply with such court orders." The acts described in the numerous undisputed facts submitted by plaintiffs were not undertaken to comply with a court order. Indeed, the facts demonstrate social workers violated court orders by failing to inform the court of Powell's non-compliance. DSHS is not entitled to immunity.

### 2. DSHS is liable under a theory of negligent investigation.

A negligent investigation claim is cognizable where "DSHS conducts a biased or faulty investigation that leads to a harmful placement decision, such as placing the child in an abusive home, removing the child from a nonabusive home, or failing to remove a child from an abusive

---

7 Due to page limitations, plaintiffs incorporate the arguments they previously made in state court that led to a denial of DSHS' request. *See Bariault Decl.*, Ex. 4.

8 The statutes effective date was June 7, 2012. RCW 4.24.595 [2012 c 259 § 13].

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

home." *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 591, 70 P.3d 954 (2003). RCW 26.44.050 provides:

> Upon the receipt of a report concerning the possible occurrence of abuse or neglect, it shall be the duty of … the department of social and health services to investigate and provide the protective services section with a report in accordance with the provisions of chapter 74.13, and when necessary to refer such report to the court.

DSHS was under a duty to investigate all claims of abuse or neglect surrounding plaintiffs. The state failed to conduct a reasonable investigation of Powell's abusive behavior, failed to inform the court of the extent of said behavior and as a result failed to remove them from their father. There is ample evidence from which a jury could conclude that a negligent investigation led to a harmful visitation placement decision.

Nor can DSHS shield itself from a negligent investigation claim or any other negligence claim based on the dependency court's order of supervised visitation. The court relies on DSHS to fulfill its mandated duties:

> A judicial order will not act as a superseding intervening cause terminating State liability where the State fails to provide all material information to the court for its decision. In the context of a claim for negligent investigation, the State's failure to provide all material information to the court may be the proximate cause of injury. Whether information is material is generally a question of fact for the jury.

*Estate of Jones v. State*, 107 Wn. App. 510, 519, 15 P.3d 180 (2000). DSHS failed to inform the court of Powell's non-compliance and that he was engaging in behavior detrimental to the children, failed to inform the court about family and law enforcement concerns surrounding the children's safety, and certainly did not inform the court it was taking no safety measures in Powell's residence. Moreover, the court's order did not obviate the State's mandated duties under RCW 26.44.050 ("must investigate") or RCW 13.34.020 ("the child's health and safety shall be the paramount

PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
SUMMARY JUDGMENT - 19

{00150912;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

concern.")

**3.     DSHS owed a duty to plaintiffs and breached that duty, resulting in their harm.**

DSHS was charged with the care and protection of plaintiffs and its negligence led to their harm. When a government agency is sued for negligence, "the public duty doctrine provides that a plaintiff must show the duty breached was owed to him or her in particular, and was not the breach of an obligation owed to the public in general, i.e., a duty owed to all is a duty owed to none." *Munich v. Skagit Emergency Communic. Center*, 175 Wn.2d 871, 878, 288 P.3d 328 (2012). There are four ways to prove that a duty is owed to plaintiffs: 1) legislative intent; 2) failure to enforce; 3) the rescue doctrine; and 4) a special relationship. Id. at 879. Two of those exceptions apply here.

**a.     RCW 13.34 *et. seq*. meets the legislative intent test.**

Under the legislative intent exception to the public duty doctrine, a governmental entity owes a duty to plaintiffs "where a legislative enactment evidences a clear legislative intent to identify and protect a particular circumscribed class of persons." *Washburn v. City of Federal Way*, 178 Wn.2d 732, 754, 310 P.3d 1275 (2013) (internal quotations omitted). Courts look to the legislature's statement of purpose to discover its intent. *Id*. at 754-55. "The legislative intent exception recognizes that the legislature may impose legal duties on … entities by proscribing or mandating certain conduct." *Id*. at 755.

