The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, FOREST JACOBSON, ROCKY STEPHENSON, JANE WILSON, and BILLIE REED-LYYSKI, <br><br> Defendants. | NO. 14-05923 RBL <br><br> REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY <br><br> NOTE ON MOTION CALENDAR: AUGUST 21, 2015 |

## I. REPLY STATEMENT OF THE CASE

It is undisputed that the disappearance of Susan Powell in the State of Utah in December, 2009 and the suspicion that her husband, Joshua Powell, murdered her was insufficient to warrant placing their sons into protective custody in the State of Utah or in the State of Washington. It is undisputed that Pierce County Sheriff's Deputies did not place the boys into protective custody until September 22, 2011, when they arrested the boys' paternal grandfather, Steven Powell. It is undisputed that rather than return the boys to Joshua Powell,

REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY - NO. 14-05923 RBL

1

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

DSHS filed a dependency petition in part because there was concern for his ability to parent, and in part because they were repeatedly told that an arrest of Powell was imminent. It is undisputed that, per the laws of the State of Washington, the Juvenile Court ordered visitations, ordered a psychological evaluation and ordered that the permanent plan for the Powell family was reunification. It is undisputed that once Dr. James Manley, Ph.D., completed his psychological evaluation with a parenting assessment, questions about Powell's ability to parent were limited and the boys return was imminent.

It is also undisputed that on February 1, 2012, the Juvenile Court held a hearing and was fully informed: that visitations were going well at Powell's residence; that there were no concerns for safety and that concerns about disparaging remarks no longer existed[1]; and that images were pulled from Powell's computer raising questions about his sexual deviancy. It is also undisputed that the Court had reviewed Dr. Manley's original report and the addendum with recommendations for a psychosexual evaluation, the social worker's and GAL's reports to the Court, and that the visitations supervisor was present at the hearing and available to answer any questions the Court may have had.[2] It is also undisputed that the court had full knowledge of the evidence surrounding Susan Powell's disappearance, and with full knowledge of the images pulled from Powell's computer, the Court ordered visitations remain the same as they had been for more than three months, which is an order consistent with Washington law. There is no liability in this case under any theory.

---

[1] See Dkt. 22-1, pp. 129-136 (Hearing Transcript, February 1, 2012).
[2] See Declaration of Kathryn J. Nelson, ¶¶ 2-4; see also, Dkt. 22, pp 77-114 (Individual Service and Safety Plans); Dkt. 22-1, pp. 68, ¶ 6, 69, 75, 82, 85-86 (Psychological Evaluation) and 61-65 (Psychological Evaluation Addendum); Dkt. 25-1, pp. 2-8 (GAL Report), Dkt. 8-4, pp. 71-74 (Declaration of Social Worker); Declaration of Peter J. Helmberger in Support of Defendants' Reply on Motion for Summary Judgment, Ex. B (Motion to Place Children in In-Home Dependency or, in the Alternative, to Modify Placement).

REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY - NO. 14-05923 RBL

2

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

## II. ARGUMENT REGARDING ALLEGED CIVIL RIGHTS VIOLATIONS

### A. The Social Worker Defendants Are Entitled To Absolute Immunity

Government officials such as social workers are entitled to absolute immunity when performing quasi-prosecutorial and quasi-judicial functions. *Tamas v. Department of Social & Health Services,* 630 F.3d 833 (9th Cir. 2010); *Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991). Here, the social workers are entitled to absolute immunity for executing the court's order regarding visitations. *Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758 (9th Cir. 1987).

The plaintiffs argue that the basis of their claims is a wide variety of discretionary decisions that were not the actual implementation of a court order. But those assertions are all irrelevant because the harm occurred during a visitation ordered by the Court with full knowledge of the case and for that the social workers have absolute immunity.

### B. The Social Workers Are Entitled To Qualified Immunity

Once the defense of qualified immunity is raised, plaintiff bears the burden, at all times, of proving that the particular federal right alleged to have been violated was so clearly established at the time of the official's action that the official should have known that they were violating a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 172 L.Ed.2d 565 (2009); *Kennedy v. Ridgefield,* 439 F.3d 1055, 1065 (9th Cir. 2006).[3]

In *DeShaney v. Winnebago County,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court ruled that the constitution is meant to protect against state action but not the action of private individuals. The rule announced in *DeShaney* "is modified by

---

[3] In determining whether there is qualified immunity, the Court must determine 1) whether a constitutional right would have been violated on the facts alleged taken in a light most favorable to the non-moving party, and 2) whether the right was clearly established when viewed in the context of the case. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).While the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as mandatory. *Pearson*, 129 S.Ct. at 811. "The judges of … the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY - NO. 14-05923 RBL

3

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

two exceptions," one of which is the "special relationship exception" and the other is the "danger creation exception." *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007). Neither apply to this case.

