The Honorable Ronald B. Leighton
United States District Court Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, FOREST JACOBSON, ROCKY STEPHENSON, JANE WILSON, and BILLIE REED-LYYSKI,<br><br>Defendants. | NO. 14-05923RBL<br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION**<br><br>**Noted for Consideration:**<br><br>**October 19, 2015** |

PLAINTIFFS' MOTION FOR RECONSIDERATION

{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

## I. INTRODUCTION

Plaintiffs respectfully request the Court reconsider its ruling on Defendants' Motion for Summary Judgment. *Dkt*. 39. Plaintiffs (and their counsel) fully appreciate the Court's analysis expressed in its Order and do not seek reconsideration lightly. However, based upon certain unsupported "facts" in the State's briefing, the Court's order is factually and legally untenable for the following reasons:

***First***, contrary to defendants' contention, the decision to move visitation to Powell's residence and continue to hold visitation at that location after Powell was ordered to undergo a psychosexual evaluation with a polygraph was left to the social workers' discretion, it was not the result of a judicial order. While Judge Nelson may have ratified the decision to continue visitations, she did not ratify the location. The defendants are not entitled to absolute immunity.

***Second***, the record establishes defendants failed to provide the dependency court with material information necessary to make an informed decision about visitation. Defendants' misrepresentation that Judge Nelson was aware of the same information as family members and Detective Sanders is belied by the record.

***Last***, plaintiffs' disputed, material facts establish that the State is not entitled to dismissal of plaintiffs' state law negligence claims.

## II. ARGUMENT

This Court is correct that the facts of this case "are undeniably tragic." The Court's conclusion, however, that those facts are "largely undisputed" can only be reached by disregarding plaintiffs' materially disparate facts. Many of the Court's factual findings rest upon the defendants' self-serving and unsupported statements, which cannot found a dismissal on summary judgment. "Summary judgment requires facts, not simply unsupported denials of rank speculation." *McSherry*

PLAINTIFFS' MOTION FOR RECONSIDERATION - 1
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

*v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009); *see also Fed. Trade Comm'n v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548 91 L. Ed. 2d 265 (1986). Plaintiffs' facts provide substantial material conflict with defendants' representations and, more importantly, the record demonstrates clear error in reliance on defendants' facts.

**1. Plaintiffs' facts establish the social worker defendants are not entitled to absolute immunity.**

The Court's order acknowledges that the social workers' decision to move visitation from the secure FCRN facility to Powell's residence was a discretionary decision. *Dkt*. 39, 10:19-21 ("Judge Nelson ratified Serrano, Jacobson, and supervisor Wilson's ***discretionary decision*** to increase the hours of visitation and to hold it at Joshua's rental home.") It also acknowledges "[a]bsolute immunity does not apply, however, to social workers' investigatory conduct, discretionary decisions, or recommendations." *Id*., 10:9-11. Nonetheless, the Court granted absolute immunity on the basis that Judge Nelson ratified the decision to increase visitation and hold it at Powell's residence. Specifically, the Court held, "[b]y ordering visitation to continue as it had been, Judge Nelson tasked the social workers with continuing to facilitate visitation at Joshua's home. They had to comply with this directive." *Id*., 10:21-11:2. While defendants submitted this very contention during oral argument on September 17, 2015, the record does not support defendants' contention or the Court's conclusion.

The dependency court's order entered on February 1, 2012, makes no mention of the visitation location.[1] *Dkt*. 20, Ex. 51. Instead, the visitation location was left up to the ***discretion*** of

---

1 The dependency court's February 1 order reads:
> *Two visits each week, three hours each minimum, supervised by DCFS or DCFS approved person. Visits may be expanded upon agreement of the GAL and the social worker.*

PLAINTIFFS' MOTION FOR RECONSIDERATION - 2
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1 the social workers who were tasked with holding visitation in a location that ensured the children's safety. *Dkt*. 20, Ex. 15 (DSHS policy requires that supervised visitation take place at a DSHS site or "[o]ther site as pre-approved by social worker that ensures safety of child."). Plaintiffs' facts and, more importantly, the undisputed record support this conclusion and only through reliance on the defendants' unsupported statements can a different result be reached.

