The Honorable Ronald Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, FOREST JACOBSON, ROCKY STEPHENSON, JANE WILSON, and BILLIE REED-LYYSKI, <br><br> Defendants. | NO. 14-05923RBL <br><br> DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION |

## I. RELIEF REQUESTED

Defendants respectfully request this Court to affirm its order granting summary judgment and dismissal of this case. The gist of the plaintiffs' motion for reconsideration is that the defendants misrepresented the record or otherwise cited to "unsupported" factual allegations making this Court's analysis "legally and factually untenable." Dkt 41, p. 1:4-6.

This Court invited the defendants to respond and "limit their response to addressing factual matters Cox asserts this Court overlooked or misapprehended, as well as the particular

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION
Case No. 14-05923

1

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

modifications that he seeks."  Accordingly, a review of the pertinent undisputed facts regarding the information before the Juvenile Court on February 1, 2012 is in order.

## II. *REPLY* STATEMENT OF FACTS

The Powell children were placed into protective custody on September 22, 2011 by the Pierce County Sheriff's Department (PCSD) who then transferred custody to DSHS because (1) Josh Powell "could not be ruled out as a suspect" in possession of child pornography and voyeurism, and (2) that Josh Powell was close to being arrested by officials in Utah, which posed a risk to the children of being removed twice in a short period of time.  Dkt 20-11, p. 4-5.  On September 28, 2011, the Juvenile Court ordered that the children remain in shelter care status, and placed the boys with Charles and Judith Cox, maternal grandparents.  Dkt 20-17; Dkt 22-1, p. 39.

However, on September 27, 2011, Judge Kathryn Nelson first presided over a hearing on the Cox Nonparental Custody Petition and motion for temporary custody of C.J.P. and B.T.P.[1]  During that hearing, the court became aware that C.J.P. and B.T.P. were placed into police protective custody on September 22, 2011.  Helmberger Decl., Ex. A, 9/27/11 hearing, pp. 3:25-4:20.  As part of that hearing, Judge Nelson specifically requested that Steve Downing, attorney for the Coxes, summarize the charging Information from the superior court criminal file which led to the children being placed into protective custody by the PCSD. Downing provided that summary.  The court file, which contained the Information regarding why the children were placed into protective custody, as well as additional court files that existed in Pierce County Superior Court for actions involving Joshua Powell and Charles Cox were inquired into by Judge Nelson.  Helmberger Decl., Ex A, 9/27/11 hearing, pp. 28:8 –

---

[1] As explained in the Declaration of Peter J. Helmberger, the defendants inadvertently failed to previously place the hearing transcript from the September 27, 2011 nonparental custody hearing into the record. Instead, the Court had for its review only the Nonparental Custody Petition, Dkt 7-5, pp 15-19, and Declaration of Charles Franklin Cox, Dkt 7-5, pp 21-30.  The plaintiffs, did however, attach excerpts from the September 28, 2011 shelter care hearing where the nonparental custody case is referenced.  Dkt 20-16.  A full copy of the September 28, 2011 shelter care hearing transcript is provided at this time.

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

2

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

30:12[2]; pp.54:24-64:19. The Court specifically requested to be provided with "all pertinent information" that existed in various Court files. Helmberger Decl., Ex A, p. 55:15-21.

As this Court knows, DSHS filed a dependency petition on September 27, 2011 and accordingly, on September 28, 2011, Judge Nelson exercised concurrent jurisdiction over the family law case and the dependency action. Helmberger Decl., Ex C, pp. 20:13-21:25; p. 42:9-24; pp. 72:18-73:4; pp. 74:15-75:22. The Court also amended an order for protection-harassment issued by another superior court judge in August of 2011 to Joshua Powell restraining Charles Cox from having contact with Mr. Powell or the children C.J.P. and B.T.P. Helmberger Decl., Ex C, p. 46:4-16; pp. 69:2-72:17. The amended order for protection allowed Charles Cox to have contact with his grandsons C.J.P. and B.T.P.

