UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUDITH COX and CHARLES COX individually and as Personal Representatives of the Estates of C.J.P. and B.T.P.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, FOREST JACOBSON, ROCKY STEPHENSON, JANE WILSON, and BILLIE REED-LYYSKI,<br><br>Defendants. | NO. 14-05923RBL<br><br>**PLAINTIFFS' REPLY TO MOTION FOR RECONSIDERATION**<br><br>**Noted for Consideration:**<br><br>**November 16, 2015** |

PLAINTIFFS' MOTION FOR RECONSIDERATION

{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

## I. INTRODUCTION

Plaintiffs pointed out on reconsideration that this Court failed to view the facts in plaintiffs' favor as required by law. That defendants did not even address that point is fatal to their response. Accepting the facts alleged in a light most favorable to plaintiffs, defendants are not entitled to absolute or qualified immunity or dismissal of plaintiff's state law negligence claims.

## II. ARGUMENT

### A. Summary of the law.

"It is black-letter law that in granting summary judgment a district court cannot resolve disputed questions of material fact; rather, that court must view all of the facts in the record in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts." *Albino v. Baca*, 747 F.3d 1162, 1173 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Anderson*, 477 U.S. at 255.

### B. A grant of absolute immunity to defendants can only be reached by ignoring plaintiffs' facts and through speculation.

#### 1. Viewing the facts in plaintiffs' favor, the defendant social workers are not entitled to absolute immunity.

As set forth in plaintiffs' original motion, this Court ruled that the social workers' decision to move visitation from the secure FCRN facility to Powell's residence was a ***discretionary*** decision, but the Court granted absolute immunity on the basis that Nelson ratified the decision "[b]y ordering visitation to continue as it had been" and by "task[ing] the social workers with continuing to facilitate visitation at Joshua's home." *Dkt*. 39, 10:21-11:1. The objective evidence in this case demonstrates that Judge Nelson never ratified the social workers' discretionary decision, however, because her February 1, 2012 order did not contemplate the location of visitations. *See Dkt*. 41 (2:2-

PLAINTIFFS' MOTION FOR RECONSIDERATION - 1
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

3:5). Indeed, Judge Nelson's October 26, 2011 order and her February 1, 2012 order are completely silent regarding visitation location and she never made any mention of visitation location during the October 26, 2011 or February 1, 2012 hearings. During the February 1, 2012 hearing only the number and duration of visitations were addressed, not the location:

| | |
|---|---|
| **MR. BASSETT**: | Your Honor, we would ask for the Court's ruling with respect to the visitation. We would ask the Court to order that it continue twice a week. |
| **MR. LONG**: | And Your Honor - - |
| **THE COURT**: | That was my understanding of Dr. Manley's amended recommendation, that it remain as it currently is. As I understand, it is twice a week for three - - |
| **MR. LONG**: | Three hours. |
| **THE COURT**: | Twice a week for three hours supervised. |
| **MR. POWELL**: | Four. Four. |
| **MR. LONG**: | We've had - - we've had a - - |
| **MR. BASSETT**: | So just do a minimum of three twice a week. As long as it's a minimum of three twice a week, that's fine. I know Ms. Jacobson - - |
| **THE COURT**: | Okay. Two visits. Minimum of three, twice a week. That should resolve that issue. |

*Dkt*. 22-1, p. 150.

The defendants, not the court, determined the visitation location as evidenced by defendant Jacobson's Visiting Plan. Both Jacobsen's "Visiting Plan" of September 27, 2011 and her "Updated Visiting Plan" of December 29, 2011 state that visits will only occur at a "dcfs office or other PRE approved dcfs location." *Dkt*. 19, 13:16-19; *Dkt*. 20-13. Powell's residence was never a "dcfs location." Jacobson violated her own plan, and never presented the court with a revised plan showing that the location had been moved away from a secure facility. Viewing the facts in the light most favorable to plaintiff, the Court ***did not*** order visitation to occur at a particular location. The location was instead left to the independent discretion of the social worker defendants who were tasked with holding supervised visitation at a location that ensured C.J.P. and B.T.P.'s safety. *Dkt*. 20, Ex. 15 (DSHS policy requires that supervised visitation take place at a DSHS site or "[o]ther site as pre-approved *by social worker* that ensures safety of child.").

