HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLES COX, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al.,<br><br>    Defendants. | CASE NO. C14-5923 RBL<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION<br><br>[Dkt. # 41] |

THIS MATTER is before the Court on Plaintiff Cox's Motion for Reconsideration [Dkt. #41] of the Court's Order [Dkt. #39] granting Defendants' Motion for Summary Judgment [Dkt. #24] and denying Plaintiffs' Motion for Summary Judgment [Dkt. #19].

Cox argues that the Court failed to view the evidence in the light most favorable to him, in two primary areas. First, he reiterates his claim that Judge Nelson never specifically ordered visitation at Powell's home. Instead, he claims, the social workers decided on their own (and possibly in violation of Judge Nelson's orders) that the visitations could be moved to Powell's home and Judge Nelson never ratified that decision. He claims that, as a result they are not entitled to absolute immunity.

ORDER - 1

Cox also claims that the social workers are not entitled to qualified immunity for their failure to relay to Judge Nelson information allegedly relayed to them by the officers investigating Powell (and by the Cox family) to the effect that they "knew" or at least "believed" that Powell would seek to harm or kill his children. Cox reiterates that there were six specific pieces of information known to the defendant social workers that they did not provide to Judge Nelson. He argues that the Court relied on "misrepresentations" about this information to wrongly dismiss his negligence claims.

Motions for Reconsideration are disfavored, and will ordinarily be denied absent a showing of manifest error, or a new factual or legal basis which could not have been raised earlier. A manifest error is a plain and indisputable error amounting to a complete disregard of the controlling law or the credible evidence in the record. *See* Local Rules W.D. Wash. 7(h)(1); *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

The Defendants argue that, even viewing the evidence in the light most favorable to him, Cox's interpretation of Judge Nelson's visitation orders is not correct and the Court's ruling on absolute immunity was. They point out that—consistent with the policy goal of reunification in such cases—the Juvenile Court ordered in October that visitation could be expanded by agreement of the parties. They argue, persuasively, that it so ordered despite having ample evidence that Powell was the only suspect in Susan's disappearance.

It is undisputed that Powell's attorney told Judge Nelson in October that he was looking for a residence so that the visitations could be moved there. By February, the GAL and Dr. Manley had submitted reports expressly describing visits in Powell's home (and that they were "going well"). It was not a violation of the Court's order to permit such visitations, and it was not a secret that they were occurring. Furthermore, the social workers' absolute immunity for

Cox also claims that the social workers are not entitled to qualified immunity for their failure to relay to Judge Nelson information allegedly relayed to them by the officers investigating Powell (and by the Cox family) to the effect that they "knew" or at least "believed" that Powell would seek to harm or kill his children. Cox reiterates that there were six specific pieces of information known to the defendant social workers that they did not provide to Judge Nelson. He argues that the Court relied on "misrepresentations" about this information to wrongly dismiss his negligence claims.

Motions for Reconsideration are disfavored, and will ordinarily be denied absent a showing of manifest error, or a new factual or legal basis which could not have been raised earlier. A manifest error is a plain and indisputable error amounting to a complete disregard of the controlling law or the credible evidence in the record. *See* Local Rules W.D. Wash. 7(h)(1); *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

The Defendants argue that, even viewing the evidence in the light most favorable to him, Cox's interpretation of Judge Nelson's visitation orders is not correct and the Court's ruling on absolute immunity was. They point out that—consistent with the policy goal of reunification in such cases—the Juvenile Court ordered in October that visitation could be expanded by agreement of the parties. They argue, persuasively, that it so ordered despite having ample evidence that Powell was the only suspect in Susan's disappearance.