Here, the exception applies because RCW 13.34.380 mandates conduct by DSHS for the benefit of dependent children such as plaintiffs. The statute requires DSHS to develop policies and protocols concerning visitation for dependent children, and to implement them "consistent with relevant orders of the court." RCW 13.34.380. The statute says DSHS "shall" develop and

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

implement the policies and protocols, which equates to a mandate. *Goldmark v. McKenna*, 172 Wn.2d 568, 575-76, 259 P.3d 1095 (2011) (use of the word "shall" is "presumptively imperative and creates a mandatory duty unless a contrary intent is shown").

Moreover, the legislature's statement of purpose shows intent to protect a particular class of persons encompassing the plaintiffs – vulnerable children. RCW 13.34.020 states in relevant part:

> *When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail. In making reasonable efforts under this chapter, the child's health and safety shall be the paramount concern.*

The legislative intent is clear that DSHS owed a duty to plaintiffs to protect their safety and implement policies to ensure their protection. It failed its duty as it took actions that placed plaintiffs in harms way and disregarded an obvious and foreseeable risk.

**b.    DSHS had a special relationship with plaintiffs.**

DSHS owed a duty to prevent Powell from harming his children because it had a special relationship with plaintiffs. A duty "arises when one party is entrusted with the well being of another." *Niece v. Elmview Group Home*, 131 Wn.2d 39, 50, 929 P.2d 420 (1997). This duty is based on the defendants' "assumption of responsibility for the safety of another." Id. at 46. A special protective relationship of this nature is an exception to the public duty doctrine. *Caulfield v. Kitsap County*, 108 Wn. App. 242, 251-52, 29 P.3d 738 (2001).

The rationale of the caretaker's duty is that, when a vulnerable person is placed in a defendant's care, that person loses the ability to protect herself from harm. *Niece*, 131 Wn.2d at 44. Under these circumstances, "a special relation exists between the defendant and the other which gives the other a right to protection." *Id*. at 43. For example, a school must protect students in its

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1  care from reasonably anticipated dangers, an innkeeper must protect guests, and a hospital or

2  nursing home must protect patients. *Id.* at 44. "Special relationships are typically custodial or at

3  least supervisory." *Caulfield*, 108 Wn. App. at 255 (citing *Webstad v. Stortini*, 83 Wn. App. 857,

4  869-70, 924 P.2d 940 (1996) (special relationship duty arises when there is a "direct supervisory

5  component.").

6       Here, DSHS petitioned the court to place the plaintiffs under its protection. It affirmatively

7  requested that it be responsible for plaintiffs' safety and it is undisputed that the children were "in

8  the custody, control and care of DSHS." Yet, it claims the "application of a special relationship in a

9  dependency case does not make any sense." This position is shocking and belied by case law,

10  statutes and the millions of dollars the State has paid to victims of its negligence. Indeed, its

11  argument that it files dependency petitions to protect children but owes no duty of protection to

12  those children while facilitating visitation with a potentially abusive parent is absurd and only

13  further supports why so many children are victimized while under state supervision.

14       The cases cited by DSHS in support of its flawed position are inapposite. Neither *Aba*

15  *Sheikh v. Choe*, 156 Wn.2d 441, 457-58, 128 P.3d 574 (2006) nor *Terrell C. v. DSHS*, 120 Wn.

16  App. 20, 26, 84 P.3d 899 (2004), deal with the protection of dependent children from a parent.

17  Plaintiffs in those cases were harmed by the dependent children, and sought to hold DSHS

18  responsible for failing to prevent the children under its care from harming third parties. *Aba Sheikh*,

19  156 Wn.2d at 445-46; *Terrell C.*, 120 Wn. App. at 23. In both cases the courts held DSHS had no

20  duty to control the behavior of dependent children. These cases are irrelevant where here the injured

21  parties are the dependent children.

22

23  PLAINTIFFS' REPLY TO MOTION FOR PARTIAL
   SUMMARY JUDGMENT - 22

{00150912;2}

24

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

*Aba Sheikh* and *Terrell C*. actually support plaintiffs' argument because they underscore that the purpose of RCW 13.34 and other child welfare statutes is to protect dependent children such as plaintiffs. *Aba Sheikh*, 156 Wn.2d at 452 ("While DSHS clearly has some control over dependent children, these statutes uniformly follow from child welfare's stated purpose: to safeguard the health and welfare of dependent children"); *Terrell C*., 120 Wn. App. at 28 (Any ongoing relationship between the social worker and dependent child "is to prevent future harm to that child, not to protect members of the community from harm.").