### 1. It is not clearly established that the special relationship exception applies in this case.

The special relationship raised in this case is based on a substantive due process right that "protects a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent." *Tamas*, 630 F.3d at 842. Plaintiffs rely on *DeShaney* and *Tamas*. However, both of those cases involved repeated warnings of physical abuse against the person the child was placed with.

To hold a defendant individually liable under § 1983, the plaintiffs must show that the defendant was personally involved or personally participated in the alleged deprivation. In this case, the plaintiffs are not arguing that social workers ignored repeated referrals the children were being abused because there were no such reports. Rather, plaintiffs argue, repeatedly, that the social workers' various discretionary decisions are the basis of their claims.

However, plaintiffs have provided no case law whatsoever demonstrating there is a clearly established constitutional right implicated based on social worker's discretionary decisions made while coordinating a dependency matter. Therefore, all of the plaintiffs' criticisms of the social work are irrelevant.

The alleged claims ranging from misinterpreting Washington state law, misapplying DSHS policy, ignoring Dr. Manley's report, to ignoring the juvenile court's awareness of the full extent of the Powell-Cox posturing over custody of C.J.P. and B.T.P. are all completely irrelevant because there is no case law suggesting that those sorts of decisions in the context of a dependency action and the social worker's role in implementing court orders, implicate and violate a clearly established constitutional right. Plaintiffs have failed in their burden.

REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY - NO. 14-05923 RBL

4

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

### 2. There is no state created danger because the Court ordered the visitation.

The plaintiffs argue that the danger creation exception applies because the affirmative actions of a state official created or exposed an individual "to a danger which he or she otherwise would not have faced," *citing Kennedy*, 439 F.3d at 1061. This is incorrect if for no other reason than the State did not create this danger but rather complied with the Court-ordered visitation requirements.

To prevail on the danger creation exception in the Ninth Circuit, "a plaintiff must first show that the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where the state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Johnson,* 474 F.3d at 639. Second, a plaintiff must also establish the state actor was deliberately indifferent to a known or obvious danger. *Kennedy*, 439 F.3d at 1064.

Plaintiffs cite to several Ninth Circuit cases to support their claims, which are not applicable in this setting,[4] and to two cases outside the Ninth Circuit, neither of which apply for the same reasons that *Tamas* does not apply.[5] The cases cited are inapplicable because the plaintiffs' case, based on their own accord, is not based on DSHS social workers ignoring

---

[4] *See Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (police officer arrested plaintiff's boyfriend for drunk driving, ordered plaintiff out of the car, had the vehicle impounded, and then left the scene stranding the plaintiff underdressed in a known high crime area); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) (plaintiff, a nurse at a medium security custodial institution was assigned to work alone with a known violent sex offender who had failed all treatment programs); *Penilla*, 115 F.3d 707 (9th Cir. 1997) (per curiam) (police officers affirmatively locked a seriously ill person in his house and cancelled a neighbor's 911 call for emergency services); *Munger*, 227 F.3d 1082 (9th Cir. 1997) (police officers ordered a drunk and belligerent patron to leave a bar and not drive, leaving patron outside in jeans and a T-shirt when there was a minus 20-25 wind-chill temperature); *Kennedy*, 439 F.3d 1055 (police officers placed plaintiff in a position of danger by notifying a neighbor that she (plaintiff) had reported he molested her nine-year-old daughter, but did so after failing to fulfill his assurance that the police would notify plaintiffs prior to disclosing the allegation and would patrol the neighborhood that night)

[5] *See Currier v. Doran*, 242 F.3d 905, 919 (2001) (Constitutional right implicated in transferring custody from one parent (the mother) to the other parent (the father), similar to when social workers transferring custody to foster care, where there were numerous reports of abuse by the father which included allegations of dunking in a bathtub and bruises, and failed to investigate); *Ford v. Johnson*, 899 F.Supp. 227, 233 (E.D Pa. 1995) (essentially identical to *Currier* in that liability was premised on transferring custody from one parent to the other parent, who turned out to be abusive). Interestingly enough, *Ford* rejected that liability attaches under the special relationship exception after finding *DeShaney* was on point.