Indeed, the dependency court's October 26, 2011 order demonstrates the flaw in defendants' contention that led to the Court's conclusion that Judge Nelson actually ordered visitation at Powell's residence. *Dkt*. 39, 10:21-11:2. On October 26, 2011, Judge Nelson ordered[2] visitation to continue as it had been prior to that date, making no mention of visitation location – her language was virtually identical to her order on February 1, 2012. Prior to the October 26 order, the weekly visitations had all occurred at the *secure FCRN facility*. *Dkt*. 19, 10:10-14. Utilizing the exact same reasoning this Court did with respect to the February 1, 2012 order, accordingly, the defendants would have been obliged, in order to abide by Judge Nelson's October order, to continue visitations at the FCRN facility.[3] However, we know the defendants did not comply with this directive, later moving visitation to Powell's residence <u>without</u> court approval. Consequently, only two conclusions can be reached here – either (1) the social workers violated the dependency court's October 26, 2011 order when they moved visitation and are not entitled to absolute immunity or (2) the dependency court did not order the visitation location in either order and location was left up to the discretion of the social workers, making absolute immunity inapplicable.

---

2 The dependency court's October 26 order reads:
*The father shall be provided with a minimum of a 3 hour weekly visit on Sunday during the time the maternal grandparents attend church. The visits shall be supervised by a provider approved by the department social worker and GAL.*

3 Applying the Court's reasoning in the context of the instant order, consequently, had the Court addressed the October 26 order instead of the February 1 order its ruling would have been: "[b]y ordering visitation to continue as it had been, Judge Nelson tasked the social workers with continuing to facilitate visitation at [the FCRN facility]. They had to comply with this directive." *Dkt.* 39, 10:21-11:2.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 3
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

Additionally, the Court's conclusion that defendants were tasked with continuing visitation at Powell's residence fails to recognize that although two visits were occurring each week, only one was occurring at Powell's residence. The other was occurring at the home of Tim Atkins. *Dkt*. 19, 16:13-22. The record establishes the dependency court was never provided with this information, so the dependency court could not have approved the site. Indeed, the Atkins visits were not contained in the GAL Report or the Individual Service and Safety Plan submitted by defendant Jacobson. *Dkts*. 25-1; 20-35. While Atkins' name came up during the February 1 hearing as a visit supervisor, there is no evidence the court was aware that visitation was occurring at his home. *Dkt*. 22-1, 135:5-8. A fact-finder could readily find that defendant Jacobson did not provide the court with this information because the children's therapist had specifically recommended against it and that Jacobson elected to disregard the recommendation intended to safeguard the children – a discretionary decision.

Relying on defendants' misrepresentations, the Court committed clear error in finding absolute immunity for defendants.

**2. Plaintiffs' facts establish the social worker defendants are not entitled to qualified immunity.**

This Court held "[t]he family members' and Detective Sanders' opinions were based on the same factual information as Judge Nelson had." *Dkt*. 39, 27:4-5. In a footnote the Court states "Judge Nelson already knew details about the active investigation regarding Susan's disappearance and Steven's crimes through the dependency information before her and her concurrent jurisdiction over Cox's nonparental custody action." *Id*., fn. 3. These conclusions can only be reached through reliance on defendants' unsupported misrepresentations. In its submissions to the Court defendants claimed:

> Judge [Nelson] sought out additional information from the court files regarding the Steven Powell criminal matter – which contained information obtained from the investigation into Joshua Powell in Utah – and inquired on the status of any dependency actions to be filed by

PLAINTIFFS' MOTION FOR RECONSIDERATION - 4
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

the State on behalf of C.J.P. and B.T.P.  Once the court learned the State was moving forward with the filing of dependency, Judge Nelson exercised concurrent jurisdiction.

*Dkt*. 21, 6:2-7.  These allegedly "undisputed facts" were not supported by any declaration or citation to evidence in the record.  Indeed, no evidence in the record establishes Judge Nelson sought out additional information from Steven Powell's criminal matter.  It is error to reach conclusions of fact based on a party's self-serving and unsupported statements. *See Surber v. Reliance Nat'l Indemn. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000) (finding that counsel's "bald statement, unsupported by any evidence, [did] not suffice to create subject matter jurisdiction."); *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993) ("Trustee did not satisfy this burden because the only evidence he presented was the unsupported statement of his attorney[.]").

Contrary to the Court's finding, the actual record establishes family members and Detective Sanders knew far more than Judge Nelson, and that the defendants knew that and failed to inform Judge Nelson of their admonitions.  The information withheld was critical to Judge Nelson's evaluation of the risks presented.  The dependency court, for example, was never told that family members believed Powell may try to kill his children.  Moreover, Detective Sanders' warned defendants that Powell may harm the children. His opinion was heavily based on the August search warrant that he executed on Steven Powell's residence. *Dkt*. 37-1.  The record demonstrates neither the dependency court nor defendants ever saw that search warrant.  The State misrepresented to this Court at the September 17 hearing that Sanders' belief was based on nothing more than a hunch.  Detective Sanders' knowledge of Josh Powell and Susan's disappearance was far superior to Judge Nelson, premised upon information associated with an active criminal investigation that could not have been known by Judge Nelson.