On October 26, 2011, a dependency order was entered which set forth the visitation schedule: 3 hours per week, supervised, which could be expanded upon agreement of the parties.[3] Weekly supervised visitations took place on Sunday morning, while the Coxes were at church. In addition, the court also ordered that Powell undergo a complete psychological evaluation with a parenting component. The report was completed on December 9, 2011. It is undisputed that Dr. Manley's psychological report was provided to the Court and that the Court reviewed that report. Dkt 30; Dkt 22-1, pp 123:11-124:20.

On November 6, 2011, supervised visits on Sundays shifted to Powell's residence, based on the agreement of the parties as per the October 26, 2011 order. The reasons for this are well-known by the Court. *See* Dkt. 22, p. 8:4-25; Dkt 22, p. 27-31; Dkt 39, p. 28.

---

[2] The bulk of Downing's argument on behalf of the Coxes was that the children were being harmed by Powell because he was not getting the children into therapy where they could talk about their mother's disappearance with a therapist. The Court specifically and repeatedly asked Downing to explain the imminent risk and the answer was because the children were not in therapy. Helmberger Decl., Ex. A, 9/27/11 hearing, pp. 32:13-34:14. There was no mention at this hearing on behalf of the Cox family that they believed Joshua Powell posed an imminent risk to his sons other than he was not getting them in therapy.

[3] Dkt 22, pp. 34-42 (Order of Dependency as to Joshua Powell, Pierce County Superior Court Cause Nos. 11-7-01802-8 and 11-7-01803-6, Dkt 22, p. 40:2-10).

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

3

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

On February 1, 2012, the Juvenile Court held its regularly scheduled Review Hearing, during which time it also heard Powell's motion for reunification. It is undisputed that the trial court reviewed various reports and a motion filed by Powell's attorney. By February 1, 2012, the Juvenile Court was well-aware that visits were occurring in the Powell residence. Dkt 30; Dkt 25-1, pp.6-7; Dkt 31-2, p. 5 ¶ 12;[4] Dkt 22-1, p. 133:11-19; pp. 135:20-136:15; p. 143:16-25; pp. 145:7-146:6. In regards to visitation, it was specifically addressed by the parties that "visits would remain as currently is" and ordered visitation for a minimum of three hours, twice per week. Dkt. 22-1, 150:3-23.

## III. *REPLY* ARGUMENT

### A. The Social Workers Are Entitled To Absolute Immunity Because Of Their Function In Carrying Out Court Orders.

This Court ruled that the social workers were entitled to absolute immunity based on the quasi-prosecutorial immunity for their advocacy to the Juvenile Court, and because Judge Nelson's "order continuing visitation . . . ratified Serrano, Jacobson, and supervisor Jane Wilson's discretionary decision to increase the hours of visitation and hold it at Joshua's rental home" and as such "Judge Nelson tasked the social workers with continuing to facilitate visitation at Joshua's home." This ruling is correct.

Plaintiffs' argument can be fairly summarized as follows: According to the plaintiff, because the Court's order on October 26, 2011 was silent regarding location of the visit, either the social workers violated that Court order by moving visits away from the FCRN facility to Powell's residence, or the social workers were allowed to make the discretionary decision to move visits and therefore, because the February 1, 2012, order "was virtually identical" to the

---

[4] Beginning on October 26, 2011, the court was made aware of discussions and plans to move the visits to Powell's home. Powell's counsel Bassett advised the Juvenile Court that Powell had taken steps to establish a separate household for himself and his sons away from his father, Stephen Powell. Helmberger Decl., Ex. D, 10/26/11 hearing, pp. 4:1-5:17. Bassett further advised that the children's court-appointed GAL, Serrano, had already been out to see Powell's new residence. Bassett further informed the court that Powell hoped his visits with the children could start at his new home.

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

4

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

October 26, 2011 order, the social workers' decision regarding location of the visit on February 5, 2012, had to be a discretionary decision and therefore not protected by absolute immunity. Plaintiffs' argument is fundamentally flawed for several reasons.