PLAINTIFFS' MOTION FOR RECONSIDERATION - 2
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

To the extent that social workers make discretionary decisions and recommendations, such as the "decisions and recommendations as to the particular home where a child is to go or as to the particular foster parent who are to provide care," these actions "are not functionally similar to prosecutorial or judicial decisions," and therefore do not enjoy absolute immunity. *Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003). Viewing the facts in a light most favorable to plaintiffs, defendants' discretionary decision to relocate the visitations is not entitled to absolute immunity.

**2. Defendants' position requires this Court to speculate as to the ultimate facts.**

Defendants' position asks this Court to speculate that because Judge Nelson knew visitation was occurring at Powell's residence, her order – although it makes no reference to visitation location – required defendants to hold visitation at his residence. On a motion for summary judgment, however, the trial court is not permitted to weigh the evidence, pass upon credibility, or speculate as to the ultimate finding of fact. *Pepper & Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391, 393 (9th Cir. 1997). Here, the Court's conclusion that Nelson "tasked the social workers with continuing to facilitate visitation at Joshua's home" can only be reached through speculation. There is no evidence that Nelson ordered any change to the visiting plans filed by Jacobsen that provided for visitation at a secure facility, and no evidence Judge Nelson ever approved defendants' abandonment of that plan. The record is utterly silent on the issue.

Additionally, defendants' argument that they are entitled to absolute immunity even if Judge Nelson's order did not specify location because they were facilitating a court order is not sensible. By defendants' reasoning they could hold visitation in a house used for meth production and still be absolutely immune because they were facilitating a court order. That is simply not the law; a social worker's decision where to hold supervised visitation is not a "quasi-prosecutorial decision" or "critical to the judicial process." *Beltran v. Santa Clara Cnty.*, 514 F.3d. 906, 908 (9th Cir. 2008). Here there is no evidence defendants were enforcing any judicial order or doing anything other than

PLAINTIFFS' MOTION FOR RECONSIDERATION - 3
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

exercising their discretion when they moved visitation to an unregulated, unprotected location - the scene of the murders.

While plaintiffs have been unable to find a case that precisely mirrors the present facts, the case of *Swift v. California*, 384 F.3d 1184 (9th Cir. 2004) is highly informative. In *Swift*, the Ninth Circuit held that parole board members are entitled to absolute quasi-judicial immunity when they make decisions "to grant, deny, or revoke parole because these tasks are functionally comparable to tasks performed by judges." 384 F.3d at 1189 (internal quotation marks omitted). Also, parole officers are entitled to absolute quasi-judicial immunity for actions "integrally related to an official's decision to grant or revoke parole." *Id*. (citing *Anderson v. Boyd*, 714 F.2d 906, 909 (9th Cir. 1983)). However, parole officers' "conduct arising from their duty to supervise parolees" is not entitled to quasi-judicial immunity. *Id*. In analyzing claims of absolute quasi-judicial immunity, courts have carefully drawn a line between adjudicatory acts on the one hand and administrative acts on the other. Like the parole officers in *Swift*, here the social workers' function was administrative, namely supervision, and their decision where to hold visitation was pursuant to that non-adjudicatory function. Viewing the facts in the light most favorable to plaintiffs, the defendant social workers are not entitled to absolute immunity and the Court erred finding otherwise.

**C. A grant of qualified immunity to the defendants can only be reached through ignoring plaintiffs' facts and by speculating.**

As outlined above, this Court must accept the facts in this case in a light most favorable to plaintiffs and cannot speculate as to the ultimate facts.

**1. Defendants admit this Court's order (Dkt. 39) was based on facts unsupported by the record before it.**

This Court concluded that "Judge Nelson already knew details about the active investigation regarding Susan's disappearance and Steven's crimes through the dependency information before her and her concurrent jurisdiction over Cox's nonparental custody action." Plaintiffs' motion

PLAINTIFFS' MOTION FOR RECONSIDERATION - 4
{00193675;2}

established that the Court conclusion was unsupported by the record on the underlying motions. *Dkt*. 41, 5:15-6:9. Defendants now admit the plaintiffs are correct. Defendants admit that they "inadvertently failed to previously place the hearing transcript from the September 27, 2011 nonparental custody hearing into the record." *Dkt*. 45, fn.1. In other words, the defendants' claims were unsupported by the record, and this Court erred in relying on them.