It is undisputed that Powell's attorney told Judge Nelson in October that he was looking for a residence so that the visitations could be moved there. By February, the GAL and Dr. Manley had submitted reports expressly describing visits in Powell's home (and that they were "going well"). It was not a violation of the Court's order to permit such visitations, and it was not a secret that they were occurring. Furthermore, the social workers' absolute immunity for

quasi-judicial or quasi-prosecutorial actions applies even when they were making "decisions" in carrying out the Court's orders, so long as they were "performing a judicial function at the direction of a court." *See Meyers v. Contra Costa County Dept. of Social Serv.*, 812 F.2d 1154, 1159 (9th Cir. 1987) ("Although the plaintiffs allege that certain actions taken by [defendants] constituted violations of court orders, absolute immunity is lost only if these actions were "clearly and completely outside the scope of [defendants'] jurisdiction.") (internal citations omitted).

Given the information that she clearly had, a reasonable jury could not find that Judge Nelson's February 1 Order that visitation "remain as it currently is" prohibited such in-home[1] visitations. The Court will not reconsider its order on absolute immunity based on the visitation location.

The Defendants vehemently and persuasively argue that there is no evidence supporting the accusation that they made "unsupported misrepresentations" that the Court relied on to determine that the social workers were entitled to qualified immunity. Cox's primary claim is that the family and law enforcement knew and relayed to the social workers far more about their belief that Powell would harm his sons, than the social workers in turn told Judge Nelson. He argues that the Defendants claimed (and the Court erroneously accepted) that Judge Nelson sought out information about the criminal investigation into Steven Powell—the one that triggered the dependency action in the first place—at the September 27 non-parental custody hearing.

---

[1] Cox also claims that the visitations at Pastor Atkins' home were not specifically authorized, but there is no evidence of any issues in those visits, and there is no credible claim that they would have been objectionable, or that they played any role in the boys' ultimate demise.

There are a number of problems with this claim. It is true that the transcript of this hearing was not in the record at the time the Court granted the defendants' motion. Cox claims that the Court erred in accepting that Judge Nelson sought information about the Powell investigation(s) at that hearing, in the absence of the actual transcript proving that point. But he simultaneously argues that the Court cannot now consider the since-submitted transcript because it was not in the record at the time of the Court's order.

He seeks to essentially white-wash this evidence in an effort to avoid summary judgment. But even if the case turned on this point (it does not) and the Court had *denied* the defendants' motion because the transcript was not in the record, it would now be properly considering it in connection with the *defendants'* motion for reconsideration, or renewed motion for summary judgment. Cox cannot turn the inadvertent failure to submit a transcript into a factual determination that the transcript does not say what it in fact clearly says. The Court will consider the September 27 transcript, and it supports the prior order.

Second, and more importantly, there is no evidence at all that either the Cox family or law enforcement had "superior knowledge" about Powell's future intentions or capabilities. They had "hunches" and gut feelings that Josh Powell was an evil, sick man who had almost certainly killed his wife. This is not evidence, and these parties' beliefs about Powell were not unique—literally everyone associated with the case (or even vaguely familiar with news accounts of it) believed that Powell had killed his wife. The Utah police were certain that he had, but could not charge him. Furthermore, as the Defendants point out, nothing stopped Cox from relaying these concerns directly to Judge Nelson if he believed she did not grasp the danger. Certainly the law enforcement officers had the ability—if not the *obligation*—to take steps to protect the boys if they had actionable evidence of impending harm. And, as the Court

pointed out in its order, the suspicion that a parent has already committed a murder is not sufficient to remove a child from a home. Suspicion of a future crime is not enough to terminate a parent's ability to have in home visitations on the path to reunification.

Cox's claim that the social workers' failure to note the "warnings" they were allegedly given is further evidence of their failings is also erroneous. Coupled with the lack of any written evidence of such warnings, it is also evidence that (consistent with the order sealing the search warrant) the officers did not in fact give the claimed warnings. This is a factual dispute, but it is not material because the claimed warnings were not based on "evidence" unknown to the Court. They were instead "hunches," based on "experience and common sense." Judge Nelson had both.

The other five pieces of information allegedly withheld are lesser, and are not enough to overcome the legal affect of Judge Nelson's February 1 Order.

The Court will not reconsider its order dismissing the plaintiffs' claims. The Motion for Reconsideration is DENIED.

IT IS SO ORDERED.

Dated this 11th day of December, 2015.

Ronald B. Leighton
United States District Judge