DSHS further created a special relationship with plaintiffs through its assurances of protection. A special relationship exists when 1) there is direct contact between DSHS and the plaintiff which sets the plaintiff apart from the general public; 2) DSHS gives express assurances to the plaintiff; and 3) the plaintiff justifiably relies on those assurances. *Caulfield*, 108 Wn. App. at 251-52. Here, as previously established, DSHS formed a special relationship when it repeatedly assured Charles Cox plaintiffs would be protected, even after he and others repeatedly informed DSHS of concerns surrounding the boys' safety. The boys and their grandparents relied on these false assurances that DSHS was taking steps to ensure plaintiffs' safety. DSHS breached its duty.

### 4. Plaintiffs' harm was foreseeable as a matter of law and DSHS was a proximate cause in that harm.

DSHS cannot deny the harm plaintiffs suffered was foreseeable where it received numerous warnings that Powell may harm his children and acknowledged that it believed Powell murdered his wife. The special protective duty of a caretaker extends to the "universe of possible harms," not just specific known threats. *Niece*, 131 Wn. 2d at 50. Here, plaintiffs' experts testified that DSHS knew or should have known that Powell posed a serious danger to his children and family members

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

and law enforcement provided DSHS with the same. *Dkt*. 20, Exs. 9-10, 52, 57.[9] Plaintiffs' deaths were easily within the field of danger known to DSHS.

There is ample evidence for a jury to find that DSHS' failure to act reasonably, or take any action at all for that matter, was a proximate cause in the boys' deaths. "[P]roximate cause is generally a matter for the jury, unless only one reasonable conclusion is possible." *Beltran v. DSHS*, 98 Wn. App. 245, 250, 989 P.2d 604 (1999).   This is clearly a matter to be decided by a jury.

## IV.    CONCLUSION

Defendants' failed in their duty to protect plaintiffs, disregarding clearly established federal law and state law set forth to protect individuals like C.J.P. and B.T.P.  Defendants' pattern of indifference is hardly shocking since the State and its employees continue to assert they owe no duty to those in their care and custody.  The law is clear, however, that children's safety is paramount and the undisputed facts establish plaintiffs' safety was never a serious consideration for the defendants. Defendants' motion should be denied.

DATED this 17th day of August, 2015.

FREY BUCK, P.S.

/s/ Anne Bremner
    Anne Bremner, WSBA #13269
    Evan Bariault, WSBA #42867
Attorneys for Plaintiffs

---

9 These same declarations were submitted to the state court below.

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

**Certificate of Service**

I certify that on the date noted below I electronically filed this document entitled with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

| | |
|---|---|
| Joseph M. Diaz, WSBA #16170 | James S. Rogers, WSBA #5335 |
| josephd@atg.wa.gov | jsr@jsrogerslaw.com |
| Peter Helmberger, WSBA #23041 | Cheryl L. Snow, WSBA #26757 |
| peterh@atg.wa.gov | csnow@jsrogerslaw.com |
| Jodie@atg.wa.gov | Elizabeth J. Donaldson, WSBA #45291 |
| Jennym@atg.wa.gov | liz@jsrogerslaw.com |
| TORTacEF@atg.wa.gov | Dawn@jsrogerslaw.com |
| Office of the Attorney General | Law Offices of James S. Rogers |
| 1250 Pacific Street, Suite 105 | 1500 Fourth Avenue, Suite 500 |
| Post Office Box 2317 | Seattle, WA 98101 |
| Tacoma, WA 98401 | (206) 621-8525 |
| (253) 593-5243 | FAX: (206) 223-8224 |
| *Attorneys for Defendant* | *Attorneys for Plaintiffs* |

DATED this 17th day of August, 2015, at Seattle, Washington.

/s/ Evan Bariault
_____

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660