REPLY BRIEF OF DEFENDANTS IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND QUALIFIED
IMMUNITY - NO. 14-05923 RBL

5

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

repeated warnings of abuse, but rather is premised on social workers making discretionary decisions.

However, plaintiffs have failed to demonstrate a clearly establish constitutional right exists when making decisions in a dependency matter based on information gathered from professionals such as Dr. Manley and the visitation supervisor, interpretations of governing statutes and policies, implementing court-orders which included the plan for reunification, and implementing the court-ordered visitations where there were no allegations that Powell physically or sexually abused his sons (which is a "fundamental" substantive due process liberty interest of a parent). RCW 13.34.136(2)(b)(ii); *see also Brittain v. Hansen,* 451 F.3d 982 (9th Cir. 2009).

The whole point of qualified immunity is to protect against liability based on discretionary decisions.[6] The social workers are entitled to qualified immunity and the civil rights claims should be dismissed.

### III. LAW AND ARGUMENT REGARDING NEGLIGENCE CLAIMS

Initially, the plaintiffs move to strike the defendants' motion as it relates to the alleged state law claims citing the "law of the case" doctrine. This is incorrect.

A denial of a summary judgment motion does not constitute a final disposition of any issue in the case and does not become the "law of the case." *Andrews Farms v. Calcot, LTD.,* 693 F.Supp.2d 1154, 1164-65 (E.D.Cal. 2010). An "order denying a motion for summary judgment is generally interlocutory and subject to reconsideration by the court at any time." *Preaseau v. Prudential Ins. Co. of America,* 591 F.2d 74, 79-80 (9th Cir. 1979).

Plaintiffs concede at page 18 of their brief that they added new evidence to their case.

---

[6] The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer,* 536 U.S. 730, 731, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002.)

REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY - NO. 14-05923 RBL

6

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

In addition, before the state court in response to summary judgment the plaintiffs' offered the declarative testimony of two Pierce County Sheriff's Deputies who claimed that they told DSHS and AAG John Long that Powell would harm his children.[7] Unfortunately, there was not time to depose those two witnesses prior to the hearing on the motion. The detectives were subsequently deposed and both indicated that they did not have any actual evidence, and testified that "thinking" or "gut feelings" were not enough to put the kids in protective custody.[8] Dkt. 22, pp. 23-24 (Helmberger Decl.); Helmberger Reply Decl., Ex. A, pp. 12-13.

### A. Defendants Are Statutorily Immune From Suit.

DSHS and the social workers are immune under RCW 4.24.595.[9] Plaintiffs argue that the acts here are not protected by Court order, but this is obviously incorrect. The tragedy occurred during a court-ordered visitation. In addition, plaintiffs criticize what was and was not reported to the Court, but this too is protected by this same statute as witness immunity.

Plaintiffs also assert that the statute does not apply retroactively to the events underlying the lawsuit. This is incorrect because the triggering event is not the events underlying the case, but the attempt to hold DSHS social workers liable. *See In re Estate of Haviland*, 177 Wn.2d 68, 75, 301 P.3d 31 (2013) (Court concluded that 2009 statutory amendments applied to the adjudication of Dr. Haviland's will because those statutes "intend to regulate the receipt of benefits, not the financial abuse itself" . . . Thus . . . "the triggering event is the attempt by the abuser to receive property or any other benefit from the estate of the

---

[7] Named defendants Rocky Stephenson and Forest Jacobson and AAG John Long filed declarations contradicting this assertion. Dkt. 10-1, pp. 40-53.

[8] Furthermore, here it is impossible know what the Washington State Superior Court Judge actually decided. A fair summary of the Court's ruling is as follows: "The Cox's will have their day in court, motion denied." Dkt. 10-4, p. 41, ln. 1-3 (Excerpts from Verbatim Transcript of Proceedings); Dkt. 28-5.

[9] RCW 4.24.595: The department of social and health services and its employees shall comply with the orders of the court, including shelter care and other dependency orders, and *are not liable for acts performed to comply with such court orders*. In providing reports and recommendations to the court, employees of the department of social and health services *are entitled to the same witness immunity as would be provided to any other witness*. (Emphasis added).