Last, the defendants acknowledge that the detectives' concerns were material information and should have been provided to the dependency court. Defendant Stephenson testified "[i]f Detective

PLAINTIFFS' MOTION FOR RECONSIDERATION - 5
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

Sanders or Detective Berg had stated to me that they felt the boys were in danger of being killed by Josh Powell I would have documented that in the case file as an important part of the record." *Dkt*. 10-1 (p. 42, ¶ 6). DSHS counsel John Long testified "[h]ad these concerns been raised when I was pushing for additional information from the detectives so that DSHS could keep the children from returning to their father's custody, I would have notified the Court and the other parties involved immediately." *Id*. (p.46, ¶ 5). Defendant Jacobson testified:

> If Defendant Sanders had stated to me that he felt the boys were in danger of being killed by Josh Powell I would have documented that in the case file as an important part of the record. I would have also included this information in my reports to the court as I was requesting that the boys not be returned home to Mr. Powell at the last dependency review hearing held.

*Id*. (p.50, ¶ 9). Indeed, counsel for defendants, Mr. Helmberger, testified at the hearing on September 17, 2015, that whether detectives provided this material information was a disputed fact. *Dkt*. 35.

In short, the Court's finding that Judge Nelson had equivalent information to Det. Sanders and Cox is unsupported by the record. Plaintiffs' facts – which must be accepted as true – establish detectives provided the defendants material information based on superior knowledge and that the defendants did not relay that information to the dependency court despite their acknowledgement that it was material. It was clearly established that a social worker is not entitled to qualified immunity and may be liable for creating a danger or increasing the plaintiffs' vulnerability to danger by failing to report material information to the dependency court. *Currier v. Doran*, 242 F.3d 905, 919 (10th Cir. 2001) (social worker created or increased danger to plaintiff by failing to investigate and report information to the court); *Ford v. Johnson*, 899 F. Supp. 227, 233 (E.D. Pa. 1995) (finding a constitutional claim against social workers who failed to investigate and report information to juvenile court regarding circumstances surrounding risks to child in custody of his father prior to father beating the child to death).

PLAINTIFFS' MOTION FOR RECONSIDERATION - 6
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

**3. Plaintiffs' facts and, more importantly, the record, establish the State is not entitled to dismissal of plaintiffs' state law negligence claims.**

**a. Judge Nelson's February 1 order did not operate as a superseding intervening cause cutting off the State's liability because the dependency court was not aware of all material information.**

As reflected in this Court's order, "whether a court action precludes the existence of proximate cause may be decided as a matter of law when the court is aware of all material information and reasonable minds could not differ on the issue." *Petcu v. State*, 121 Wn. App. 36, 58, 86 P.2d 1234 (2004) (quoting *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 86, 1 P.3d 1148 (2000)). Here, material information was withheld from the dependency court and reasonable minds could differ on the issue.

As already established, the dependency court was not provided information the defendants acknowledge as material. The opposite conclusion can only be reached by disregarding the record and relying on defendants' unsupported conclusions. Accordingly, Judge Nelson's February 1 order cannot act as a superseding intervening cause and dismissal of plaintiff's state law negligence claims was clear error.

**b. Reasonable minds could differ on whether the court was provided with all material information.**

"[T]he question of materiality is a question of cause in fact, not legal causation….unless reasonable minds could reach but one conclusion." *Tyner*, 141 Wn.2d at 87 (citing *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985) and *Bender v. City of Seattle*, 99 Wn.2d 582, 590, 664 P.2d 492 (1983) ("whether the additional information…was 'material' to the determination of probable cause is a question for the jury.") "A judicial order will not act as a superseding intervening cause terminating State liability where the State fails to provide all material information to the court for its decision." *Estate of Jones v. State*, 107 Wn. App. 510, 519, 15 P.3d 180 (2000).