The first fundamental flaw with plaintiffs' analysis is to assume that the October 26, 2011 order was silent regarding location, which it was not, or to otherwise explicitly or implicitly require that the visitation location remain the same and *not* be changed. In fact, the contrary is true. The Juvenile Court's order allowed for visitations "to be expanded upon agreement of the parties" and as shown above, Judge Nelson had the benefit of several court files to review regarding the disappearance of Susan Powell prior to entering this order. The Court was certainly aware of the statutes governing visitations and the proclivity to move visitations to the parent's residence as the dependency action progressed, and without question at the October 26, 2011 hearing, Powell's attorney Jeffery Bassett informed the Court that Powell was looking for a residence so visitations could be moved there. Helmberger Decl., Ex. D, pp. 4:1-5:17. In short, there is no way to suggest that the October 26, 2011 order precluded the decision to move the visits to the residence, let alone made it a violation of court order to do so. In fact, that assertion is fairly ridiculous.

The second fundamental flaw is to suggest that the Court's ruling on February 1, 2012, "was virtually identical" to the ruling on October 26, 2011. By February 1, 2012, the Juvenile Court was aware that visitations were going on in the Powell residence, and had been since November, 2011—GAL Serrano submitted a report on January 6, 2012, which stated that visits were in the Powell home; Dr. Manley's report of December 9, 2011 referenced him observing on November 2, 2011, a visit between C.J.P. and B.T.P. and their father at the new residence; at the hearing on February 1, 2012, Powell's home was repeatedly referenced both in terms of it being safe and that the visits there were going well, according to the visitation supervisor who was present in the Courtroom (as was John Long who was also present when the visitation

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

5

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

supervisor was briefing Bassett); Judge Nelson also had reviewed both of Dr. Manley's reports, one from December 9, 2011, and the addendum which requested a psychosexual examination and questioned Powell's ability to parent. The Court also reviewed Jacobson's objection to the children returning to Powell's care, which contained information adverse to Powell. Dkt 20-50. In addition, it is undisputed that during the dependency process when reunification is on the horizon that visitations are shifted to the residence and that this is typical.

At the conclusion of the hearing, the parties discussed visitation and the Court ruled simply that it ". . . remain as it currently is." Dkt 22-1, p. 150:3-23. At the hearing on October 26, 2011, the location of the visits transitioning to Powell's residence was merely contemplated whereas by February 1, 2012, visits were specifically occurring at Powell's and the order that they be continued was properly taken that this was a directive that visits continue at Powell's. As this Court said, Judge Nelson ratified the decision to have visits at Powell's.

The third fundamental flaw in plaintiffs' analysis is that it is premised on the assumption that the Juvenile Court had to specify location in order for the social workers to be protected by absolute immunity, but this premise is completely incorrect.

"In determining absolute immunity" courts "examine the nature of the function performed, not the identity of the actor who performed it." *Tamas v. DSHS,* 630 F. 2d 833, (9th Cir. 2010). In *Meyers v. Contra Costa County Dept. of Soc. Serv.*, 812 F.2d 1154 (9th Cir. 1987), relied on by this Court, court employed social workers actually denied court ordered visits for good faith reasons and yet were absolutely immune because they were making decisions regarding the nature of visitations and whether to go through with them, and as such they were "performing a judicial function at the direction of a court." *Meyers*, 812 F.2d at 1159.

Here, the social workers are tasked per RCW 13.34.025 to "coordinate and integrate

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

6

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

services" ordered by the Juvenile Court. As in *Meyers*, the function of the social workers in this case was to facilitate the visits the Court ordered on February 1, 2012.[5]

The plaintiffs also suggest the defendants misrepresented the facts regarding expansion of visitations which also occurred on a weekly basis at the home of Powell's pastor, Tim Atkins. However, this is not new information and although the plaintiffs suggest the Court relied on defendants' misrepresentation, they cite to the record before the Court which included documents submitted by the defendants. Plaintiffs' theory is apparently that Jacobson did not provide the Juvenile Court with this information because the children's therapist had recommended against it (which allegedly Jacobson also did not provide) and that a jury could potentially find this to be material and that because Jacobson withheld, it was a discretionary decision. The logic behind this argument is essentially impossible to understand and therefore essentially impossible to respond to in any meaningful fashion. It is fairly difficult to imagine that had the Court been apprised of additional visits occurring that were reportedly going very well, that it would have changed its visitation order of February 1, 2012 such that the defendants would lose absolute immunity or that their function as social workers was no longer performing a judicial task. The Court's ruling on absolute immunity should stand.