Defendants also argued at the summary judgment hearing that law enforcement officers' concerns about the children's safety were based on a "hunch" rendering the information immaterial. Plaintiffs filed supplemental briefing in opposition, however, showing that defendants had never submitted any evidence to support this contention and that the objective evidence actually proved otherwise. Dkt. 36-1. Defendants now confirm they never submitted evidence on summary judgment to support their "hunch"[1] argument. Instead, they rely on excerpts from the depositions of Detectives Gary Sanders and Teresa Berg that were never previously submitted. See Dkt. 46-5, -6. There was, accordingly, simply no factual basis at the underlying motion to support the Court's conclusion.

**2.  The Court should strike the Declaration of Peter Helmberger and attached exhibits.**

Just as plaintiff is not entitled to raise new arguments or evidence on reconsideration, neither is defendant in opposition. See *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation"). Inadvertence is not an excuse. "The overwhelming weight of authority is that the failure to file documents in an original motion or in opposition does not turn the late filed documents into 'newly discovered evidence.'" *Sch. Dist. No. 1J v. ACandS, Inc*., 5 F.3d 1255 (9th Cir. 1993) (citing *Waltman v. International*

PLAINTIFFS' MOTION FOR RECONSIDERATION - 5

{00193675;2}

*Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989)(materials available at time of filing opposition to summary judgment would not be considered with motion for reconsideration); *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1557 & n.4 (9th Cir. 1987) (court did not abuse its discretion in refusing to consider affidavits opposing summary judgment filed late); *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (evidence available to party before it filed its opposition was not "newly discovered evidence" warranting reconsideration of summary judgment).

Here, defendants cannot submit new evidence[2] to bolster their earlier, unsupported arguments. Reconsideration must rest solely upon the evidence in the record at the underlying motion absent circumstances defendants do not contend exist. *Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 211-12 (9th Cir. 1987). It was error for this Court to rely on defendants' unsupported facts submitted on summary judgment and it would be additional error to allow defendants to supplement the underlying record with new evidence at reconsideration.

### 3. Even if Helmberger's declaration and attached exhibits were admissible, it does not alter the fact that family members and detectives held superior information to Judge Nelson and she was not informed of their concerns for the children's safety, which was material information.

Plaintiffs established that Detective Sanders had significantly more information related to Josh Powell's actual risk to the children than Judge Nelson because he was familiar with the contents in the August search warrant executed on Steven Powell's residence. Indeed, defendants admit Judge Nelson never reviewed the sealed search warrant during the dependency. *Dkt*. 45, fn.7.

---

[1] As described below, neither Detective Berg nor Detective Sanders have ever testified their concerns were based on a hunch. That description was concocted by defense counsel and completely mischaracterizes the detectives' testimony.

[2] Defendants admit evidence they now rely upon in opposition to reconsideration was available and not provided to the court on its summary judgment motion or in opposition to plaintiff's summary judgment motion. *See Dkt*. 46 – Declaration of Peter Helmberger ("I am attaching complete copies of the transcripts from the hearings referenced in Defendant's Response to Plaintiffs' Motion for Reconsideration as they were inadvertently not filed in their entirety earlier.")

PLAINTIFFS' MOTION FOR RECONSIDERATION - 6
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

Nor do defendants provide any facts to refute plaintiffs' evidence that family members knew more than Judge Nelson. For example, defendants submit no evidence that Judge Nelson was aware of Jennifer Graves' concerns or information she provided to Rocky Stephenson. *Dkt*. 27, 3:3-5. Accordingly, viewing the facts in the light most favorable to plaintiff, the Court's holding that "[t]he family members' and Detective Sanders' opinions were based on the same factual information as Judge Nelson had," is erroneous.