REPLY BRIEF OF DEFENDANTS IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND QUALIFIED
IMMUNITY - NO. 14-05923 RBL

7

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

abused person." *Id.*, 177 Wn.2d at 77-78).

Accordingly, RCW 4.24.595(2) applies and is squarely on point.

**B.   There Is No Claim For Negligent Investigation Based On Statute Or Common Law**

The cause of action for negligent investigation is strictly limited to the narrow exception when, during a child abuse or neglect investigation conducted pursuant to RCW 26.44.050, "DSHS has gathered *incomplete* or *biased* information that *results in a harmful placement decision* such as removing a child from a non-abusive home, placing a child in an abusive home or letting a child remain in an abusive home." *M.W. v. Department of Social and Health Services,* 149 Wn.2d 589, 602, 70 P.3d 954 (2003).  As mentioned in the opening brief, Washington Courts have consistently rejected claims for negligent investigation which do not implicate the two purposes of RCW 26.44.050, and similarly, outside of the confines of RCW 26.44.050, Washington courts have uniformly refused to imply tort duties from other child welfare statutes.

A claim based on a visitation decision during a dependency does not fall under RCW 26.44.050.  Rather, it falls under the dependency statutes, RCW 13.34, which the plaintiffs assert creates a cause of action.  While RCW 13.34.020 does state generally that when the rights of parents and children are in conflict, the safety of the child is of paramount importance, the statute governing visitations directs that courts order "early and frequent" visitation and that social workers are to "maximize parent-child contact" between members of families where abuse and conflict are the norm.  The Supreme Court in Washington already rejected the invitation to impose a duty on DSHS where such duty would directly conflict with separate DSHS statutory mandates.[10]

---

[10] *See Aba Sheikh v. Choe*, 156 Wn.2d 441, 453-54, 128 P.3d 574 (2006) (The Court rejected imposing a duty upon DSHS social workers in part because it would have imposed conflicting obligations regarding placement because "On the one hand, DSHS is required to ensure that foster care placements are in the least restrictive, most family-like setting available" but "On the other hand, DSHS would be subject to liability, or at

REPLY BRIEF OF DEFENDANTS IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND QUALIFIED
IMMUNITY - NO. 14-05923 RBL

8

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

Furthermore, as stated in the opening brief, the Washington State Supreme Court has already rejected that statutes governing dependent children were enacted with the intent to create tort liability. In *Braam v. State*, 150 Wn.2d 689, 711-12, 81 P.3d 851 (2003) the Court found "no evidence of legislative intent to create a private cause of action, and that implying one is inconsistent with the broad power vested in DSHS to administer these statutes." *Braam*, 150 Wn.2d at 712. This reasoning certainly applies here to the statutes plaintiffs rely on, which create broad, if somewhat conflicting, powers to ensure safety while maximizing contact with known abusers.

Plaintiffs also assert the existence of a special relationship as the basis of a negligence claim. Inexplicably, however, the plaintiffs analyze this case under the Public Duty Doctrine, which generally applies in the regulatory context where the legislature imposes a duty on specific government officials.[11] Here, there is no duty in the first place.

In any event, the plaintiff argues the "legislative intent" exception applies, but this is incorrect because Washington courts require that a cause of action be explicitly provided in legislation, and not merely implied. *See Taylor v. State*, 111 Wn.2d 159, 166, 759 P.2d 447 (1988); *Baerlein v. State*, 92 Wn.2d 229, 231, 595 P.3d 930 (1979); *Donohoe v. State*, 135 Wn. App. 824, 833 [or at 844 (citing *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 930, 969 P.2d 75 (1998))]; *Halleran v. Nu West, Inc.,* 123 Wn. App. 701, 712, 98 P.3d 52 (2004), *review denied*, 154 Wn.2d 1005 (2005).

---

least potential for liability, if it did not take significant steps to restrict the freedom of dependent children, the vast majority of whom have suffered severe abuse or neglect" which DSHS would have to do without the authority to place a child in lockdown.).