PLAINTIFFS' MOTION FOR RECONSIDERATION - 7
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

In *Tyner*, the appellate court held a dependency court's no-contact orders throughout the case cut off any legal causation between the State's negligence and Mr. Tyner's separation from his children. 141 Wn.2d at 76. The Washington Supreme Court overturned the ruling, holding a jury could have determined two primary items withheld from the dependency court were material. *Id*. at 87. Specifically, the social worker on the case had determined that allegations against Mr. Tyner were unfounded but did not inform the court and, the social worker failed to interview collateral sources,4 in turn failing to deliver information to the court that these sources would have provided. *Id*. With respect to the second fact, the appellate court held:

> There is no reason to believe the courts would have relaxed the no-contact orders sooner if the caseworkers had informed the court that many people knew the children did not believe they had been abused and did not believe David Tyner capable of abusing them.

*Id*. Importantly, the Washington Supreme Court held "[t]his may be true, but the jury was free to reach the opposite conclusion." *Id*. (emphasis added). Here, this Court reached a similar conclusion as the appellate court in *Tyner*, holding:

> Reasonable minds could not differ as to whether sharing these biased and commonly-held concerns with Judge Nelson would have prompted her to reach a conclusion different than she reached on the weight of objective evidence on February 1, 2012.

Just as the *Tyner* court held, this may be true but a jury is free to reach the opposite conclusion, especially where the record establishes the following facts, *some of which the defendants themselves admitted are material,* were never provided to the dependency court:

1. Family member and law enforcement concerns that Powell may try and harm the children;
2. The children's therapist's recommendation that any increased visitation only occur under the supervision of DSHS personnel;
3. That visitation was occurring at the home of Powell's pastor, Tim Atkins;
4. That Jacobson believed Powell was dishonest about Susan's disappearance and Steven Powell's criminal matter;

---

4 It should be noted that plaintiffs also submitted facts that defendants Stephenson and Reed-Lyyski failed to interview collateral sources or follow up on reports but the Court makes no mention of this argument or these facts in its Order. *See Dkts*. 19 (15:9-19); 27 (11:13-19).

PLAINTIFFS' MOTION FOR RECONSIDERATION - 8
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

5. That the visitation supervisor assigned to Powell's case had never supervised a visit in a parent's residence;
6. That defendants never visited the home outside of a supervised visit to confirm Powell lived at the residence although the guardian ad litem acknowledged the house appeared "staged."

Furthermore, the Court's conclusion that "Judge Nelson also could not have taken away Joshua's right to visitation" is simply incorrect along with its determination that "[h]is noncompliance-disparaging Cox-did not adversely affect his children's health, safety, or welfare." *Dkt*. 39, fn. 8. The clear record establishes the dependency court was very concerned about the conflict between Powell and the Coxes and its adverse affect on the children. At the first hearing Judge Nelson stated:

> I am extremely concerned about the effect of family conflict on the children if they're living in that situation day-to-day.

*Dkt*. 20-16, 16:1-4. Jacobson's case notes indicate the children's therapist was also very concerned about the adverse effect of Powell's comments on the children:

> Josh also ranted to Lori during the session and in front of the boys (in addition to the 'Mormon police explanation') several negative comments about the Cox family and the ongoing media and litigation issues. Lori stated she attempted to redirect Josh to other topics but his speech was so rapid and he was so deep into his rant that she could not get him to stop.
>
> Lori has concerns regarding increased supervision that is not supervised by a Dept representative for fear that (since Josh did not mind having these conversations in front of her) Josh will continue these anti Cox family rants *which is not helpful to the boys in adjusting to their placement or getting any type of stability in their lives*. *Dkt*. 20-25.

The record does not support the Court's conclusion that Powell's "noncompliance-disparaging Cox-did not adversely affect his children's health, safety, or welfare." Indeed, concluding the disparaging remarks did not adversely affect the children's welfare would render its inclusion in the dependency court's orders meaningless. It was included specifically because the dependency court acknowledged such remarks had an adverse affect on the children.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 9
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

### c. Reasonable minds could differ on whether DSHS negligently facilitated the Powell family's February 5, 2011 visitation.

The conclusion that "DSHS reasonably increased the duration of visitation and reasonably moved the location to Powell's rental home" is based on an erroneous view of the record. *Dkt*. 39, 28:6-8.

First, Dr. Manley did not conclude that Joshua could safely parent his sons during supervised visitation. *Dkt*. 39, 5:8-9. His final report states:

> Until more is known about Mr. Powell it is difficult to conclude he could provide a stable, safe, and consistent nurturing environment for his sons.