**B. The Court's Ruling On Qualified Immunity Was Correct**

This Court also ruled that the social workers were entitled to qualified immunity. The Court ruled that the boys did have a constitutional right to "reasonable safety and minimally adequate care appropriate to their ages and circumstance while the boys were in the State's custody." Dkt 39, p. 15:19-21. However, the Court also ruled that the social workers did not act with deliberate indifference for the boys' interest and that the constitutional right mentioned

---

[5] Furthermore, given the natural progression of dependency matters in terms of visitations being expanded and moved to a residence as reunification approaches, and given the Court's order to expand visits upon agreement and given that the Court also ordered a psychological evaluation, the decision to move the visits to Powell's residence becomes less and less discretionary and more and more in keeping with the Court's implied order. Under *Meyers*, that decision is arguably subject to absolute immunity.

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

7

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

above was not clearly established in the context of coordinating court-ordered visitations. Both of these rulings were correct and supported by facts.

### 1. The social workers' actions do not "shock the conscious."

This Court ruled that the conduct of the social workers did not "shock the conscious" predominantly based on the lack of objective evidence that Powell posed a substantial risk to his sons. This Court noted that the children were removed because the Steven Powell home was unsafe and Joshua Powell's arrest was thought to be imminent, and not because of evidence that Joshua Powell was abusive to his sons. Once the psychological evaluation came back showing that Powell possessed the skill and intellect to parent his children safely, visitations were modified accordingly and the Court continued to order visitations. The Court held that given the knowledge around the disappearance of Susan Powell, the disparaging remarks evidence played no role in the outcome of the orders on visits, and that ultimately the social workers did not act with deliberate indifference.

The plaintiffs do not really articulate why this aspect of the ruling is incorrect. As such, the motion for reconsideration is again faulty because this ground alone would be sufficient to warrant affirming the prior order on summary judgment.

### 2. The Constitutional Right is not clearly established in the context of coordinating court-ordered visitations.

The Court ruled the social workers were entitled to qualified immunity because decisional law does "not clearly set forth liberty interests . . . such that a social worker could anticipate she was violating the law by coordinating court-ordered and supervised visitation" and that, accordingly, "even if Judge Nelson's February 1, 2012 order did not ratify the social workers' decision to hold visitations at Joshua's house, making them absolute immune, they still have qualified immunity because they did not violate the children's clearly established constitutional rights." Dkt 39, pp.18:16-19:2. This order is correct.

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION
Case No. 14-05923

8

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

Plaintiffs allege that the Court's ruling could "only be reached through reliance on defendants' unsupported misrepresentations." Dkt 41, p. 4:19-21. Those unsupported misrepresentations include (1) that Judge Nelson did not seek out additional information from the Steven Powell criminal matter. Dkt 41, p. 5:2-5; (2) that family members and detectives knew far more than Judge Nelson and that Judge Nelson was never told that Detective Sanders, for example, warned that Powell may harm his children; and (3) that the defendants acknowledge that the detectives' concerns were material information. The gist of the plaintiffs' assertion is that the "detectives provided the defendants with material information based on superior knowledge and the defendants did not relay that information to the dependency court," thereby satisfying the state created danger claim.

First, defendants did not misrepresent Judge Nelson's seeking Information at the hearing on September 27, 2011. The record from the September 27, 2011 nonparental custody hearing is now complete as the defendants have submitted the entire transcript of that hearing to the Court. While all of the parties were aware of this hearing, and the defendants referenced in their earlier brief that Judge Nelson had the information from the Steven Powell criminal matter, the defendants overlooked filing of this hearing transcript earlier. (See Dkt 21, 6:2-7).

During the September 27, 2011, Nonparental Custody hearing, Judge Nelson specifically: (1) requested that Steve Downing, attorney for the Coxes, summarize the charging Information from the criminal court file which led to the children being placed into protective custody by the PCSD and Downing provided that summary; Helmberger Decl. Ex. A. 9/27/11 hearing, p. 28:8-30:12[6]; (2) at the conclusion of the hearing on September 27, 2011, the Court

---

[6] The bulk of Downing's argument on behalf of the Coxes was that the children were being harmed by Powell because he was not getting the children into therapy where they could talk about their mother's disappearance with a therapist. The Court specifically and repeatedly asked Downing to explain the imminent risk and the answer was because the children were not in therapy. Helmberger Decl., Ex. A, 9/27/11 hearing, pp. 28:8 – 30:12 and pp. 32:13-34:14. There was no mention at this hearing on behalf of the Cox family that they believed Joshua Powell posed an imminent risk to his sons, other than he was not getting them in therapy.