Moreover, defendants' assertion that "Judge [Nelson] sought out additional information from the court files regarding the Steven Powell criminal matter – which contained information obtained from the investigation into Joshua Powell in Utah" is belied by their very own "new" evidence. *See Dkt*. 46-1 – 46-7. Nowhere in those materials does it establish the Steven Powell criminal file contained information about the investigation into Josh Powell. Indeed, defendants' evidence contains nothing more than a hearing transcript with argument from the parties and counsel. As established in plaintiffs' motion, Detective Sanders had access to the sealed August search warrant that contained significant information about Josh Powell. *Dkt*. 41, 6:14-17. Defendants have presented no evidence that Judge Nelson had access to or accessed this information. Defendants' new evidence does not support their "equal knowledge" contention.

    **a.**    **Detectives concerns were not based on hunches.**

Defendants continue to allege Detective Berg and Detective Sanders' concerns were based on hunches. This is false. The detectives' concerns were based on law enforcement experience and common sense. Sanders testified his concerns were based on: (1) Powell losing his control over his boys and his ability to brainwash them; (2) the boys were living in an environment where they felt safe and may talk more about their mother's disappearance; (3) everyone believed Josh Powell was a murderer; (4) if Josh killed Susan he was very capable of killing his kids; (5) Powell exhibited no affection for his children; (6) interactions Sanders witnessed between Powell and his children; and

PLAINTIFFS' MOTION FOR RECONSIDERATION - 7
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

(7) significant information contained in the search warrant executed on Steven Powell's home as well as information obtained through the execution of said warrant. *Dkt*. 37-1. Berg also testified that her concerns were not based simply on a hunch. However, the new testimony submitted by the defendants conveniently leaves out Berg's testimony about why she was concerned for the children's safety. *Dkt*. 46-6. If the Court was privy to the entire transcript it would show that Berg recognized the incredible pressure building on Josh and how this significantly increased the risk to the children – all information that was never provided to Judge Nelson. However, this testimony like all that submitted by defendants is inadmissible on reconsideration.

Moreover, defendants' contention that the information held by detectives was not enough to place the boys into protective custody is irrelevant. The question is not whether this information was sufficient to place the boys into protective custody but whether this information was material to the court's decision. *See Tyner v. Dep't of Soc. & Health Servs*., 92 Wn. App. 504, 518, 963 P.2d 215 (1998), *rev'd on other grounds*, 141 Wn.2d 68 (2000). "[T]he question of materiality is a question of cause in fact, not legal causation…unless reasonable minds could reach but one conclusion." *Tyner*, 141 Wn.2d at 87.

**b.  Detective and family member concerns were material information.**

Defendants fail to acknowledge that this Court is required to view the facts in a light most favorable to plaintiff. Indeed, defendants admit that four social workers and Assistant Attorney General John Long signed declarations testifying that had they been told of law enforcement concerns they would have recorded it. *Dkt*. 45, 10:16-18. Both Long and defendant Jacobson testified had they been told of law enforcement concerns they would have submitted this information to the Court. *Dkt*. 41, 7:3-10, *Dkt*. 10-1 (pp. 42, ¶ 6 and 46, ¶ 5). While they deny having the information, however, detectives Berg and Sanders testified that they informed the defendant social workers of their concerns. Therefore, viewing the facts in the light most favorable to plaintiffs: (1)

PLAINTIFFS' MOTION FOR RECONSIDERATION - 8
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1 detectives informed the defendant social workers of their concerns; (2) the concerns were material, (3) social workers did not record these concerns; and (4) the social workers did not submit this information to the Court.

*Tyner* is directly on point. In *Tyner*, CPS caseworker Bill Mix was assigned to investigate a claim that David Tyner had sexually abused his children. 141 Wn.2d at 73. Mix began his investigation on January 12, 1993 and a dependency petition was filed on January 26, 1993. *Id*. at 73-74. Mix completed his investigation on February 2, 1993 and prepared a final report where he checked off on a preprinted form that the allegations against Tyner were "unfounded." *Id*. at 74. This report was never provided to Mr. Tyner, Ms. Tyner, their attorneys or the dependency court. *Id*. On June 28, 1993 the court dismissed the dependency and in February 1995 Mr. Tyner filed suit against the state and other actors. *Id*. at 75-76. A jury later awarded Tyner $201,500 in damages under a claim for negligent investigation. *Id*. at 76. On appeal, the court overturned the jury verdict, holding the court's no-contact orders throughout the dependency cut off any legal causation between the State's negligence and Mr. Tyner's separation from his children. *Id*. The Washington Supreme Court disagreed, finding a question of fact existed as to whether the dependency court was provided with all material information. It held that a judicial order will act as a superseding, intervening cause, <u>only</u> if all material information has been presented to the court. *Id*. at 87-88.