[11] The public duty doctrine applies to cases where the legislature imposes a duty upon government officials but "Because governments, unlike private persons, are tasked with duties that are not legal duties within the meaning of tort law, [courts] carefully analyze the threshold element of duty in negligence claims against governmental entities." *Washburn v. City of Federal Way,* 178 Wn.2d 732, 758, 310 P.3d 1275 (2013). Under the public duty doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.,* a duty to all is a duty to no one)." *Cummins v. Lewis Cy.*, 156 Wn.2d 844, 852, 133 P.3d 458 (2006) (quoting *Taylor*, 111 Wn.2d at 163).

REPLY BRIEF OF DEFENDANTS IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND QUALIFIED
IMMUNITY - NO. 14-05923 RBL

9

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Plaintiffs' citation to RCW 13.34.020 and 13.34.380 does not remotely satisfy the legislative intent exception because there is no explicit statement regarding liability. RCW 13.34.020 requires adhering to child safety while implementing a statute and court order which requires contact with family members. RCW 13.34.380 directs DSHS to enact and implement policies governing visitation to bring consistency statewide. Those policies have to be consistent with other provisions of the chapter, such as visitations be "early and frequent" and that social workers should "maximize contact" between parents and children. So while the legislature directs that children's safety is a paramount concern, the legislature in no way imposed upon social workers the sort of direct obligation to guarantee safety during visitations that creates a tort duty.

Plaintiffs rely heavily on *Caulfield v. Kitsap County*, 108 Wn. App. 242, 29 P.3d 738 (2001). However, the type of special relationship in *Caulfield* does not apply here because DSHS social workers are not responsible for the day-to-day supervision of children in dependency status.[12] As stated in *Aba Sheikh* and *Terrell C. v. State Dept. of Social and Health Services*, 120 Wn. App. 20, 26-29, 84 P.3d 899 (2004), the relationship between social workers and dependent children is not a special relationship. Rather, "[a]ny 'ongoing'" relationship is based on "[t]he statutory scheme" that "does not contemplate that social workers will supervise the general day-to-day activities of a child. Rather the social worker's role is to coordinate and integrate services in accord with the child's best interests and the need of the family." *Terrell C.*, 120 Wn. App. at 26-29. But this is not a custodial relationship and, accordingly, there is no special relationship.

Lastly, plaintiffs also allege a special relationship existed based on the alleged express assurance to Charles Cox that the boys would be safe. This is incorrect.

---

[12] For example, RCW 74.13.330 provides that "Foster parents are responsible for the protection, care, supervision, and nurturing of the child in placement." *See also* WAC 388-73-014(5) (foster parents are responsible for the "direct care and supervision of children placed in their care); WAC 388-73-312 (same).

REPLY BRIEF OF DEFENDANTS IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND QUALIFIED
IMMUNITY - NO. 14-05923 RBL

10

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

This type of special relationship requires proving there is an "express assurance" by a government employee provided in response to a "direct inquiry" from the plaintiff, and the assurance "clearly sets forth incorrect information," which the plaintiff justifiably relied on to his or her detriment. *Donohoe*, 135 Wn. App. at 835.

Plaintiffs did not strenuously argue this special relationship and for good reason. More importantly, the plaintiffs completely fail to address how Cox relied on this statement to his detriment. No where do they even attempt to explain that. Visitations were ordered by the court, not allowed by Cox. It was not Cox's decision to allow visitation, nor was it was up to him where they were held or when. He had no authority to end visitations and there is no assertion that he only "allowed" the visitations to go forward because of the social worker's statements.[13] Lastly, Cox is not the plaintiff in this case, so his "reliance" is irrelevant. The express assurance has to be to the plaintiffs.

**C. Plaintiffs Cannot Prove Proximate Cause Because The Court's Order Setting Visitations Severs Liability.**

The Court's order regarding visitation on February 1, 2012, is dispositive to this case. That is, even if there is a duty supporting a negligence claim based on any of the plaintiffs' theories, the plaintiff must prove the faulty investigation was the proximate cause of the visitation order. *See Petcu v. State,* 121 Wn. App. 36, 86 P.3d 1234 (2004). The Juvenile Court's order on visitation severs any liability unless the court was deprived of a material fact. *Petcu*, 121 Wn. App. at 56. A material fact is one that would have changed the outcome. *Id.*

Here, the plaintiff argues that DSHS is liable in spite of the Court order because DSHS was obligated to provide more information to the Court than it did, and failed to do so. The plaintiffs however cite to no "material facts" which would have changed the outcome of the

---

[13] It should be noted that Cox told social worker Forest Jacobson that he thought social workers did what they could to keep the kids safe. Dkt. 10-1, pp. 48-53 (Second Declaration of Forest Jacobson, ¶ 10, Ex. A); see also, Dkt. 7-5, pp. 32-36, where Charles Cox admits he had no facts or evidence beyond a hunch to support his claim that Joshua Powell would harm his sons (Deposition of Charles F. Cox).