*Dkt*. 27, 10:16-17. This is a far cry from the conclusion that he could safely parent his sons. Indeed, if anyone truly believed he could safely parent his sons during visitation there would have been no need for supervised visitation. Moreover, Dr. Manley, like the dependency court, was never informed by the defendants of law enforcement or family member concerns that Powell may harm the children. He also testified he had no involvement in deciding the location of visitation. *Dkt*. 27, pp. 15:18-16:2. Second, although Serrano, the GAL, agreed with Manley's recommendation to continue visitation, he also was not privy to law enforcement and family member concerns that may have changed his outlook. Also, defendant Jacobson did not inform Serrano that Cox called her in the days prior to the final visitation telling her he believed Powell was backed into a corner and was going to hurt the children. Had he been provided this information he may have been able to change the outcome. Third, Judge Nelson's authorization was based on an incomplete record and it was not her responsibility to ensure the visitation location was safe; that fell under the discretionary authority of the defendants. Last, the continuing goal of reunification was inferior to the boys' right to safety. This is made abundantly clear under RCW 13.34.020:

> When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, ***the rights and safety of the child should prevail***. In

PLAINTIFFS' MOTION FOR RECONSIDERATION - 10

{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

making reasonable efforts under this chapter, *the child's health and safety shall be the paramount concern*.

Defendants' own practice guide states "Safety is paramount in supervised visits" and Judge Nelson made it even more clear during the February 1 hearing, stating:

> [T]he permanent plan is to return home, and everyone to this point has been working to have family reunification, *provided it is safe to do so*.

*Dkt*. 22-1, p.148:13-16. The record does not support the Court's conclusion that DSHS acted reasonably, and the Court's order does not even reference the statutory or policy guidance establishing that the child's safety prevails over a parent's right to visitation or reunification.

Prior to that last visit defendants knew that Powell was going to undergo a psychosexual evaluation with a polygraph. They testified they believed he was dishonest. They knew Manley believed he was dishonest. They knew he was going to be asked questions about his sexual deviancy and possibly questions about Susan. Defendant Jacobson was informed by Cox in the days prior to the visit that Josh was going to harm the children. As this Court noted in its Order, "DSHS may change a visitation plan in light of 'increased or decreased safety concerns, changes in permanency plans, and/or the well-being of the child." *Dkt*. 39, 28:2-3. DSHS was negligent in failing to move visitation back to a secure facility and as outlined above, it had full discretion to do so. Former DSHS supervisor Jane Ramon has testified that DSHS should have recognized an increased risk of violence arising on February 1, 2012. *Dkt*. 20-52, ¶¶ 44-46. Additionally, a state superior court judge reviewed all of these same facts and reached a different conclusion as this Court. Reasonable minds can – and have – differed on this issue.

The record establishes it was clear error to hold Judge Nelson's order was a superseding intervening cause or that reasonable minds could not differ on whether DSHS' negligence was a proximate cause of the boys' death.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 11
{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

### III. CONCLUSION

Construing the facts in the plaintiffs' favor as this Court must on the State's summary judgment motion, material facts preclude dismissal of plaintiffs' federal or state claims. Plaintiffs respectfully urge the Court to reconsider its early decision.

DATED this 19th day of October, 2015.

                                            FREY BUCK, P.S.

                                            /s/ Evan Bariault
                                                Anne Bremner, WSBA #13269
                                                Evan Bariault, WSBA #42867
                                            Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR RECONSIDERATION - 12

{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

**Certificate of Service**

I certify that on the date noted below I electronically filed this document entitled with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

| | |
|---|---|
| Joseph M. Diaz, WSBA #16170 | James S. Rogers, WSBA #5335 |
| josephd@atg.wa.gov | jsr@jsrogerslaw.com |
| Peter Helmberger, WSBA #23041 | Cheryl L. Snow, WSBA #26757 |
| peterh@atg.wa.gov | csnow@jsrogerslaw.com |
| Jodie@atg.wa.gov | Elizabeth J. Donaldson, WSBA #45291 |
| Jennym@atg.wa.gov | liz@jsrogerslaw.com |
| TORTacEF@atg.wa.gov | Dawn@jsrogerslaw.com |
| Office of the Attorney General | Law Offices of James S. Rogers |
| 1250 Pacific Street, Suite 105 | 1500 Fourth Avenue, Suite 500 |
| Post Office Box 2317 | Seattle, WA 98101 |
| Tacoma, WA 98401 | (206) 621-8525 |
| (253) 593-5243 | FAX: (206) 223-8224 |
| *Attorneys for Defendants* | *Attorneys for Plaintiffs* |

DATED this 19th day of October, 2015, at Seattle, Washington.

/s/ Evan Bariault

PLAINTIFFS' MOTION FOR RECONSIDERATION

{00180005;1}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660