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

9

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

specifically asked to review the court file which contained the Information regarding why the children were placed into protective custody, as well as additional court files that existed. Helmberger Decl., Ex. A, 9/27/11 hearing, pp. 54:24 – 64:19; and (3) The Court specifically requested to be provided with "all pertinent information" that existed in various Court files. Id. at p.55:15-21.

Second, regarding statements allegedly made by the PCSD detectives that Powell was going to harm his children which were not reported to the Juvenile Court, the plaintiffs assert that the information relayed was in fact material because the defendants all admitted it was material by stating in their various declarations that had they been alerted that the detectives thought Powell was going to kill his children, they would have made note of it and would have alerted the parties, and because they did not do so, they failed to provide the juvenile court with material information.[7]

By way of background, in response to summary judgment before State Court, the plaintiffs submitted declarations from the detectives which stated, in part, that they warned social workers and AAG John Long that they thought Powell would harm or kill his children. In response, the four social workers and the AAG all signed declarations explaining that they were never told such a thing and that had they been told such a thing, they would have recorded it. That is where the "admission" comes from; a denial those comments were ever made. To date, there has been no documentation – not an email, case note, data entry thing – produced which reflects this information was conveyed to social workers and/or the AAG. This is information which the plaintiffs now claim would have changed the entire outcome of this matter and yet

---

[7] The plaintiffs at page 5 assert that the defendants did not share the search warrant crafted by Detective Sanders with the Juvenile Court. This is correct. The search warrant had been sealed upon the request of Det. Sanders by Court order dated August 24, 2011 and was not unsealed until March 30, 2012. Helmberger Decl., Ex. G. Law enforcement did not share all the information with the social workers because then the social workers would have been required to share that information through discovery with Powell, thereby releasing the details of the criminal investigation which law enforcement did not wish to be released. Helmberger Decl. Ex. E, Sanders dep., 26:13-27:22; Helmberger Decl. Ex. F, Berg dep. 32:8-20.

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION
Case No. 14-05923

10

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

there is not a single shred of documentation to suggest this information was ever conveyed via email or similar document. Now, incredibly, plaintiffs not only suggest such statements were made, but that the defendants acknowledge those statements were material and failed to record them and convey them.[8]

That said, this is still not material information. Even assuming that had this information been shared with the defendants, and even assuming they would have written down and conveyed it, the detectives themselves describe this information as "hunches" and not actual evidence upon which to place the boys into protective custody. It is undisputed that the detectives did not have evidence upon which to place the boys into protective custody, which is why the graphic images were released from Utah in January, 2012. According to Detective Berg, because Powell had complied with the dependency orders and the case was progressing along, the children were likely to be returned, because "you can sense risk and you can know risk, but really hard to make that into fact. Because the kids themselves weren't beaten . . . the murder of their mother, you know, that's not necessarily enough." Helmberger Decl. Ex. F, Berg dep 27:17-28:14 and 26:2-29:22. As this Court stated, sharing the biases and commonly held concerns would not have changed the outcome of the visitation decision.

**C. The Court's Ruling That The Juvenile Court Order Severs Liability Is Correct Because All Material Information Was Provided To The Juvenile Court.**

The Court engaged in a lengthy analysis regarding the state-law based negligence claims holding that DSHS did have a duty to the children, the scope of which extended to include "some duty to investigate . . ." The Court correctly ruled that Judge Nelson's order of February 1, 2012

---

[8] In fact, plaintiffs repeatedly assert that the detectives had more information than any of the social workers or the Juvenile Court. Since law enforcement has an obligation to place the children in protective custody if they believe harm is imminent, and with their superior knowledge as the plaintiffs put it, it is curious that they are not also defendants in this lawsuit. Of course, no one has any way of knowing, but one can only hope they were not sued because at one point in time the plaintiffs recognized that law enforcement only had hunches and instincts but no evidence to go on and therefore did not engage in any tortious conduct or violate a civil right.