The *Tyner* court held that a jury could conclude that Mix's failure to inform the dependency court that he determined the allegations against Mr. Tyner were unfounded was material. *Id*. at 87. Specifically, the court held "the fact that Mix had reached this determination was itself a fact, a fact that might have been relied upon by the court in making its decision. ***There is little question that courts rely heavily on the judgment of CPS caseworkers in making dependency determinations***." *Id*. (emphasis added) Here, the concerns of well-informed law enforcement officers and family members were, as recognized by the Washington Supreme Court, themselves facts that might have

PLAINTIFFS' MOTION FOR RECONSIDERATION - 9
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

been relied upon by the court in making its decision about supervised visitation. Judge Nelson relied on the defendant social workers to provide her with this information and they did not. A jury may conclude that Judge Nelson would have acted upon that information had it been provided. Accordingly, this Court erred when it relied on defendants' unsupported facts and failed to view the facts in the light most favorable to the plaintiffs and held:

> Reasonable minds could not differ as to whether sharing these biased and commonly-held concerns with Judge Nelson would have prompted her to reach a conclusion different than she reached on the weight of the objective evidence on February 1, 2012.

*Tyner* also supports the proposition that (1) defendant Jacobson withheld material information when she failed to inform the Court of her belief that Powell was dishonest about his wife's disappearance and Steven Powell's child porn investigation. *See Dkt*. 20-31 (78:1-79:21). Under *Tyner,* defendants Stephenson and Reed-Lyyski also withheld material information by failing to investigate and interview collateral sources. As defendants acknowledge in their response, Josh Powell could not be ruled out as a suspect in the child pornography investigation. *Dkt*. 45, 2:5-6. Indeed, defendant Jacobson drafted the dependency petition in this case and listed Powell's "suspect" status as a factor:

> 2. On 9/22/11, LE notified the Department that Joshua Powell is also a subject of their ongoing investigation related to the charges already filed against the grandfather. LE indicated that Joshua Powell's career is with computers and that the pornography LE has analyzed is technologically "sophisticated".

*Dkt*. 28-6. Defendant Jacobson never informed Judge Nelson she believed Powell was lying to West Valley and Pierce County law enforcement even though she acknowledged he was the "suspect" in a child porn investigation and incestuous images were found on his personal computers.

Judge Nelson relied on Jacobson and the other defendant social workers to be her eyes and ears in providing for the plaintiffs' safety – the judge would not have known those eyes were intentionally myopic, the ears intentionally deafened. Defendants' failure to provide the judge

PLAINTIFFS' MOTION FOR RECONSIDERATION - 10
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

material information necessary to make informed decisions in the dependency undermines this Court's dismissal. *See Tyner*, supra.

Moreover, Stephenson and his supervisor, Reed-Lyyski, received numerous reports from family members, law enforcement and others about Powell's behavior prior to and during the dependency, yet never followed up on the reports. *Dkt*. 41, fn. 4; *Dkt*. 27, 11:13-19. In *Tyner*, social worker Mix failed to interview collateral sources and in turn failed to deliver information to the dependency court that these sources would have provided. 141 Wn.2d at 87. The Supreme Court held whether this information was material was a question left to the jury. *Id*. The situation is the same here; it is a jury question whether Stephenson and Reed-Lyyski failed to provide the dependency court material information by not following up on reports and interviewing collateral sources.