REPLY BRIEF OF DEFENDANTS IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND QUALIFIED
IMMUNITY - NO. 14-05923 RBL

11

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Court's order on visitation.[14]

On February 1, 2012, four days prior to Joshua Powell murdering his sons, the dependency court judge had been fully advised that the supervised visitations on Sundays had been occurring in Powell's new rental residence since November of 2011. The visitation supervisor was present and available at the hearing when it was reported that the need to redirect Powell away from making disparaging remarks about the Coxes had ended. The Court reviewed both of Dr. Manley's reports and ordered a psychosexual evaluation based on the graphic images released from Utah. The Court was aware of Powell's connection to the disappearance of his wife.

The Court concluded the hearing by ruling that the visitation schedule would remain the same having specifically addressed the visitation issue. There are no facts the plaintiffs can seriously argue are "material" given the all of the information the Court had. Put simply, disparaging remarks by Powell about the Cox's, to the extent they may have still existed, were not "material" and were not going to change the outcome of the Court's order.[15]

### IV. CONCLUSION

Based on the foregoing reasons, the individual defendants are entitled to qualified immunity and all of the defendants are entitled to summary judgment dismissing plaintiffs' lawsuit with prejudice.

/ / /

/ / /

/ / /

/ / /

---

[14] As mentioned in the opening brief, *Petcu* explicitly rejected that courts focus exclusively on what information DSHS provided to the Court. *Petcu*, 121 Wn. App. at 58-59.

[15] It is axiomatic that cause in fact "does not exist if the connection between an act and the later injury is indirect and speculative." *Estate of Bordon v. Department of Corrections*, 122 Wn. App. 227, 240, 95 P.3d 764 (2004), *review denied*, 154 Wn.2d 1003 (2005).

REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY - NO. 14-05923 RBL

12

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

DATED this 21st day of August, 2015.

ROBERT W. FERGUSON
Attorney General

*/s/ Peter J. Helmberger*
PETER HELMBERGER, WSBA No. 23041
JOSEPH M. DIAZ, WSBA No. 16170
Assistant Attorneys General
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2015, I caused to be electronically filed the following documents with the Clerk of the Court:

Reply Brief of Defendants In Support of Motion for Summary Judgment and Qualified Immunity
Declaration of Kathryn Nelson
Declaration of Peter J. Helmberger with attached Exhibits A - B

using the CM/ECF system which will send notification of such filing to the following:

James S. Rogers
Elizabeth Donaldson
Cheryl Snow
Law Offices Of James S. Rogers
1500 Fourth Avenue, Suite 500
Seattle, WA 98101
(206) 621-8525

jsr@jsrogerslaw.com
csnow@jsrogerslaw.com
liz@jsrogerslaw.com

Anne Bremner
Evan Bariault
1200 Fifth Avenue, Suite 1900
Seattle, WA 98101
(206) 486-8000

abremner@freybuck.com
ebariault@freybuck.com

REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY - NO. 14-05923 RBL

13

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

| | |
|---|---|
| 1 | ROBERT W. FERGUSON<br>Attorney General |
| 2 | |
| 3 | */s/ Peter J. Helmberger*<br>PETER J. HELMBERGER, WSBA No. 23041<br>Assistant Attorney General |
| 4 | 1250 Pacific Avenue, Suite 105<br>Tacoma, WA 98401 |
| 5 | Telephone: (253) 593-5243<br>FAX: (253) 593-2449 |
| 6 | E-mail: PeterH@atg.wa.gov |
| 7 | */s/ Joseph M. Diaz*<br>JOSEPH M. DIAZ, WSBA No. 16170 |
| 8 | Assistant Attorney General<br>7141 Cleanwater Ln SW |
| 9 | Tumwater, WA 98501<br>Telephone: (360) 586-6300 |
| 10 | FAX: (360) 586-6655<br>E-mail: JosephD@atg.wa.gov |
| 11 | Attorneys for Defendants |

REPLY BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY - NO. 14-05923 RBL

14

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243