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

11

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

severed liability as a judicial action which breaks the causal connection between an alleged negligent act and the subsequent harm, citing *Bishop v. Miche*, 137 Wn. 2d 518, 532 (1999); *Schooley v. Pinch's Deli Market, Inc.,* 134 Wn. 2d 468, 482 (1998); *Petcu v.State*, 121 Wn. App. 36, 58 (2004). Dkt 39, p. 26:7-12. The Court ruled that in the case of a dependency matter, as in other matters, a court action precludes proximate cause "when the court is aware of all material information and reasonable minds could not differ on the issue." *Petcu*, 121 Wn. App. at 58.

The Court's order was two-fold: First, that Cox failed to identify any material information not before Judge Nelson. Second, that even if the court order did not "ratify" the location of the visit, reasonable minds could not conclude that DSHS negligently facilitated the visitation on February 5, 2012, given the information before the parties and the Court. This is correct.

The plaintiffs cite to six specific pieces of information not provided to the Court, which the plaintiffs contend were material. *See* Dkt 41, pp. 8:19-9:2. However, none of these alleged facts are new information or material information. Recall that "material" means that it is one that would have changed the outcome of the court's decision." *See Petcu*, 121 Wn.App. at 56. Taken in order:

First, plaintiffs once again renew their reliance on the "concerns" of law enforcement and family members. This has been discussed above, is not new nor based on a lack of factual citation to the record. And as mentioned above, the "concerns" expressed by law enforcement, if any, were based on hunches and thought process and not actual evidence. Accordingly, this was not "material information". Helmberger Decl. Ex. E, Sanders dep. 11:6-13:2.

Second, the children's therapist's recommendation that any increase in visitation only occur under supervision of DSHS personnel. Plaintiffs rely on a case note by Forest Jacobson which reflects her conversation with "Lori" about a visitation session she observed in which Joshual Powell demonstrated alarming behavior.
DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION
Case No. 14-05923

12

The record reflects that the note regarding this alleged problematic visit had been provided to Dr. Manley, Dkt 22-1, pp. 69-70 , that Dr. Manley included this in his report, Dkt 22-1, pp. 65-87, and that Jacobson also included a discussion of this in her ISSP dated 1/5/12, Dkt 22, pp. 90-91. Mainly, however, this alleged information is not material because by February 1, 2012, the evidence was that visits were going well, disparaging comments had ceased and there was no more need for redirection, and there were no safety concerns arising from these visitations. Dkt 22-1, pp. 135:5-136:5. Accordingly, even if the Court had been made aware that specifically in early December this was the recommendation, by February 1, 2012, that issue had become moot.

Third, that one of the visitations which occurred on a weekly basis occurred at the home of Powell's pastor, Tim Atkins. As discussed above, this is not new information, nor is it based on an alleged misrepresentation of the record. (See Dkt 31-2, p. 6 ¶ 12; Dkt 22-1, pp. 135:5-136:5). Plaintiffs' theory is apparently that Jacobson did not provide the Juvenile Court with this information because the children's therapist had recommended against it (which allegedly Jacobson also did not provide) and that a jury could potentially find this to be material. It is almost impossible to see how this is material to the order of February 1, 2012. It is fairly difficult to imagine that had the Court been apprised of additional visits occurring that were reportedly going very well, that it would have changed its visitation order of February 1, 2012.

Fourth, that Jacobson believed Powell was dishonest about Susan's disappearance and Steven Powell's criminal matter. This is not material because, as the court stated, the community at large had the commonly held concern that Joshua Powell was dishonest about Susan Powell's disappearance. Had he been honest, he would have confessed to murder. However, even more importantly, included in Jacobson's declaration in response to Powell's motion to move the children home, Jacobson repeated that which had been contained in Dr. Manley's report, which is that Powell had been evasive or was not forthright in responses to questions. Dkt 8-4, pp. 71-

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

13

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA  98401
(253) 593-5243

74. Jacobson conveyed the thoughts of those involved in the dependency, which was that Joshua Powell was not being honest about the disappearance of his wife.

Fifth, that the visitation supervisor assigned to Powell's residence had never supervised a visit at a parent's residence. This allegation is not new and in fact was previously cited by Plaintiffs.