    **c.    The law is clear that social workers are not entitled to qualified immunity where they withhold material information from a dependency court.**

The defendants have never even attempted to dispute plaintiffs' authority that social workers are not entitled to qualified immunity where they withhold material information from the dependency court. That is because it was clearly established at the time of these events that a social worker is not entitled to qualified immunity and may be liable for creating a danger or increasing the plaintiffs' vulnerability to danger by failing to report material information to the dependency court. *Currier v. Doran*, 242 F.3d 905, 919-20 (10th Cir. 2001) (social worker created or increased danger to plaintiff by failing to investigate and report information to the court); *Ford v. Johnson*, 899 F. Supp. 227, 233 (E.D. Pa. 1995) (finding a constitutional claim against social workers who failed to investigate and report information to juvenile court regarding circumstances surrounding risks to child in custody of his father prior to father beating the child to death). This failure to respond to plaintiffs' argument and cases should be viewed as an admission and acceptance of plaintiffs'

PLAINTIFFS' MOTION FOR RECONSIDERATION - 11
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

position. As outlined above, viewing the facts in a light most favorable to plaintiffs, the defendant social workers failed to investigate and failed to report material information to the dependency court. They are not entitled to qualified immunity and it was error to rule otherwise.

### d. At a minimum, this case involves quintessential material issues of disputed fact that prohibit a grant of qualified immunity.

Detectives contend they informed the social worker defendants they believed Powell may harm his children. Defendants admit that such information would be material and that they had a responsibility to provide it to the court if they knew of it. The social worker defendants, however, deny they were so informed by the detectives. This is a quintessential dispute of material facts. "[A] district court should decide the issue of qualified immunity as a matter of law when 'the material, historical facts **are not** in dispute, and the only disputes involve what inferences may be properly drawn from those historical facts.'" *Conner v. Hieman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003)). Where historical facts material to the qualified immunity determination are in dispute the district court should submit the issue to a jury. *Conner*, 672 F.3d at 1131. This is not a situation where the dispute concerns "what objectively reasonable inference may be drawn" from the facts, but rather what the facts underlying the incident actually are. *Conner*, 672 F.3d at 1132 n.2. Due to this conflict, the Court should have denied defendants' request to escape liability through qualified immunity and it was error to rule otherwise.

### D. Dismissal of plaintiff's state law negligence claims can only be reached by ignoring plaintiffs' facts and binding precedent and, instead, relying on speculation.

Defendants completely fail to respond to plaintiffs' argument that (1) reasonable minds could differ on whether the court was provided with all material information and (2) reasonable minds could differ on whether DSHS negligently facilitated the February 5, 2011 visitation. Instead, they

PLAINTIFFS' MOTION FOR RECONSIDERATION - 12
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

ask this Court to (1) view the facts in their favor and (2) speculate on the ultimate findings of fact. The Court can do neither. *See Albino,* 747 F.3d at 1173; *Pepper*, 563 F.2d at 393.

### 1. Plaintiffs' facts establish reasonable minds could differ on whether the court was provided with all material information.

Defendants do not dispute that the following information was not provided to the Court:

1. Family member and law enforcement concerns that Powell may harm the children;[3]
2. The children's therapist's recommendation that any increased visitation only occur under the supervision of DSHS personnel;
3. That visitation was occurring at the home of Powell's pastor, Tim Atkins;
4. That Jacobson believed Powell was dishonest about Susan's disappearance and Steven Powell's criminal matter;
5. That the visitation supervisor assigned to Powell's case had never supervised a visit in a parent's residence;
6. That defendants never visited the home outside of a supervised visit to confirm Powell lived at the residence although the guardian *ad litem* acknowledged the house appeared "staged."

Instead, they argue it was not material, despite their earlier admission that such information would be material. Regardless, *Tyner* makes it abundantly clear that "the question of materiality is a question of cause in fact, not legal causation…unless reasonable minds could reach but one conclusion." 141 Wn.2d at 87. Defendants do not dispute that this Court and a state court reached a different conclusion or that former DSHS supervisor Jane Ramon reached a different conclusion. It is the role of the jury, not this Court or defendants, to ascertain whether the withheld information may have affected the circumstances leading to these murders. *Id.* ("[t]his may be true, but the jury was free to reach the opposite conclusion.") (emphasis added). It was error to dismiss plaintiffs' state law negligence claims.

### 2. Plaintiffs' facts establish that reasonable minds could differ on whether DSHS negligently facilitated the February 5, 2011 visitation.