Sixth, defendants never visited the home outside of supervised visits to confirm that Powell lived at the residence. This allegation is also not new, nor is it based on a misrepresentation by the defendants. Plaintiffs have previously argued this point, which can be fairly described as an irrelevant point. Furthermore, plaintiffs are relying on unsubstantiated assertions that Powell did not really live there. But mainly, the reports were that visits were going well there, that there were no safety concerns, and that the disparaging remarks had ceased to be a point of redirection.

In regards to all of these points, the record is clear that Judge Nelson was aware, to the best anybody could be in light of the sealed record, of the circumstances surrounding the disappearance of Susan Powell. Simply put, everybody was operating under the assumption that he killed his wife. The plaintiffs do not rely on any evidence or argument that Powell posed a risk to his children based on reports or evidence of committing acts of physical harm to his children. Rather, what plaintiffs rely upon is the evidence regarding Powell's lack of integrity and character, but all of that was known and assumed by all parties involved. In short, the sorts of allegations now raised pale in comparison to the assumption and understanding regarding the disappearance of his wife. But it is undisputed that this evidence itself was not enough to warrant placing the children into protective custody.

Accordingly, this Court was absolutely correct when it said:

Furthermore, even if Judge Nelson's order ratifying DSHS'S decision to move visitation were not a superseding cause severing DSHS's liability for DSHS's subsequent execution of her order, reasonable minds could not conclude that DSHS negligently facility the Powell family's February 5, 2011, visitation. DSHS

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR
RECONSIDERATION
Case No. 14-05923

14

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

may change a visitation plan in life of "increase or decrease safety concern, change in permanency plans, and/or the well-being of the child." Given the relative success of early family visits, Dr. Manley's determination that Joshua could safely parent during supervised visitation, Serrano's consensus, Judge Nelson's authorization, Griffin-Halls' supervisory presence, and the continue goal of reunification, DSHS reasonably increased the duration of visitation and reasonably moved the location to Powell's we rent home – DSHS'S preferred visitation location.

Dkt 39, pp. 27-28.

That is this case in a nutshell, and every aspect of that portion of the Court's order is supported by evidence in the record.

## IV. CONCLUSION

Based on the foregoing, plaintiffs' motion for reconsideration should be denied.

DATED this 9th day of November, 2015.

        ROBERT W. FERGUSON
        Attorney General

        */s/Peter J. Helmberger*
        PETER J. HELMBERGER, WSBA No. 23041
        Assistant Attorney General
        1250 Pacific Avenue, Suite 105
        Tacoma, WA 98401
        Telephone: (253) 593-5243
        FAX: (253) 593-2449
        E-mail: PeterH@atg.wa.gov

        */s/Joseph M. Diaz*
        JOSEPH M. DIAZ, WSBA No. 16170
        Assistant Attorney General
        7141 Cleanwater Ln SW
        Tumwater, WA 98501
        Telephone: (360) 586-6300
        FAX: (360) 586-6655
        E-mail: JosephD@atg.wa.gov
        Attorneys for Defendants

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION
Case No. 14-05923

15

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243

# CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2015, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Anne Bremner
Evan Bariault
1200 Fifth Avenue, Suite 1900
Seattle, WA 98101
(206) 486-8000

abremner@freybuck.com
ebariault@freybuck.com

ROBERT W. FERGUSON
Attorney General

*/s/Peter J. Helmberger*
PETER J. HELMBERGER, WSBA No. 23041
Assistant Attorney General
1250 Pacific Avenue, Suite 105
Tacoma, WA 98401
Telephone: (253) 593-5243
FAX: (253) 593-2449
E-mail: PeterH@atg.wa.gov

*/s/Joseph M. Diaz*
JOSEPH M. DIAZ, WSBA No. 16170
Assistant Attorney General
7141 Cleanwater Ln SW
Tumwater, WA 98501
Telephone: (360) 586-6300
FAX: (360) 586-6655
E-mail: JosephD@atg.wa.gov
Attorneys for Defendants

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION
Case No. 14-05923

16

OFFICE OF THE ATTORNEY GENERAL
1250 Pacific Avenue, Suite 105
P.O. Box 2317
Tacoma, WA 98401
(253) 593-5243