Viewing the facts in the light most favorable to plaintiffs, this Court must accept that prior to the February 5, 2011 visitation (1) defendants believed Powell murdered his wife, (2) defendants

---

3 This information was also never provided to Dr. Manley and the children's guardian *ad litem*.

PLAINTIFFS' MOTION FOR RECONSIDERATION - 13
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

believed he was dishonest about his wife's disappearance and the child porn investigation, (3) defendant's knew Powell had just lost a motion to regain custody of his sons, (4) defendants knew Powell had been diagnosed with narcissistic personality disorder, (5) defendants knew Powell was to undergo a psychosexual evaluation, (6) defendants knew Powell was to undergo a polygraph where he would be asked questions about his sexual deviancy and his wife's disappearance, (7) defendants knew Manley had found "it is difficult to conclude [Powell] could provide a stable, safe, and consistent nurturing environment for his sons," (8) well-informed law enforcement officers expressed concern that Powell would harm the children, and (9) defendant Jacobson was warned by Charles Cox in the days prior to visitation that Powell was going to harm the children because his "back was up against the wall." As outlined above, defendants were not ordered to hold visitation at Powell's residence. It was their statutory duty to recognize these obvious warning signs and hold visitation at a location that ensured the safety of C.J.P. and B.T.P., precisely as their visiting plan provided. It is black-letter law that "**the rights and safety of the child should prevail**" and "**the child's health and safety shall be the paramount concern**." *Dkt*. 41, 11:22-12:2. This is acknowledge by defendant's own practice guide ("Safety is paramount in supervised visits") and Judge Nelson ("[T]he permanent plan is to return home, and everyone to this point has been working to have family reunification, provided it is safe to do so."). *Id*., 12:3-5. Most importantly, it is acknowledged by this Court – "DSHS may change a visitation plan in light of 'increased or decreased safety concerns, changes in permanency plans, and/or the well-being of the child." *Dkt*. 39, 28:2-3.

Reasonable minds can *and have* differed on whether there are material factual disputes as to whether DSHS was negligent when it moved visitation to an insecure location, then failed to move visitation back to a secure facility when additional risk factors became evident. Accepting plaintiffs' facts – as this Court is required to do – no other conclusion can be reached. By relying on

PLAINTIFFS' MOTION FOR RECONSIDERATION - 14
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

defendants' misrepresentations and unsupported facts, this Court erred in dismissing plaintiffs' state law negligence claims.

### III. CONCLUSION

Construing the facts in the plaintiffs' favor as this Court must on defendants' summary judgment motion and relying on facts *actually* before the court on summary judgment, material facts preclude dismissal of plaintiffs' federal or state claims. At an absolute minimum, disputed issues of fact exist precluding summary judgment. Plaintiffs respectfully urge the Court to reconsider its order granting defendants' motion for summary judgment.

DATED this 16th day of November, 2015.

FREY BUCK, P.S.

/s/ Evan Bariault
Anne Bremner, WSBA #13269
Evan Bariault, WSBA #42867
Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR RECONSIDERATION - 15
{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

# Certificate of Service

I certify that on the date noted below I electronically filed this document entitled with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

| | |
|---|---|
| Joseph M. Diaz, WSBA #16170 | James S. Rogers, WSBA #5335 |
| josephd@atg.wa.gov | jsr@jsrogerslaw.com |
| Peter Helmberger, WSBA #23041 | Cheryl L. Snow, WSBA #26757 |
| peterh@atg.wa.gov | csnow@jsrogerslaw.com |
| Jodie@atg.wa.gov | Elizabeth J. Donaldson, WSBA #45291 |
| Jennym@atg.wa.gov | liz@jsrogerslaw.com |
| TORTacEF@atg.wa.gov | Dawn@jsrogerslaw.com |
| Office of the Attorney General | Law Offices of James S. Rogers |
| 1250 Pacific Street, Suite 105 | 1500 Fourth Avenue, Suite 500 |
| Post Office Box 2317 | Seattle, WA 98101 |
| Tacoma, WA 98401 | (206) 621-8525 |
| (253) 593-5243 | FAX: (206) 223-8224 |
| *Attorneys for Defendants* | *Attorneys for Plaintiffs* |

DATED this 16th day of November, 2015, at Seattle, Washington.

/s/ Evan Bariault

PLAINTIFFS' MOTION FOR RECONSIDERATION

{00193675;2}

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660